Michael I. Wayne, Esq. (CSB # 169840)
mwayne@gglts.com
Gary E. Scalabrini, Esq. (CSB # 161902)
gscalabrini@gglts.com
GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
(310) 552-3400
Fax (310) 552-0805

Attorneys for Defendants,
ELAINE K. MOORE and MARK PELUSO

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN T. HARDISTY,<br><br>Plaintiff,<br><br>v.<br><br>HAROLD MAXINE MOORE; ELAINE K. MOORE (aka MELANIE K. MOORE); STATE INSULATION, LLC, an Arizona limited liability company; STATE INSULATION, LLC, a Nevada limited liability company; THE 1998 HAROLD M. MOORE REVOCABLE TRUST; and MARK PELUSO, an individual,<br><br>Defendants. | Case No. 3:11-cv-01591-AJB-BLM<br><br>Assigned to Hon. Anthony J. Battaglia<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MELANIE MOORE AND MARK PELUSO'S MOTION TO DISMISS**<br><br>**[Notice of Motion and Motion filed concurrently herewith]**<br><br>**[FRCP 12(b)(6)]**<br><br>Date: December 23, 2011<br>Time: 1:30 p.m.<br>Ctrm: 12 |

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendants, Elaine K. Moore, aka Melanie K. Moore ("Melanie Moore") and Mark Peluso ("Peluso") (Moore and Peluso shall be collectively referred to as the "Moving Defendants") hereby file the following Memorandum of Points and Authorities in support of their motion to dismiss the second and fifth causes of action of the Amended Complaint filed by Plaintiff, John T. Hardisty ("Plaintiff" or "Hardisty").



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................2

A. Factual Allegations ...................................................................2

B. Summary of Argument ...............................................................4

II. ARGUMENT ........................................................................................5

A. Hardisty's Second Cause of Action For Aiding and Abetting Breach of Fiduciary Duty Should Be Dismissed Because Plaintiff Cannot Establish the Underlying Claim for Breach of Fiduciary Duty Under Tennessee Law ........................................................5

1. The Laws of the State Of Tennessee Govern the Interpretation and Enforcement of the Operating Agreement ..........................................................................5

a. Substantial Relationship ................................................6

b. Fundamental Public Policy ............................................7

2. Under Tennessee Law, There Exists No Fiduciary Duty Between or Among the Individual Members of a LLC .............8

3. Hardisty Cannot State a Claim for Aiding and Abetting Against the Moving Defendants Because He Cannot State the Underlying Claim for Breach of Fiduciary Duty ................10

B. Hardisty's Fifth Cause of Action Should Be Dismissed Because He Has Not, and Cannot, State a Valid RICO Claim ........................10

1. Plaintiff's Civil RICO Claim Fails Because There Exists No Threat of Continuing Activity ..........................................11

2. Plaintiff's Fifth Cause of Action Should Be Dismissed Because Plaintiff Has Plead No More Than "One Scheme" With a "Single Victim" ......................................................13

III. CONCLUSION .....................................................................................16


GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*County Sanitation Dist. v. Los Angeles County Employees Ass'n*, 42 Cal.3d 810 (1985) .......... 10

*Cecil v. Hardin*, 575 S.W.2d 268 (Tenn.1978), *superseded by statute on other grounds* .......... 10

*Dumas v. Major League Baseball Props., Inc.*, 104 F.Supp.2d 1220 (S.D.Cal. 2000) .......... 11

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260 (D.C. Cir. 1995) .......... 13, 15, 16

*Foley v. Interactive Data Corp*, 47 Cal.3d 654 (1988) .......... 8

*Gamer v. duPont Glore Forgan, Inc.*, 65 Cal.App.3d 280 (1976) .......... 6, 8

*GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463 (2d Cir. 1995) .......... 13

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .......... 10, 11, 12

*In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486 (9th Cir.1985) .......... 5

*Levine v. Diamanthuset, Inc.*, 950 F.2d 1478 (9th Cir.1991) .......... 10

*Living Designs, Inc. v. E.I. DuPont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005) .......... 11

*McGee v. Best*, 106 S.W.3d 48 (Tenn.Ct.App. 2002) .......... 8, 9

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360 (9th Cir. 1987) .......... 12, 13, 14

*Nedloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459 (1992) .......... 6, 7, 8

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

# TABLE OF AUTHORITIES

*Paracor Finance, Inc. v. General Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996) .......... 5

*Pasadena Unified School Dist. v. Pasadena Federation of Teachers*,
72 Cal.App.3d 100 (1977) .......... 10

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) .......... 11

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529 (9th Cir. 1992) .......... 13

*Ury v. Jewelers Corp.*
227 Cal.App.2d 11 (1964) .......... 8

STATUTES

18 *U.S.C.* § 1962 .......... 11

Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO") .......... 2, 10

Tenn.Code Ann. § 48-240-102(a) .......... 8

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In the present action, Plaintiff has filed a 97-page complaint (the "Amended Complaint") against Defendants Harold Maxine Moore ("Hal Moore"), Melanie Moore, State Insulation, LLC, a Nevada limited liability corporation and State Insulation, LLC, an Arizona limited liability corporation (collectively "State Insulation"), The 1998 Harold M. Moore Revocable Trust (the "Trust") and Mark Peluso. Plaintiff has asserted ten claims against the Defendants, including the first cause of action against Hal Moore for breach of fiduciary duty, second cause of action against Melanie Moore, State Insulation, Peluso and the Trust for aiding and abetting breach of fiduciary duty, and fifth cause of action against Hal Moore, Melanie Moore, State Insulation and the Trust for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). As set forth below, Plaintiff has not, and cannot, allege claims against the Moving Defendants, Melanie Moore and Peluso, for aiding and abetting breach of a fiduciary duty and for violation of RICO. Accordingly, this Court should dismiss, with prejudice, the second and fifth cause of actions as against the Moving Defendants.[1]

### A. Factual Allegations

The present action arises from the investment of Defendant Hal Moore in a limited liability company known as Legacy Pointe, LLC. The "sole purpose" of the company was "to acquire, develop, construct, own, operate and sell an apartment project located in Knoxville, Knox County, Tennessee" (the "Project"). (*See*, Second Amended and Restated Operating Agreement of Legacy Pointe Apartments, LLC, "Operating Agreement," attached as part of Exhibit 3 to the Amended Complaint, pg.

---

[1] Defendants Hal Moore, State Insulation and the Trust have not yet been served with the summons and complaint. Accordingly, the remaining Defendants have not yet filed a responsive pleading.



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

1, § 1.03.) As acknowledged in the Amended Complaint, Hal Moore initially invested $1.5 million as a capital contribution in the company to obtain a 50% interest in Legacy Pointe. (Amended Complaint, ¶¶ 46, 54 and 63.) Hal Moore has also invested millions more in the form of loans and additional capital contributions. (Amended Complaint, ¶¶ 70, *see also*, Purchase and Sale Agreement, attached as part of Exhibit 3 to the Amended Complaint, pg. 1.)[2]

Plaintiff, Hardisty, was a member and the Chief Manager of Legacy Pointe. (Operating Agreement, pg. 2, § 3.02). Hardisty was also a member of Munson-Hardisty, LLC ("M-H"), the general contractor and builder of the Project. (Amended Complaint, ¶ 29.) As a member of Legacy Pointe, Plaintiff sought Hal Moore as an investor. (Amended Complaint, ¶¶ 43-54.) In contrast to Hal Moore, Plaintiff initially invested no funds in Legacy Pointe or the Project. Rather, in exchange for waiving his builder's profit on the Project, Plaintiff was to receive "sweat equity" in the company. (Amended Complaint, ¶¶ 28-30.) In particular, Plaintiff initially received a 27 percent membership interest as the developer and M-H received a 10 percent membership interest as the builder, 50 percent of which belonged to Plaintiff. (Amended Complaint, ¶ 30.)

In his Amended Complaint, Plaintiff alleges that Hal Moore, through fraud and coercion, divested him of his sweat equity in the Project, such that Hal Moore acquired almost all of the ownership interest in Legacy Pointe. (Amended Complaint, pg. 4:1-5.) Although Plaintiff is a sophisticated businessman who has acted as a general contractor on numerous multi-million dollar construction projects, he alleges that Hal Moore and Melanie Moore tricked him into signing numerous documents, without reading them, which enabled Defendants to perpetrate their

---

[2] Additionally, *as alleged in the Amended Complaint*, Hal Moore also loaned Plaintiff in excess of $1.1 million dollars in connection with unrelated litigation filed against Plaintiff by a former employee. In his complaint, Plaintiff appears to take exception to the fact that Hal Moore provided such funds in the form of a secured loan. (Amended Complaint, ¶¶ 14.)

intended fraud against him. (Amended Complaint, pg. 5:2-5, and ¶ 10.) Plaintiff further maintains that Defendants engaged in their fraudulent conduct as part of a single scheme to deprive him of his equity interest in Legacy Pointe and the Project. In doing so, Plaintiff alleges that Hal Moore breached his fiduciary duty to him as a member of Legacy Pointe, and that Melanie Moore and Peluso aided and abetted Hal Moore in violating such duties.

**B. <u>Summary of Argument</u>**

Under the terms of the Operating Agreement, any claims arising under the agreement are to be construed in accordance with and governed by the laws of the State of Tennessee." (*See*, Operating Agreement, pg. 10, § 7.02.) Under Tennessee law, a member of a limited liability company cannot assert a claim for breach of fiduciary duty against another member of the company. Consequently, because Hardisty cannot state a claim for breach of fiduciary duty, he cannot state a claim against the Moving Defendants for aiding and abetting the breach.

With respect to his fifth cause of action for violation of RICO, Plaintiff has not, and cannot, allege a "pattern of racketeering activity" because the conduct is not continuous. Rather, the conduct aimed at achieving the object of the RICO scheme has long since concluded and does not threaten future criminal conduct. Moreover, Hardisty pleads only a single scheme and injury toward a single victim, which is inadequate to allege either a pattern of racketeering activity or a threat of continued criminal activity. Accordingly, Plaintiff cannot state a claim for violation of RICO.

Therefore, for the reasons set forth below, this Court should dismiss the second and fifth causes of action against the Moving Defendants, without leave to amend.

///

///

///

///



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

## II. ARGUMENT

### A. Hardisty's Second Cause of Action For Aiding and Abetting Breach of Fiduciary Duty Should Be Dismissed Because Plaintiff Cannot Establish the Underlying Claim for Breach of Fiduciary Duty Under Tennessee Law

The Operating Agreement governing Legacy Pointe provides that the "Agreement shall be construed in accordance with and governed by the laws of the State of Tennessee." (*See*, Operating Agreement, pg. 10, § 7.02.) Consequently, as explained below, Hardisty's state law claims arising from the Operating Agreement are determined under the laws of Tennessee. Under Tennessee law, a member cannot assert a claim for breach of fiduciary duty against another member. Consequently, because Hardisty cannot state a claim for breach of fiduciary duty, he cannot state a claim against the Defendants for aiding and abetting the breach.

#### 1. The Laws of the State Of Tennessee Govern the Interpretation and Enforcement of the Operating Agreement

In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state. *Paracor Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996), *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1491-92 (9th Cir.1985). When the contract at issue contains a choice of law provision, California courts will apply the substantive law designated by the contract unless the transaction falls into either of two exceptions outlined by section 187 of the Restatement (Second) of Law, Conflict of Laws[3]: (1) the chosen state has no

---

[3] Section 187(2) of the Restatement provides, in pertinent part:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

substantial relationship to parties or other transactions, or (2) the application of law of the chosen state would be contrary to a fundamental policy of the forum state. *Nedloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 479 (1992).

**a. Substantial Relationship**

In determining whether the first exception of the choice of law analysis applies, the term "substantial relationship" has been held to be the equivalent to "reasonable relationship." *Gamer v. duPont Glore Forgan, Inc*., 65 Cal.App.3d 280, 290 (1976). Generally, the determination is based on several factors. *Nedloyd*, 3 Cal.4th at 466. The existence of a substantial relationship has been found, thereby negating the exception, where the jurisdiction designated by the parties has certain contacts with the transaction or the parties, such as the place where the contract was negotiated, the domicile of the parties, the place of incorporation of the parties or the principal place of business of the parties. *Nedloyd*, 3 Cal.4th at 467; *Gamer*, 65 Cal.App.3d 290; Rest.2d, Conflict of Laws, § 187, Comment f.[4]

In *Nedloyd*, a contract between commercial entities to finance and operate an international shipping business contained a choice-of-law provision, which required

---

not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties['] choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties."

[4] Comment (f) to the Restatement § 187 provides, in pertinent part:

"When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have a reasonable basis for their choice. This will be the case, for example, when this state is that where performance of one of the parties is to take place or where one of the parties is domiciled or has its principal place of business."



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

that the contract be "governed by" the law of Hong Kong. Although two of the parties were Hong Kong corporations, the remaining parties were citizens from several countries, including the United States. The California Supreme Court held that the choice of law provision requiring that the contract be governed by the law of Hong Kong was fully enforceable and applicable to plaintiff's claims. *Nedloyd*, 3 Cal.4th at 467. Citing comment f to section 187 of the Restatement (Second) of Law, Conflict of Laws, the court found a substantial relationship based on the mere fact that two of the parties were incorporated in Hong Kong. *Nedloyd*, 3 Cal.4th at 467.

As alleged in the Amended Complaint, the State of Tennessee has a reasonable, and therefore substantial, relationship to parties and transactions presented by this action. Legacy Pointe is a limited liability corporation that is organized pursuant to the laws of Tennessee. (Amended Complaint, ¶ 16; Operating Agreement, pg. 1.) The company has a place of business at 2901 Legacy Pointe Way, Knoxville, Tennessee. (Amended Complaint, ¶ 16.) Munson-Hardisty LLC, the general contractor and builder of the project, is a limited liability company, organized under the laws of Tennessee. (Amended Complaint, ¶ 29; *see also*, Payment Bond, attached as Exhibit A to the complaint filed by State Insulation, which is attached as Exhibit 9 to the Amended Complaint.) The "sole purpose" of the company was "to acquire, develop, construct, own, operate and sell an apartment project located in Knoxville, Knox County, Tennessee." (Operating Agreement, pg. 1, § 1.03.) Therefore, considering the breadth and extent of the relationship to the State of Tennessee, the first exception does not apply.

**b. Fundamental Public Policy**

If there is found to be a substantial relationship between the parties or the transaction and the chosen state, the court must then determine whether the chosen state's law is contrary to the fundamental policy of California. *Nedloyd*, 3 Cal.4th at 466. If there is no such conflict, the court shall enforce the parties' choice of law. *Id.*

If, however, there is a fundamental conflict with California law, the court must then determine whether California has a "materially greater interest than the chosen state in the determination of the particular issue." *Id.*, *citing*, Rest.2d, § 187(2).) If California has a materially greater interest than the chosen state, the choice of law shall not be enforced. *Id.*

In general, California does not have any public policy against a choice of law provision where it is otherwise appropriate. *Gamer*, 65 Cal.App.3d at 286. "Choice of law provisions are usually respected by the California Courts." *Id.* In fact, the implication of a California statute does not necessarily involve a fundamental public policy. Many statutes simply regulate conduct between private individuals, or impose requirements whose fulfillment does not implicate fundamental public policy concerns. *Foley v. Interactive Data Corp*, 47 Cal.3d 654, 669 (1988). Consequently, even in instances where a statute prohibits certain conduct or affords certain rights, fundamental public policy concerns are not implicated as to nullify the choice of law provision. *Ury v. Jewelers Corp*. 227 Cal.App.2d 11, 20 (1964)

In the present case, there exists no fundamental public policy requiring the application of California law to the extent of overriding the choice of law by the parties. Specifically, there exists no fundamental public policy that is contrary to the parties' rights and obligations arising under the Operating Agreement. Nor does the public policy of California mandate that members of a limited partnership owe a fiduciary duty to other members of the partnership. Consequently, the second exception does not apply.

### 2. Under Tennessee Law, There Exists No Fiduciary Duty Between or Among the Individual Members of a LLC

Under Tennessee law, individual members of a member-managed limited liability company ("LLC") do not owe a fiduciary duty to the other members. Tenn.Code Ann. § 48-240-102(a); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn.Ct.App. 2002). Rather, the fiduciary duty of a member-managed LLC is owed to the



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

company, not to the individual members. *McGee*, 106 S.W.3d at 64. Consequently, a member cannot sustain a claim for breach of fiduciary duties against another member and such a claim should be dismissed, as a matter of law. *Id.*

In *McGee*, a member of a LLC filed suit against the company and its members after his employment and membership were terminated. Plaintiff asserted claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, civil conspiracy, unfair competition, fraud and misrepresentation. *McGee*, 106 S.W.3d at 51. The trial court granted a motion for judgment on the pleadings as to all claims except the claim for breach of contract and breach of the covenant of good faith and fair dealing. As to the claim for breach of fiduciary duty against the individual defendants, the trial court held that the claim must fail as a matter of law because there exists no fiduciary duty between, or among, individual members of a LLC. On appeal, the Tennessee Court of Appeals affirmed. The appellate court found that the controlling Tennessee statute "defines the fiduciary duty of members of a member-managed LLC as one owing to the LLC, not to individual members." *McGee*, 106 S.W.3d at 64. Accordingly, the appellate court found that the trial court properly dismissed the claim against the individual members.

In the present action, Hardisty asserts a claim for breach of fiduciary duty against Defendant Hal Moore, as a member of Legacy Pointe. (Amended Complaint, ¶¶ 182, 188.) Under Tennessee law, however, Hardisty cannot assert the claim against Hal Moore because there exists no fiduciary duty between, or among, individual members of a Legacy Pointe.[5]

///

///

///

---

[5] Hal Moore has not yet been served with the Summons and Complaint in this action. Consequently, he has not joined in the present motion.



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

### 3. Hardisty Cannot State a Claim for Aiding and Abetting Against the Moving Defendants Because He Cannot State the Underlying Claim for Breach of Fiduciary Duty

In order to state a claim for aiding and abetting liability under both state and federal law, the plaintiff must plead three elements: (1) the existence of an independent primary wrong; (2) defendant's knowledge of that wrong; and (3) defendant's substantial assistance in the wrong. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991); *Cecil v. Hardin*, 575 S.W.2d 268, 271 (Tenn.1978), *superseded by statute on other grounds*; *Pasadena Unified School Dist. v. Pasadena Federation of Teachers*, 72 Cal.App.3d 100, 113 (1977), *disapproved on other grounds by County Sanitation Dist. v. Los Angeles County Employees Ass'n*, 42 Cal.3d 810, 812 (1985).

In this action, Plaintiff alleges that Defendants Melanie Moore and Peluso, among others, aided and abetted Hal Moore in the breach of his fiduciary duties to Plaintiff. (Amended Complaint, ¶¶ 206-211.) As discussed above, however, Mr. Hardisty cannot establish the existence of an independent primary wrong. Specifically, Plaintiff cannot establish breach of fiduciary duties by Hal Moore. Consequently, Plaintiff cannot establish a claim for aiding and abetting the breach by Defendants Melanie Moore and Peluso. Therefore, the second cause of action as to the Moving Defendants should be dismissed, without leave to amend.

## B. Hardisty's Fifth Cause of Action Should Be Dismissed Because He Has Not, and Cannot, State a Valid RICO Claim

The Racketeer Influenced and Corrupt Organizations Act ("RICO") imposes criminal and civil liability upon those who engage in certain "prohibited activities." 18 U.S.C. §§ 1961–1968; *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989). The Act renders "any person" civilly liable for: (i) using or investing income derived "from a pattern of racketeering activity"; (ii) acquiring an interest in or operating an "enterprise" engaged in interstate commerce; (iii) acquiring or

maintaining an interest in or control of such an enterprise "through a pattern of racketeering activity"; (iv) being employed by or associated with such an enterprise, or conducting or participating in the conduct of its affairs "through a pattern of racketeering activity"; or, (v) conspiring to engage in such conduct. *H.J. Inc.*, *supra*, 492 U.S. at 232-233, *quoting* 18 U.S.C. § 1962. RICO, however, was intended "to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Dumas v. Major League Baseball Props., Inc.*, 104 F.Supp.2d 1220 (S.D.Cal. 2000).

In order to state a valid RICO claim, the plaintiff must plead and prove: (i) conduct; (ii) of an enterprise; (iii) through a pattern; (iv) of racketeering activity, or "predicate acts"; and (v) causing injury to plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Living Designs, Inc. v. E.I. DuPont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005). In this action, Plaintiff has not, and cannot, allege a "pattern of racketeering activity" because the conduct is not continuous. Moreover, Hardisty pleads only a single scheme and injury to a single victim, which is inadequate to establish either a pattern of racketeering activity or a threat of continued criminal activity. Accordingly, the Court should dismiss the fifth cause of action for violation of RICO, without leave to amend.

### 1. **<u>Plaintiff's Civil RICO Claim Fails Because There Exists No Threat of Continuing Activity</u>**

To prevail on a civil RICO claim, a plaintiff must prove, among other things, a "pattern of criminal activity." 18 U.S.C. § 1962. At a minimum, a "pattern" requires that the predicate criminal acts be "related" and "continuous." *H.J. Inc.*, 492 U.S. at 239. A "pattern" does not exist absent a continued threat of criminal activity. *Id.* A single episode, while it may consist of several discrete events, does not constitute a pattern of racketeering activity. *Sedima, S.P.R.L.*, *supra*, 473 U.S. at 496, n. 14.

The Supreme Court has observed that, in regard to a RICO pattern, the term "continuity" escapes strict definition: "'continuity' is both a closed- and open-ended





GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

concept, referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*., 492 U.S. at 241. "Closed-ended" continuity is established by showing that related predicate acts occurred over a "substantial period of time." *Id.*, 492 U.S. at 242. Thus, predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. *Id.* As noted by the Ninth Circuit:

> "Continuity does not require a showing that the defendants engaged in more than one "scheme" or "criminal episode." [Citations omitted.]. **The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat of continuing activity**. [Emphasis added.]"

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987).

Consequently, the fact that racketeering activity may be related is not sufficient to establish the pattern element. Rather, to establish a pattern, "it must be shown that the predicates themselves amount to, or that they otherwise constitute a threat of continuing racketeering activity." *H.J., Inc.*, 492 U.S. at 240-241.

In this case, Plaintiff cannot establish a threat of continuing racketeering activity. As alleged in the Amended Complaint, the object of the RICO scheme was to acquire Plaintiff's interest in Legacy Pointe and the Project. (Amended Complaint, ¶ 267.) According to the Plaintiff, the Project has concluded and he has been deprived of his profit and interest in the Legacy Pointe and the Project. (Amended Complaint, ¶¶ 147, 150.) Indeed, as alleged in the complaint, Hal Moore purchased Plaintiff's 27 percent interest in the company in December 2008. (Amended Complaint, ¶ 305.) After Plaintiff "simply wanted 'out,'" Plaintiff transferred the additional 4.9 percent in the company held on his behalf by M-H (leaving Plaintiff with only .1% of Legacy Pointe) on February 28, 2009. (Amended Complaint, ¶

147.) The object of the alleged RICO enterprise having been obtained, there is no threat of continuing racketeering activity. Accordingly, the RICO claim must fail.

**2. Plaintiff's Fifth Cause of Action Should Be Dismissed Because Plaintiff Has Plead No More Than "One Scheme" With a "Single Victim"**

In order to establish the continuity requirement, the plaintiff is not required to show that the defendants engaged in more than one "scheme" or "criminal episode." *Medallion Television, supra*, 833 F.2d at 1363. However, the circumstances of the case must suggest that the predicate acts are indicative of a threat of continuing activity. *Id.* Consequently, in order to meet this requirement and establish a pattern of racketeering activity, a plaintiff must generally plead and prove more than one scheme with one victim. *Id., see also*, *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (granting summary judgment as to RICO claim for lack of "pattern" because the defendant's "collective conduct is in a sense a single episode having the singular purpose of impoverishing [plaintiff] and "there was but a single victim involved"); *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 468 (2d Cir. 1995) (finding that approximately one-year, "multi-faceted scheme" by a handful of participants' acts against a single victim was not sufficient to meet the continuity requirement).

In *Medallion Television*, plaintiff alleged that the defendant engaged in a series of fraudulent representations in order to induce plaintiff to enter a joint venture to acquire the rights and telecast a boxing match between Muhammad Ali and Trevor Berbick. Plaintiff alleged that the defendant made the misrepresentations, in part, to induce plaintiff to enter the joint venture and obtain letters of credit to cover the purchase price of the broadcast. Plaintiff maintained that the representations constituted mail fraud, wire fraud and interstate transportation of stolen property, which formed a "pattern of racketeering activity." *Medallion Television,* 833 F.2d at





GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

1361-1362. In holding that the plaintiff failed to establish the "pattern" requirement, the appellate court stated:

> The presence or absence of continuity among the acts is the distinguishing factor in our cases and is the factor that most influences our decision in this case. Continuity does not require a showing that the defendants engaged in more than one 'scheme' or 'criminal episode.' . . . The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat of continuing activity.
>
> . . .
>
> Here, that threat is absent. This case involved but a single alleged fraud with a single victim. All of SelecTV's assertions about the number of licensing agreements it had obtained were parts of its single effort to induce Medallion to form the joint venture in order to obtain the broadcast rights from the promoters. In essence, Medallion's allegations concern a single fraudulent inducement to enter a contract. Once the joint venture had acquired the broadcast rights, the fraud, if indeed it was a fraud, was complete. Medallion has not directed us to any evidence that SelecTV defrauded it in any other way as a part of this scheme or any other, nor is there anything in the nature of the transaction to suggest that SelecTV would have needed to commit any other fraudulent acts. Similarly, notwithstanding Medallion's unsupported assertions to the contrary, Medallion was the single victim of the alleged fraud."

*Medallion Television,* 833 F.2d at 1361-1362.

In *Edmondson*, a real estate broker and developer filed actions against a tenants' association and its members alleging, *inter alia*, violations of RICO. Plaintiffs claimed that defendants engaged in a scheme to prevent or delay the sale of an apartment building or secure a "ransom" for allowing the sale to proceed. *Edmondson*, 48 F.3d at 1263-1264. As to the RICO claim, the district court granted defendants' motion to dismiss and the Court of Appeals affirmed. Although the appellate court found that the plaintiffs alleged a sufficient number of predicate acts, it found that they failed to allege that the defendants' activity posed a future threat of continuing activity. Focusing on allegations of a single scheme and few victims, the court explained:

> "Plaintiffs here have alleged only a single scheme-to prevent or delay the sale of Alban Towers, or to secure a ransom for allowing the sale to proceed. Moreover, the scheme entails but a single discrete injury, the loss of the sale (or payment of the ransom), suffered by a small number of victims. . . . **We think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim**. [Emphasis added.]"

*Edmondson*, 48 F.3d at 1265.

In the present case, inasmuch as Plaintiff alleges a single scheme, a single injury and a single victim, he has failed to adequately allege a pattern of racketeering activity or a threat of continued criminal activity. As alleged in the Amended Complaint, Mr. Hardisty is the single victim of the fraudulent conduct. (Amended Complaint, pg. 2:2-3.) Again, as set forth above, Plaintiff alleges nothing more than a single scheme to defraud him from his interest in Legacy Pointe. Although he alleges a number of predicate acts, such acts are a part of a single scheme, which was to gain control of Plaintiff's interest in Legacy Pointe. (Complaint, ¶ 267.) Finally,

even though Plaintiff contends that he was induced to enter a number of unfavorable notes and transactions, such transactions were part of a single scheme that resulted in a single injury, the loss of his interest in Legacy Pointe. For instance, Plaintiff alleges that Melanie Moore fraudulently induced Plaintiff to sign a $750,000 promissory note, which permitted a lien against his homes and business properties. (Amended Complaint, ¶ 75-76.) According to Plaintiff, however, she and Defendant Hal Moore did so in order to gain "leverage against Plaintiff in connection with the Project." (Amended Complaint, ¶ 90.) Ultimately, Plaintiff alleges that Hal Moore, Melanie Moore, the Trust and State Insulation engaged in a single, finite scheme to gain interest and control of Legacy Pointe and the Project. (Amended Complaint, ¶ 267.) As in *Edmondson*, "the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiff[] to state a RICO claim." *Edmondson*, 48 F.3d at 1265. Accordingly, this Court should grant the present motion and dismiss Plaintiff's fifth cause of action, without leave to amend.

## III. CONCLUSION

Therefore, for the reasons set forth above, Melanie Moore and Peluso respectfully request that their motion to dismiss the second cause of action for aiding and abetting breach of fiduciary duties and fifth cause of action for violation of RICO be granted, without leave to amend.

DATED: October 12, 2011

Respectfully submitted,

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

By: s/ Gary E. Scalabrini
Gary E. Scalabrini
Attorneys for Defendants,
ELAINE K. MOORE and MARK PELUSO
E-mail: gscalabrini@gglts.com



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

# FEDERAL PROOF OF SERVICE

*Hardisty v. Moore et al.*
Case No. 3:11-cv-01591-AJB-BLM

I, Gary E. Scalabrini, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Gibbs, Giden, Locher, Turner & Senet LLP, 1880 Century Park East, 12th Floor, Los Angeles, California 90067-1621. I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

On October 13, 2011, I served the document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MELANIE MOORE AND MARK PELUSO'S MOTION TO DISMISS**

The documents were served by the following means:

☒ **BY COURT'S CM/ECF SYSTEM:** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed below:

Ali M.M. Mojdehi
Baker and Mackenzie
12544 High Bluff Drive
Third Floor
San Diego, CA 92130
Telephone: (858) 523-6200
Facsimile: (858) 259-8290
E-mail: Ali.Mojdehi@bakermckenzie.com

I declare that I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 13, 2011, at Los Angeles, California.

s/ Gary E. Scalabrini
Gary E. Scalabrini
E-mail: gscalabrini@gglts.com

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP