UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John T. Hardisty,<br><br>　　　　　　Plaintiff,<br>v.<br><br>Harold Maxine Moore, et al.,<br><br>　　　　　　Defendants. | Civil No. 11cv1591 AJB (BLM)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS**<br><br>[Doc. 10] |

Presently before the Court is a motion to dismiss the second and fifth causes of action of Plaintiff's First Amended Complaint ("FAC"), filed by two of the Defendants—Elaine Moore and Mark Peluso. (Doc. 10.) For the reasons set forth below, the Court **GRANTS** the motion.

**I.**

**BACKGROUND**

This action arises from Defendant Hal Moore's investment in a limited liability company known as Legacy Pointe, LLC. The "sole purpose" of the company was "to acquire, develop, construct, own, operate and sell an apartment project" located in Knoxville, Tennessee. (FAC, Exh. 3.) Hal Moore initially invested $1.5 million as a capital contribution in the company to obtain 50 percent interest in Legacy Pointe. He also invested millions more in the form of loans and additional capital contributions. (FAC ¶¶ 46, 54, 63, 60, Exh. 3.)

1       Plaintiff John Hardisty was a member and the Chief Manager of Legacy Pointe, as well as a member of Munson-Hardisty, LLC ("M-H"), the general contractor and builder of the Project. As such, he sought Hal Moore as an investor. (FAC ¶¶ 29, 43-54.) In exchange for waiving his builder's profit on the Project, Plaintiff was to receive "sweat equity" in the company. In particular, he initially received a 27 percent membership interest as the developer, and M-H received a 10 percent membership interest as the builder, 50 percent of which belonged to Plaintiff. (FAC ¶¶ 28-30.)

      Plaintiff alleges that Hal Moore, through fraud and coercion, divested him of his sweat equity in the Project and acquired almost all of the ownership interest in Legacy Pointe. He further alleges that Hal Moore and Melanie Moore tricked him into signing numerous documents, without reading them, which enabled Defendants to perpetrate their intended fraud. Finally, Plaintiff alleges that Defendants engaged in their fraudulent conduct as part of a single scheme to deprive him of his equity interest in Legacy Pointe and the Project. In doing so, Hal Moore allegedly breached his fiduciary duty to Plaintiff, and Melanie Moore and Mark Peluso allegedly aided and abetted in the violation.

      Plaintiff filed his Complaint on July 19, 2011, and shortly thereafter filed the FAC on August 1, 2011. (Doc. 3.) Defendants Elaine Moore and Mark Peluso filed the instant motion to dismiss on October 13, 2011. The Court held a hearing on the motion on December 23, 2011.

## II.

## STANDARD

      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings, and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

      Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). It is also improper for

the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1929. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

## III.
## DISCUSSION

Although the FAC alleges eleven causes of action, the instant motion seeks to dismiss only two, and only as to Defendants Melanie Moore and Mark Peluso (hereinafter "Defendants"):

- the second claim for aiding and abetting breach of fiduciary duty, and
- the fifth claim for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. 1961-1967 ("RICO").

**1. Aiding and Abetting Breach of Fiduciary Duty**

Defendants argue that Hardisty fails to state a claim for aiding and abetting breach of fiduciary duty because under Tennessee law, he cannot state the requisite underlying claim for breach of fiduciary duty.

The Legacy Pointe Operating Agreement contains a choice-of-law provision that states, "This Agreement shall be construed in accordance with and governed by the laws of the State of Tennessee." (FAC, Exh. 3, pg. 10 § 7.02.) Under Tennessee law, a member of a limited liability company cannot assert a claim for breach of fiduciary duty against another member of the company. *See* Tenn. Code Ann. 48-240-102(a); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). Rather, the fiduciary duty of a member-managed LLC is owed to the company, not to the individual members, and a claim for breach of fiduciary duty against individual defendants must fail as a matter of law. *Magee,* 106 S.W.3d at 64.

In order to state a claim for aiding and abetting liability under both state and federal law, the plaintiff must first plead the existence of an independent primary wrong. *See, e.g.*, *Levine v.*

*Diamantheuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir. 1991). Defendants therefore argue that because Plaintiff cannot allege the underlying breach under Tennessee law, the aiding and abetting claim necessarily fails as well.

In California, a choice-of-law provision is to be applied unless (1) the chosen state (Tennessee) has no substantial relationship to parties or other transactions, or (2) the application of law of the chosen state would be contrary to a fundamental policy of the forum state (California). *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 479 (1992). Here, Plaintiff does not demonstrate that either of those exceptions is met or otherwise challenge the choice-of-law provision. Instead, he claims he has alleged a fiduciary or confidential relationship under California common law, arising out of a special confidential relationship that existed between Plaintiff and Hal Moore. However, Plaintiff alleges only that Hal Moore was a "close friend and mentor." As Defendants assert, a personal friendship does not constitute a legally recognized fiduciary relationship in California, and indeed, Plaintiff does not cite to any California authority supporting that. Instead, the cases Plaintiff cites point to more traditionally accepted fiduciary relationships, such as those between husband and wife, principal and agent, or attorney and client. *See, e.g.*, *Vai v. Bank of America*, 56 Cal.2d 329, 338 (1961).

The primary issue here is the choice-of-law provision, but even absent that, the existence of a fiduciary relationship under California law would be questionable at best. Friendship alone does not suffice, and according to Defendants, Plaintiff is a sophisticated businessman who has acted as a general contractor on numerous multi-million dollar construction projects. As such, it is unclear why he would be helplessly relying on Hal Moore's experience.

At the hearing, Plaintiff's counsel brought to the Court's attention a new case from the Southern District of New York, *Ellington Credit Fund Ltd., et al. v. Select Portfolio Servicing, Inc. et al.*, No. 08 Civ. 2437, 2011 WL 6034310 (S.D.N.Y. Dec. 5, 2011), in which the court remarks in passing that the choice-of-law provision "is only designated . . . for construing the [agreement] and each certificate, and is silent regarding the common law tort and fiduciary duty claims at issue here." *Id.* at *5. However, the Court does not find this very brief analysis to be persuasive in this instance because (1) the case does not quote the actual language of the choice-of-law provision, making it difficult to compare; (2) the court decides to apply New York law in accordance with the choice-of-law provision, and (3) under the two-

pronged analysis set forth in *Nedlloyd*, this Court must look to **California's** policies, not case law emanating from New York.

Unlike *Ellington*, *Nedlloyd* appears directly on point. There, the California Supreme Court considered an agreement containing a nearly identical choice-of-law provision. *See Nedlloyd*, 3 Cal. 4th at 469 n.7 ("This agreement shall be governed by and construed in accordance with Hong Kong law . . . ."). The court concluded that the language was to be interpreted broadly so as to apply to all causes of action that may arise, specifically including a fiduciary duty claim. *Id.* at 470 ("[W]e hold a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates."). Therefore, the California Supreme Court has considered this identical issue and concluded that the choice-of-law provision extends to a breach of fiduciary duty claim, as here.

The Court finds that Plaintiff has failed to establish why the Operating Agreement and its choice-of-law provision should not govern the alleged conduct, which seems to arise entirely out of Legacy Pointe. Tennessee law therefore appears to govern these claims. Under Tennessee law, Plaintiff cannot state a claim against Hal Moore for breach of fiduciary duty and, consequently, cannot state a claim against Defendants for aiding and abetting the breach. Because this claim fails as a matter of law, the motion is granted *with prejudice* as to the second cause of action.

**2.      RICO**

Defendants next argue that Plaintiff's fifth cause of action fails to state a claim. In order to state a valid RICO claim, a plaintiff must plead:

1. conduct
2. of an enterprise
3. through a pattern
4. of racketeering activity, or "predicate acts"
5. causing injury to plaintiff's business or property

*See, e.g., Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A "pattern" does not exist absent a ***continued threat of criminal activity***. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239

(1989). A single episode, while it may consist of several discrete events, does not constitute a pattern of racketeering activity. *Sedima*, 473 U.S. at 496 n.14.

Defendants argue that Plaintiff has not, and cannot, allege a "pattern of racketeering activity" because the conduct is not continuous. Rather, the conduct aimed at achieving the object of the RICO scheme has long since concluded and does not threaten future criminal conduct. As alleged in the FAC, the object of the RICO scheme was to acquire Plaintiff's interest in Legacy Pointe and the Project. According to Plaintiff, the Project has concluded, and he has been deprived of his profit and interest in Legacy Pointe and the Project. (FAC ¶¶ 147, 150, 267.) The FAC does not allege a threat of continuing racketeering activity, since the alleged object of the scheme has been obtained.

Additionally, Plaintiff pleads only a single scheme and injury toward a single victim, which is inadequate to allege either a pattern of racketeering activity or a threat of continued criminal activity. *See Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1361-62 (9th Cir. 1987) (finding that the plaintiff failed to establish the pattern requirement when the "case involved but a single alleged fraud with a single victim"); *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (holding that the "combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiff to state a RICO claim.").

In response, Plaintiff claims that even though he is the only named Plaintiff, there are at least seven victims of Defendants' fraudulent scheme, including himself, the M-H entity, the co-owner of M-H, HUD, Wells Fargo (as lender), and Great American Insurance Company (which provided payment and performance bonds), not to mention Legacy Pointe itself. However, the FAC does not allege predicate acts directed toward these entities, or that they were injured by Defendants' predicated acts.

Plaintiff also claims he has met the "continuity" requirement, since the alleged conduct continues to the present—as Hal Moore filed foreclosure proceedings on Plaintiff's vacation home in March 2010, and proceedings are still ongoing. In addition, the FAC sets forth twelve separate predicate acts in furtherance of the scheme. Plaintiff cites to a Third Circuit case, holding that three years was sufficient to constitute "the type of long-term criminal conduct that RICO was designed to address." *Tabas v. Tabas*, 47 F.3d 1280, 1297 (3d Cir. 1995).

1       The Court finds that the alleged conduct does not rise to the "pattern" of activity required by RICO. Like *Edmondson*, the allegations at best amount to a single, finite scheme (not a continuous one) intended to deprive Plaintiff (and not other victims) of his profit. The Court therefore grants the motion to dismiss as to the fifth cause of action, ***with leave to amend***.

### IV.
### CONCLUSION

      For the reasons set forth above, the Court **GRANTS** the motion to dismiss as to Defendants Elaine Moore and Mark Peluso. The second cause of action is dismissed ***with prejudice***, and the fifth cause of action is dismissed ***with leave to amend***. Plaintiff has thirty (30) days to submit an amended Complaint correcting the deficiencies noted herein. Failure to do so will result in the Court's dismissal of the relevant claims.

IT IS SO ORDERED.

DATED: December 29, 2011

                                                _____
                                                Hon. Anthony J. Battaglia
                                                U.S. District Judge