Michael I. Wayne, Esq. (CSB # 169840)
mwayne@gglts.com
Gary E. Scalabrini, Esq. (CSB # 161902)
gscalabrini@gglts.com
GIBBS, GIDEN, LOCHER, TURNER & SENET LLP
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
(310) 552-3400
Fax (310) 552-0805

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN T. HARDISTY,<br><br>Plaintiff,<br><br>v.<br><br>HAROLD MAXINE MOORE; ELAINE K. MOORE (aka MELANIE K. MOORE); STATE INSULATION, LLC, an Arizona limited liability company; STATE INSULATION, LLC, a Nevada limited liability company; THE 1998 HAROLD M. MOORE REVOCABLE TRUST; and MARK PELUSO, an individual,<br><br>Defendants. | Case No. 3:11-cv-01591-AJB-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>**[Notice of Motion and Motion filed concurrently herewith]**<br><br>**[FRCP 12(b)(6)]**<br><br>Date: April 20, 2012<br>Time: 1:30 p.m.<br>Ctrm: 12 |

TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendants hereby file the following Memorandum of Points and Authorities in support of their Motion to Dismiss the First, Fourth, Fifth, Seventh and Ninth Causes of Action of the Second Amended Complaint filed by Plaintiff, John T. Hardisty.

///



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

A. Factual Allegations ..... 2

B. Summary of Argument ..... 3

II. ARGUMENT ..... 4

A. Plaintiff's First Cause of Action Is Barred by the Applicable Statutes of Limitations ..... 4

B. Hardisty's Fourth Cause of Action for Constructive Fraud Should Be Dismissed Because He Cannot Establish the Essential Element of a Fiduciary Relationship ..... 5

C. Hardisty's Fifth Cause of Action Should Be Dismissed Because He Has Not, and Cannot, State a Valid RICO Claim ..... 6

1. Plaintiff's Civil RICO Claim Fails Because There Exists No Threat of Continuing Activity ..... 7

2. Plaintiff's Fifth Cause of Action Should Be Dismissed Because Plaintiff Failed to Establish a Pattern of Criminal Activity Because He Has Plead No More Than "One Scheme" With Injury Toward a "Single Victim" ..... 9

3. The Additional Facts Alleged in the Second Amended Complaint Do Not Establish a "Pattern of Criminal Activity." ..... 12

D. Plaintiff's Seventh Cause of Action for Securities Fraud Is Barred by the Applicable Statutes of Limitations ..... 14

E. Plaintiff's Ninth Cause of Action for Abuse of Process Should Be Dismissed Because Plaintiff Pleads Nothing More Than the Filing of a Complaint, Which Is Insufficient to Establish the Claim and Is Privileged ..... 15

III. CONCLUSION ..... 16

## TABLE OF AUTHORITIES

Page

**CASES**

*Adams v. Superior Court*, 2 Cal.App.4th 521, 530–531 (1992) .... 15

*Barbara A. v. John G.*, 145 Cal.App.3d 369, 382-383 (1983) .... 5

*Crocker-Anglo Nat. Bank v. Kuchman*, 224 Cal.App.2d 490, 494 (1964) .... 5

*Drasin v. Jacoby & Meyers*, 150 Cal.App.3d 481, 485 (1984) .... 15

*Dumas v. Major League Baseball Props., Inc.*, 104 F.Supp.2d 1220 (S.D.Cal. 2000) .... 6

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) .... 9, 10, 11, 12

*Estate of Gump*, 1 Cal.App.4th 582, 601 (1991) .... 5

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83 Cal.App.4th 409, 416 (2000) .... 5

*GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 468 (2d Cir. 1995) .... 9

*H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989) .... passim

*Howard v. America Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) .... 13

*Living Designs, Inc. v. E.I. DuPont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005) .... 7

*Maglica v. Maglica*, 66 Cal.App.4th 442, 447 (1998) .... 5

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

## TABLE OF AUTHORITIES

Page

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*,
833 F.2d 1360, 1363 (9th Cir. 1987) ........ 8, 9, 10

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*,
42 Cal.3d 1157, 1168 (1986) ........ 15

*Reeves v. Hanlon*,
33 Cal.4th 1140, 1153 (2004) ........ 5

*Schlaifer Nance & Co. v. Estate of Warhol*,
119 F.3d 91, 97 (2d Cir.1997) ........ 13

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479, 496 (1985) ........ 7, 12

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529, 1535 (9th Cir. 1992) ........ 9

*Sime v. Malouf*,
95 Cal.App.2d 82, 98 (1949) ........ 5, 6

*Umansky v. Urquhart*,
84 Cal.App.3d 368 (1978) ........ 16

*Vai v. Bank of America*,
56 Cal.2d 329, 337 (1961) ........ 5

*Vild v. Visconsi*,
956 F.2d 560, 566-68 (6th Cir.1992) ........ 13

*Younan v. Equifax Inc.*,
111 Cal.App.3d 498, 516 n. 14 (1980) ........ 5

**STATUTES**

18 U.S.C. § 1962 ........ 7

Cal.Civ.Code § 47 ........ 16

Cal.Civ.Code § 47(2) ........ 16

Cal.Civ.Code §1573 ........ 5

## TABLE OF AUTHORITIES

Page

Cal.Corp.Code § 25401 ........................................ 14, 15

Cal.Corp.Code § 25501 ........................................ 14

Cal.Corp.Code § 25506(b) ........................................ 14

Cal.Corp.Code § 25506 ........................................ 14

Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO") ........................................ 1, 6

RICO ........................................ passim

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In the present action, Plaintiff, John T. Hardisty ("Plaintiff" or "Hardisty") filed a 97-page complaint (the "Amended Complaint") against Defendants, Harold Maxine Moore ("Hal Moore"), State Insulation, LLC, an Arizona limited liability company ("State Insulation – Arizona"), State Insulation, LLC, a Nevada limited liability company ("State Insulation – Nevada"), The 1998 Harold M. Moore Revocable Trust (the "Trust"), Elaine K. Moore, aka Melanie K. Moore ("Melanie Moore") and Mark Peluso ("Peluso") (collectively referred to as the "Defendants"). Plaintiff asserted ten claims against the Defendants, including the first cause of action against Hal Moore for breach of fiduciary duty, second cause of action against Melanie Moore, State Insulation, Peluso and the Trust for aiding and abetting breach of fiduciary duty, and fifth cause of action against Hal Moore, Melanie Moore, State Insulation and the Trust for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO").

On October 12, 2011, Defendants Melanie Moore and Peluso filed a motion to dismiss the second and fifth causes of action.[1] This Court granted the motion in its entirety. As to fifth cause of action for violation of RICO, the Court found:

> [T]he alleged conduct does not rise to the "pattern" of activity required by RICO. Like *Edmondson*, the allegations at best amount to a single, finite scheme (not a continuous one) intended to deprive Plaintiff (and not other victims) of his profit. The Court therefore grants the motion to dismiss as to the fifth cause of action, ***with leave***

[1] Defendants Hal Moore, State Insulation – Arizona, State Insulation – Nevada and the Trust did not file a responsive pleading at that time because they had not yet been served with a copy of the Amended Complaint.



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

*to amend*. [Emphasis in original.]

Court's Order, Docket No. 16, pg. 7:1-4.

On January 30, 2012, Plaintiff filed his Second Amended Complaint (the "SAC"). In the complaint, Plaintiff asserts eleven cause of action against the Defendants, including reasserting his claim for violation of RICO. As set forth below, Plaintiff has not, and cannot, allege his claims against the Defendants for constructive fraud, violation of RICO, security fraud and abuse of process. Accordingly, this Court should dismiss the fourth, fifth, seventh and tenth causes of actions as against the Defendants, with prejudice.

**A. Factual Allegations**

The present action arises from the investment of Defendant Hal Moore in a limited liability company known as Legacy Pointe, LLC ("Legacy Pointe" or the "Company"). The "sole purpose" of the Company was "to acquire, develop, construct, own, operate and sell an apartment project located in Knoxville, Knox County, Tennessee" (the "Project"). (*See*, Second Amended and Restated Operating Agreement of Legacy Pointe Apartments, LLC, "Operating Agreement," attached as part of Exhibit 3 to the SAC, pg. 1, § 1.03.) As acknowledged in the Second Amended Complaint, Hal Moore initially invested $1.5 million as a capital contribution in the company to obtain a 50% interest in Legacy Pointe. (SAC, ¶¶ 48, 56 and 65.) Hal Moore has also invested millions more in the form of loans and additional capital contributions. (SAC, ¶ 72, *see also*, Purchase and Sale Agreement, attached as part of Exhibit 3 to the SAC, pg. 1.)[2]

Plaintiff, Hardisty, was a member and the Chief Manager of Legacy Pointe. (Operating Agreement, pg. 2, § 3.02). Hardisty was also a member of Munson-

---

[2] Additionally, *as alleged in the Amended Complaint*, Hal Moore also loaned Plaintiff in excess of $1.1 million dollars in connection with unrelated litigation filed against Plaintiff by a former employee. In his complaint, Plaintiff appears to take exception to the fact that Hal Moore provided such funds in the form of a secured loan. (Amended Complaint, ¶ 16.)



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

Hardisty, LLC ("M-H"), the general contractor and builder of the Project. (SAC, ¶ 31.) As a member of Legacy Pointe, Plaintiff sought Hal Moore as an investor. (SAC, ¶¶ 45-56.) In contrast to Hal Moore, Plaintiff initially invested no funds in Legacy Pointe or the Project. Rather, in exchange for waiving his builder's profit on the Project, Plaintiff was to receive "sweat equity" in the company. (SAC, ¶¶ 30-32.) In particular, Plaintiff initially received a 27 percent membership interest as the developer and M-H received a 10 percent membership interest as the builder, 50 percent of which belonged to Plaintiff. (SAC, ¶ 32.)

In his Second Amended Complaint, Plaintiff alleges that Hal Moore, through fraud and coercion, divested him of his sweat equity in the Project, such that Hal Moore acquired almost all of the ownership interest in Legacy Pointe. (SAC, pg. 4:5-8.) Although Plaintiff acknowledges and alleges in his complaint that he is a sophisticated businessman who has acted as a general contractor on numerous multi-million dollar construction projects, he alleges that Hal Moore and Melanie Moore tricked him into signing numerous documents, without reading them, which enabled Defendants to perpetrate their intended fraud against him. (SAC, pg. 5:10-12, and ¶ 11.) Plaintiff further maintains that Defendants engaged in their fraudulent conduct as part of a single scheme to deprive him of his equity interest in Legacy Pointe and the Project.

### B. Summary of Argument

By its prior order, this Court dismissed Plaintiff's fifth cause of action for violation of RICO, with leave to amend. The Court found that Plaintiff failed to allege a "pattern of racketeering activity" because the alleged conduct is not continuous. The Court further found that Hardisty pled only a single scheme and injury toward a single victim, which is inadequate to allege either a pattern of racketeering activity or a threat of continued criminal conduct.

In his Second Amended Complaint, Plaintiff has failed to cure the deficiencies found in his fifth cause of action. Other than adding headings and pleading an



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

unrelated "scheme" that involves no predicate acts, Plaintiff has failed to plead any additional facts to support his claim. Accordingly, this Court should dismiss the fifth claim, without leave to amend.

The Court should also dismiss Plaintiff's fourth cause of action for constructive fraud because Mr. Hardisty has failed to allege the essential element of a fiduciary relationship between himself and Defendant Hal Moore. In fact, as this Court acknowledged in its prior order, Plaintiff cannot plead a fiduciary relationship existed simply "by virtue of [the] long standing and close friendship" between Messrs. Hardisty and Moore.

With respect to Plaintiff's first and seventh causes of action, the claims are barred by the applicable statute of limitations. Finally, as to the Ninth Cause of Action for abuse of process, Plaintiff pleads nothing more than the filing of a complaint, which is insufficient to establish the claim and is privileged.

Therefore, for the reasons set forth below, this Court should dismiss the First, Fourth, Fifth, Seventh and Ninth Causes of Action against the Defendants, without leave to amend.

## II. ARGUMENT

### A. Plaintiff's First Cause of Action Is Barred by the Applicable Statutes of Limitations

In his Second Amended Complaint, Plaintiff asserts, *for the first time*, a claim for breach of a specific promise for the debt of another. As alleged by Plaintiff, the claim is one for breach of an oral agreement. (SAC, ¶ 188.) Accordingly, the claim asserted by Plaintiff is governed by the two-year statute of limitations applicable to non-written contracts. Cal. Code Civ. Proc. § 339(1).

In the claim, Plaintiff alleges that Defendants breached an agreement to pay all costs associated with out of scope work (extras) not only by failing to pay such costs, but also by affirmatively causing Legacy Pointe and State Insulation to assert claims against Plaintiff. (SAC, ¶ 188.) Plaintiff further alleges that such claims were





GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

asserted, at the latest, when State Insulation filed a complaint against Plaintiff in October 2009. Because Plaintiff has not asserted the claim until filing the Second Amended Complaint in January 2012, Plaintiff has failed to assert the claim within the two-year limitations period set forth in section 339. Accordingly, the claim is barred by the statute of limitations.

### B. Hardisty's Fourth Cause of Action for Constructive Fraud Should Be Dismissed Because He Cannot Establish the Essential Element of a Fiduciary Relationship

Section 1573 of the California Civil Code creates a statutory cause of action for constructive fraud. The elements of a cause of action for constructive fraud are (1) a fiduciary relationship; (2) nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury (causation). *Younan v. Equifax Inc.*, 111 Cal.App.3d 498, 516 n. 14 (1980). Constructive fraud allows conduct insufficient to constitute actual fraud to be treated as such where the parties stand in a fiduciary relationship. *Estate of Gump*, 1 Cal.App.4th 582, 601 (1991). A fiduciary relationship is an essential element to establishing a claim for constructive fraud. *Crocker-Anglo Nat. Bank v. Kuchman*, 224 Cal.App.2d 490, 494 (1964).

Under California law, there are two kinds of fiduciary relationships - those imposed by law and those undertaken by agreement. *See, GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83 Cal.App.4th 409, 416 (2000), *disapproved on other grounds in Reeves v. Hanlon*, 33 Cal.4th 1140, 1153 (2004); *see also, Maglica v. Maglica*, 66 Cal.App.4th 442, 447 (1998). Fiduciary duties are imposed by law in certain technical, legal relationships, *Sime v. Malouf*, 95 Cal.App.2d 82, 98 (1949); husbands and wives, *Vai v. Bank of America*, 56 Cal.2d 329, 337 (1961); and, guardians and wards, trustees and beneficiaries, principals and agents, and attorneys and clients, *Barbara A. v. John G.*, 145 Cal.App.3d 369, 382-383 (1983). The court in *Barbara A.* termed this kind of fiduciary relationship, in which a fiduciary duty is imposed as a matter of law, a "legally recognized fiduciary



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

relationship." (*Id.*, 145 at p. 383.) A personal friendship, however, does not constitute a legally recognized fiduciary relationship.

In the present case, Plaintiff fails to allege any legally recognized fiduciary relationship. Rather, Plaintiff alleges that "Defendant Hal Moore had a confidential relationship with Plaintiff by virtue of their long standing and close relationship." (SAC, ¶ 248.) However, as stated above, a personal relationship is not a legally recognized fiduciary relationship. In fact, this Court has already determined in its prior order that friendship alone does not suffice as a fiduciary relationship. Court's Order, Docket No. 16, pg. 7:1-4. Accordingly, inasmuch as Plaintiff has failed to allege a fiduciary relationship between himself and the Defendants, the Court should dismiss the fourth cause of action.

### C. Hardisty's Fifth Cause of Action Should Be Dismissed Because He Has Not, and Cannot, State a Valid RICO Claim

The Racketeer Influenced and Corrupt Organizations Act ("RICO") imposes criminal and civil liability upon those who engage in certain "prohibited activities." 18 U.S.C. §§ 1961–1968; *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989). The Act renders "any person" civilly liable for: (i) using or investing income derived "from a pattern of racketeering activity"; (ii) acquiring an interest in or operating an "enterprise" engaged in interstate commerce; (iii) acquiring or maintaining an interest in or control of such an enterprise "through a pattern of racketeering activity"; (iv) being employed by or associated with such an enterprise, or conducting or participating in the conduct of its affairs "through a pattern of racketeering activity"; or, (v) conspiring to engage in such conduct. *H.J. Inc., supra*, 492 U.S. at 232-233, quoting 18 U.S.C. § 1962. RICO, however, was intended "to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Dumas v. Major League Baseball Props., Inc.*, 104 F.Supp.2d 1220 (S.D.Cal. 2000).

In order to state a valid RICO claim, the plaintiff must plead and prove: (i)



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

conduct; (ii) of an enterprise; (iii) through a pattern; (iv) of racketeering activity, or "predicate acts"; and (v) causing injury to plaintiff's business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Living Designs, Inc. v. E.I. DuPont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005). As in his Amended Complaint, Plaintiff has failed to allege a "pattern of racketeering activity" in his Second Amended Complaint because the conduct is not continuous. At best, Hardisty once again pleads only a single, finite scheme intended to deprive plaintiff of his profit, which is inadequate to establish either a pattern of racketeering activity or a threat of continued criminal conduct. Accordingly, the Court should dismiss the fifth cause of action for violation of RICO, without leave to amend.

### 1. **Plaintiff's Civil RICO Claim Fails Because There Exists No Threat of Continuing Activity**

To prevail on a civil RICO claim, a plaintiff must prove, among other things, a "pattern of criminal activity." 18 U.S.C. § 1962. At a minimum, a "pattern" requires that the predicate criminal acts be "related" and "continuous." *H.J. Inc.*, 492 U.S. at 239. A "pattern" does not exist absent a continued threat of criminal activity. *Id.* A single episode, while it may consist of several discrete events, does not constitute a pattern of racketeering activity. *Sedima, S.P.R.L., supra*, 473 U.S. at 496, n. 14.

The Supreme Court has observed that, in regard to a RICO pattern, the term "continuity" escapes strict definition: "'continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.*., 492 U.S. at 241. "Closed-ended" continuity is established by showing that related predicate acts occurred over a "substantial period of time." *Id.*, 492 U.S. at 242. Thus, predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. Id. As noted by the Ninth Circuit:

///

> Continuity does not require a showing that the defendants



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

> Continuity does not require a showing that the defendants engaged in more than one "scheme" or "criminal episode." [Citations omitted.]. **The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat of continuing activity**. [Emphasis added.]

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*, 833 F.2d 1360, 1363 (9th Cir. 1987).

Consequently, the fact that racketeering activity may be related is not sufficient to establish the pattern element. Rather, to establish a pattern, "it must be shown that the predicates themselves amount to, or that they otherwise constitute a threat of continuing racketeering activity." *H.J., Inc.*, 492 U.S. at 240-241.

With respect to Plaintiff's First Amended Complaint in this action, the Court previously held that the Plaintiff failed to allege a threat of continuing racketeering activity because the alleged object of the scheme has been obtained. Court's Order, Docket No. 16, pg. 6:8-9. In his Second Amended Complaint, Plaintiff once again fails to allege a threat of continuing racketeering activity. As alleged in both the First Amended Complaint and the Second Amended Complaint, the object of the RICO scheme was to acquire Plaintiff's interest in Legacy Pointe and the Project. According to the Plaintiff, however, the Project has concluded and he has been deprived of his profit and interest in the Legacy Pointe and the Project. (SAC, ¶¶ 149, 152.) Indeed, as alleged in the complaint, Hal Moore purchased Plaintiff's 27 percent interest in the company in December 2008. (SAC, ¶ 308.) After Plaintiff "simply wanted 'out,'" Plaintiff transferred the additional 4.9 percent in the company held on his behalf by M-H (leaving Plaintiff with only .1% of Legacy Pointe) on February 28, 2009. (SAC, ¶ 149.) The object of the alleged RICO enterprise having been obtained, there is no threat of continuing racketeering activity. Accordingly, the RICO claim must fail.

### 2. Plaintiff's Fifth Cause of Action Should Be Dismissed Because Plaintiff Failed to Establish a Pattern of Criminal Activity Because He Has Plead No More Than "One Scheme" With Injury Toward a "Single Victim"

In order to establish the continuity requirement, the plaintiff is not required to show that the defendants engaged in more than one "scheme" or "criminal episode." *Medallion Television, supra*, 833 F.2d at 1363. However, the circumstances of the case must suggest that the predicate acts are indicative of a threat of continuing activity. *Id.* Consequently, in order to meet this requirement and establish a pattern of racketeering activity, a plaintiff must generally plead and prove more than one scheme with one victim. *Id., see also, Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (granting summary judgment as to RICO claim for lack of "pattern" because the defendant's "collective conduct is in a sense a single episode having the singular purpose of impoverishing [plaintiff] and "there was but a single victim involved"); *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 468 (2d Cir. 1995) (finding that approximately one-year, "multi-faceted scheme" by a handful of participants' acts against a single victim was not sufficient to meet the continuity requirement).

In *Medallion Television*, plaintiff alleged that the defendant engaged in a series of fraudulent representations in order to induce plaintiff to enter a joint venture to acquire the rights and telecast a boxing match between Muhammad Ali and Trevor Berbick. Plaintiff alleged that the defendant made the misrepresentations, in part, to induce plaintiff to enter the joint venture and obtain letters of credit to cover the purchase price of the broadcast. Plaintiff maintained that the representations constituted mail fraud, wire fraud and interstate transportation of stolen property, which formed a "pattern of racketeering activity." *Medallion Television*, 833 F.2d at 1361-1362. In holding that the plaintiff failed to establish the "pattern" requirement,

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

the appellate court stated:

> The presence or absence of continuity among the acts is the distinguishing factor in our cases and is the factor that most influences our decision in this case. Continuity does not require a showing that the defendants engaged in more than one 'scheme' or 'criminal episode.' . . . The circumstances of the case, however, must suggest that the predicate acts are indicative of a threat of continuing activity.
>
> . . .
>
> Here, that threat is absent. This case involved but a single alleged fraud with a single victim. All of SelecTV's assertions about the number of licensing agreements it had obtained were parts of its single effort to induce Medallion to form the joint venture in order to obtain the broadcast rights from the promoters. In essence, Medallion's allegations concern a single fraudulent inducement to enter a contract. Once the joint venture had acquired the broadcast rights, the fraud, if indeed it was a fraud, was complete. Medallion has not directed us to any evidence that SelecTV defrauded it in any other way as a part of this scheme or any other, nor is there anything in the nature of the transaction to suggest that SelecTV would have needed to commit any other fraudulent acts. Similarly, notwithstanding Medallion's unsupported assertions to the contrary, Medallion was the single victim of the alleged fraud.

*Medallion Television*, 833 F.2d at 1361-1362.

///

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

In *Edmondson*, a real estate broker and developer filed actions against a tenants' association and its members alleging, *inter alia*, violations of RICO. Plaintiffs claimed that defendants engaged in a scheme to prevent or delay the sale of an apartment building or secure a "ransom" for allowing the sale to proceed. *Edmondson*, 48 F.3d at 1263-1264. As to the RICO claim, the district court granted defendants' motion to dismiss and the Court of Appeals affirmed. Although the appellate court found that the plaintiffs alleged a sufficient number of predicate acts, it found that they failed to allege that the defendants' activity posed a future threat of continuing activity. Focusing on allegations of a single scheme and few victims, the court explained:

> Plaintiffs here have alleged only a single scheme-to prevent or delay the sale of Alban Towers, or to secure a ransom for allowing the sale to proceed. Moreover, the scheme entails but a single discrete injury, the loss of the sale (or payment of the ransom), suffered by a small number of victims. . . . We think that the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiffs to state a RICO claim. [Emphasis added.]"

*Edmondson*, 48 F.3d at 1265.

With respect to Plaintiff's First Amended Complaint in this action, the Court previously held that the "alleged conduct does not rise to the 'pattern' of activity required by RICO. Like *Edmondson*, the allegations at best amount to a single, finite scheme (not a continuous one) intended to deprive Plaintiff (and not other victims) of his profit." Court's Order, Docket No. 16, pg. 7:1-4. As in the First Amended Complaint, Plaintiff once again alleges a single scheme, a single injury and a single victim, and therefore, he has failed to adequately allege a pattern of racketeering activity or a threat of continued criminal activity. Although Plaintiff alleges that the

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

conduct was directed at several entities, including HUD, Wells Fargo (as lender), M-H (as contractor) and Great American Insurance Company (as the bonding company), Mr. Hardisty is the single victim of the fraudulent conduct. (SAC, pg. 2:2-3.) As alleged by Plaintiff, the conduct directed toward each of these entities constitutes nothing more than a single scheme to defraud him from his interest in Legacy Pointe. Indeed, Plaintiff acknowledges in his Second Amended Complaint that the alleged conduct is "part of [defendants] general scheme to divest Plaintiff of his assets." (SAC, pg. 81:5.) Such allegations are not sufficient to establish a violation of RICO. *See, Sedima*, 473 U.S. at 496, n.14 (a single episode, while it may consist of several discrete events, does not constitute a pattern of racketeering activity.)

Finally, even though Plaintiff contends that he was induced to enter a number of unfavorable notes and transactions involving other entities, such transactions were part of a single scheme that resulted in a single injury, the loss of his interest in Legacy Pointe. For instance, Plaintiff alleges that Melanie Moore fraudulently induced Plaintiff to sign a $750,000 promissory note, which permitted a lien against his homes and business properties. (SAC, ¶¶ 77-78.) According to Plaintiff, however, she and Defendant Hal Moore did so in order to gain "leverage against Plaintiff in connection with the Project." (SAC, ¶ 92.) Ultimately, Plaintiff alleges that Hal Moore, Melanie Moore, the Trust and State Insulation engaged in a single, finite scheme to gain interest and control of Legacy Pointe and the Project. (SAC, pg. 81:5.) As in *Edmondson*, "the combination of these factors (single scheme, single injury, and few victims) makes it virtually impossible for plaintiff[] to state a RICO claim." *Edmondson*, 48 F.3d at 1265. Accordingly, this Court should grant the present motion and dismiss Plaintiff's fifth cause of action, without leave to amend.

### 3. **<u>The Additional Facts Alleged in the Second Amended Complaint Do Not Establish a "Pattern of Criminal Activity."</u>**

In order to establish a "pattern of criminal activity," plaintiff must show not

only that the predicate acts are continuous, but also that they are "related." *H.J. Inc.*, 492 U.S. at 239. "[T]he term 'pattern' itself requires the showing of a relationship between the predicates and of the threat of continuing activity." *Id.* Related conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. However, merely alleging the same participants is insufficient to establish the predicate acts are related. *Howard v. America Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000), *see also*, *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir.1997) (holding that predicate acts committed by the same participant were not related); *Vild v. Visconsi*, 956 F.2d 560, 566-68 (6th Cir.1992) (holding that acts by same defendants against plaintiff are unrelated to acts against third parties).

Except for an additional "scheme," against Western Insulation, Mr. Hardisty relies upon the same factual allegations to establish his RICO claim, which this Court previously determined was insufficient to allege the requisite pattern of criminal activity. Specifically, in an attempt to establish a pattern, Plaintiff now alleges that Hal and Melanie Moore engaged in a "scheme" against Western Insulation, whereby they invested in two insulation companies in breach of a non-compete agreement with Western. (SAC, ¶¶ 265-268.) These allegations do not cure the deficiencies in the Complaint for two reasons. (1) Plaintiff alleges no predicate acts with respect to the alleged "scheme" against Western; and (2) even if Plaintiff did allege that Hal and Melanie Moore engaged in criminal conduct with respect to Western (which they do not), Plaintiff fails to establish that the conduct is related to the predicate acts alleged with respect to Plaintiff. Other than participation by Hal and Melanie Moore, there is no relationship between the alleged breach of the non-compete agreement with Western and the alleged scheme to divest Plaintiff of his interest in Legacy Pointe. Merely alleging the same participants is insufficient to establish the predicate acts are related. *Howard*, 208 F.3d 741 at 749. Consequently,



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

since this alleged scheme against Western does nothing to establish a pattern of racketeering activity, Plaintiff once again fails to adequately allege violation of RICO.

**D. Plaintiff's Seventh Cause of Action for Securities Fraud Is Barred by the Applicable Statutes of Limitations**

In the Seventh Cause of Action, Plaintiff asserts a claim for securities fraud under section 25401 of the California Corporations Code. The claim, however, is barred by the limitations period set forth in the statute.

Section 25506 of the California Corporations Code provides, in pertinent part, that:

> [N]o action shall be maintained to enforce any liability created under Section 25500, 25501[3], or 25502 . . . unless brought before the expiration of five years after the act or transaction constituting the violation or the expiration of two years after the discovery by the plaintiff of the facts constituting the violation, **whichever shall first expire**.

Cal.Corp.Code § 25506(b) (Emphasis added).

In this case, Plaintiff alleges that Hal Moore purchased a 27 percent membership interest of Legacy Pointe from Plaintiff in December 2008. (SAC, ¶ 308.) According to Plaintiff, he sold this interest in the Company based on Mr. Moore's representation and agreement to pay him $380,000, which was to be paid in installments. (SAC, ¶ 317.) Prior to the sale, Plaintiff further alleges that Hal Moore represented that he would (i) personally pay for all out of scope extras incurred by the Company; and (ii) reimburse Plaintiff and MH for all expenses that they incurred

---

[3] Section 25501 provides that any person who violates section 25401 is liable to the person to the person who purchases a security from him or sells a security to him, who may sue for rescission or damages if certain conditions are met. Cal.Corp.Code § 25501.



GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

on the Company's behalf in connection with the Company. (SAC, ¶ 309.)

However, in his Second Amended Complaint, Plaintiff alleges that as of April 30, 2009, Mr. Moore refused to make the promised installment payments for the membership interest. (SAC, ¶¶ 144-145.) Hardisty also alleges that in May 2009, Melanie Moore informed Plaintiff that members of the Company would need to come up with an additional million dollars to complete construction and make interests payments on the HUD loan. (SAC ¶ 149.) Plaintiff further alleges that Hal Moore improperly presented a demand to MH's bonding company stating that the Company had had committed the funds to the Project, that MH had failed to pay its expenses on the Project and seeking compensation from the bonding company. (SAC, ¶ 146.) Mr. Hardisty, therefore, was aware no later than May 2009, of the facts constituting the alleged misrepresentation, which he asserts constitute a violation of section 25401. Plaintiff, however, filed his initial complaint in this matter on July 19, 2011, beyond the two-year limitations period. Accordingly, the Seventh Cause of Action should be dismissed because it is barred by the statute of limitations.

### E. <u>Plaintiff's Ninth Cause of Action for Abuse of Process Should Be Dismissed Because Plaintiff Pleads Nothing More Than the Filing of a Complaint, Which Is Insufficient to Establish the Claim and Is Privileged</u>

The two main elements of a cause of action for abuse of process are ulterior motive in using the process and use of the process in a wrongful manner. *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 1168 (1986). Merely obtaining or seeking process is not enough to establish the claim; there must be subsequent abuse, by a misuse of the judicial process for a purpose other than that which it was intended to serve. *Adams v. Superior Court*, 2 Cal.App.4th 521, 530–531 (1992). "The gist of the tort is the improper use of the process after it is issued. *Id.* For this reason, the mere filing of a complaint does not




GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

constitute an abuse of process. *Drasin v. Jacoby & Meyers*, 150 Cal.App.3d 481, 485 (1984). Moreover, in the context of an abuse of process proceeding, the filing of a complaint is privileged under Civil Code section 47(2). *Id., see also,, Umansky v. Urquhart*, 84 Cal.App.3d 368 (1978).

In his ninth cause of action for abuse of process, Plaintiff pleads only that Defendants Hal Moore, Melanie Moore and State Insulation filed a complaint against Plaintiff. He does not plead that the Defendants engaged in any subsequent action or misuse of the judicial process. As explained above, the mere filing of a complaint cannot establish a claim for abuse of process. Moreover, the filing of the complaint is privileged under section 47 of the Civil Code. Accordingly, this court should dismiss the ninth cause of action, without leave to amend.

## III. CONCLUSION

Therefore, for the reasons set forth above, Defendants respectfully request that the court grant the present Motion to Dismiss the First, Fourth, Fifth, Seventh and Ninth Causes of Action, without leave to amend.

DATED: February 21, 2012 Respectfully submitted,

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

By: s/ Gary E. Scalabrini
Gary E. Scalabrini
Attorneys for Defendants
E-mail: gscalabrini@gglts.com

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP

## SERVICE OF PROCESS- CERTIFICATE OF SERVICE

***John T. Hardisty v. Harold Maxine Moore, et al.,***
**Case No. 03:11-CV-01591-AJB-BLM**

I, Gary E. Scalabrini, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Gibbs, Giden, Locher, Turner & Senet LLP, 1880 Century Park East, 12th Floor, Los Angeles, California 90067-1621. On February 21, 2012, I served the document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** as follows:

☒ **BY ELECTRONIC CASE FILING:** Pursuant to the U.S. District Court, Southern District, Electronic Case Filing, I hereby certify that the above document(s) were uploaded to the CM/ECF Website at https://ecf.casd.uscourts.gov/cgi-bin/login.pl addressed to all parties appearing on the electronic service list for the above-entitled case. The service transmission was reported as complete and a copy of the confirmation page will be maintained in this office.

☒ **[Federal]** I declare that I am a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct

Executed on February 21, 2012, at Los Angeles, California.

s/ Gary E. Scalabrini

Gary E. Scalabrini, Esq.