UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John T. Hardisty<br><br>        Plaintiff,<br>v.<br><br>Harold Maxine Moore, et al.,<br><br>        Defendants. | Civil No. 11cv1591 AJB (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[Doc. 26] |

Presently before the Court is a motion to dismiss the first, fourth, fifth, seventh, and ninth[1] causes of action of Plaintiff's Second Amended Complaint ("SAC"), filed by Harold Maxine Moore ("Hal Moore"); State Insulation, LLC, an Arizona limited liability company ("State Insulation - Arizona"); State Insulation, LLC, a Nevada limited liability company ("State Insulation - Nevada"); the 1998 Harold M. Moore Revocable Trust (the "Trust"); and Elaine K. Moore, aka Melanie K. Moore ("Melanie Moore") (collectively referred to as the "Defendants"). (Doc. 26.) For the reasons set forth below, the Court **GRANTS** the motion as to the first and fifth causes of action and **DENIES** the motion as to the fourth, seventh, and ninth causes of action.

//
//

---

[1] Although the front page of the SAC lists abuse of process as the tenth cause of action, in the body of the SAC it is in fact the ninth cause of action.

# I.

# BACKGROUND

This action arises from Defendant Hal Moore's investment in a limited liability company known as Legacy Pointe, LLC. The "sole purpose" of the company was "to acquire, develop, construct, own, operate and sell an apartment project" located in Knoxville, Tennessee. (SAC, Exh. 3.) Hal Moore initially invested $1.5 million as a capital contribution in the company to obtain 50 percent interest in Legacy Pointe. He also invested millions more in the form of loans and additional capital contributions. (SAC ¶¶ 48, 56, 65, 72, Exh. 3.)

Plaintiff John Hardisty was a member and the Chief Manager of Legacy Pointe, as well as a member of Munson-Hardisty, LLC ("M-H"), the general contractor and builder of the Project. As such, he sought Hal Moore as an investor. (SAC ¶¶ 31, 45-56.) In exchange for waiving his builder's profit on the Project, Plaintiff was to receive "sweat equity" in the company. In particular, he initially received a 27 percent membership interest as the developer, and M-H received a 10 percent membership interest as the builder, 50 percent of which belonged to Plaintiff. (SAC ¶¶ 30-32.)

Plaintiff alleges that Hal Moore, through fraud and coercion, divested him of his sweat equity in the Project and acquired almost all of the ownership interest in Legacy Pointe. He further alleges that Hal Moore and Melanie Moore tricked him into signing numerous documents, without reading them, which enabled Defendants to perpetrate their intended fraud. Finally, Plaintiff alleges that Defendants engaged in their fraudulent conduct as part of a single scheme to deprive him of his equity interest in Legacy Pointe and the Project. In doing so, Hal Moore allegedly breached his fiduciary duty to Plaintiff.

Plaintiff filed his Complaint on July 19, 2011, and shortly thereafter filed the FAC on August 1, 2011. (Doc. 3.) Defendants Elaine Moore and Mark Peluso filed a motion to dismiss the second and fifth causes of action on October 13, 2011. The Court held a hearing on the motion on December 23, 2011, and granted the motion to dismiss. The second cause of action was dismissed with prejudice, and the fifth cause of action was dismissed with leave to amend. (Doc. 16.)

Plaintiff filed the SAC against all Defendants on January 30, 2012. (Doc. 23.) The first cause of action was changed into a breach of specific promise to answer for the debt of another, and the second cause of action was changed to aiding and abetting intentional torts. The instant motion to dismiss the

first, fourth, fifth, seventh, and ninth causes of action of Plaintiff's SAC was filed on February 21, 2012. (Doc. 26.) An opposition and reply were filed on March 10, 2012 and March 23, 2012, respectively. (Docs. 28 and 30.) All documents were considered in the issuance of this Order.

## II.
## STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings, and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1941. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

## III.
## DISCUSSION

Although the SAC alleges ten causes of action, the instant motion seeks to dismiss only five:

- the first claim for breach of specific promise to answer for the debt of another,
- the fourth claim for constructive fraud,

- the fifth claim for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. 1961-1967 ("RICO"),
- the seventh claim for material representation in the purchase or sale of a security, and
- the ninth claim for abuse of process.

**1.    Breach of Specific Promise to Answer for the Debt of Another**

Plaintiff alleges that Defendants breached an agreement to pay all costs associated with out of scope work not only by failing to pay such costs, but also by affirmatively causing Legacy Point and State Insulation to assert claims against Plaintiff. (SAC ¶ 188.) Defendants argue that this claim is barred by the two-year statute of limitations applicable to non-written contracts under Cal. Code Civ. Proc. § 339(1).

Plaintiff responds that the claim relates back to the filing of the initial complaint on July 19, 2011. (Doc. 28 at 22.) "[A]n amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different legal theory or a new cause of action." *Pointe San Diego Residential Community v. Procopio, Cory, Hargreaves & Savitch, LLP*, 195 Cal. App. 4th 265, 277 (2011) (citations omitted). In light of the purpose of the statute of limitations to afford defendants the opportunity to prepare their defense, "[i]n determining whether the amended complaint alleges facts that are sufficiently similar to those alleged in the original complaint, the critical inquiry is whether the defendant had adequate notice of the claim based on the original pleading." *Id*.

Here, the SAC is based on the same facts as the original complaint. The original complaint alleged that Defendant Hal Moore expressly promised to personally pay for the out of scope labor and materials and failed to do so. (Doc. 1 at 36-38.) While the original complaint was more than sufficient to put Defendants on notice of the allegations affording them the opportunity to prepare their defenses, Plaintiff was put on notice in December 2008 that the promise would be breached. (SAC ¶¶ 109-110.) The initial complaint, however, was not filed until more than two years later, on July 19, 2011. Consequently, even if the initial complaint was sufficient to provide notice to the Defendants of the claim, it was not filed within two years of the accrual of the cause of action. In other words, regardless of whether the claim relates back to the initial complaint, it is barred by the applicable statute of

limitations. The motion to dismiss is therefore **GRANTED** as to the first cause of action, ***with leave to amend*** to plead tolling.

**2.      Constructive Fraud**

Defendants argue that Plaintiff fails to establish the essential element of a fiduciary relationship required for constructive fraud because Plaintiff merely alleges a confidential relationship based on a long standing and close relationship.  (Doc. 26-1 at 10-11.) Defendants rely on the Court's prior finding that Plaintiff failed to state the requisite underlying claim for breach of fiduciary duty required for aiding and abetting.  (Doc. No. 26-1 at 11: 7-8.) Plaintiff responds that contrary to Defendants' contentions, a claim for constructive fraud pursuant to Cal. Civ. Code § 1573 does not require a fiduciary relationship. Rather, "[c]onstructive fraud also applies to nonfiduciary 'confidential relationships.'" *See Tyler v. Children's Home Society*, 29 Cal. App. 4th 511, 549 (1994).

Here, the Court finds that Plaintiff has adequately alleged the existence of a confidential relationship with Defendant Hal Moore.  Plaintiff has stated facts relating to his trust and confidence in Mr. Moore based in large part on their longstanding friendship and business history. Mr. Moore also had access to Plaintiff's confidential personal financial information and position at M-H. (SAC ¶¶ 12-17; 248-55.) As in *Tyler*, 29 Cal. App. 4th at 549, Mr. Moore "gained the confidence" of Plaintiff and "purported to act to advise with [Plaintiff's] interest in mind." Further, in assuming control of M-H, Mr. Moore obtained control of Plaintiff's property, placing him in a superior position.  In such a relationship, "the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert influence over the dependent party."  *Gibson v. Gov't Employees Ins. Co.,* 162 Cal. App. 3d 441, 445 (1984). Finally, the SAC alleges facts that demonstrate the presence of a joint venture between Plaintiff and Mr. Moore. (SAC ¶¶ 45-82.)

The Court finds that the alleged conduct does rise to a confidential relationship necessary for a constructive fraud claim.  The Court therefore **DENIES** the motion to dismiss the fourth cause of action.

**3.      RICO**

Defendants argue that Plaintiff's fifth cause of action fails to state a claim. In order to state a valid RICO claim, a plaintiff must plead:

      1.      conduct

    2.  of an enterprise

    3.  through a pattern

    4.  of racketeering activity, or "predicate acts"

    5.  causing injury to plaintiff's business or property

*See, e.g., Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A "pattern" does not exist absent a **continued threat of criminal activity**. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). A single episode, while it may consist of several discrete events, does not constitute a pattern of racketeering activity. *Sedima*, 473 U.S. at 496 n.14.

  This Court previously held that Plaintiff had not sufficiently alleged a "pattern of racketeering activity" because the conduct is not continuous and does not threaten future criminal conduct. (Doc. No. 16 at 6:3-4.) In the SAC, Plaintiff once again fails to allege a threat of continuing racketeering activity. As alleged in the both the First and Second Amended Complaints, the object of the alleged RICO scheme was to acquire Plaintiff's interest in Legacy Pointe. That project has been concluded, and Plaintiff deprived of his profit and interest in Legacy Pointe. (SAC ¶¶ 149, 152.) The object of the alleged RICO enterprise having been obtained, there is no threat of continuing racketeering activity. Accordingly, the RICO claim must fail.

  Although Plaintiff alleges that the conduct was directed at several entities, including HUD, Wells Fargo (as lender), M-H (as contractor) and Great American Insurance Company (as the bonding company), Plaintiff is the single victim of the fraudulent conduct. The conduct directed toward each of these entities constitutes nothing more than a single scheme to defraud him from his interest in Legacy Pointe. Such allegations are not sufficient to establish a violation of RICO. *See Sedima,* 473 U.S. at 496, n.14.

  In order to establish a "pattern of criminal activity," Plaintiff also must show that the predicate acts are both continuous and "related." *H.J. Inc.*, 492 U.S. at 239. Related conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *Id* at 240. However, merely alleging the same participants is insufficient to establish the predicate acts are related. *Howard v. America Online Inc.,* 208 F.3d 741, 749 (9th Cir. 2000).

Except for an additional "scheme" against Western Insulation, Plaintiff relies upon the same factual allegations to establish his RICO claim as in his First Amended Complaint. In an attempt to establish a new pattern, Plaintiff alleges that Hal and Melanie Moore engaged in a "scheme" against Western Insulation, whereby they invested in two insulation companies in breach of a non-compete agreement with Western. (SAC ¶¶ 265-268.) These allegations do not cure the deficiencies in the Complaint because (1) Plaintiff alleges no predicate acts with respect to the alleged "scheme" against Western; and (2) even if Plaintiff did allege that Hal and Melanie Moore engaged in criminal conduct with respect to Western, Plaintiff fails to establish that the conduct is related to the predicate acts alleged with respect to the Plaintiff. Other than participation by Defendants, there is no relationship between the alleged breach of the non-compete agreement with Western and the alleged scheme to divest Plaintiff of his interest in Legacy Pointe. Merely alleging the same participants is insufficient to establish the predicate acts are related. *Howard,* 208 F.3d at 749. Consequently, since this alleged scheme against Western does nothing to establish a pattern of racketeering activity, Plaintiff once again fails to adequately allege violation of RICO.

As before, the Court finds that the alleged conduct does not rise to the "pattern" of activity required by RICO. The allegations at best amount to a single, finite scheme (not a continuous one) intended to deprive Plaintiff (and not other victims) of his profit. Because Plaintiff failed to cure the deficiencies noted in its prior order, the Court grants the motion to dismiss the fifth cause of action ***with prejudice***.

### 4. Securities Fraud

Defendants argue that Plaintiff's claim for securities fraud under California Corporations Code Section 25401 is barred by Section 25506, which sets forth the expiration of a claim two years after the plaintiff discovers the facts constituting the violation. Cal. Corp. Code § 25506(b) (West 2006). The statute of limitations provided under Section 25506 is subject to the inquiry notice rule. *Deveny v. Entropin, Inc.,* 13 Cal. App. 4th 408, 423 (2006). Therefore, the statute of limitations is not triggered until a plaintiff is aware or should be aware that he has been defrauded. *Id.* at 428.

Here, Plaintiff alleges in the SAC that as of April 30, 2009, Defendant Moore failed to make promised installment payments for the membership interest. (SAC ¶¶ 144-145.) Additionally, Plaintiff

alleges that Defendant Melanie Moore informed Plaintiff that members of the Company would need to come up with an additional million dollars to complete construction and make interest payments on the HUD loan. (SAC ¶ 149.) Finally, Plaintiff alleges that Defendant Hal Moore improperly presented a demand to M-H's bonding company stating that the Company had committed the funds to the Project, that M-H had failed to pay its expenses on the Project, and seeking compensation from the bonding company. (SAC ¶ 146.) Accordingly, Defendants contend that Plaintiff was aware no later than May 2009 of the facts constituting the alleged misrepresentation. Since Plaintiff filed the initial complaint in this matter on July 19, 2011, this would fall outside the two year statute of limitations.

However, on its face, the SAC does not state that Plaintiff became aware of the Defendants' fraudulent conduct relating to the sale of Plaintiff's membership interest. To the contrary, it alleges that Plaintiff did not realize the fraud until at least August 2009 when he was informed by Hal Moore that only after the closing of the take out financing on the Project did Plaintiff realize that Moore would renege on all of his promises and that Plaintiff had been defrauded. (SAC ¶ 158.) The SAC merely states that the letter of credit at First Pacific Bank was due to expire on April 30, 2009, not that Plaintiff was aware he was defrauded at that time. (SAC ¶ 144.) Moreover, the question of when Plaintiff reasonably should have known of the Defendants' fraud in connection with the membership is generally a question of fact for the jury. As such, Court **DENIES** the motion to dismiss the seventh cause of action.

### 5. Abuse of Process

Defendants argue that Plaintiff merely supports his abuse of process claim with the filing of a complaint and by stating the filing is privileged under Section 47 of the Civil Code. Abuse of process contemplates some overt act done in addition to the initiating of the suit; thus, the mere filing or maintenance of a lawsuit, even for an improper purpose, is not a proper basis for an abuse of process action. *Meidinger v. Koniag.,* 31 P.3d 77 (Alaska 2001). However, if the suit is brought not to recover on the cause of action stated in the complaint, but to accomplish a purpose for which the process was not designed, there is an abuse of process. *Harmon v. Berry,* 776 F.2d 259 (11th Cir. 1985); *Spellens v. Spellens,* 49 Cal. 2d 210 (1957). Generally, an abuse of process claim lies where process is used to obtain "an unjustifiable collateral advantage." *Younger v. Solomon,* 38 Cal. App. 3d 289, 297 (1974).

The use of civil litigation as a weapon to damage another's business may give rise to a cause of action for abuse of process. *Leigh Furniture and Carpet Co. V. Isom,* 657 P.2d 293 (Utah 1982).

Here, Plaintiff seems to suggest that Defendants filed the State Insulation Complaint knowing it to be frivolous for the ulterior purpose of triggering Plaintiff's indemnity obligation to Great American and thereby causing default on the Moore Complaint for Declaratory Relief and coercing the surrender of assets by Plaintiff that Defendants were by no means entitled to. (SAC ¶ 343.) It is plausible that Defendants instituted suits with an ulterior motive and wrongfully used the process to coerce an unjustifiable collateral advantage. Thus, it appears that there is an issue as to whether the State Insulation Complaint filing was a "mere" filing or to be used as a threat of litigation to extort valuable assets from Plaintiff. *Id.* Under the *Twombly* standard, the pleading contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. 554 at 570 (2007). As such, the Court **DENIES** the motion to dismiss the ninth cause of action.

### IV.
### CONCLUSION

For the reasons set forth above, the Court **GRANTS** the motion to dismiss as to the first and fifth causes of action and **DENIES** the motion to dismiss as to the fourth, seventh, and ninth causes of action. The fifth cause of action is dismissed *with prejudice*, and the first cause of action is dismissed *with leave to amend*. Plaintiff has thirty (30) days from the date of this Order to submit an amended Complaint correcting the deficiencies noted herein. Failure to do so will result in the Court's dismissal of the relevant claims.

IT IS SO ORDERED.

DATED: May 2, 2012

Hon. Anthony J. Battaglia
U.S. District Judge