William B. Federman, Esq. (*admitted pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Phone: 405.235.1560
Fax: 405.239.2112
wbf@federmanlaw.com

Ali M.M. Mojdehi, Esq. (CA SBN 123846)
Janet D. Gertz, Esq. (CA SBN 231172)
**COOLEY LLP**
4401 Eastgate Mall
San Diego, California 92121-1909
Phone: 858.550.6055
Fax: 858.550.6420
amojdehi@cooley.com
jgertz@cooley.com

Attorneys for Plaintiff John T. Hardisty

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN T. HARDISTY,<br><br>Plaintiff,<br><br>v.<br><br>HAROLD MAXINE MOORE, ELAINE K. MOORE (aka Melanie K. Moore), STATE INSULATION, LLC, a Arizona limited liability company, STATE INSULATION, LLC, a Nevada limited liability company, THE 1998 HAROLD M. MOORE REVOCABLE TRUST, and MARK PELUSO,<br><br>Defendants. | Case No. 3:11-CV-01591-AJB-BLM<br><br>Assigned to Hon. Anthony J. Battaglia<br><br>**RESPONSE IN OBJECTION TO DEFENDANTS' MOTION TO DISMISS AND STRIKE PORTIONS OF THE THIRD AMENDED COMPLAINT**<br><br>Date: October 12, 2012<br>Time: 1:30 PM<br>Courtroom: 12 |

/ Plaintiff John T. Hardisty ("Plaintiff" or "Hardisty") hereby files his Response in Objection to Defendants' Motion to Dismiss and Strike Portions of the Third Amended

Complaint (the "Motion"). Specifically, Defendants have moved to dismiss the first and tenth causes of action asserted in Plaintiff's Third Amended Complaint. For the reasons that follow, Defendants' Motion should be denied in its entirety and the case should be allowed to proceed to discovery and a determination on the merits. In support of this response, Plaintiff shows the Court as follows:

**INTRODUCTION**

Plaintiff's Third Amended Complaint details the facts of a massive and systematic financial fraud that was perpetrated by the Defendants against Plaintiff during the course of the construction of an apartment project. Defendant Harold Maxine ("Hal") Moore was one of four participants in a business venture, Legacy Pointe, LLC ("Legacy Pointe"), a Tennessee limited liability company that held title to real property and otherwise entered into financing covenants with the Department of Housing and Urban Development ("HUD") and the HUD lender relating to the construction of a HUD financed project located in Knoxville, Tennessee. Defendant Hal Moore, the longtime trusted friend and mentor of Hardisty, became an investor in Legacy Pointe, purchasing a 50% interest in the LLC and taking a role as a passive investor. Unbeknownst to Hardisty and the other members of Legacy Pointe, Defendant Hal Moore would soon embroil them in his serial fraudulent activities to the detriment of Legacy Pointe and their personal financial interests.

As set forth in the Third Amended Complaint, Defendant Hal Moore committed numerous fraudulent acts in pursuit of his goal, including, *inter alia*: (1) tricking Plaintiff into executing notes containing undisclosed dragnet clauses that placed liens on Plaintiff's personal residences and business properties; (2) causing the Legacy Pointe project to far exceed the defined project scope and budget; (3) continuously promising to pay for the added expense of the

project himself while attempting to shift the liability for them to Plaintiff; (4) purchasing the excess unpaid sub-contractor claims of approximately $2.2 million, which were caused by Defendant Hal Moore, through a shill entity; and (5) asserting claims to collect the $2.2 million against a service bond secured by Plaintiff with Plaintiff's personal real property.

Because of Defendant Hal Moore's fraud which was materially assisted by Melanie Moore and Mark Peluso, Plaintiff Hardisty has lost his equity interest in the Legacy Pointe Project, his businesses have been ruined, and his access to capital has been destroyed.

On May 2, 2012, this Court entered an order granting in part and denying in part Defendants' Motion to Dismiss Plaintiff's first, fourth, fifth, seventh, and ninth causes of action in his Second Amended Complaint. This Court granted Plaintiff leave to amend, which Plaintiff did on June 1, 2012, addressing issues of tolling and adding a cause of action for federal securities fraud based on facts already pled by Plaintiff in his prior complaints. Defendants now seek to dismiss Plaintiff's claims for Breach of Specific Promise to Answer for the Debt of Another and Securities Fraud pursuant to 15 U.S.C. § 78J(B).

## ARGUMENT AND AUTHORITIES

### I. Standard of Review

In order to withstand a motion to dismiss, a complaint "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, ___ U.S. , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The complaint need not state detailed factual allegations, but must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed. 929 (2007). A complaint does not suffice if it merely sets forth "naked assertions devoid of further factual enhancements." *Iqbal*, 129 S.Ct. at 1949. There can be no serious



761785 v1/SD

question that the extensive factual recitations in Plaintiff's Third Amended Complaint satisfy this pleading standard and the Defendants' Motion should be denied.

## II. Plaintiff's Cause of Action for Breach of Specific Promise was Timely Filed

Plaintiff's first cause of action concerns a series of promises made by Defendant Hal Moore that had the intent and result of making Plaintiff rely to his detriment. Defendant's motion erroneously frames this cause of action as dependent on the application of equitable tolling. Motion 4:12-6:14. In reality, Plaintiff's cause of action accrued, at the earliest, in August 2009, so Defendants should be estopped from benefitting from his false promises.

First of all, the Defendants mistakenly assume that the statute of limitations period applicable to contract actions would apply to the first cause of action. To the contrary, the action is rooted in fraud. Thus, under California law, the three-year statute of limitations applicable to fraud actions governs. The California Code of Civil Procedure § 338(d) establishes a 3-year period (after discovery of the facts) for an "action for relief on the ground of fraud or mistake." This language is comprehensive, and the statute, with its favorable accrual rule, is accordingly applied to <u>*any*</u> form of action, for any kind of relief. "In other words, if fraud or mistake is the basis of the legal injury (the "ground" of the action), the section applies regardless of whether the complaint seeks legal or equitable relief *or pleads a cause of action in tort or contract*." 3 Witkin Cal. Proc. Actions § 653 (emphasis added); *see also Lightner Mining Co. v. Lane*, 161 Cal. 689, 702 (1911); *Ponti v. Farrell*, 194 Cal.App.2d 676(1961) (action for money had and received based on fraudulent representations).

For example, In *Agair v. Shaeffer*, 232 Cal.App.2d 513(1965), defendants, employees of plaintiff, wrote several substantial unauthorized checks without his knowledge. The action to recover the money was brought within 3 years after discovery of the facts, but more than 2 years

after the checks were drawn and defendants' employment was terminated. The defendants contended that the action was for breach of their oral contract of employment. But the substance of the wrong was violation of the confidential relationship by misappropriation of property. The court held that "[t]here is a significant distinction between a situation of suing for monies due under an oral contract, as contrasted with an attempt to recover funds paid by mistake or obtained through fraud: one is based purely upon an obligation arising out of agreement; the other, out of mistake or by reason of one or more of the multifarious forms that fraud may assume." Here, as in *Shaeffer*, the ground of the action is fraud and mistake. The wrong arose in respect to the Defendants' violation of the confidential relationship with Plaintiff, who was induced to continue to expend funds on the behalf of Legacy Pointe, because of their false representations to make payment. Here, Plaintiff was led to believe by the Defendants' false assurances and promises that the Defendants would assume the responsibility for payment of the debts being in incurred by Plaintiff on Legacy Point's behalf. Such was just another "multifarious form[ ] that fraud may assume."

But even assuming that the Defendants were correct in their theory that the statute of limitations for a contract action would apply, the claims asserted in the first cause of action would still be timely. In California, a cause of action generally accrues when the last fact necessary for the cause of action occurs. *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296, 146 Cal. Rptr. 271, 274 (Ct. App. 1978). Contract actions generally accrue when the contract is repudiated by the defendant. *Parker v. Walker*, 5 Cal. App. 4th 1173, 1190, 6 Cal. Rptr. 2d 908, 916 (1992). In California, a claimant has two years to enforce an oral contract for a claim for promissory estoppel. Cal. Code. Civ. P. § 339; *Jamison v. Roth*, B206927, 2009 WL 1039820 (Cal. Ct. App. Apr. 20, 2009).

The facts alleged in the Third Amended Complaint are sufficient to demonstrate that Plaintiff's first cause of action was timely filed. Plaintiff's Third Amended Complaint states that Defendant Hal Moore agreed to personally pay the cost of any additional labor and materials for Legacy Pointe which Defendant Hal Moore had caused the project to incur. Plaintiff's Third Amended Complaint ("TAC") 43:13-21. In January 2009 Plaintiff was in a precarious financial position as a result of Defendant Hal Moore's fraud. TAC 50:9-10. While in this position, Plaintiff was once again fraudulently assured that he would not be liable for expenses incurred in the Legacy Pointe project if he signed an "Incentive Agreement" transferring his interest in the LLC. TAC 48:14-52:14. In August 2009, Defendant Hal Moore repudiated his promises to pay for the expenses, informing Plaintiff that he "wasn't getting a dime." TAC 65:23-67:2. The fact that Defendant threatened to repudiate the agreement and used Plaintiff's precarious financial position as leverage did not cause Plaintiff's cause of action to accrue. *Accepting Plaintiff's factual allegations as true*, the Third Amended Complaint alleges Plaintiff was continually assured that Defendant would cover the extra expenses of Legacy Pointe, and in October 2009, Defendant finally and definitely breached his promise by filing a claim for the extra expenses against the bonding company. TAC 67:12-26. Therefore, Plaintiff's cause of action did not accrue until, at the very earliest, October 2009 and is within the two-year statute of limitations.

Contrary to Defendants' assertions in their Motion, Plaintiff is not arguing late discovery. Plaintiff's cause of action and damages clearly did not accrue until Defendant Hal Moore actually breached his promise to pay for the extra costs he had caused Legacy Pointe to incur. The fact that Defendant Hal Moore threatened to breach his promise is irrelevant as is the fact that Defendant Hal Moore used the threatened breach as leverage to force Defendant to give up his interest in Legacy Pointe. In fact, even affirmatively orally repudiating an agreement does

not necessarily make a cause of action for breach to accrue. A cause of action does not accrue before the time of the ***actual*** breach. *Spear v. California State Auto. Assn.*, 2 Cal. 4th 1035, 1042, 831 P.2d 821 (1992); *Trustees of Capital Wholesale Electric etc. Fund v. Shearson Lehman Bros., Inc.* 221 Cal.App. 3d 617, 627, fn. 4 (1990); *Niles v. Louis H. Rapoport & Sons*, 53 Cal.App.2d 644, 651 (1942); *see also* 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 375, p. 402. There can be no actual breach of an agreement until the time allotted for performance has passed. *Taylor v. Johnston*, 15 Cal.3d 130, 137 (1975). It was not until Defendant Hal Moore actually breached his promise by filing a claim against the bonding company that Plaintiff's cause of action accrued. This filing did not occur until October 23, 2009. TAC 6713-19.

California law ***does allow, but does not require,*** a plaintiff to bring a claim for anticipatory breach when a defendant expressly or by implication repudiates an agreement. *Gold Min. & Water Co. v. Swinerton*, 23 Cal.2d 19, 29 (1943). The rationale for this rule is that a promisor agrees not only to perform under an agreement but also to not repudiate their promise. *Romano v. Rockwell Internat., Inc.*, 14 Cal. 4th 479, 489 (1996). The plaintiff may then treat the repudiation as a breach and immediately seek damages, thereby terminating the agreement between the parties, ***or*** the plaintiff may wait until the time for performance arrives and exercise his remedies for actual breach if such a breach occurs. *Central Valley General Hosp. v. Smith*, 162 Cal.App.4th 501, 514 (2008) (quoting *Taylor v. Johnston*, 15 Cal.3d 130, 137-38 (1975)). Plaintiff Hardisty clearly chose the latter, deciding to wait until the time for performance arrived based upon Defendants' continued fraudulent promises.

Despite the fact that Plaintiff's first cause of action did not accrue until at the earliest October 2009, Plaintiff is also protected by the doctrine of equitable tolling. In order to invoke

equitable tolling, the Plaintiff must "plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence to uncover the facts." *Hinton v. Pacific Enterprises*, 5 F.3d 391, 395 (9th Cir. 1993), *cert. denied*, 114 S.Ct. 1833 (1994).

Plaintiff clearly alleges that Defendant Hal Moore's promise to pay for the extra expenses he caused Legacy Pointe to incur were actively and intentionally concealed by Defendants until August 2009. TAC 43:13-21; 46:13-47:7; 47:22-48:2; 48:25-49:2; 50:3-8; 53:6-10, 15-21; 53:22-54-4. Defendant Hal Moore attempted to conceal the truth from Plaintiff through his continued promises of payment, his representations to HUD, and his purchase of the claims from various sub-contractors. *Id.* Defendant Hal Moore took each of these steps in an effort to commit fraud against Plaintiff, HUD, and the bonding company, and in doing so, hid the truth about his intentions from everybody. Plaintiff could do no more to discover the truth than he did. As alleged in Plaintiff's Third Amended Complaint, Plaintiff spoke directly to Defendant Hal Moore and his co-conspirators on several occasions regarding payment of the sub-contractors and extra expenses incurred by Legacy Pointe at Defendant Hal Moore's direction. *Id.* Defendants continued to deceive Plaintiff up until August 2009, and did not actually breach their promise until October 2009. At no time was Plaintiff negligent in his attempts to remain abreast of what was happening with Legacy Pointe, and these circumstances were clearly out of his control. Aside from forcing Defendants to reveal their scheme to Plaintiff at gunpoint, it is difficult to see what more Defendants expect Plaintiff to have done. Clearly, there existed circumstances beyond Plaintiff's control that prevented Plaintiff from timely filing. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045-56 (9th Cir. 2011).

### III. The Membership Interests of Legacy Pointe were Securities within the Meaning of Federal Securities Laws

Defendants argue that Plaintiff's tenth cause of action for federal securities fraud should be dismissed because the interest in Legacy Pointe was not a security under federal securities law. Motion 6:17-17:3. Defendants' motion to dismiss should be denied because interests in Legacy Pointe are securities under both state and federal law. In addition, because of the complex factual considerations which must be construed in favor of Plaintiff at this stage of the litigation, dismissal of this cause of action would be inappropriate.

The term "security" is a broad and ever-evolving concept in federal law. Whether LLC membership interests are securities depends upon the application of "investment contract" analysis. "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person [1] invests his money [2] in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W. J. Howey Co.*, 328 U.S. 293, 298-99 (1946) (The investment contract definition "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits."). This is a highly flexible standard where "form [is] disregarded for substance and emphasis [is] placed upon economic reality." *Id.*

In this analysis, the focus is largely upon the management characteristics of a particular LLC. The operating agreement of an LLC is not controlling to determine if its interest are securities; rather, the circumstances or facts surrounding the actual management of the company and the expectations of the company are controlling. *Id.* An interest in an LLC is the sort of instrument that requires "case-by-case analysis" into the "economic realities" of the underlying transaction. *U.S. v. Leonard*, 529 F.3d 83 (2d Cir. 2008).

The fact that a member of the LLC has involvement in the operation of the business is not enough to dismiss allegations that interests in the LLC are securities. *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 755 (11th Cir. 2007) ("the focus is on the ***dependency*** of the investor in the entrepreneurial or managerial skill of the promoter or other party."). Courts evaluating whether or not interests in an LLC are securities or not focus on two factual elements: (1) the language of the controlling membership agreement; and (2) the actual ability of the member(s) to control the ongoing acts of the LLC in question. *Burnett v. Rowzee*, 2007 WL 2809768, *4 (CD Cal. 2007) (district court found that an operating agreement met the first prong of the *Williamson* test because it delegated power to the manager to control the LLC and the focus of the court's inquiry should be on the dependency of the investor on the controlling party); *Hocking v. Dubois*, 885 F.2d 1449, 1455 (9th Cir. 1989) (holding that the actions to be evaluated in determining control or involvement in the LLC are those that are significant and impact the failure or success of the enterprise). Generally, an operating agreement among members that delegates control over ordinary business decisions to certain "managing members," who also are vested with the sole power to bind the LLC and do all other things necessary to carry on the business and affairs of the LLC, creates a relationship and set of investment risks little different from a limited partnership and thus carries the indicia of an investment contract within the definition of a security. 1-2 Federal Securities Act of 1933 § 2.01 (Matthew Bender, 2012).

In summary, the determination of whether interests in Legacy Pointe were securities boils down to how this Court applies the *Howey* test to the extensive facts pled in Plaintiff's Third Amended Complaint. *See generally, Id.* at 1459-62. Defendants' Motion claims that the facts in question cannot overcome the third prong of the *Howey* test, whether or not there was an

expectation of profits produced by the efforts of others. Motion at 8:27-9:11. This is simply not true.

The third prong of the *Howey* test includes an evaluation of the practical as well as legal ability of the plaintiff to control the actions of the LLC. *Hocking*, 885 F.2d at 1460 ("other cases show that the question of an investor's control over his investment is decided in terms of practical as well as legal ability to control."); *Gordon v. Terry*, 684 F.2d 736, 742 (11th Cir. 1982); *Williamson v. Tucker*, 645 F.2d 404, 424-25 (5th Cir. 1981) (stating that where the investor is a joint venturer, he must establish that he is dependent on the promoter or manager to the point that he cannot exercise meaningful partnership or venture powers. In addition, the court must evaluate other facts that might give rise to dependence on the manager or promoter so that exercise of control is precluded). In other words, in order to determine if Plaintiff's membership interest in Legacy Pointe was a security, this Court must evaluate the economic reality of the present facts to determine if Plaintiff was able to exercise meaningful control of Legacy Pointe. *Hocking*, 885 F.2d at 1461; *McConnell v. Frank Howard Allen & Co.*, 574 F.Supp. 781 (N.D.Cal. 1983).

Under the present facts, at the time of the transactions at issue, Plaintiff was clearly unable to control the activities of Legacy Pointe. Defendant Hal Moore, by his fraudulent acts and with the aid of the other Defendants, had put Plaintiff under so much personal financial pressure, that he effectively extorted Plaintiff into giving up his personal interest in Legacy Pointe. Further, Plaintiff's Third Amended Complaint explicitly pleads that Defendant Hal Moore controlled Legacy Pointe in every detail to the exclusion of the other members of the LLC. TAC 39:8-47:7. In fact, it was Defendant Hal Moore's ability to control Legacy Pointe and Munson Hardisty, Plaintiff's construction business that was given control of the construction

of the apartments, which caused Legacy Pointe to incur the extra costs that were later used to fraudulently force Plaintiff to turn over his interest in Legacy Pointe to Defendant Hal Moore. *Id*. at 49:24-52:14. By May 2008 at the latest, Defendant Hal Moore was in complete control of Legacy Pointe and the entire project. *Id.* at 40:10-28. Defendant Hal Moore was able to control Legacy Pointe and incur these extra costs despite the vehement protests of the other members of the LLC because of his dominant financial position and the financial pressure he could, and did, exert. *Id*. at 44:1-10. Clearly, pursuant to the Operating Agreement, Legacy Pointe was a *manager*-managed LLC with all the attributes of a limited partnership. Furthermore, as is alleged in the Third Amended Complaint, at the time of the various transactions for which the securities fraud is alleged, Defendant Hal Moore had officially assumed the role of manager of the LLC pursuant to an amendment to the Operating Agreement and was, *per se*, in complete control of its day-to-day operations and decisions.

The economic reality of the situation was that Defendant Hal Moore was in complete control of Legacy Pointe at all relevant times according to the well pled facts in Plaintiff's Third Amended Complaint, and Plaintiff and the other members of the LLC were unable to challenge Defendant Hal Moore's position at any point. Plaintiff's ownership interest in Legacy Pointe satisfies the third prong of the *Howey* test and was clearly a security under federal law as well as California state law at the time of the fraudulent transaction.

**IV. The Court Should Allow Plaintiff to Plead the Tenth Cause of Action at This Time**

The pleading stage of this litigation is not a fencing competition or boxing match in which Plaintiff and Defendants are attempting to outpoint each other. The facts alleged in Plaintiff's Third Amended Complaint describe a scenario in which a successful man's life was systematically destroyed through the fraudulent activity of Defendants. Keeping that in mind,

this Court does have broad discretion to limit leave to amend a complaint. However, the circumstances and facts of this case should compel the Court to allow Plaintiff's claim for federal securities fraud, especially since it is a claim that involves facts previously pled by Plaintiff in his Original Complaint.

As a general matter, leaves to amend should be "freely give[n]…when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has stated that this rule is applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). This liberal standard is a byproduct of notice pleading, which calls for a flexible approach to the crafting of pleadings: "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 181-82 (1962) (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). Therefore, absent any bad faith or undue delay of the amending party, a plaintiff should be given an opportunity to assert a new claim through amendment. *See id.* at 182.

The case for allowing amendment is especially strong when the claim is based on the same facts contained in previous pleadings and when the litigation is in its early stages. Generally, it is improper to amend a complaint at a late stage that adds new claims that greatly alter the nature of the litigation. *Rose,* 893 F.2d at 1079. That is not the case here. Defendants have been put on notice of the facts underlying Plaintiff's claims since Plaintiff filed his Original Complaint. The tenth cause of action for securities fraud is based on misrepresentations made by Defendants in connection with Plaintiff's sale of his interest in Legacy Pointe. TAC 101:315-105:15. Defendants have been on notice of these allegations since the inception of this lawsuit; therefore, they have not suffered the hardship of mounting a new defense at the eleventh hour.

Although this Court's order provided Plaintiff with leave to amend on Plaintiff's first cause of action, and the Court has discretion to require a separate leave to amend to add new claims, doing so in this case would be unduly burdensome and a waste of resources. Given that Plaintiff's tenth cause of action is based on the same facts that have always existed in this litigation, Plaintiff should have the opportunity to plead the claim at this time.

### V. Plaintiff Has No Objection to Allegations Pertaining to Violations of RICO Being Stricken

In compliance with this Court's order of May 2, 2012, Plaintiff, in filing his Third Amended Complaint, removed his cause of action alleging violations of RICO. In doing so, counsel for Plaintiff inadvertently left a reference to Defendants' violations of RICO in alleging his ninth cause of action for Conspiracy against all Defendants. Plaintiff has no objection to this reference being stricken.

## CONCLUSION

In light of the foregoing, Plaintiff John T. Hardisty respectfully asserts that he has stated claims for Breach of a Specific Promise to Answer for the Debt of Another under Cal. Civ. Code § 2794(4) and for Securities Fraud under 15 U.S.C. § 78J(B) that are more than sufficient to survive a 12(b)(6) motion. Plaintiff requests that the Motion to Dismiss be denied in its entirety.

Dated: July 18, 2012

**FEDERMAN & SHERWOOD**

By: /s/ William B. Federman__________

William B. Federman
*Pro Hac Vice*
10205 North Pennsylvania
Oklahoma City, Oklahoma 73120
Telephone: 405.235.1560
Facsimile: 405.239.2112
wbf@federmanlaw.com

Ali M.M. Mojdehi, Esq. (CA SBN 123846)
Janet D. Gertz, Esq. (CA SBN 231172)
**COOLEY LLP**
4401 Eastgate Mall
San Diego, California 92121-1909
Phone: 858.550.6055
Fax: 858.550.6420
amojdehi@cooley.com
jgertz@cooley.com

**CERTIFICATE OF SERVICE**

I, Janet D. Gertz, declare:

On July 18, 2012, I served the above pleading using the court's CM/ECF system pursuant to Local Rule. The above pleadings were electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the person's listed below:

Gary Edward Scalabrini
Gibbs Giden Locher Turner & Senet LLP
1880 Century Park East
12th Floor
Los Angeles, California 90067-1621
Telephone: 310.552.3400
Facsimile: 310.552.0805
gscalabrini@gglts.com

Executed on July 18, 2012.

/s/ Janet D. Gertz____________
Janet D. Gertz
jgertz@cooley.com