Michael I. Wayne, Esq. (CSB # 169840)
mwayne@gglts.com
Gary E. Scalabrini, Esq. (CSB # 161902)
gscalabrini@gglts.com
GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
(310) 552-3400
Fax (310) 552-0805

Attorneys for Defendants,
HAROLD MAXINE MOORE,
ELAINE K. MOORE, *et al.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN T. HARDISTY,<br>Plaintiff,<br>v.<br>HAROLD MAXINE MOORE; ELAINE K. MOORE (aka MELANIE K. MOORE); STATE INSULATION, LLC, an Arizona limited liability company; STATE INSULATION, LLC, a Nevada limited liability company; THE 1998 HAROLD M. MOORE REVOCABLE TRUST; and MARK PELUSO, an individual,<br>Defendants.<br>______<br>Related Counter-Claims. | Case No. 3:11-cv-01591-AJB-BLM<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: January 23, 2014<br>Time: 2:00 p.m.<br>Ctrm.: 3B |

TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Defendants hereby file the following Memorandum of Points and Authorities in support of their Motion for Summary Judgment; or in the alternative, Motion for Partial Summary Judgment.



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

# TABLE OF CONTENTS

Page


I. INTRODUCTION ........ 2

A. Factual Background ........ 3

B. Procedural History ........ 6

II. ARGUMENT ........ 6

A. Legal Standard ........ 6

B. The Third Cause of Action for Fraud Must Be Dismissed Because Plaintiff Cannot Establish The Essential Elements an Actionable Misrepresentation or Justifiable Reliance ........ 7

1. The Plaintiff Cannot Establish That The Statements Constitute A Misrepresentation Upon Which A Claim Of Fraud Can Be Based ........ 8

a. Representations Relating to the Promissory Notes and Trust Deeds ........ 9

b. Contributions Made by Hal Moore ........ 10

c. Representations to Pay Out-of-Scope Extras ........ 11

d. Purchase and Sale Agreement of Hardisty's Remaining Interest in Legacy Pointe ........ 12

2. The Plaintiff Cannot Establish The Essential Element of Justifiable Reliance ........ 12

C. The Fourth Cause of Action for Constructive Fraud Must Be Dismissed Because Cannot Establish the Essential Elements of Nondisclosure, Reliance and a Confidential Relationship ........ 16

D. The Fifth Cause of Action for Quite Title Must Be Dismissed Because Defendants Have a Valid Interest in the Property ........ 17

E. The Sixth Cause of Action for Securities Fraud Must Be Dismissed Because Plaintiff Cannot Establish a Misrepresentation in the Sale or Purchase of a Security ........ 18

F. The Seventh Cause of Action for Conversion Must Be Dismissed Because Plaintiff Consented to the Transfer of his Interest ........ 19

G. The Eighth Cause of Action for Abuse of Process Should Be

## TABLE OF CONTENTS

Page

Dismissed Because Because Plaintiff Cannot Establish Anything More Than the Filing of a Complaint, Which Is Insufficient to Establish the Claim and Is Privileged ........ 20

H. The Ninth Cause of Action for Conspiracy Should Be Dismissed Because Plaintiff Has Failed to Establish the Underlying Torts ........ 22

I. The Second Cause of Action for Aiding and Abetting Should Be Dismissed Because Plaintiff Has Failed to Establish the Primary Wrong........ 22

III. CONCLUSION ........ 23

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

## TABLE OF AUTHORITIES

Page

CASES


*Adams v. Superior Court*, 2 Cal.App.4th 521 (1992) ........ 20, 21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........ 6, 7

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* 7 Cal.4th 503, 510–511 (1994) ........ 22

*Atari Corp. v. Ernst & Whinney*, 981 F.2d 1025 (9th Cir. 1992) ........ 12, 13, 14

*Barbara A. v. John G.*, 145 Cal.App.3d 369 (1983) ........ 16

*Borba v. Thomas*, 70 Cal.App.3d 144 (1977) ........ 8

*Brookwood v. Bank of America*, 45 Cal.App.4th 1667 (1996) ........ 13

*Brown v. Wells Fargo Bank, N.A.*, 168 Cal.App.4th 938 (2008) ........ 13, 15

*by County Sanitation Dist. v. Los Angeles County Employees Ass'n*, 42 Cal.3d 810 (1985) ........ 22

*Caesar Electronics Inc. v. Andrews*, 905 F.2d 287 (9th Cir.1990) ........ 7

*Cameron v. Cameron*, 88 Cal.App.2d 585 (1948) ........ 13

*Celotex Corp. v. Catrett*, 477 US 317 (1986) ........ 6, 7

*Cobbs v. Cobbs*, 53 Cal.App.2d 780 (1943) ........ 8, 10, 15

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

# TABLE OF AUTHORITIES

Page

*Desert Outdoor Advertising v. Superior Court*,
196 Cal.App.4th 866 (2011) .......... 13

*Drasin v. Jacoby & Meyers*,
150 Cal.App.3d 481 (1984) .......... 21

*Elkind v. Woodward*,
152 Cal.App.2d 170 (1957) .......... 13, 14

*Engalla v. Permanente Medical Group, Inc.*,
15 Cal.4th 951 (1991) .......... 7

*Farrington v. A. Teichert & Son*,
59 Cal.App.2d 468 (1943) .......... 19

*French v. Smith Booth Usher Co.*,
56 Cal.App.2d 23 (1942) .......... 19

*GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*,
83 Cal.App.4th 409 (2000) .......... 16

*Guido v. Koopman*,
1 Cal.App.4th 837 (1991) .......... 13

*Levine v. Diamanthuset, Inc.*,
950 F.2d 1478 (9th Cir.1991) .......... 22

*Los Angeles Federal Credit Union v. Madatyan*,
209 Cal.App.4th 1383 (2012) .......... 19

*Maglica v. Maglica*,
66 Cal.App.4th 442 (1998) .......... 16

*MTC Electronic Technologies Co., Ltd. v. Leung*,
876 F.Supp. 1143 (C.D.Cal. 1995) .......... 18

*Odorizzi v. Bloomfield School Dist.*,
246 Cal.App.2d 123 (1966) .......... 16, 17

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

## TABLE OF AUTHORITIES

Page

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157 (1986) ........ 20

*Pasadena Unified School Dist. v. Pasadena Federation of Teachers*, 72 Cal.App.3d 100 (1977) ........ 22

*Reeves v. Hanlon*, 33 Cal.4th 1140 (2004) ........ 16

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979 (2004) ........ 7

*Roland v. Hubenka*, 12 Cal.App.3d 215 (1970) ........ 13

*Sime v. Malouf*, 95 Cal.App.2d 82 (1949) ........ 16

*Southern Calif. Gas Co. v. City of Santa Ana*, 336 F3d 885 888 (9th Cir. 2003) ........ 7

*State Insulation LLC v. Great American Insurance Company*, Case No. 176324-1 ........ 21

*Umansky v. Urquhart*, 84 Cal.App.3d 368 (1978) ........ 21

*Vai v. Bank of America*, 56 Cal.2d 329 (1961) ........ 16

*Watson v. Commonwealth Ins. Co.*, 8 Cal.2d 61 (1937) ........ 19

*Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324 (1986) ........ 12

*Younan v. Equifax Inc.*, 111 Cal.App.3d 498 (1980) ........ 16

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

# TABLE OF AUTHORITIES

Page

*Zeh v. Alameda County Hotel Corp.*
122 Cal.App. 366 (1932) ........ 8

STATUTES

Cal. Civ. Code § 1573 ........ 16

Cal. Civil Code § 47(2) ........ 21

Cal. Civ. Proc. Code § 761.020 ........ 18

Cal. Corp. Code § 25401 ........ 6, 18

Racketeering Influenced and Corrupt Organizations Act,
18 U.S.C. §§ 1961–1968 ("RICO") ........ 6

OTHER AUTHORITIES

Fed.R.Civ.Proc. 56(c) ........ 6

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In the present action, Plaintiff, John T. Hardisty ("Plaintiff" or "Hardisty") filed his 97-page Third Amended Complaint (the "Complaint") against Defendants, Harold Maxine Moore ("Hal Moore"), State Insulation, LLC, an Arizona limited liability company ("State Insulation – Arizona"), State Insulation, LLC, a Nevada limited liability company ("State Insulation – Nevada"), The 1998 Harold M. Moore Revocable Trust (the "Trust"), Elaine K. Moore, aka Melanie K. Moore ("Melanie Moore") and Mark Peluso ("Peluso") (collectively referred to as the "Defendants").

Although Plaintiff has filed a 97-page complaint with eight remaining causes of action, Mr. Hardisty's claim against the Defendants can be simply summarized. Mr. Hardisty claims that Mr. Moore fraudulently divested him of his interest in Legacy Pointe with the assistance of the other Defendants. Specifically, he claims that Mr. Moore improperly obtained security interests against his real and personal property in order to force Mr. Hardisty to transfer his shares in Legacy Pointe to Mr. Moore. According to Mr. Hardisty, Mr. Moore abused his trust and influence in order to deprive him of interest.

Mr. Hardisty's claims, however, are not supported by the evidence, are not legally tenable and defy logic. It was Mr. Hardisty who approached Mr. Moore to invest in the Project. In inducing Mr. Moore to invest in the Project, Mr. Hardisty misrepresented facts regarding the capital and time necessary to complete construction. Plaintiff also misrepresented the amount of revenue necessary for the Project to generate a profit and the length of time required to hold the investment. Mr. Hardisty also promised that Mr. Moore's investment would be secured by Plaintiff's property, and if necessary, he would sell his personal assets in order to ensure that Mr. Moore did not lose money on the Project. According to Plaintiff at the time, "I will not let you down or lose your money on this [Project]."

As a result of Mr. Hardisty's misrepresentations, not only did Mr. Moore provide the initial investment of $1.5 million, but he has also been required to provide millions of additional dollars to complete the project. Almost immediately, Mr. Moore was required to provide the money necessary to secure a letter of credit necessary for the contractor to secure a performance and payment bond. After Mr. Hardisty indicated that Legacy Pointe was encountering cash flow problems, Mr. Moore was required to loan an additional $655,000 until the Company received additional funding from HUD. Even after HUD resumed financing the Project, the Company was unable to repay Mr. Moore due to insufficient capital. At completion, additional funding was necessary to pay the subcontractors. Consequently, despite Mr. Hardisty's representations to the contrary, the Project has required Mr. Moore to commit additional funding to complete construction of and operate the Project.

The undisputed evidence in this case establishes that there is no merit to the claims asserted by the Plaintiff. Accordingly, for the reasons set forth below, Defendants' motion for summary judgment should be granted, in its entirety. In the alternative, this Court should grant Defendants' motion for partial summary judgment of summary adjudication of the issues.

### A. **Factual Background**

In July 2007, Plaintiff Hardisty contacted Hal Moore to solicit an investment in Legacy Pointe Apartments, LLC, ("Legacy Pointe"), which was formed to develop, construct, and operate a 252-unit apartment complex in Knoxville, Tennessee (the "Project"). *See*, Defendants' Separate Statement of Uncontroverted Material Facts, "Sep.St.", ¶ 1. At the time he contacted Mr. Moore, Mr. Hardisty was a member and the Chief Manager of Legacy Pointe. He was also a member of Munson-Hardisty, LLC ("Munson-Hardisty"), the general contractor and builder of the Project. Sep.St. ¶ 2. Although he was a member in Legacy Pointe and Munson-Hardisty, Mr. Hardisty invested de minimis funds in the limited partnership or the

Project. Rather, in exchange for waiving his builder's profit on the Project, Mr. Hardisty was to receive "sweat equity" in the company. Complaint, pg. 2:9-21.

Mr. Hardisty aggressively sought the investment of Mr. Moore, initially seeking the entire $1.5 million that the company needed in order to proceed with the Project. Sep.St. ¶ 3. In order to induce Mr. Moore to invest his funds, Mr. Hardisty agreed to provide Mr. Moore not only a 50% interest in Legacy Pointe, but also 13% interest per annum on the full amount of the investment, to be paid monthly, until the construction was completed. Sep.St. ¶ 4, see also, Declaration of Harold Moore, "Hal Moore Decl.", ¶ 4. Mr. Hardisty also told Mr. Moore that he would secure his investment with "'against everything, [his] properties and [his] interest in the deal." *See*, email from John Hardisty to Melanie Moore, dated August 16, 2007, Declaration of Melanie Moore, ¶ 2. In particular, Mr. Hardisty represented to Mr. Moore that he would secure the investment with real property owned by Hardisty in National City, San Diego, and Mammoth, California. According to Mr. Hardisty, "I will give you 13% secured with everything I own, so I can close this deal and not lose it." Sep.St. ¶ 5.

Ultimately, in consideration for the initial investment, the parties agreed, inter alia, that Mr. Moore would be admitted as a member of Legacy Pointe, with a 50% equity interest in the Company; Mr. Hardisty and Hardisty-Munson, LLC would pay Mr. Moore 13% interest, per annum, on the $1.5 million investment until the construction was completed. Hal Moore Decl., ¶ 4. In August 2007, Moore transferred $1.5 million to the Legacy Pointe's and Munson-Hardisty's bank accounts for the development and construction of the Project. Sep.St., ¶ 7.

In order to close on the construction loan, Legacy Pointe was required to obtain payment and performance bonds from Munson-Hardisty to secure completion of the Project and the payment of all subcontractors. Great American Insurance Company, the bonding company, required a letter of credit in the amount of $750,000 as security for the bonds. Sep.St., ¶ 8. Once again, Plaintiff asked Mr.





GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

Moore if he could provide the funds. Mr. Moore agreed to loan the money for the letter of credit. As a condition for the loan, however, Mr. Moore required a promissory note from Mr. Hardisty and his wife, secured by deeds of trusts on their property. Sep.St., ¶ 8.

In September 2007, construction of the Project commenced. Hal Moore Decl., ¶ 8. The construction, however, encountered numerous delays and costs overruns. In subsequent e-mails to Mr. Moore, Mr. Hardisty acknowledged that increased costs resulted from conduct of Munson-Hardisty, Mr. Munson and himself (both in failing to account for various costs associated with the Project and upgrades proposed by Mr. Munson and Munson-Hardisty). Ultimately, Mr. Hardisty acknowledged that he "screwed up" and that he could have "done better." Sep.St., ¶ 15.

Due to insufficient funding, Mr. Moore was once again required to provide additional money for the Project. It was initially requested that Mr. Moore provide $750,000 as a "bridge loan," which Mr. Hardisty stated was necessary for cash flow until funding was available from HUD. Mr. Moore subsequently made a loan to Munson-Hardisty for $655,000. Sep.St. ¶ 16, Hal Moore Decl., ¶ 11. However, after providing the bridge loan, it was discovered that the total cost to complete the Project was grossly understated and more funding was necessary to finish the Project and pay the claims of several of Munson-Hardisty's subcontractors and suppliers. Mr. Moore agreed to provide additional funding on the condition that Mr. Hardisty and Munson-Hardisty transfer their interest in Legacy Pointe to him (27% and 9.9%, respectively). Munson-Hardisty would remain the general contractor. Ultimately, Mr. Hardisty transferred his remaining 27% interest to Mr. Moore. Sep.St. ¶ 16-17, Hal Moore Decl., 12.

By the conclusion of the Project, there existed additional claims by subcontractors who had not been paid. State Insulation LLC ultimately paid the claims asserted by the subcontractors. As consideration for the payment, State Insulation received assignments of the subcontractors' claims. Sep.St. ¶ 29.





GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

### B. Procedural History

On August 1, 2011, Mr. Hardisty filed a 97-page First Amended Complaint against the Defendants. Plaintiff asserted ten claims against the Defendants, including a claim for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"). Following three motions to dismiss and additional claims asserted by Plaintiff, the remaining claims asserted by Mr. Hardisty are as follows: (i) aiding and abetting intentional torts; (ii) fraud; (iii) constructive fraud; (iv) quiet title; (v) securities fraud in violation of section 25401 of the California Corporations Code; (vi) conversion; (vii) abuse of process; and (viii) conspiracy.

As set forth below, the undisputed evidence in this case establishes that there is no merit to the claims asserted by the Plaintiff. Accordingly, Defendants' motion for summary judgment should be granted, in its entirety.

## II. ARGUMENT

### A. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). If the evidence offered in support of the motion establishes every essential element of the moving party's claim or defense, there is no need to offer evidence to negate or disprove matters on which the opposing party has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). The moving party need not provide evidence on matters as to which the opposing party bears the burden of proof: "[w]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

interrogatories and admissions on file." Celotex Corp., 477 US at 323.

In a diversity action, federal law governs the procedural aspects of a motion for summary judgment, while the law of the forum state controls the substantive issues. *Caesar Electronics Inc. v. Andrews*, 905 F.2d 287, 289 (9th Cir.1990). Further, when ruling on a motion for summary judgment, "the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 US at 254 (on determining whether actual malice exists in a libel suit, court must determine if the evidence presented allows a rational finder of fact to find actual malice by clear and convincing evidence); *see also*, *Southern Calif. Gas Co. v. City of Santa Ana*, 336 F3d 885 888 (9th Cir. 2003).

**B. The Third Cause of Action for Fraud Must Be Dismissed Because Plaintiff Cannot Establish The Essential Elements an Actionable Misrepresentation or Justifiable Reliance**

Under California law, the essential elements of fraud are: (a) misrepresentation of fact; (b) knowledge of the falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 974 (1991); *see Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 990 (2004). For the reasons set forth below, Mr. Hardisty cannot establish the essential elements of justifiable reliance and an actionable misrepresentation. Accordingly, third cause of action must be dismissed.

///

///

///

///

///

///



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

### 1. The Plaintiff Cannot Establish That The Statements Constitute A Misrepresentation Upon Which A Claim Of Fraud Can Be Based

To constitute a claim for fraud, the alleged misrepresentation must be a statement as to an existing or past fact. *Borba v. Thomas*, 70 Cal.App.3d 144, 152 (1977). Predictions as to future events are ordinarily non-actionable statements of opinions. *Id.* As a general rule, statements relating to future earnings, expected profits or the successful conduct of a business are merely matters of opinion, on which the plaintiff has no right to rely, even if the statements prove to have been false when made or made with no expectation of their ever being realized. In re: Jogert, 950 F.32d 1498, 1506 (9th Cir. 1991), *citing, Zeh v. Alameda County Hotel Corp.* ,122 Cal.App. 366, 368 (1932) .

Further, when the subject of the alleged representation is covered by a written contract in a manner different from that alleged, a party to the agreement cannot avoid the rule which makes the written agreement the unimpeachable memorial of the understanding between the parties. *Cobbs v. Cobbs*, 53 Cal.App.2d 780, 785 (1943). The party cannot claim the benefit of a contradictory representation by alleging that it was a promise made without intention to perform, and, therefore, fraudulent. *Id.* Stated differently, a party having agreed in writing to do a certain thing may not stultify his written agreement by claiming that, in fact, he relied upon the other party's oral promise that he need not comply with the terms of the agreement. *Id.*

In the present case, Plaintiff alleges that Defendants Hal and Melanie Moore made a number of fraudulent representations. The representations can be set forth in several categories: (i) oral representations that are contrary to the expressed terms set forth in the promissory notes and trust deeds executed by the Plaintiff (Complaint, ¶¶ 206 – 214, 217, 225); (ii) Hal Moore made contributions or loans, which he fact did not make to the Project (Complaint, ¶¶ 219 – 224); (iii) Hal Moore would personally

pay for all out of scope extras incurred by the Company in connection with the Project (Complaint ¶ 215.); and (iv) representations regarding the sale of Mr. Hardisty's remaining interest in Legacy Pointe (Complaint, ¶ 229-234). As explained below, however, the representations alleged by the Plaintiff are not misrepresentations of fact. In fact, certain alleged representations are directly contradicted by the Plaintiff's statements or the terms of the written promissory notes. Accordingly, the alleged representations cannot establish Plaintiff's claim for fraud, as a matter of law.

**a. Representations Relating to the Promissory Notes and Trust Deeds**

In his Complaint, Plaintiff alleges that Hal and Melanie Moore made certain representations regarding the promissory notes and trust deeds executed by the Plaintiff. In particular, Plaintiff alleges that Hal Moore represented that the $1.5 million dollar note was intended only to be temporary and he would not be required to pay the 13% interest, as set forth in the note. Complaint, ¶ 206. Plaintiff further alleges that Hal Moore represented that the loan would be deemed satisfied once Hal Moore became a member of the limited partnership and the lien on the Plaintiffs property would be removed. Complaint, ¶ 207. He further alleges that Melanie Moore represented that the terms in the Trust Deeds were standard and meant to be temporary, when in fact they were not. Complaint, ¶ 208-209. As to a second promissory note for $750,000, Plaintiff alleges that terms of the written note are contrary to oral statements by the parties. Complaint, ¶¶ 211-214.

These alleged representations are neither false nor can they establish Plaintiff's claim for fraud. With respect to the interest and the security on the note, Plaintiff represented that Hal Moore would be entitled to 13% interest, in addition to his membership interest, and that he would secure the note with his property. Sep.St. ¶¶ 4-5. Specifically, in response to an email from Ms. Moore, Plaintiff represented:

///

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

> "I am going to pay Hal 13%. It will come from the Builders [overhead], which is in the construction loan. There is no one other than me to agree to this. The MOU and the Operating Agreement, has Hal at 50%. No – ifs, end's, or but's. That simple. 50%, is 50% of cash flow, at sale, everything." (Sep.St. ¶ 4; email from Hardisty to Melanie Moore, dated August 16, 2007, Melanie Moore Decl., Exhibit 2.)

Mr. Hardisty further represented that, "I will give you 13% secured by everything I own, so that I can close this deal and not lose it." Contrary to the allegations contained in the Complaint, therefore, the $1.5 million promissory note accurately reflects the agreement of the parties.

More importantly, as to both promissory notes and the trust deeds, Plaintiff cannot now claim Hal Moore made oral representations that contradict the written agreements between the parties. As explained in *Cobbs*, Mr. Hardisty having agreed in writing to do a certain things may not stultify his written agreement by claiming that, in fact, he relied upon the Moore's oral promises that he need not comply with the terms of the agreement. *Cobbs*, 53 Cal.App.2d at 785.

**b. <u>Contributions Made by Hal Moore</u>**

In his Complaint, Plaintiff alleges that Hal Moore falsely represented that he made a "bridge loan" of $750,000 and he made another contribution of $655,000. Complaint, ¶¶ 219-224. Plaintiff alleges that Mr. Moore made the representation regarding the bridge loan in order to induce Mr. Hardisty to transfer his remaining 27% interest in the Project. Complaint, ¶ 219. Mr. Hardisty further alleges that Mr. Moore made no such loan. Complaint, ¶ 224.

In fact, Mr. Moore made a "bridge loan" of $655,000 to the Munson Hardisty for use on the Project. Sep.St. ¶ 10. The loan is evidenced by a written agreement

executed by Mr. Moore and Mr. Hardisty, as managing agent for Munson Hardisty. Hal Moore Decl., Exhibit 3: Promissory Note, dated October 15, 2008. At most, there was a misunderstanding as to the amount of the bridge loan made by Mr. Moore ($655,000 as opposed to $750,000). In any case, as discussed below, Mr. Hardisty cannot establish that he relied upon any such representation in transferring his 27 percent interest, which is set forth in a separate agreement supported by additional consideration.

c. **<u>Representations to Pay Out-of-Scope Extras</u>**

In his Complaint, Plaintiff alleges that Defendant Hal Moore requested that extra work or change orders be performed on the Project. Complaint, ¶ 106. In his claim for fraud, he further alleges that Hal Moore represented that he would personally for all out-of-scope extras and reimburse Plaintiff and Munson Hardisty for all expenses they incurred on the Project. Complaint, ¶ 215. However, as set forth in contemporaneous statements by the Plaintiff, the extras were not at the request of Mr. Moore, and more importantly, Mr. Moore did not agree to personally pay for such extras.

Mr. Hardisty was the chief manager of Legacy Pointe through February 2009. He was also the managing agent of Munson Hardisty. In those positions, he had the authority to issue change orders, and to sign off on such change orders for the contractor and the owner. Sep.St. ¶ 13. In an e-mail dated August 20, 2008, Mr. Hardisty states that the "upgrades" were the result of his construction partner, John Hardisty.[1] Sep.St. ¶ 11. On August 28, 2008, Mr. Hardisty sent another e-mail to Mr. Moore to set forth and explain the reasons for the extras. Some of these extras are general contractor costs, and not owner expenses. (Items 1 – 3.) More

[1] In particular, Mr. Hardisty states "John Munson, whether I like it or not has approached this project with his contract in mind and has upgraded and spent money the way he always has."



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

importantly, according to Mr. Hardisty:

> "We have been able to absorb all of these expenses and will still come in at or under the $18m."[2] (Melanie Moore Decl., Exhibit 3: email from Hardisty to Melanie Moore, dated August 20, 2008.)

Therefore, Mr. Moore was neither the cause of the extras nor did he agree (or have any reason to agree) to personally pay for such extras.

**d. Purchase and Sale Agreement of Hardisty's Remaining Interest in Legacy Pointe**

Plaintiff also alleges that Melanie Moore made false representations regarding the Purchase and Sale Agreement relating to Mr. Hardisty's remaining interest in Legacy Ponte. Complaint, ¶¶ 227-234. However, the Purchase and Sale Agreement is in writing, which was reviewed and executed by Mr. Hardisty. Hal Moore Decl., Exhibit 4. Moreover, in the written agreement, Mr. Hardisty expressly agrees that he did "not rely on any representation by the Buyer or his agents concerning any subject matter" of the agreement.

**2. The Plaintiff Cannot Establish The Essential Element of Justifiable Reliance**

In order to prevail on a cause of action for misrepresentation, the plaintiff must prove justifiable reliance, which requires that the circumstances were such as to make it reasonable for the plaintiff to accept the defendant's statements without an independent investigation. *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1334 (1986); *see also, Atari Corp. v. Ernst & Whinney*, 981 F.2d

[2] Similarly, in his August 20, 2008 e-mail, Mr. Hardisty states that that Mr. Munson will "bring the project in and not exceed his contract price and finish earlier than his contract requires." (email from Hardisty to Melanie Moore, dated August 20, 2008.)



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

1025, 1030-31 (9th Cir. 1992). A cardinal rule of contract law is that a party's failure to read a contract, or to carefully read a contract, before signing it is no defense to the contract's enforcement. *Desert Outdoor Advertising v. Superior Court*, 196 Cal.App.4th 866, 871 (2011). Likewise, if a Plaintiff claims he did not read the contract, he cannot establish the essential element of reasonable reliance in support of his fraud claims because "[g]enerally, it is not reasonable to fail to read a contract; . . . even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract." *Brown v. Wells Fargo Bank, N.A.*, 168 Cal.App.4th 938, 958 (2008). Reasonable diligence requires the reading of a contract before signing it, and a party cannot avoid the contract based on fraud for his or her failure to read the contract. *Brookwood v. Bank of America*, 45 Cal.App.4th 1667, 1674 (1996).

Furthermore, if the plaintiff has access to the necessary information, the plaintiff will be charged with knowledge of the facts which reasonable diligence would have disclosed and plaintiff cannot claim reliance upon the representations. *Cameron v. Cameron*, 88 Cal.App.2d 585, 593-94 (1948); *Elkind v. Woodward*, 152 Cal.App.2d 170, 178-79 (1957). If the plaintiff becomes aware of facts that tend to arouse suspicion or if it has reason to believe that any representations made to it are false or only half true, it is plaintiff's legal duty to complete its investigation and plaintiff has no right to rely on statements made by the other party. *Cameron*, 88 Cal.App.2d at 593-94; *Roland v. Hubenka*, 12 Cal.App.3d 215, 225 (1970). Whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts. (*See, Guido v. Koopman*, 1 Cal.App.4th 837, 843 (1991).

In *Atari*, the acquiring company in a corporate merger filed suit against the officers, auditors and investment bankers of the acquired company, alleging, *inter alia*, violations of federal securities regulations, common law fraud and negligent misrepresentation as to the value of the acquired company. *Atari*, 981 F.2d at 1027. The federal district court granted summary judgment, and the Ninth Circuit Court of

Appeals affirmed, holding that reliance by plaintiff on incorrect financial information was unjustified under federal securities laws and California common law. *Id.*, 981 F.2d at 1030-31. Although defendants continued to assure plaintiff that the financial statements were accurate, the Court found that the due diligence conducted by plaintiff indicated that the company was overvalued. Inasmuch as plaintiff's due diligence indicated that the financial statements were inaccurate, the court determined that the plaintiff's "continued reliance on the financial statements and assurances of [the acquired company] and its investment bankers cannot be justified." *Id.*, 981 F.2d at 1030.

In *Elkind*, the plaintiff commenced an action against the defendants for fraud, alleging that defendants misrepresented the monthly income of a tavern in connection with the sale of the tavern. *Elkind*, 152 Cal.App.2d at 171. The trial court entered a defense verdict, finding that the plaintiff did not rely on the alleged misrepresentations. *Id.* The plaintiff appealed, and the California Court of Appeal affirmed. The appellate court determined that the plaintiff could not reasonably rely on the representations, in view of evidence that the plaintiff made an independent investigation, knew the amount of the sales tax receipts and was told by defendant's bookkeeper that the gross sales was not that allegedly represented. *Id.*, 152 Cal.App.2d at 179. Having concluded that Plaintiff was a sophisticated businessman who "made a sufficient investigation and found information which put him on notice of the actual facts," the court held that the plaintiff could not have justifiably relied on the alleged representations made by defendants. *Id.*

In the present case, Plaintiff cannot establish the requisite element of justifiable reliance with respect to the alleged misrepresentations. With respect to his claim that he relied upon Mr. Moore's representations regarding extras or the amount of contributions made by Mr. Moore, any such reliance would not be justified. According to Plaintiff, he is a sophisticated businessman in the construction industry. Complaint, ¶ 11. As explained above, Mr. Hardisty was the chief manager of



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

Legacy Pointe through February 2009. He was also the managing agent of Munson Hardisty. In those positions, he had the authority to issue change orders, and to sign off on such change orders for the contractor and the owner. Sep.St. ¶ 13. Indeed, the email communications transmitted by Mr. Hardisty demonstrate that he had superior knowledge as to the amount of extras, how such extras were being paid and the amount of contributions required from Mr. Moore. Melanie Moore Decl., Exhibit 4. Having actual knowledge of such facts, Mr. Moore cannot contend that he reasonably relied on the alleged statements by the Defendants.

With respect to the written documents, Plaintiff voluntarily executed the promissory notes and trust deeds. Mr. Hardisty had the opportunity to review the documents prior to his signing them. Again, Mr. Hardisty having agreed in writing to do a certain things may not stultify his written agreement by claiming that, in fact, he relied upon alleged oral statements that he need not comply with the terms of the written agreements. *Cobbs*, 53 Cal.App.2d at 785. Any such reliance would not be reasonable. *Id., see also*, *Brown*, 168 Cal.App.4th at 958.

Finally, with respect to the Purchase and Sale Agreement, Mr. Hardisty Plaintiff voluntarily entered the Purchase and Sale Agreement, whereby he transferred his remaining interest to Mr. Moore. In the Agreement, Mr. Hardisty expressly represents that:

> "Seller enters into this Agreement freely, voluntarily an in the absence of any duress from Buyer. In entering this Agreement, Seller does not rely on any representation by the Buyer or his agents concerning any subject matter whatsoever including, but not limited to, financial and/or legal impacts of construction, sale, or any ancillary matter."
> Hal Moore Decl., Exhibit 4: Purchase and Sale Agreement, pg. 3.

///



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

Having made such expressed representations, Mr. Hardisty cannot now claim that he justifiably relied upon contrary, oral representations he alleges were made by the Defendants.

**C. The Fourth Cause of Action for Constructive Fraud Must Be Dismissed Because Cannot Establish the Essential Elements of Nondisclosure, Reliance and a Confidential Relationship**

Section 1573 of the California Civil Code creates a statutory cause of action for constructive fraud. The elements of a cause of action for constructive fraud are (1) a fiduciary or confidential relationship; (2) nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury (causation). *Younan v. Equifax Inc.*, 111 Cal.App.3d 498, 516 (1980); *Odorizzi v. Bloomfield School Dist.*, 246 Cal.App.2d 123, 129 (1966).

As set forth above, Plaintiff cannot establish that the Defendants Hal and Melanie Moore failed to disclose any material facts regarding the parties' transactions. Again, such transactions were in writing, which were reviewed and executed by the Plaintiff. Other documents also demonstrate that the Plaintiff was fully aware of the underlying facts. Plaintiff, therefore, cannot establish nondisclosure or reliance.

Moreover, Plaintiff cannot establish either a fiduciary[3] or confidential

[3] Under California law, there are two kinds of fiduciary relationships - those imposed by law and those undertaken by agreement. *See, GAB Business Services, Inc. v. Lindsey & Newsom Claim Services, Inc.*, 83 Cal.App.4th 409, 416 (2000), *disapproved on other grounds in Reeves v. Hanlon*, 33 Cal.4th 1140, 1153 (2004); *see also, Maglica v. Maglica*, 66 Cal.App.4th 442, 447 (1998). Fiduciary duties are imposed by law in certain technical, legal relationships, *Sime v. Malouf*, 95 Cal.App.2d 82, 98 (1949); husbands and wives, *Vai v. Bank of America*, 56 Cal.2d 329, 337 (1961); and, guardians and wards, trustees and beneficiaries, principals and agents, and attorneys and clients, *Barbara A. v. John G.*, 145 Cal.App.3d 369, 382-383 (1983). The court in *Barbara A.* termed this kind of fiduciary relationship, in which a fiduciary duty is imposed as a matter of law, a "legally recognized fiduciary relationship." (Id., 145 at p. 383.) A personal friendship, however, does not constitute a legally recognized fiduciary relationship. As this Court has previously



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

relationship sufficient to support the case of action. A confidential relationship may exist to support a claim for constructive trust whenever "a person with justification places trust and confidence in the integrity and fidelity of another." *Odorizzi*, 246 Cal.App.2d at 129. As explained by Mr. Moore, Mr. Hardisty is a casual business acquaintance, with whom he had a cordial relationship. Sep.St., ¶ 20. Although he briefly employed Mr. Hardisty, an employer-employee relationship alone is insufficient to establish a confidential relationship. *Odorizzi*, 246 Cal.App.2d at 129. Outside of their business relationship, Mr. Moore has not socialized with Mr. Hardisty. Sep.St., ¶ 22. Accordingly, there does not exist the "confidential relationship" necessary to establish a claim for constructive fraud.

### D. The Fifth Cause of Action for Quite Title Must Be Dismissed Because Defendants Have a Valid Interest in the Property

In his fifth cause of action, Plaintiff seeks quite title to his interest in Legacy Pointe and as joint tenant in real property located in San Diego and National City, California. Plaintiff's cause of action is based on his claim that the Defendants "are without any right whatsoever and that such Defendant has no right, title, estate, lien, or interest whatever in the above-described properties or any part thereof." Complaint, ¶ 266. However, as explained below, Defendants have a valid interest in the property, which has been properly conveyed to the Defendants by Plaintiff.

With respect to Plaintiff's claim to any remaining interest in Legacy Pointe, there can be no dispute that Plaintiff consented to the transfer of his interested in the Company. Plaintiff voluntarily entered a Purchase and Sale Agreement, whereby he transferred his remaining interest to Mr. Moore. Sep.St., ¶ 26. Likewise, with respect to the Defendants' interest in the San Diego and National City properties, such interest is based on deed of trusts, which were conveyed and properly recorded.

---

found, Plaintiff has not even alleged any legally recognized fiduciary relationship.



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

Sep.St., ¶¶ 24-25. The interest in both Legacy Pointe and the real property continue to be valid. Accordingly, Plaintiff's claim for quite title should be dismissed.

Finally, Plaintiff's has failed to properly plead his cause of action for quite title. Under California law, a complaint for quite title must be verified. Cal.Civ. Proc. Code § 761.020. On this separate basis, the cause of action should be dismissed.

**E. <u>The Sixth Cause of Action for Securities Fraud Must Be Dismissed Because Plaintiff Cannot Establish a Misrepresentation in the Sale or Purchase of a Security</u>**

Section 25401 of the California Corporation Code, provides, in pertinent part, that:

> "It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

In order to establish a valid cause of action under section 25401, the plaintiff must plead and prove that there was a sale or purchase of stock in California by fraudulent untrue statements or by omitting material facts that would by omission make the statements misleading. *MTC Electronic Technologies Co., Ltd. v. Leung*, 876 F.Supp. 1143, 1147 (C.D.Cal. 1995).

In this case, Mr. Moore acquired Mr. Hardisty's interest in Legacy Pointe through two separate transfers, the initial acquisition of a 50% membership interest for Moore's investment of $1.5 million and the subsequent acquisition of Mr.

Hardisty's remaining 27% membership interest through the Purchase and Sale Agreement. As explained above, Mr. Hardisty cannot show any fraudulent untrue statements or omissions with respect to either transaction. Sep.St., ¶¶ 1-19. Again, with respect to the initial transaction, prior correspondence from Mr. Moore confirms that he agreed to all of the terms of the sale. Likewise, Mr. Hardisty executed the Purchase and Sale Agreement with respect to the transfer of the 27% interest. As to the latter agreement, Mr. Hardisty expressly represents that he did "not rely on any representation by the [Hal Moore] or his agents" concerning the sale of his membership interest. Accordingly, Mr. Hardisty cannot establish his claim for securities fraud and the claim should be dismissed.

### F. <u>The Seventh Cause of Action for Conversion Must Be Dismissed Because Plaintiff Consented to the Transfer of his Interest</u>

Conversion is the wrongful exercise of dominion over the personal property of another. *Los Angeles Federal Credit Union v. Madatyan*, 209 Cal.App.4th 1383, 1387 (2012). The elements of a claim for conversion are: (1) plaintiff's ownership or right to possession of the property; (2) defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.* However, a claim for conversion does not lie if the plaintiff, or the person on whose behalf the action is brought, consented to the act charged as the conversion. *Watson v. Commonwealth Ins. Co.*, 8 Cal.2d 61, 67 (1937). "[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Farrington v. A. Teichert & Son*, 59 Cal.App.2d 468, 474 (1943); *see also, French v. Smith Booth Usher Co.*, 56 Cal.App.2d 23, 27-28 (1942) ("To constitute conversion, nonconsent to the possession and disposition of the property by defendant is indispensable.")

In the present case, Mr. Hardisty alleges that the Defendants converted his remaining 27 percent interest in Legacy Pointe. Complaint, ¶ 296. However, there





GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

can be no dispute that Plaintiff consented to the transfer of his interest in the Company. Plaintiff voluntarily entered a Purchase and Sale Agreement, whereby he transferred his remaining interest to Mr. Moore. Sep.St., ¶ 27. In the Agreement, Mr. Hardisty expressly represents that:

> "Seller enters into this Agreement freely, voluntarily an in the absence of any duress from Buyer. In entering this Agreement, Seller does not rely on any representation by the Buyer or his agents concerning any subject matter whatsoever including, but not limited to, financial and/or legal impacts of construction, sale, or any ancillary matter." Hal Moore Decl., Exhibit 4: Purchase and Sale Agreement, pg. 3.

Mr. Hardisty also executed an Assignment, whereby he "assigns, transfers, conveys and sets over unto [Hal Moore] and all of [his] right, title and interest" in Legacy Pointe. Sep.St., ¶ 28; Hal Moore Decl., Exhibit 5, Assignment, pg.1. Having voluntarily sold and transferred his interest in Legacy Pointe, Plaintiff cannot now assert a claim for conversion.

### G. **The Eighth Cause of Action for Abuse of Process Should Be Dismissed Because Because Plaintiff Cannot Establish Anything More Than the Filing of a Complaint, Which Is Insufficient to Establish the Claim and Is Privileged**

The two main elements of a cause of action for abuse of process are ulterior motive in using the process and use of the process in a wrongful manner. *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal.3d 1157, 1168 (1986). Merely obtaining or seeking process is not enough to establish the

claim; there must be subsequent abuse, by a misuse of the judicial process for a purpose other than that which it was intended to serve. *Adams v. Superior Court*, 2 Cal.App.4th 521, 530–531 (1992). "The gist of the tort is the improper use of the process after it is issued. *Id.* For this reason, the mere filing of a complaint does not constitute an abuse of process. *Drasin v. Jacoby & Meyers*, 150 Cal.App.3d 481, 485 (1984). Moreover, in the context of an abuse of process proceeding, the filing of a complaint is privileged under Civil Code section 47(2). *Id., see also,, Umansky v. Urquhart*, 84 Cal.App.3d 368 (1978).

In his ninth cause of action for abuse of process, Plaintiff pleads only that Defendants Hal Moore, Melanie Moore and State Insulation filed a complaint against Great American Insurance Company, the bonding company on the Project. (*State Insulation LLC v. Great American Insurance Company*, Case No. 176324-1). There is no evidence, however, that the Defendants engaged in any subsequent action or misuse of the judicial process in filing the Complaint. Rather, State Insulation had properly filed the action to seek recovery under the bond. Sep.St., ¶ 31. By the conclusion of the Project, there existed additional claims by subcontractors who had not been paid on the Project. State Insulation ultimately paid the claims asserted by the subcontractors. Sep.St., ¶ 29. As consideration for the payment, State Insulation received assignments of the subcontractors' claims. Id. Based on these assignments, State Insulation properly asserted a claim against the bonding company. State Insulation also filed the action against the bonding company seeking recovery under the payment bond. Thereafter, the bonding company requested a defense and indemnity from Legacy Pointe (not the Plaintiff) under the terms of the bond. Therefore, contrary to any allegation of Plaintiff, the Defendants filed the action to properly seek recovery under the bond and not to obtain an unjustifiable collateral advantage. Accordingly, the eighth cause of action should be dismissed.

///

///



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

### H. The Ninth Cause of Action for Conspiracy Should Be Dismissed Because Plaintiff Has Failed to Establish the Underlying Torts

Civil conspiracy "is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510–511, 28 Cal.Rptr.2d 475, 869 P.2d 454. A civil conspiracy "must be activated by the commission of an actual tort." *Id.*, 7 Cal.4th at p. 511.

In his ninth cause of action, Plaintiff alleges that Defendants Hal Moore, Melanie Moore, State Insulation, the Trust and Peluso conspired to commit the intentional torts of fraud, constructive fraud, and securities fraud. Complaint, ¶ 308. As discussed above, however, Mr. Hardisty cannot establish the existence of these alleged torts. Sep.St., ¶¶ 1-32. Accordingly, Plaintiff's ninth cause of action must also be dismissed.

### I. The Second Cause of Action for Aiding and Abetting Should Be Dismissed Because Plaintiff Has Failed to Establish the Primary Wrong

In order to state a claim for aiding and abetting liability under both state and federal law, the plaintiff must plead three elements: (1) the existence of an independent primary wrong; (2) defendant's knowledge of that wrong; and (3) defendant's substantial assistance in the wrong. *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1483 (9th Cir.1991); *Pasadena Unified School Dist. v. Pasadena Federation of Teachers*, 72 Cal.App.3d 100, 113 (1977), *disapproved on other grounds by County Sanitation Dist. v. Los Angeles County Employees Ass'n*, 42 Cal.3d 810, 812 (1985).

///

///

In this action, Plaintiff alleges that Defendants Melanie Moore, State Insulation, the Trust and Peluso aided and abetted Hal Moore in the intentional torts of fraud, constructive fraud, misrepresentation in the sale of securities and conversion. Complaint, ¶¶ 192 - 204. As discussed above, however, Mr. Hardisty cannot establish the existence of these alleged independent primary wrongs. Sep.St., ¶¶ 1-32. Accordingly, Plaintiff's second cause of action must also be dismissed.

## III. CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court grant their motion for summary judgment, or in the alternative, motion for partial summary judgment.

Dated: November 22, 2013

GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP

By: /s/ Gary E. Scalabrini
Gary E. Scalabrini
Attorneys for Defendants,
HAROLD MAXINE MOORE, et al.



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

# FEDERAL PROOF OF SERVICE

*Hardisty v. Moore et al.*
Case No. 3:11-cv-01591-AJB-BLM

I, Gary E. Scalabrini, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Gibbs, Giden, Locher, Turner & Senet LLP, 1880 Century Park East, 12th Floor, Los Angeles, California 90067-1621. I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

On November 22, 2013, I served the document(s) described as: **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**

The documents were served by the following means:

☒ **BY COURT'S CM/ECF SYSTEM:** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed below:

Ali M.M. Mojdehi
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
(858) 550-6055
amojdehi@cooley.com

William B. Federman
Federman & Sherwood
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560
Email: wbf@federmanlaw.com

I declare that I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 22, 2013, at Los Angeles, California.

s/ Gary E. Scalabrini
Gary E. Scalabrini
Email: gscalabrini@gglts.com

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP