Michael I. Wayne, Esq. (CSB # 169840)
mwayne@gglts.com
Gary E. Scalabrini, Esq. (CSB # 161902)
gscalabrini@gglts.com
GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
(310) 552-3400
Fax (310) 552-0805

Attorneys for Defendants

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JOHN T. HARDISTY,

Plaintiff,

v.

HAROLD MAXINE MOORE; ELAINE K. MOORE (aka MELANIE K. MOORE); STATE INSULATION, LLC, an Arizona limited liability company; STATE INSULATION, LLC, a Nevada limited liability company; THE 1998 HAROLD M. MOORE REVOCABLE TRUST; and MARK PELUSO, an individual,

Defendants.

AND RELATED COUNTER_CLAIMS.

Case No. 3:11-cv-01591-AJB-BLM

**DECLARATION OF HAROLD MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THER ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: January 23, 2014
Time: 2:00 p.m.
Crtm.: 3B

///

///

///

I, HAROLD MOORE, declare as follows:

1. I am presently the chief manager of Legacy Pointe Apartments, LLC ("Legacy Pointe" or the "Company"), which was formed to develop, construct, and operate a 252 unit apartment complex in Knoxville, Tennessee (the "Project"). Unless otherwise stated, I know the following to be true of my personal knowledge and, if called as a witness, I could and would testify competently thereto.

2. In or about July 2007, I was contacted by Plaintiff, John Hardisty ("Hardisty"), seeking an investment in a project in Knoxville, Tennessee, which I later learned was Legacy Pointe. At that time, Mr. Hardisty was a member and chief manager of Legacy Pointe. Mr. Hardisty was also a member of Munson-Hardisty, LLC ("Munson-Hardisty"), the general contractor and builder of the Project.

3. I have known Mr. Hardisty for approximately twenty-three to twenty-five years. I first met Mr. Hardisty while he was building a duplex in Solana Beach. My drywall manager at the time met with Mr. Hardisty and offered to give him a bid for the drywall on the project. I became acquainted with Mr. Hardisty because we were involved in the drywall business. Mr. Hardisty is a casual business acquaintance and I would describe our relationship as cordial. I also briefly employed Mr. Hardisty. Outside of our business relationship, I have not and do not socialize with Mr. Hardisty.

4. Mr. Hardisty aggressively sought my investment in Legacy Pointe. Specifically, Mr. Hardisty sought an investment of $1.5 million from me, which he needed in order to proceed with the Project. Following several weeks of discussion, Mr. Hardisty agreed that for an investment of $1.5 million, I would receive 13% per annum on the full amount of the investment, to be paid monthly, until the construction was completed. He further agreed that, subject to approval by the United States Department of Housing and Urban Development ("HUD"), I would



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

receive a 50% membership interest in Legacy Pointe. Moreover, Mr. Hardisty told me that he would secure this investment with real property owned by Mr. Hardisty in National City, San Diego and Mammoth, California. As stated in an email from Mr. Hardisty, "I will give you 13% secured with everything I own, so I can close this deal and not lose it."

5. On or about August 20, 2007, Mr. Hardisty and his spouse, Theresa Hardisty, executed a promissory note secured by deeds of trust. True and correct copies of the promissory note and the deeds of trust are attached hereto and incorporated herein as Exhibit 1.

6. In or about August 2007, I caused 1.5 million dollars to be transferred from my account to Legacy Pointe and Munson-Hardisty's bank accounts for the development and construction of the Project.

7. In order to close on the construction loan, Legacy Pointe was required to obtain payment and performance bonds from Munson-Hardisty to secure completion of the Project and payment of all subcontractors. Great American Insurance Company, the bonding company, required a letter of credit for $750,000 as security for the bonds. In or about August 2007, Hardisty informed me that Munson-Hardisty urgently needed the letter of credit and asked if I could provide the funds. I agreed to loan the funds necessary to obtain the letter of credit. As a condition for the loan, however, I required a promissory note from Mr. Hardisty and his wife, secured by deeds of trust on their property. True and correct copies of the promissory note and a check made payable to Munson-Hardisty are attached hereto and incorporated herein as Exhibit 2.

8. In or about September 2007, construction on the Project commenced. At that time, John Hardisty was the chief manager of the Legacy Pointe, and John Munson was the project superintendent.

///

9. There were numerous delays and costs overruns encountered during the construction of the Project. In subsequent emails sent to my wife, Melanie Moore, on my behalf, Mr. Hardisty acknowledged that the increased costs resulted from the conduct of Munson-Hardisty, Mr. Munson and himself. Ultimately, Mr. Hardisty acknowledged that he "screwed up" and that he could have "done better."

10. Mr. Hardisty was the chief manager of Legacy Pointe through February 2009. He was also the managing agent of Munson Hardisty. While in those positions, Mr. Hardisty had the authority to issue change orders, and to sign off on such change orders for the contractor and the owner.

11. Due to insufficient funding for the Project, I was once again requested to provide additional money for the Project. It was initially requested that I provide $750,000 as a "bridge loan," which Mr. Hardisty stated was necessary for cash flow until funding was available from HUD. I subsequently made a loan to Munson-Hardisty for $655,000. A true and correct copy of the promissory note for the loan is attached hereto and incorporated herein as Exhibit 3.

12. After providing the bridge loan, it was discovered that the total cost to complete the Project was grossly understated and more funding was necessary to finish the Project and pay the claims of several of Munson-Hardisty's subcontractors and suppliers. I agreed to provide additional funding on the condition that Mr. Hardisty and Munson-Hardisty transfer their interest in Legacy Pointe to me (27% and 9.9%, respectively). Munson-Hardisty would remain the general contractor. Ultimately, Mr. Hardisty transferred his remaining 27% interest to me. Attached hereto as Exhibits 4 and 5 are the Purchase and Sale Agreement and an Assignment, which were executed by Mr. Hardisty, relating to the transfer of his 27% interest in Legacy Pointe.

///

///



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

13. In order to complete the Project and operate it thereafter, Legacy Pointe required additional capital. Inasmuch as I was the only member willing and able to contribute additional capital to the Company, I made additional contributions to the Company. Attached hereto and incorporated herein as Exhibits 6 and 7 are true and correct copies of Contribution Agreements memorializing my agreement to invest additional funds in the Company.

14. By the conclusion of the Project, there existed additional claims by subcontractors who had not been paid on the Project. State Insulation LLC, ultimately paid the claims asserted by the subcontractors. As consideration for the payment, State Insulation received assignments of the subcontractors' claims. Based on these assignments, State Insulation properly asserted a claim against the bonding company. State Insulation also filed an action against the bonding company seeking recovery under the payment bond in the Chancery Court for Knox County, Tennessee (*State Insulation LLC v. Great American Insurance Company*, Case No. 176324-1). Thereafter, the bonding company requested a defense and indemnity from Legacy Pointe under the terms of the bond.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on November 22, 2013, at San Diego, California.

HAROLD MOORE

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

# EXHIBIT "1"

# PROMISSORY NOTE SECURED BY DEEDS OF TRUST

San Diego, California
August 20, 2007

For value received, John T. Hardisty and Teresa K. Hardisty, husband and wife as joint tenants, (hereinafter "Borrower"), hereby promise to pay to the order of Harold M. Moore (hereinafter "Lender") at 8315 Miralani Dr., San Diego, CA 92126, or at any other place that may be designated in writing by Lender, in lawful money of the United States of America, the sum of One Million Five Hundred Thousand Dollars ($1,500,000.00), plus any and all interest thereon as stated herein. Borrower shall make interest only payments, as provided herein, on the first day of each month from the date of this Note until September 1, 2012 ("Maturity Date"). The unpaid balance of the loan will bear interest at the rate of thirteen percent (13%) per annum. Interest shall be calculated on the basis of a 360-day year and the number of days elapsed. Principal plus all accrued and unpaid interest on such principal shall be due and payable on the Maturity Date.

This Note is secured by the Long Form Deeds of Trust with Assignment of Rents executed by Borrower, as Trustor, in favor of Lender, as Beneficiary ("Deeds of Trust"), and encumbering the real properties described in the Deeds of Trust ("Properties"). The holder of this Note will be entitled to the benefits of the security provided by the Deeds of Trust and will have the right to enforce the covenants and agreements of Borrower contained in the Deeds of Trust.

From and after the Maturity Date, or earlier date on which all sums owing under this Note become due by acceleration or otherwise, all sums owing under the Note will bear interest until paid in full at the rate of thirteen percent (13%) per annum.

All payments on this Note will be applied first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; or in any other order that Lender requires.

If:

(a) Borrower fails to pay when due any sums payable under this Note;

(b) an uncured Event of Default (defined in the Deeds of Trust) occurs; or

(c) any other event or condition occurs that, under the terms of the Deeds of Trust, gives rise to a right of acceleration of sums owing under this Note,

then Lender, at its sole option, will have the right to declare all sums owing under the Note immediately due. However, if any document related to this Note provides for the automatic acceleration of payment of sums owing under this Note, all sums owing will be automatically due in accordance with the terms of that document.

Borrower will have the right to prepay, without penalty or premium, on any monthly payment date, all or any portion of the outstanding principal amount of this Note prior to the Maturity Date. Lender will apply all prepayments first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; then to the outstanding principal amount of this Note.

Borrower will pay to Lender all sums owing under this Note without deduction, offset, or counterclaim of any kind, provided however that Borrower does not waive the right to assert any counterclaim by way of a judicial action. The relationship of Borrower and Lender under this Note is solely that of borrower and lender, and the loan evidenced by this Note and secured by the Deeds of Trust will in no manner make Lender the partner or joint venture of Borrower.

No previous waiver or failure or delay by Lender in action with respect to the terms of this Note, the Deeds of Trust, or the other Loan Documents will constitute a waiver of any breach, default, or failure of condition under this Note, the Deeds of Trust, or the other Loan Documents. A waiver of any term of this Note, the Deeds of Trust, or the other Loan Documents must be made in writing and will be limited to the express written terms of the waiver. If there are any inconsistencies between the terms of this Note and the terms of any of the other Loan Documents, the terms of this Note will prevail.

The Deeds of Trust provides as follows:

"If the Trustor shall sell, convey or alienate said properties, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any not evidencing the same, immediately due and payable."

In the event any legal action or proceeding is required to enforce or interpret any provision of this Note, Borrower shall pay to Lender upon demand all costs of collection and reasonable attorney's fees incurred in connection therewith.

All notice required or permitted in connection with this Note will be in writing and will be given at the place and in the manner provided in the Deeds of Trust for the giving of notices.

If any provision of this Note shall be invalid or unenforceable for any reason, the same shall be ineffective, but the remainder of this Note shall not be affected thereby and shall remain in full force and effect. Time is of the essence of each and every obligation of Borrower and Lender. Presentment and demand for payment, notice of dishonor, protest and notice of protest are hereby waived by Borrower and Lender with respect to amounts owed by each of them respectively under the provisions of this Note. If the due

date for payment under this Note falls on a Saturday, Sunday or legal holiday, then such due date shall be extended to the next business day. None of the terms or provisions of this Note may be waived, altered, modified or amended except by a writing signed by Lender and Borrower. The provisions of this Note shall be governed by California law. The covenants, terms and conditions hereof shall bind the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors and assigns of Lender.

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first set forth above.

BORROWER:

JOHN T. HARDISTY

TERESA K. HARDISTY

Agreed and Accepted by Lender:

HAROLD MOORE

5444

DOC # 2007-0561730

AUG 23, 2007 12:06 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES: 26.00 WAYS: 2
PAGES: 4 DA: 1

2007-0561730

RECORDING REQUESTED BY

HAROLD MOORE

AND WHEN RECORDED MAIL TO

FII
4P
2W
1Con

NAME Harold Moore

ADDRESS P.O. Box 26876, #67

CITY San Diego,

STATE & ZIP California 92196-0876

# LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

APN NO. 450 044 17 00, 450 044 16 00, 450 044 15 00

This Deed of Trust, made this 1st day of September 2007, between John T. Hardisty and Teresa K. Hardisty, husband and wife as Joint Tenants, herein called Trustor, whose address is 3223 Zola Street, San Diego, CA 92106 Advantage Title, Inc. herein called Trustee, and Harold Moore, herein called Beneficiary,

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the City of San Diego, County of San Diego, State of California, described as:

00000 ZOLA STREET, ST CLSD ADJ&NWLY 40 FT of LOT 5 BLK 207 ROSEVILLE REFILED MAP NO 000305, DOCUMENT NO 202688
00000 ZOLA STREET, ST CLSD ADJ LOT 4 BLK 207 ROSEVILLE REFILED
03223 ZOLA STREET, LOTS 9&10 IN BLK 207 TR 305, PAGE GRID OLD 59-D5, PAGE GRID NEW 1268-C7 ROSEVILLE REFILED

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.
For the Purpose of Securing: (1) Payment of the sum of $1,500,000.00 with interest thereon according to the terms of a Promissory Note or Notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals hereof; (2)Performance of each agreement of Trustor incorporated by reference or contained herein it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a Promissory Note or Notes or reciting that they are secured by this Deed of Trust.

To Protect the Security of This Deed of Trust, Trustor Agrees:
(1) To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act

239670.1

upon said property in violations of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including

5446

those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder. Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

If the Trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first has and obtained, beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any not evidencing the same, immediately due and payable.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

JOHN T. HARDISTY

TERESA K. HARDISTY



239670.1

4

5447

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO } S.S.

On August 20, 2007, before me L.J PITZER (Notary Public), personally appeared JOHN T. HARDISTY AND TERESA K. HARDISTY, personally known to me ~~(or proved to me on the basis of satisfactory evidence)~~ to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

L. J. PITZER
COMM. #1516168
Notary Public-California
SAN DIEGO COUNTY
My Comm. Exp. Sept 24, 2008

Signature L. J. Pitzer



239670.1

3942

DOC # 2007-0561266

RECORDING REQUESTED BY

HAROLD MOORE

AND WHEN RECORDED MAIL TO

F11
4P
2W
1CC
1CON

AUG 23, 2007 10:12 AM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES: 35.00 WAYS: 2
PAGES: 4 DA: 1

2007-0561266

NAME Harold Moore

ADDRESS P.O. Box 26876, #67

CITY San Diego,

STATE & ZIP California 92196-0876

# LONG FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

APN NO. 562 220 34 00, 562 220 35 00

This Deed of Trust, made this 1st day of September 2007, between John T. Hardisty and Teresa K. Hardisty, husband and wife as Joint Tenants, herein called Trustor, whose address is 3223 Zola Street, San Diego, CA 92106 Advantage Title, Inc. herein called Trustee, and Harold Moore, herein called Beneficiary,

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the City of San Diego, County of San Diego, State of California, described as:

00410 30TH ST WEST NATIONAL CITY POR OF ST CLSD&OF LOTS 39&40&82&83&96 OF LOT97 TR1815 BAHIA VISTA, MAP NO 001815, DOCUMENT NO 624126,PAGE GRID OLD 69-B2,PAGE GRID NEW 1309-H4
00000 30TH ST NATIONAL CITY DOC83-472733 IN PAR 1 PARCEL MAP NO 07644, DOCUMENT NO 624126

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions herein to collect and apply such rents, issues and profits.
For the Purpose of Securing: (1) Payment of the sum of $1,500,000.00 with interest thereon according to the terms of a Promissory Note or Notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals hereof; (2)Performance of each agreement of Trustor incorporated by reference or contained herein it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a Promissory Note or Notes or reciting that they are secured by this Deed of Trust.

To Protect the Security of This Deed of Trust, Trustor Agrees:
(1) To keep said property in good condition and repair, not to remove or demolish any building thereon, to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor, to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof, not to commit, suffer or permit any act

239670.1

3943

upon said property in violations of law to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock, when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto, all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto, and in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his rights either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may reconvey any part of said property, consent to the making of any map or plot thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary state that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "The person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including

3944

those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees. Upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

If the Trustor shall sell, convey or alienate said property, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first has and obtained, beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any not evidencing the same, immediately due and payable.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof, all other sums then secured hereby, and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby whether or not named as Beneficiary herein in this Deed, whenever the context so requires ,the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

JOHN T. HARDISTY

TERESA K. HARDISTY



239670.1

3945

STATE OF CALIFORNIA

COUNTY OF SAN DIEGO } S.S.

On AUGUST 20, 2007, before me L.J PITZER NOTARY PUBLIC. (here insert name and title of the officer), personally appeared JOHN T. HARDISTY AND TERESA K. HARDISTY, personally known to me ~~(or proved to me on the basis of satisfactory evidence)~~ to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

L. J. PITZER
COMM. #1516168
Notary Public-California
SAN DIEGO COUNTY
My Comm. Exp. Sept 24, 2008

Signature L.J. Pitzer



239670.1

# EXHIBIT "2"

# PROMISSORY NOTE SECURED BY DEEDS OF TRUST

San Diego, California
September 11, 2007

For value received, John T. Hardisty and Teresa K. Hardisty, husband and wife as joint tenants, (hereinafter "Borrower"), hereby promise to pay to the order of Harold M. Moore (hereinafter "Lender") at 8315 Miralani Dr., San Diego, CA 92126, or at any other place that may be designated in writing by Lender, in lawful money of the United States of America, the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00), plus any and all interest thereon as stated herein. Borrower shall make interest only payments, as provided herein, on the first day of each month from the date of this Note until March 11, 2008 ("Maturity Date"). The unpaid balance of the loan will bear interest at the rate of thirteen percent (13%) per annum. Interest shall be calculated on the basis of a 360-day year and the number of days elapsed. Principal plus all accrued and unpaid interest on such principal shall be due and payable on the Maturity Date.

This Note is secured by the Long Form Deeds of Trust with Assignment of Rents executed by Borrower, as Trustor, in favor of Lender, as Beneficiary ("Deeds of Trust"), and encumbering the real properties described in the Deeds of Trust ("Properties"). The holder of this Note will be entitled to the benefits of the security provided by the Deeds of Trust and will have the right to enforce the covenants and agreements of Borrower contained in the Deeds of Trust.

From and after the Maturity Date, or earlier date on which all sums owing under this Note become due by acceleration or otherwise, all sums owing under the Note will bear interest until paid in full at the rate of thirteen percent (13%) per annum.

All payments on this Note will be applied first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; or in any other order that Lender requires.

If:

(a) Borrower fails to pay when due any sums payable under this Note;

(b) an uncured Event of Default (defined in the Deeds of Trust) occurs; or

(c) any other event or condition occurs that, under the terms of the Deeds of Trust, gives rise to a right of acceleration of sums owing under this Note,

then Lender, at its sole option, will have the right to declare all sums owing under the Note immediately due. However, if any document related to this Note provides for the automatic acceleration of payment of sums owing under this Note, all sums owing will be automatically due in accordance with the terms of that document.

Borrower will have the right to prepay, without penalty or premium, on any monthly payment date, all or any portion of the outstanding principal amount of this Note prior to the Maturity Date. Lender will apply all prepayments first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; then to the outstanding principal amount of this Note.

Borrower will pay to Lender all sums owing under this Note without deduction, offset, or counterclaim of any kind, provided however that Borrower does not waive the right to assert any counterclaim by way of a judicial action. The relationship of Borrower and Lender under this Note is solely that of borrower and lender, and the loan evidenced by this Note and secured by the Deeds of Trust will in no manner make Lender the partner or joint venture of Borrower.

No previous waiver or failure or delay by Lender in action with respect to the terms of this Note, the Deeds of Trust, or the other Loan Documents will constitute a waiver of any breach, default, or failure of condition under this Note, the Deeds of Trust, or the other Loan Documents. A waiver of any term of this Note, the Deeds of Trust, or the other Loan Documents must be made in writing and will be limited to the express written terms of the waiver. If there are any inconsistencies between the terms of this Note and the terms of any of the other Loan Documents, the terms of this Note will prevail.

The Deeds of Trust provides as follows:

"If the Trustor shall sell, convey or alienate said properties, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any not evidencing the same, immediately due and payable."

In the event any legal action or proceeding is required to enforce or interpret any provision of this Note, Borrower shall pay to Lender upon demand all costs of collection and reasonable attorney's fees incurred in connection therewith.

All notice required or permitted in connection with this Note will be in writing and will be given at the place and in the manner provided in the Deeds of Trust for the giving of notices.

If any provision of this Note shall be invalid or unenforceable for any reason, the same shall be ineffective, but the remainder of this Note shall not be affected thereby and shall remain in full force and effect. Time is of the essence of each and every obligation of Borrower and Lender. Presentment and demand for payment, notice of dishonor, protest and notice of protest are hereby waived by Borrower and Lender with respect to amounts owed by each of them respectively under the provisions of this Note. If the due

date for payment under this Note falls on a Saturday, Sunday or legal holiday, then such due date shall be extended to the next business day. None of the terms or provisions of this Note may be waived, altered, modified or amended except by a writing signed by Lender and Borrower. The provisions of this Note shall be governed by California law. The covenants, terms and conditions hereof shall bind the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors and assigns of Lender.

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first set forth above.

BORROWER:

JOHN T. HARDISTY

TERESA K. HARDISTY

Agreed and Accepted by Lender:

HAROLD MOORE

MELANIE K. MOORE
[redacted]

74-7188/724
3005002671

1206

DATE September 10,2007

PAY TO THE ORDER OF Munson Hardisty LLC $ 750,000.00

Seven Hundred Fifty Thousand Dollars------- DOLLARS

NORTHERN TRUST BANK, FSB

THE NORTHERN ANCHOR ACCOUNT

Northern Trust

MEMO Account# 5564703

Melanie K Moore MP

[redacted]

# EXHIBIT "3"

# PROMISSORY NOTE
("Note")

San Diego, California
October 15, 2008

For value received, Munson-Hardisty, LLC a Tennessee Limited Liability Corporation (hereinafter "Borrower") hereby promises to pay to the order of Harold M. Moore (hereinafter "Lender") at 8315 Miralani Drive., San Diego, CA 92126, or at any other place that may be designated in writing by Lender, in lawful money of the United States of America, a sum not to exceed Six Hundred Fifty Five Thousand Dollars ($655,000.00). The outstanding amount due under the Note will be due and payable in full on or before May 1, 2009 ("Maturity Date"). No interest will accrue if the outstanding due is completely paid prior to the Maturity Date. If there is an unpaid loan balance after May 1, 2009 the unpaid balance of the loan will bear interest at the rate of ten percent (10%) per annum. Interest shall be calculated on the basis of a 360 day year and the number of days elapsed.

From and after the Maturity Date or earlier date on which all sums owing under this Note become due by acceleration or otherwise, all sums owing under the Note will bear interest until paid in full at the rate of ten percent (10%) per annum.

All payments on this Note will be applied first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; or in any other order that Lender requires.

If:

i. the failure of the Borrower to pay make any payment of principal or interest ;

ii. the commencement by the Borrower or any successor in interest to the Borrower of a voluntary case or other proceeding in bankruptcy or seeking relief under any bankruptcy, insolvency, or similar act or law of any jurisdiction; the Borrower shall apply for a receiver, custodian or trustee for itself or any substantial part of its assets; the Borrower shall make a general assignment for the benefit of its creditors, or shall fail generally to pay its debts as they become due, or a resolution shall be adopted by the shareholder or board of directors of the Borrower to authorize any of the foregoing; and

iii. the commencement of any case, proceeding or other action against the Borrower without its consent in bankruptcy or seeking any relief under any bankruptcy, insolvency, or similar act or law of any jurisdiction; or a receiver, custodian or trustee for the Borrower for all or a substantial part of its assets

Borrower's Initials ________ Lender's Initials ________

shall be appointed; and in each case, such condition shall continue unstayed and in effect for a period of one hundred twenty (120) days.

Then Lender, at its sole option, will have the right to declare all sums owing under the Note immediately due.

Borrower will pay to Lender all sums owing under this Note without deduction, offset, or counterclaim of any kind, provided however, that Borrower does not waive the right to assert any counterclaim by way of a judicial action. The relationship of Borrower and Lender under this Note is solely that of borrower and lender, and the loan evidence by this Note will in no manner make Lender the partner or joint venture of Borrower.

No previous waiver or failure or delay by Lender in action with respect to the terms of this Note will constitute a waiver of any breach, default, or failure of condition under this Note. A waiver of any term of this Note must be made in writing and will be limited to the express written terms of the waiver. If there are any inconsistencies between the terms of this Note and the terms of any other documents, the terms of this Note will prevail.

If any provision of this Note shall be invalid or unenforceable for any reason, the same shall be ineffective, but the remainder of this Note shall not be affected thereby and shall remain in full force and effect. Time is of the essence of each and every obligation of Borrower and Lender. Presentment and demand for payment, notice of dishonor, protest and notice of protest are hereby waived by Borrower and Lender with respect to amounts owed by each of them respectively under the provisions of this Note.

If the due date for payment under this Note falls on a Saturday, Sunday or legal holiday, then such due date shall be extended to the next business day. None of the terms or provisions of this Note may be waived, altered, modified or amended except by a writing signed by Lender and Borrower.

This Note shall be governed by and construed in accordance with the laws of the State of California.

The covenants, terms and conditions hereof shall bind the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors and assigns of Lender.

In the event a legal action is brought for collection of the indebtedness hereunder, the prevailing party shall be entitled to recover its costs and expenses, including reasonable attorneys'
fees, in connection with such action.

Borrower's Initials ________

Lender's Initials ________

IN WITNESS WHEREOF, the undersigned has executed and delivered this Note as of the date first above written.

BORROWER:

By: ______________________
John Hardisty. Managing Member
MUNSON-HARDISTY

LENDER:

By: ______________________
Harold M. Moore

Borrower's Initials ________

Lender's Initials ________

# EXHIBIT "4"

# PURCHASE AND SALE AGREEMENT

This Agreement is by and between John T. Hardisty referred to herein as "Seller," and Harold M. Moore, herein, "Buyer," at San Diego, California and is made effective when approved by the Department of Housing and Urban Development.

WITNESSETH:

Whereas, both Buyer and Seller are current members of Legacy Pointe Apartments, LLC, a Tennessee Limited Liability Corporation ("Legacy Point");

Whereas, the sole purpose of Legacy Point pursuant to that certain Second Amended and Restated Operating Agreement of Legacy Pointe Apartments, LLC is to acquire, develop, construct, own, operate and sell a 252 apartment project located in Knoxville, Knox County, Tennessee known as Legacy Point Apartments (the "Project").

Whereas, Seller has a net ownership percentage of 27 percent of the membership interest in Legacy Point;

Whereas, Buyer wants to buy Seller's remaining membership shares and Seller wants to sell its remaining membership shares to Buyer.

Whereas, under the Second Amended and Restated Operating Agreement of Legacy Pointe Apartments, LLC members can transfer shares to other members without necessity of further consent.

Whereas, Seller also owns a 50 percent share of Munson-Hardisty, LLC, a Tennessee Limited Liability Corporation, the general contractor of the Project. .

Whereas, Seller is personally liable under a payment and performance bond(s) (the "Bond") guaranteeing payment and completion of the Project.

Buyers' Initials HM  Sellers' Initials JH

Whereas, certain parties who performed work and/or supplied materials for the construction of the Project have not been paid for such work or material, and consequently such parties have a claim against the Bond.

Whereas, in order to prevent immediate claims against the Bond, Buyer wishes for Seller to purchase any and all rights to receive a sum of money that has accrued to any person or entity, who has a claim against the Bond, as a result of performing work and/or supplying materials for the construction of the Project.

NOW, THEREFORE, IT IS AGREED:

1. Seller shall sell to Buyer who shall purchase from Seller on the terms and conditions set forth in this Agreement Seller's remaining 27 percent membership interest in Legacy Point, which represents all of the remaining percentage membership shares Seller has in Legacy Point.

2. As consideration for Seller conveying a 27 percent membership interest in Legacy Point , Buyer shall purchase and retain by way of assignment any and all rights to receive a sum of money that has accrued to any person or entity, who has a claim against the Bond, as a result of performing work and/or supplying materials for the construction of the Project, provided however, Buyer's obligation hereunder shall not exceed One Million Five Hundred Thousand Dollars ($1,500,000).. Buyer further agrees not to pursue any claim against the Bond until May 1, 2009. Except as limited by the preceding sentence, Buyer reserves all rights and remedies to pursue and collect any sum of money lawfully due.

3. The Seller hereby warrants and represents to the Buyer that:

Buyers' Initials [initials] 2 Sellers' Initials [initials]

(a) There are no obligations, contracts, or liabilities affecting Legacy Point that are not shown on the books of account.

(b) No litigation, arbitration or other proceedings, legal, equitable, or administrative are pending or threatened which might affect Legacy Point, with the exception of the Department of Labor claim against Mitchell Electric.

(c) Attached as Exhibit "A" is a list of all the accounts payable of Legacy Point as of the close of business on January 15, 2009 showing (i) the vendor name, (ii) the amount owed; (iii) the date the amount was due and (iv) applicable discounts, if any.

(d) The transfer of the shares contemplated by this Agreement does not violate the provisions of Tennessee Annotated Code or any other Agreement entered into among the shareholders of Legacy Point regarding transfer of its membership shares.

(e) Seller enters into this Agreement freely, voluntarily, and in the absence of any duress from Buyer. In entering into this Agreement, Seller does not rely on any representations by the Buyer or his agents concerning any subject matter whatsoever including, but not limited to, financial and/or legal impacts of construction, sale, or any ancillary matter.

4. Except as otherwise expressly provided herein, Seller shall indemnify and hold Buyer free and harmless from any and all costs incurred, claims, losses, damages, injuries, and liabilities arising from or on account of Seller's operation of Legacy Point or Seller's ownership of any of the assets of the business before February 28, 2009.

Buyers' Initials ________  Sellers' Initials ________

5. Except as otherwise expressly provided herein, Buyer shall indemnify and hold Seller free and harmless from any and all costs incurred, claims, losses, and damages, injuries, and liabilities arising from or on account of Buyer's operation of Legacy Point from and after March 1, 2009.

6. No further corporate action or proceeding on the part of Legacy Point is necessary or appropriate with respect to the execution and delivery of this Agreement.

7. This Agreement or any interest herein shall not be assigned or transferred by either party without the written consent of the other, except transfers into a Trust for estate planning purposes.

8. This Agreement shall be binding on and shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of the parties hereto, but nothing in this paragraph shall be construed as consent to an assignment of this Agreement by either party except as set forth in paragraph 8 above.

9. The parties agree:

a. Each party had the opportunity to seek advice and assistance of counsel in preparation, review, and/or modification of this Agreement. No provision of this Agreement shall be interpreted against the Buyer solely on the basis that he prepared the Agreement.

b. Each party shall pay his own fees and expenses of all legal representation and other advice, if any, respectively incurred in connection with the negotiation and preparation of this Agreement.

10. This Agreement shall be interpreted in accordance with the laws of the State of California. Should either party commence a legal action to enforce the terms of

Buyers' Initials HLM



Sellers' Initials

this Agreement, the Superior Court of San Diego County, California will be the exclusive venue for the litigation of disputes.

11. If it shall be necessary for Buyer or Seller to institute legal proceedings regarding this Agreement, the party prevailing in any such proceeding shall be entitled, in addition to such other relief that may be granted, to a reasonable sum for attorney's fees.

Dated: 1/26-09

SELLER

By: John T. Hardisty

Dated: 2/2/09

BUYER

By: Harold M. Moore

Buyers' Initials HM



Sellers' Initials

# SPOUSAL CONSENT TO PURCHASE AND SALE AGREEMENT

I, Teresa K. Hardisty, acknowledge that I have read the Purchase and Sale Agreement ("Agreement") and am familiar with its contents. I hereby provide my informed consent to the Agreement.

In providing my consent, I acknowledge a community property interest in the assets subject to sale. Not withstanding this community property interest, I make no objection to the transaction described above.

In executing this Agreement I do not rely on any representations by Buyer or his agents concerning any subject matter whatsoever including, but not limited to financial and/or legal impacts of construction, sale, or any ancillary matter.

Dated: 1/28/09

By: Teresa K. Hardisty

Buyers' Initials AH



Sellers' Initials TH

CONFIDENTIAL

HMM0006154

# EXHIBIT "5"

# ASSIGNMENT

This ASSIGNMENT AGREEMENT (the "Assignment") is entered into as of the 28th day of February, 2009, by and among John T. Hardisty, on the one hand, (the "Assignor"), and Harold M. Moore, on the other hand, (the "Assignee").

WHEREAS, both Assignee and Assignor are current members of Legacy Pointe Apartments, LLC, a Tennessee Limited Liability Corporation (the 'Company");

WHEREAS, the sole purpose of Legacy Point pursuant to that certain Amended and Restated Operating Agreement of the Company is to acquire, develop, construct, own, operate and sell a 252 apartment project located in Knoxville, Knox County, Tennessee known as Legacy Point Apartments;

WHEREAS, Assignor currently has a twenty-seven percent (27%) Percentage Interest (as such term is defined in the Company's Operating Agreement) in the Company;

WHEREAS, Assignor desires to assign all his Percentage Interest in the Company to Assignee;

WHEREAS, pursuant to the Amended and Restated Operating Agreement of the Company, members can transfer shares to other members without necessity of consent of any other member of the Company;

WHEREAS, the U.S. Department of Housing and Urban Development approved this transfer by letter dated February 24, 2009.

NOW, THEREFORE, the mutual obligations of the parties under this Assignment., ten dollars ($10.00) paid by Assignee to Assignor, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agreed as follows:

1. Assignor hereby assigns, transfers, conveys and sets over unto Assignee any and all of Assignor's right, title and interest in and to all of Assignor's Percentage Interest in the Company (as such term is defined in the Company's Operating Agreement) totaling twenty-seven percent (27%). Assignee hereby accepts said assignment, transfer and conveyance.

In witness whereof, the parties have executed and delivered this Assignment as of the day and year first above written.

John T. Hardisty

Harold M. Moore

# EXHIBIT "6"

# CONTRIBUTION AGREEMENT

THIS CONTRIBUTION AGREEMENT (the "Agreement") is made and entered into as of the 23rd day of February, 2009 by and between Legacy Pointe Apartments, LLC (the "Company"), Hal Moore, Munson-Hardisty, LLC, Craig Mason, and John Hardisty (hereinafter Hal Moore, Munson-Hardisty, LLC, Craig Mason, and John Hardisty collectively shall be referred to as the "Members" or individually as a "Member").

## W I T N E S S E T H:

WHEREAS, the Members collectively own one-hundred percent (100%) of all the membership interests of the Company, a limited liability company organized pursuant to Tennessee Code Annotated Section 48-201-101, et. seq.;

WHEREAS, the Company is the sole owner of that certain real estate development project located in Knoxville, Tennessee and commonly referred to as Legacy Pointe Apartments (the "Project");

WHEREAS, pursuant to Section 2.02 of that certain AMENDED AND RESTATED OPERATING AGREEMENT OF LEGACY POINTE APARTMENTS, LLC dated August, 18, 2007, no Member may be required to make any additional contribution to the Company;

WHEREAS, the Company is currently in need of and/or will need in the future additional capital in order to complete and operate the Project;

WHEREAS, all Members desire that the Project be completed and wish to ensure that it has the initial funds to successfully operate;

WHEREAS, Hal Moore is currently the only Member willing to contribute additional capital to the Company.

NOW, THEREFORE, in consideration of the promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members do hereby agree as follows:

1. Additional Capital Contribution.

(a) Subject to the terms set forth in this Agreement, Hal Moore shall make a temporary contribution of up to $500,000.00 additional capital (the "Additional Capital") to the Company as necessary to ensure the completion and initial successful operation of the Project.

(b) Date of Contribution. Hal Moore may contribute the Additional Capital to the Company as one lump sum or by way of multiple contributions. Hal Moore shall contribute the Additional Capital on such date(s) and at such time(s) as Hal Moore and the Chief Manager of the

Company mutually agree.

2. Assignment of Distributions. Hal Moore shall be entitled to receive all distributions made by the Company to its members from the time of the making the Additional Capital contribution, or any portion thereof, until the full amount of the Additional Capital contribution has been distributed by the Company to Hal Moore. In furtherance thereof, each Member hereby irrevocably directs the Company to pay all distributions that are payable by the Company to its members directly to Hal Moore, without the necessity of further instruction or documentation, provided such direction shall automatically terminate once Hal Moore has received the amount of the contributed Additional Capital. The Members hereby acknowledge that Hal Moore is unwilling to contribute the Additional Capital, or any portion thereof, to the Company without receiving the assignment set forth in this paragraph.

3. Approval. The parties executing this Agreement are the Company and all Members of the Company and by executing this Agreement, each party approves this Agreement in accordance with TCA Section 48-233-101(a)(2). This Agreement shall be irrevocable until all Additional Capital contributions are returned to Hal Moore.

3. Miscellaneous. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and may not be amended, modified or terminated (unless otherwise expressly permitted pursuant to the provisions hereinabove contained) except by a written instrument signed by each of the parties hereto. In the event any party commences any action or proceeding to enforce its rights hereunder, the prevailing party or parties in any such action shall be entitled to recover all of their costs and expenses, including reasonable attorneys fees, incurred in connection therewith from the non-prevailing party or parties, both in connection with the original action relating thereto and any and all appeals therefrom. No party shall be construed as having waived any of its rights hereunder unless such waiver shall be in writing signed by the party against whom such waiver is being sought. Neither the failure of any party to exercise any power given such party hereunder or to insist upon strict compliance by any other party with its obligations hereunder, nor any custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of any party's right to demand exact compliance with the terms hereof. This Agreement shall be construed and interpreted under the laws of the State of Tennessee. It is agreed that any suit, action or proceeding brought with respect to any matters arising out of this Agreement may be brought only in the courts of the State of Tennessee, County of Knox, or in the United States courts located in the County of Knox, State of Tennessee. Each party hereby irrevocable waives any objection that it may now or in the future have to personal jurisdiction over it of, or to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in, the courts above described, and each party further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The parties agree that this Agreement is the result of negotiation by the parties, each of whom was represented by counsel, and thus, this Agreement shall not be construed against the drafter thereof. No warranties, representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein or incorporated herein by reference shall be of any force



CA

or effect. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute but one and the same instrument. Time shall be of the essence of this Agreement and each and every term and condition hereof. All references herein to the singular shall include plural, and all references herein to the masculine gender shall include the feminine and neuter genders, and vice versa.

IN WITNESS WHEREOF, this Agreement has been duly executed by the parties as of the date written above.

LEGACY POINTE APARTMENTS, LLC

By: John Hardisty

Its: Chief Manager

MUNSON-HARDISTY, LLC

By: John Hardisty

Its: Managing Member

Hal Moore

Craig Mason

John Hardisty

# EXHIBIT "7"

# CONTRIBUTION AGREEMENT

THIS CONTRIBUTION AGREEMENT (the "Agreement") is made and entered into as of the 31 ST day of May 2009 by and between Legacy Pointe Apartments, LLC (the "Company"), Harold Moore, Munson-Hardisty, LLC, and Craig Mason (hereinafter Harold Moore, Munson-Hardisty, LLC, and Craig Mason collectively shall be referred to as the "Members" or individually as a "Member").

## WITNESSETH:

WHEREAS, the Members collectively own one-hundred percent (100%) of all the membership interests of the Company, a limited liability company organized pursuant to Tennessee Code Annotated Section 48-201-101, et. seq.;

WHEREAS, the Company is the sole owner of that certain real estate development project located in Knoxville, Tennessee and commonly referred to as Legacy Pointe Apartments (the "Project");

WHEREAS, pursuant to Section 2.02 of that certain AMENDED AND RESTATED OPERATING AGREEMENT OF LEGACY POINTE APARTMENTS, LLC dated August, 18, 2007, no Member may be required to make any additional contribution to the Company;

WHEREAS, the Company is currently in need of and/or will need in the future additional capital in order to complete and operate the Project;

WHEREAS, all Members desire that the Project be completed and wish to ensure that it has the initial funds to successfully operate;

WHEREAS, Hal Moore is currently the only Member willing to contribute additional capital to the Company.

WHEREAS, there exists a previous CONTRIBUTION AGREEMENT dated February 23, 2009 for $500,000.00

NOW, THEREFORE, in consideration of the promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Members do hereby agree as follows:

1. Additional Capital Contributions.

(a) Subject to the terms set forth in this Agreement, Hal Moore shall make a temporary contribution of up to $1,000,000.00 additional capital (the "Additional Capital") to the Company as necessary to ensure the completion and initial successful operation of the Project.

(b) Date of Contribution. Hal Moore may contribute the Additional Capital to the Company as one lump sum or by way of multiple contributions. Hal Moore shall contribute the Additional Capital on such date(s) and at such

CLM

time(s) as Hal Moore and the Chief Manager of the Company mutually agree.

2. __Assignment of Distributions.__ Hal Moore shall be entitled to receive all distributions made by the Company to its members from the time of the making the Additional Capital contribution or any portion thereof, until the full amount of the Additional Capital contribution has been distributed by the Company to Hal Moore. In furtherance thereof, each Member hereby irrevocably directs the Company to pay all distributions that are payable by the Company to its members directly to Hal Moore, without the necessity of further instruction or documentation, provided such direction shall automatically terminate once Hal Moore has received the amount of the contributed Additional Capital. The Members hereby acknowledge that Hal Moore is unwilling to contribute the Additional Capital, or any portion thereof, to the Company without receiving the assignment set forth in this paragraph.

3. __Approval.__ The parties executing this Agreement are the Company and all Members of the Company and by executing this Agreement, each party approves this Agreement in accordance with TCA Section 48-233-101(a)(2). This Agreement shall be irrevocable until all Additional Capital contributions are returned to Hal Moore.

4. __Miscellaneous.__ This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and may not be amended, modified or terminated (unless otherwise expressly permitted pursuant to the provisions hereinabove contained) except by a written instrument signed by each of the parties hereto. In the event any party commences any action or proceeding to enforce its rights hereunder, the prevailing party or parties in any such action shall be entitled to recover all of their costs and expenses, including reasonable attorney's fees, incurred in connection therewith from the non-prevailing party or parties, both in connection with the original action relating thereto and any and all appeals there from. No party shall be construed as having waived any of its rights hereunder unless such waiver shall be in writing signed by the party against whom such waiver is being sought. Neither the failure of any party to exercise any power given such party hereunder or to insist upon strict compliance by any other party with its obligations hereunder, nor any custom or practice of the parties at variance with the terms hereof, shall constitute a waiver of any party's right to demand exact compliance with the terms hereof. This Agreement shall be construed and interpreted under the laws of the State of Tennessee. It is agreed that any suit, action or proceeding brought with respect to any matters arising out of this Agreement may be brought only in the courts of the State of Tennessee, County of Knox, or in the United States courts located in the County of Knox, State of Tennessee. Each party hereby irrevocable waives any objection that it may now or in the future have to personal jurisdiction over it of, or to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in, the courts above described, and each party further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. The parties agree that this Agreement is the result of negotiation by the parties, each of whom

CLM

was represented by counsel, and thus, this Agreement shall not be construed against the drafter thereof. No warranties, representations, inducements, promises, or agreements, oral or otherwise, between the parties not embodied herein or incorporated herein by reference shall be of any force or effect. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which, when taken together, shall constitute but one and the same instrument. Time shall be of the essence of this Agreement and each and every term and condition hereof. All references herein to the singular shall include plural, and all references herein to the masculine gender shall include the feminine and neuter genders, and vice versa.

**IN WITNESS WHEREOF,** this Agreement has been duly executed by the parties as of the date written above.

LEGACY POINTE APARTMENTS, LLC

By: ______________________
Harold Moore, Chief Manager

MUNSON-HARDISTY, LLC

By: ______________________
John Hardisty, Managing Member

______________________
Craig Mason

______________________
Harold Moore

**FEDERAL PROOF OF SERVICE**
*Hardisty v. Moore et al.*
Case No. 3:11-cv-01591-AJB-BLM

I, Gary E. Scalabrini, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Gibbs, Giden, Locher, Turner & Senet LLP, 1880 Century Park East, 12th Floor, Los Angeles, California 90067-1621. I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

On November 22, 2013, I served the document(s) described as:
**DECLARATION OF HAROLD MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THER ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**

The documents were served by the following means:

☒ **BY COURT'S CM/ECF SYSTEM:** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed below:

Ali M.M. Mojdehi
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
(858) 550-6055
amojdehi@cooley.com

William B. Federman
Federman & Sherwood
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560
Email: wbf@federmanlaw.com

I declare that I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 22, 2013, at Los Angeles, California.

s/ Gary E. Scalabrini
Gary E. Scalabrini
Email: gscalabrini@gglts.com

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP