Michael I. Wayne, Esq. (CSB # 169840)
mwayne@gglts.com
Gary E. Scalabrini, Esq. (CSB # 161902)
gscalabrini@gglts.com
GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
(310) 552-3400
Fax (310) 552-0805

Attorneys for Defendants

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN T. HARDISTY,<br><br>Plaintiff,<br><br>v.<br><br>HAROLD MAXINE MOORE; ELAINE K. MOORE (aka MELANIE K. MOORE); STATE INSULATION, LLC, an Arizona limited liability company; STATE INSULATION, LLC, a Nevada limited liability company; THE 1998 HAROLD M. MOORE REVOCABLE TRUST; and MARK PELUSO, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 3:11-cv-01591-AJB-BLM<br><br>**DECLARATION OF MELANIE MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: January 23, 2014<br>Time: 2:00 p.m.<br>Crtm: 3B |

///

///

///

I, MELANIE MOORE, declare as follows:

1. I am presently married to Defendant, Harold Moore ("Hal Moore"). Unless otherwise stated, I know the following to be true of my personal knowledge and, if called as a witness, I could and would testify competently thereto.

2. My husband, Hal Moore generally does not correspond by email. Consequently, I would regularly receive and send correspondence to and from Plaintiff, John Hardisty, by email relating to the Legacy Pointe Apartments Project.

3. On or about July 28, 2007, I received an email addressed to Hal Moore from John Hardisty. A true and correct copy of the email is attached hereto and incorporated herein as Exhibit 1. I provided a copy of these emails to my husband on the date received and was present when he reviewed the emails.

4. On or about August 16, 2007, I sent an email to Defendant, Mark Peluso ("Peluso"), with a copy to Mr. Hardisty. On the same day, I received a response from Mr. Hardisty. True and correct copies of my email and Mr. Hardisty's response is attached hereto and incorporated herein as Exhibit 2.

5. On or about August 20, 2008, I received an email to Hal Moore from John Hardisty. A true and correct copy of the email is attached hereto and incorporated herein as Exhibit 3.

6. On or about August 28, 2008, I received an email to Hal Moore from Mr. Hardisty. Attached to the email was another email from Ric Zimmerman, with an attached file. True and correct copies of the emails and attachment are attached hereto and incorporated herein as Exhibit 4.

///

///

///

///

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

7. I provided a copy of these emails to my husband on the date received and was present when he reviewed the emails.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on November 23, 2013, at San Diego, California.

MELANIE MOORE

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

# EXHIBIT "1"

Gmail by Google

Melanie K Moore <melkmoo@gmail.com>

# FW: C450

1 message

John Hardisty <john@hardistyconstruction.com> Sat, Jul 28, 2007 at 12:36 PM
To: melkmoo@gmail.com

Hal,

I have run the numbers as low as 85% vacancy.

I intend to save at least $1m in constr costs, and the lower loan and increased cash flow makes the project perform quite well at 90%.

You make money when you're sleeping, so I wasn't under the illusion that I'd really be able to show you a project that would make enough money for you, or that "being and investor" with me would really interest you either.

Look at what I did (with your help) and how much money I generated to work my way out of the situation I was in.

Projects like this don't come along very often.

Think of the big hits you had and what it took to pull them off.

I'll make sure you get at least 5% interest per year. I can't give you money due to Craig Mason, but that's only ~14.9% of the overall deal.

The 85.1% or more, (if I save money that dilutes Craig Mason's interest which can go down to a min. of 10%) that remains under my control can all accrue to you.

I'll cross secure your money with my interest in the project and my property in Nat. City.

There are all sorts of ways to scramble the numbers.

1. Save $1m.
2. Give you interest first and not take mine(unless there is any left after paying you a minimum amount) and use it to build up a reserve, which I would do anyway.
3. I'll only take some of the contractors "general OH, and general conditions" and use the rest to pay down your principal.
4. With credits at the close of escrow, I should be able to return $200K after our first draw.

Besides working 24 hours a day, alot of this is the way you would be doing it,to guarantee good results. I learned more from you than you might think.

I will make this project pay off.

But I need your help as much as your motivation to make money.

I've been renting Mammoth because of the market, but I'll still sell it in a year or 2 and pay you off for this project.

I'll give you the money I earn from litigation and pay you off early.

I could go on and on.

Also, remember I'm the only one you can completely trust with your life, except Melanie, and I will not let you down or lose your money on this.

Thanks,

John

# EXHIBIT "2"

Gmail by Google

Melanie K Moore <melkmoo@gmail.com>

---

# From Hal

2 messages

---

**Melanie K Moore** <melkmoo@gmail.com>
To: Mark Peluso <mpeluso@greatwd.com>
Cc: John Hardisty <john@hardistyconstruction.com>

Thu, Aug 16, 2007 at 4:06 PM

Hal needs from Hardisty in writing:

Hal Moore @ 1.5 million gets:

1. 13% interest on the 1.5 million paid monthly by the LLC or JH? Do the partners agree to this and in writing?
2. Hal to get 50% of the cash flor for five years or until the project is sold
3. Hal to receive 50% of the profits on sale of the property

Before depositing any money need:

1. signed agreement with John Hardisty to cover all aspects
2. status of bond--bond commitment
3. Partners to sign any and all agreements I have with JH
4. Attorney review and approval

---

**John Hardisty** <john@hardistyconstruction.com>
To: Melanie K Moore <melkmoo@gmail.com>

Thu, Aug 16, 2007 at 6:33 PM

I am going to pay Hal 13%. It will come from the Builders OH, which is in the construction loan. There is no one other than me to agree to this.

The MOU and the Operating Agreement, has Hal at 50% No - if's, and's, or but's. That's simple.

50%, is 50% of cash flow, at sale, everything. I am 90.1% of the LLC now.

The agreement between Hal and I is in the MOU. There may not be time to get Hal approved by HUD. Approval is no problem, but still takes them a few days or whatever.

I will be pledging, assigning, (look at the MOU) 50% of the interest in Legacy Pointe to Hal. I will by separate agreement, be agreeing to pay the 13%.

The bond will be "just in time". Your money coming in, and the preparation to close all backs the confidence of the Bonding Company. If we don't get the bond, we don't close and everyone get's their money back.

Part of the money that the Bonding Company is looking at is, the money that "needs" to be in Legacy Pointe LLC now. Look at the MOU. Have your attorneys look it over, but we could run out of time. HUD's committment can expire at any time they choose. There are many factors compelling them to hold the loan open at 5.8% for us, but there is no guarantee after next Friday.

The other factor is the Schaad's. They have continued to agree to extend the deadline to close and there is no reason for them to extend past the end of the month. They have been given non refundable money from Craig Mason all along and they are wealthy land owners and could easily develope this themselves. <u>That's what I worry about.</u>

Remember when I first made the offer, due to time. I will give you 13% secured with everything I own, so I can close this deal and not lose it.



CONFIDENTIAL

HMM0002965

As soon as it's closed, I can transfer 50% of the ownwership to you, no problem, but not if I blow the deal and don't close.

The 13% will come from my Builder's fee, and I'll pay you first before I take any money. I agree to pay you, just like before.

Please tell me now how you can get enough of what you need to be able to wire money in by **Mon or Tues**.

Otherwise it won't be in the Bank by **Wed.** so the **2 "Letter's of Credit** (and set aside agreements can be executed) and originals sent to Wells in Knoxville Thurs for a Friday close.

We'll need funds in by **Tues.** for clearance on **Wed.** to have funds wired **Thurs.** morning for the actual closing $566K on for **Friday** close as well.

If you need me to fly up to see you, or talk to your attorney, let me help so we don't miss our deadlines.

**Look at it like this.**
I sign a note for 13% secured against everything, my properties and my interest in the deal.

I close the deal.

You get 1/2 of the deal and no one has to approve. I am giving you "my" stock, which will be 50% of the deal.

That's it.

Let me know if I'm missing something. You know I will jump through hoops for you.

Thanks,

John Hardisty

Call me in the morningif you can.

JH

---

**From:** Melanie K Moore [mailto:melkmoo@gmail.com]
**Sent:** Thu 8/16/2007 4:06 PM
**To:** Mark Peluso
**Cc:** John Hardisty
**Subject:** From Hal

[Quoted text hidden]

# EXHIBIT "3"

Gmail by Google

Melanie K Moore <melkmoo@gmail.com>

# Legacy Pointe Analysis

1 message

John Hardisty <jhardisty@hardistyconstruction.com> Wed, Aug 20, 2008 at 1:00 AM
To: melkmoo@gmail.com

Hal,

Take a look and call me after lunch.

I've tried to do the best I can to describe what we've done and why and differentiate the Legacy Pointe issues from Munson Hardisty.

John Munson, whether I like it or not has approached this project with his contract in mind and has upgraded and spent money the way he always has.

He'll bring the project in and not exceed his contract price and finish earlier than his contract requires.

I'm with you on your efforts and what you think and want, but we haven't done too bad.

This was an enormous project and I hope after you read my analysis you'll understand how well we've done and how fantastic the project is.

No doubt we could have done better, and different.

You're the boss, and my partner. So now's your time to do your thing.

...n sorry I'm so tired and finger typing a document like this took me 4 1/2 hours.

So I didn't have the heart to go another hour or more, editing it to sound better and adding additional info that might make you happier. One example is savings on the interest reserve.

There's more but you'll be able to use this for our purposes.

Thanks again,

John

Thanks,

John Hardisty

Hal Moore letter.doc
51K

# EXHIBIT "4"

Gmail by Google

Melanie K Moore <melkmoo@gmail.com>

---

# FW:

2 messages

---

**John Hardisty** <jhardisty@hardistyconstruction.com> Thu, Aug 28, 2008 at 4:44 PM
To: melkmoo@gmail.com

Hal,

Here is a quick spread sheet to add (probably confusion) clarity to what Jay, Mark, and Ric have been tuning in on as we've been giving you our numbers.

Items 1, 2, 3 were taken at the close of escrow from our operating funds. If you add the KUB cash deposit for the electrical we were out of pocket ***$385,609*** at the beginning of the project.

Items 12, 13, 14, 15, and 18 = **$263,617** included in the Rough Carpentry that were directly applied to 84 Lumber's budget.
12. We would have all agreed to upgrade to Trex. The alternative was #3 pressure treated yellow pine. + **$65,617**
13. The Handicap ordinances changed Jan 1, and (are mistyped - not doors) are for windows that were upgraded from the original plans.+ **$40,000**
14. The cost of lumber went down before it went up and this is the net change. We could not hold prices after Jan 1, 2008. + $28,000
15. The breezeways were not detailed well on the plans and the structural requirements and framing components that we had to use to work out how to build them were +~**$97,000**
18. The Handicap ordinance required door size changes after the framing was complete. + **$33,000**
This **$263,617** is arguably not their fault.

Items 4, 5, and 6 are expenses due to code change requirements by the building inspector. + **$115,367**

Item 10 is due to the increase in oil prices. + **$32,000**

Items 19, 20 and 2 were approved directly by you for the access road. In fact you said "you" would pay for it, but you don't need to. + **$98,500**

Item 11, is for the fence between the black community and the project and we all approved that **$40,000**

Item 23, 24, 25, and 26 were to remove the pond, relocate the pool, and set us up for tennis courts in the future with the Army Corps of Engineers. + **$107,500**

Item 17, Hardi siding was made before some of these code changes came to haunt us and we could not go back of change to the old siding that would not match. + **$250,000** But there will never be any painting or maintenance required and with the Trex decking will be a good selling point and maintenance savings.

So where 84 Lumber has been incorrect in their take off, I shoved it up their ass, and they don't know I'm overstating the problem and making them finance the costs for all our changes.

We have been able to absorb all these expenses and will still come in at or under the $18m.

So you can stop having to take your blood pressure medicine.

Anyway, Trailer is moved to the top. Carpet is in Bldg #1 so far. We are done with the critical inspections and elec meters are being set in all 3 buildings. We are on track for Tues to start allowing tenants to move in.

I'll call you at 6 your time as planned.

Fred will meet with me next Tues and we'll know by then what he may do.

We are OK right now as you know.

I would like to borrow $20K for payroll.

I have a retention check from Legacy for $15K coming in any day, and $10K from a job that had been paid up.

I finally have Tom Cobb, of TM Cobb agreeing to direct his insurance carrier to pay their outstanding bills of $188K.

I have Gypsum Construction's General Council directing the carriers to pay their outstanding bills, $79,368.

Zurich Insurance and ATI windows owes me almost $200K and I am now talking directly with the new Regional VP who got me paid last year on Executive Plumbing.

I'll pay whatever you want. I need a little more staying power.

I spent all my savings, and the kids college money and everything else to stay afloat and as you know Tuition for everyone was due and paid this month for school.

I'll go over Melhorn and the companies with you when we meet. But I paid off a lot of debt, and you, and the other stuff mentioned in the email I sent that pissed you off. (I was meaning good things when I sent it)

And the big heartache is the $380K line of credit that has been frozen by the Fund Control on Legacy Pointe. And working so hard on a $20m project for no profit where any revenue to me is staying in, makes it really tough until I'm done.

That is my operating Line which would be all I need if it was not tied up by the project.

Thanks for everything,

John Hardisty

---

**From:** Ric Zimmerman [mailto:rzimmerman@axelllc.biz]
**Sent:** Wed 8/27/2008 7:35 PM
**To:** John Hardisty
**Subject:**

John,

Here is the spread sheet on Change Orders

Ric Zimmerman

Axel LLC

rzimmerman@axelllc.biz

919-801-0147 phone

919-363-8989 fax

**Legacy Pointe Change Order Spread Sheet.xls**
24K

---

**Melanie K Moore** <melkmoo@gmail.com> Thu, Aug 28, 2008 at 4:51 PM
To: Mark Peluso <mpeluso@greatwd.com>

Please print out and fax to me so I can show Hal when he gets home; don't forget the attachment too
[Quoted text hidden]

---

**Legacy Pointe Change Order Spread Sheet.xls**
24K

Legacy Pointe LLC
Capital Account at Closing

# Legacy Pointe Apartments

| Change Order # | Change Order | Amount |
|---|---|---|
| 1 | Additional Bond Expense | $ 158,839.00 |
| 2 | Additional GL Insurance | $ 68,970.00 |
| 3 | Fund Control Cost | $ 57,000.00 |
| 4 | Booster Fans 1st Call Mechnical | $ 69,153.00 |
| 5 | Booster Fans Mitchel Electric | $ 11,214.00 |
| 6 | Additional Fire hydrants | $ 35,000.00 |
| 7 | Archtectual Plans | $ 1,500.00 |
| 8 | Additional Site Utilities | $ 48,933.00 |
| 9 | New Pool Pump House | $ 49,844.00 |
| 10 | Increase in cost of road paving | $ 32,000.00 |
| 11 | Chain link fence | $ 40,000.00 |
| 12 | Upgrade to Trek decking | $ 65,617.00 |
| 13 | Additional doors and windows for Handicap Apt. | $ 40,000.00 |
| 14 | Cost Increase oflumber | $ 28,000.00 |
| 15 | Code changes to breeze ways | $ 97,000.00 |
| 16 | 252 Ceiling Fans in living rooms | $ 15,000.00 |
| 17 | Additional cost for Hardiplank siding | $ 250,000.00 |
| 18 | Code Changes for handicap doors | $ 33,000.00 |
| 19 | New Access Rd Grading | $ 68,500.00 |
| 20 | New Access Rd Base | $ 20,000.00 |
| 21 | New Access Rd Endgineering | $ 10,000.00 |
| 22 | Pond Renovation's (Blount) | $ 50,000.00 |
| 23 | Pond Retaining Wall (Ceasar) | $ 25,000.00 |
| 24 | Pond Mats (84) | $ 12,000.00 |
| 25 | Pond -Concrete Pipe | $ 8,000.00 |
| 26 | Pond Engineering | $ 2,500.00 |
| | | |
| Total | | $ 1,297,070.00 |

# FEDERAL PROOF OF SERVICE
*Hardisty v. Moore et al.*
Case No. 3:11-cv-01591-AJB-BLM

I, Gary E. Scalabrini, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Gibbs, Giden, Locher, Turner & Senet LLP, 1880 Century Park East, 12th Floor, Los Angeles, California 90067-1621. I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made.

On November 22, 2013, I served the document(s) described as:
**DECLARATION OF MELANIE MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**

The documents were served by the following means:

☒ **BY COURT'S CM/ECF SYSTEM:** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed below:

Ali M.M. Mojdehi
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
(858) 550-6055
amojdehi@cooley.com

William B. Federman
Federman & Sherwood
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
(405) 235-1560
Email: wbf@federmanlaw.com

I declare that I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on November 22, 2013, at Los Angeles, California.

s/ Gary E. Scalabrini
Gary E. Scalabrini
Email: gscalabrini@gglts.com

GIBBS, GIDEN, LOCHER, TURNER & SENET LLP