Michael I. Wayne, Esq. (CSB # 169840)
mwayne@gglts.com
Gary E. Scalabrini, Esq. (CSB # 161902)
gscalabrini@gglts.com
GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
(310) 552-3400
Fax (310) 552-0805

Attorneys for Defendants,
HAROLD MAXINE MOORE,
ELAINE K. MOORE, *et al*.



**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JOHN T. HARDISTY,

Plaintiff,

v.

HAROLD MAXINE MOORE; ELAINE K. MOORE (aka MELANIE K. MOORE); STATE INSULATION, LLC, an Arizona limited liability company; STATE INSULATION, LLC, a Nevada limited liability company; THE 1998 HAROLD M. MOORE REVOCABLE TRUST; and MARK PELUSO, an individual,

Defendants.

Related Counter-Claims.

Case No. 3:11-cv-01591-AJB-BLM

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION FOR SUMMARY JUDGMENT**

Date: February 13, 2014
Time: 2:00 p.m.
Crtm: 3B

TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Defendants respectfully submit the following memorandum of points and authorities in reply to Plaintiff's Opposition to their Motion for Summary Judgment, or, in the alternative, Motion for Partial Summary Judgment.

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In his response to the Defendants' motion for summary judgment or partial summary judgment, Plaintiff contends that there exist triable issues of fact as to each of the causes of action. In making his contention, however, Plaintiff relies solely on the allegations contained in his complaint and statements his declaration, the latter of which are either conclusory or contradict his prior testimony and statements. It is also apparent from his opposition that Mr. Hardisty misunderstands the case authority upon which he relies and misconstrues the essential elements of his claims. Ultimately, as explained in Defendants' moving papers and below, Plaintiff has failed to raise a triable issue of fact as to any of the claims, and the present motion for summary judgment should be granted in its entirety.

## II. ARGUMENT

### A. Legal Standard for Opposing a Motion for Summary Judgment

In opposing summary judgment, a plaintiff is not entitled to rely on the allegations of his complaint or upon conclusory allegations in affidavits. Fed.R. Civ.P. 56(e), *see, Hernandez v. Spacelabs Medical Inc*., 343 F.3d 1107, 1112 (9th Cir.2003). Further, a party cannot create an issue of fact by submitting a declaration contradicting his own deposition or other prior sworn testimony. *See, Cleveland v. Policy Management Systems Corp*., 526 U.S. 795, 806; *Van Asdale v. International Game Tech*, 577 F.3d 989 998 (9th Cir. 2009). Nor can a party "manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co*., 690 F.2d 1235, 1238 (9th Cir.1982).

In opposing the present motion, Plaintiff does not dispute the majority of material facts set forth in Defendants' Separate Statement of Uncontroverted Material Facts. *See*, Plaintiff's Response to the Separate Statement (Doc. No. 67.) As to those facts he does dispute, he relies solely on allegations contained in his

Third Amended Complaint or statements in his declaration. As explained below, however, the statements relied upon in his declaration contradict his prior testimony or other statements. Moreover, the statements contained in his declaration do not establish a triable issue of fact as to the essential elements challenged here. Accordingly, each of his claims should be dismissed, as a matter of law.

### B. Plaintiff Has Failed to Establish a Triable Issue with Respect to his Claims for Fraud, Constructive Fraud and Securities Fraud

Relying on this Court's prior order of May 2, 2012 (Doc. No. 33, pg. 5), Plaintiff maintains that his claims for fraud, constructive fraud and securities fraud must be evaluated with reference to his alleged confidential relationship with Mr. Moore. However, the Court's order and the issue of whether there existed a confidential relationship between Hardisty and Moore pertain only to his claim for constructive fraud. *See, Younan v. Equifax Inc.*, 111 Cal.App.3d 498, 516 (1980) ("Unlike actual fraud, constructive fraud depends on the existence of a fiduciary relationship of some kind."); *see also, Odorizzi v. Bloomfield School Dist.*, 246 Cal.App.2d 123, 129 (1966) (applying constructive fraud to a confidential or fiduciary relationship). More importantly, irrespective of whether Hardisty and Moore had a confidential relationship, Plaintiff must establish justifiable reliance to prevail on any of his claims, including constructive fraud. As set forth in Defendants' moving papers and below, Plaintiff has failed to establish this essential element as a matter of law and the motion should be granted as to these claims on that basis alone.

#### 1. Plaintiff's Declaration Cannot Establish His Claim of Justifiable Reliance

In his Opposition, Plaintiff contends that there exists a triable issue as to whether Defendants made false representations contrary to the written agreements and whether he reasonably relied upon such representations. To support this contention, Plaintiff relies on his assertion that the Moores never permitted him to



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

review final documents prior to signature, and they would add more egregious terms than previously agreed. Plaintiffs' Opposition, pg. 17:22 – 19:2. For instance, with respect to the $750,000 promissory note entered in relation to the funds needed for the letter of credit required by Great American Insurance Company, Plaintiff claims that he was presented with note while he was "literally standing in line at the bank", with "no opportunity to review it." Hardisty Decl., ¶ 31. Mr. Hardisty further contends that the note had an additional term requiring that Moore be paid 13% interest, with any deficient to be paid by the Munson-Hardisty. Hardisty Decl., ¶ 30. He also contends that he was unaware that the promissory note was secured by deeds of trust on his property. Hardisty Decl., ¶ 36.

However, such testimony must be disregarded because it contradicts prior sworn testimony and prior statements by the Plaintiff. In a deposition in a related state court action, Plaintiff could not recall the $750,000 promissory note (which was executed on September 11, 2007) or the circumstances by which it was executed. Specifically, Mr. Hardisty testified as follows:

> Q: Does your signature appear on page of this document [the $750,000 promissory note]"
> A: Yes.
> Q: Do you recall where you were when you signed it?
> A: No.
> Deposition of John Hardisty attached as Exhibit "1" to the Declaration of Gary Scalabrini filed herewith, "Hardisty Depo.", pg. 9:14-19.)

Mr. Hardisty further testified:

> Q. [D]o you understand under what circumstances this document was executed:
> A: No.
> Hardisty Depo., pg. 12:19-21.

When asked about the check used for the letter of credit, Mr. Hardisty testified:

///



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

> Q. Do you remember depositing $750,000 around this time, September of 2007, into any accounts?
> A: Well, like I said, I don't remember the day, the motion, the time, having the check, going to the bank. I don't remember that, no.
> Hardisty Depo., pg. 3-7.[1]

Prior statements by Mr. Hardisty also contradict his declaration with respect to any additional terms. In an e-mail dated four days prior to the execution of the promissory note, Mr. Hardisty sent an e-mail to Ms. Moore, in which he states: "13% and you will get your money back if I fail." *See*, e-mail from Hardisty to Ms. More, dated September 7, 2007, attached as Exhibit 5 to the Supplemental Declaration of Melanie Moore, filed concurrently herewith. As for his present statements that he was unaware the promissory note was secured by his property, Mr. Moore previously stated: "<u>You keep the security interest in my office building and house</u> until I remove you from the ILOC [the letter of credit]. [Emphasis added.]" *Id*. In a subsequent e-mail, M. Hardisty also states "Wire $750K and the company [Munson-Hardisty] will pay the difference to equal 13% until we can remove or replace it. *See*, e-mail from Hardisty to Ms. More, dated September 10, 2007, attached as Exhibit 6 to the Supplemental Moore Declaration. He further states "I can pledge Teresa's stock account which is $391K <u>plus the properties</u>. [Emphasis added.]" *Id*.

The other instance that Mr. Hardisty alleges that he was required to execute a document without reviewing it pertains to the Purchase and Sale Agreement, by which Mr. Hardisty sold his remaining 27% interest to Mr. Moore. Specifically, Mr. Hardisty contends in his declaration that Ms. Moore came to his office in San Diego and presented him with the Agreement, demanding he sign it without taking the time to review it. Hardisty Decl., ¶ 49. However, on the day that Mr. Hardisty executed

[1] The Senior Vice President of City National Bank, which issued the letter of credit, recalls that Moore deposited the funds for the letter of credit, but he does not recall Hardisty being present at the bank with her. *See*, Depo. of Fred Baranowski, attached as Exhibit 2 to the Scalabrini Decl.



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

the Agreement (January 26, 2009), Ms. Moore was on a trip outside the country. *See*, Supplemental Moore Decl., ¶¶ 4-5. Mr. Hardisty was and is aware that Ms. Moore was on a trip at that time. In fact, on January 27, 2006, Mr. Hardisty sent Ms. Moore an e-mail while she was traveling, in which he concludes by stating "I hope you are enjoying your trip, . . ." *See*, Supplemental Moore Decl., ¶ 6, Ex. 3 More importantly, Mr. Moore did not come to his office with the Agreement as Hardisty contends, but rather Ms. Moore sent the Agreement to Mr. Hardisty by facsimile on January 22, 2009, four days before he executed the Agreement. See, Supplemental Moore Decl., ¶ 3, Ex. 1. Further, Ms. Teresa Hardisty did not execute the Agreement until January 28, 2009, two days later. *See*, Declaration of Hal Moore, previously filed with the Court, Ex.4; Suppl. Moore Decl., ¶ 5. Mr. and Ms. Hardisty, therefore, had more than sufficient time to review the Agreement before executing it.

As set forth in Defendants' moving papers, Mr. Hardisty expressly agreed in the Purchase and Sale Agreement that he did "not rely on any representation by the Buyer or his agents concerning any subject matter" of the Agreement. In his opposition, Plaintiff maintains that despite this representation, he may now introduce parol evidence that to establish that the agreement was induced by fraud. See, Opposition, pg. 7-13, *citing*, *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn*., 55 Cal.4th 1169 (2013). In *Riverisland*, however, the Court upheld the fraud exception to the parol evidence rule in instances of promissory fraud. In so holding, the Court "stressed" that "the intent element of promissory fraud entails more than proof of an unkept promise or mere failure of performance." *Riversisland*, 55 Cal.4th at 1183. "If [a] plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Id.*, *quoting*, *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 3031 (1985). The Court further noted that promissory fraud, like all forms of fraud, requires proof







GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

of justifiable reliance on the defendant's misrepresentation. *Id*.[2]

In this case, Plaintiff has failed to present any proof of intent to perform other than an alleged unkept promise or failure to perform. More importantly, Plaintiff has failed to establish justifiable reliance as to the Purchase and Sale Agreement. Again, contrary to Plaintiff's assertion in his declaration, he had at least four days to read the agreement. If he failed to do so, he cannot now argue that he justifiably relied on the alleged contrary statements by Defendants. *Brown, supra*, 168 Cal.App.4th at 958. Finally, in the written agreement, Mr. Hardisty expressly agrees that he did not rely on any representation by Mr. Moore or his agents concerning the subject matter of the agreement. Plaintiff cannot now claim that he justifiably relied upon any such alleged representation. *Paracor Finance, Inc. v. General Elec. Capital Corp*., 96 F.3d 1151 (9th Cir. 1996), *see also, Bank of the West v. Valley Nat'l Bank of Arizona*, 41 F.3d 471, 476 (9th Cir.1994).

Finally, Plaintiff contends in his opposition that the promissory note was intended only to be short-term, and would extinguish once Mr. Moore became an equity member in Legacy Pointe. He further contends that the obligation to pay the 13% from the builder's fees was mandated by Mr. Moore. However, both of these assertions are contradicted not only by the terms of the promissory note, but also the prior statements and representations made by Mr. Hardisty. As represented by Mr. Hardisty in his e-mail to Ms. Moore on August 16, 2007, "I will be pledging, assigning . . . 50% of the interest in Legacy Pointe to Hal. I will by separate agreement, be agreeing to pay the 13%." *See*, August 16, e-mail from Hardisty to Melanie Moore, Ex. 2 to the Moore Decl., previously filed with the Court. He

---

[2] The Court acknowledged, without deciding, the issue of whether the plaintiff presented evidence sufficient to raise a triable issue on the element of reliance, given their admitted failure to read the contract. *Riversisland*, 55 Cal.4th at 1183 Again, the evidence in this case indicates that Mr. Hardisty read the Purchase and Sale Agreement. However, if he failed to do so, as he contends, he still cannot establish justifiable reliance. *Brown v. Wells Fargo Bank, N.A*., 168 Cal.App.4th 938, 958 (2008).

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

further represented that "The 13% will come from my Builder's fee, and I'll pay you first before I take any money." *Id*. Hardisty knew that the security of the trust deeds was a continuing obligation when, in September 2007, he stated "I can pledge Teresa's stock account which is $391K plus the properties. [Emphasis added.]" *See*, September 10, 2007 e-mail, attached as Exhibit 6 to the Suppl. Moore Declaration.

**2. Plaintiff Has Neither Alleged nor Proved a Fiduciary Relationship Sufficient to Establish his Fraud Claims**

As Plaintiff implicitly acknowledges, if a Plaintiff claims he did not read the contract, he cannot establish the essential element of reasonable reliance in support of his fraud claims because "[g]enerally, it is not reasonable to fail to read a contract; . . . even if the plaintiff relied on the defendant's assertion that it was not necessary to read the contract." *See*, Plaintiff's Opposition, pg. 14, 18-22, *citing Brown v. Wells Fargo Bank, N.A.*, 168 Cal.App.4th 938, 959 (2008). Reasonable diligence requires the reading of a contract before signing it, and a party cannot avoid the contract based on fraud for his or her failure to read the contract. *Brookwood v. Bank of America*, 45 Cal.App.4th 1667, 1674 (1996). Plaintiff maintains that this general rule does not apply in the present action because the parties are in a fiduciary relationship. *See*, Plaintiff's Opposition, *citing*, *Brown*, 168 Cal.App.4th at 959, "When the parties are in a fiduciary relationship, the same degree of diligence is not required of the non-fiduciary party. [Emphasis added.]"

However, the parties to the present action are not in a fiduciary relationship. As this Court has noted, a personal friendship does not constitute a legally recognized fiduciary relationship.[3] In fact, as this Court has already determined, Plaintiff has failed to even adequately plead a fiduciary relationship, let alone present facts sufficient to establish a fiduciary relationship. Having failed to establish a

[3] A "personal friendship does not constitute a legally recognized fiduciary relationship in California, and indeed, Plaintiff does not cite to any California authority supporting that. [Emphasis added.]" Order, (Doc. No. 16), pg. 4:11-15.

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

fiduciary relationship, Plaintiff cannot circumvent the general rule that failing to read the contract is not reasonable, such that he cannot establish his claims for fraud.

**C. <u>Plaintiff Fails to Establish a Triable Issue with Respect to his Claim for Quiet Title</u>**

In his opposition, Plaintiff maintains that his claim for quiet title is premised on alleged misrepresentations relating to the 2007 deeds of trust. However, as with his claims for fraud, Plaintiff's testimony proffered in support of his claim for quiet title contradicts his prior testimony and other statements. As set forth above, Plaintiff was not only aware of the trust deeds, but he continually acknowledged that his property was secured by the trust deeds. Again, Hardisty told Mr. Moore that he would secure his investment "against everything, [his] properties and [his] interest in the deal." *See*, August 16, 2007 e-mail, Melanie Moore Decl. previously filed with the Court, ¶ 2. Later, with respect to the promissory note for the letter of credit, Mr. Moore stated: "You keep the security interest in my office building and house until I remove you from the ILOC [the letter of credit]." September 7th e-mail, attached as Exhibit 5 to the Supplemental Declaration of Melanie Moore. Moreover, in a prior deposition, Mr. Moore testified that he cannot remember the extent and breathe of any of the promissory notes and trust deeds. Hardisty Depo. pgs. 11:3-7, 39:4-21. In fact, his prior testimony suggests that he is unaware of any facts, other than that which is set forth in the documents themselves. *Id*. Consequently, Mr. Hardisty cannot now contradict the language of the documents to avoid summary judgment.

Finally, Plaintiff does not dispute that he has failed to properly plead his cause of action for quite title by filing a verified complaint. Cal.Civ.Proc.Code § 761.020. On this separate basis, the cause of action should be dismissed.

**D. <u>Plaintiff Fails to Establish a Triable Issue with Respect to his Claim for Conversion</u>**

As set forth in Defendants' moving papers, a claim for conversion does not lie if the plaintiff, or the person on whose behalf the action is brought, consented to the

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

act charged as the conversion. *Watson v. Commonwealth Ins. Co*., 8 Cal.2d 61, 67 (1937). "[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." *Farrington v. A. Teichert & Son*, 59 Cal.App.2d 468, 474 (1943*); see also*, *French v. Smith Booth Usher Co*., 56 Cal.App.2d 23, 27-28 (1942).

Relying again on *Riversisland*, *supra*, 55 Cal.4th 1169, Plaintiff maintains that the transfer of the shares was based on promissory fraud, and therefore, parol evidence can be introduced to establish his claim for conversion. As explained above, the intent element of promissory fraud entails more than proof of an unkept promise or failure of performance. *Riversisland*, 55 Cal.4th at 1183. "If [a] plaintiff adduces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury." *Id*. Plaintiff has failed to provide any evidence other than the alleged failure to perform or nonperformance of an alleged oral promise. Accordingly, Plaintiff's claim for conversion should be dismissed.

**E. <u>Plaintiff Fails to Establish a Triable Issue with Respect to his Claim for Abuse of Process</u>**

As set forth in Defendants' moving papers, merely obtaining or seeking process is not enough to establish a claim for abuse of process; there must be subsequent abuse by a misuse of the judicial process for a purpose other than that which it was intended to serve. *Adams v. Superior Court*, 2 Cal.App.4th 521, 530–531 (1992). The two main elements of the cause of action are: (i) an ulterior motive; and (ii) a willful act in the use of the process that is not proper in the regular conduct of the proceeding. *Meidinger v. Koniag*., 31 P.3d 77 (Alaska 2001); *see also*, *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc*., 42 Cal.3d 1157, 1168 (1986). The second element "contemplates some overt act done in addition to the initiating of the suit. The mere filing or maintenance of a lawsuit - even for an improper purpose - is not a proper basis for an abuse of process action." *Meidinger*, 31 P.3d at 86. In order to establish the claim, the Plaintiff must establish some

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process. *Id*.

In *Meidinger*, previously cited by this Court in its order on Defendants' motion to dismiss the Second Amended Complaint, a corporation filed suit against three shareholders for filing false proxy statements and defamation. The shareholders filed a counterclaim for, *inter alia*, abuse of process. Although the trial court found a triable issue of fact as to the corporation's motive, it granted summary judgment because it found that shareholders failed to establish the second element, an overt act taken outside the regular course of litigation. *Meidinger*, 31 P.3d at 86. The Court of Appeal affirmed, finding that the conduct alleged by the shareholders were either actions taken in the course of litigation or publicity, which is a permissible exercise in corporate litigation. *Id*.

In the present action, Plaintiff has failed to identify a single overt act by the Defendants taken outside the regular course of litigation. Indeed, the only act identified by the Plaintiff is the filing of the complaint, which he contends is for an improper purpose (while Defendants maintain the action is a proper assertion of its rights under the assignment). However, as in *Meidinger*, irrespective of the alleged motives of the Defendants, summary judgment is proper because Plaintiff has failed to present any evidence of an overt act taken outside the course of litigation.

## III. <u>CONCLUSION</u>

For the reasons set forth above and in their moving papers, Defendants respectfully requests that the Court grant their motion for summary judgment, or in the alternative, motion for partial summary judgment.

Dated: January 13, 2013

GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP

By: /s/ Gary E. Scalabrini
Gary E. Scalabrini
Attorneys for Defendants