Michael I. Wayne, Esq. (CSB # 169840)
mwayne@gglts.com
Gary E. Scalabrini, Esq. (CSB # 161902)
gscalabrini@gglts.com
GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
(310) 552-3400
Fax (310) 552-0805

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JOHN T. HARDISTY,

Plaintiff,

v.

HAROLD MAXINE MOORE; ELAINE K. MOORE (aka MELANIE K. MOORE); STATE INSULATION, LLC, an Arizona limited liability company; STATE INSULATION, LLC, a Nevada limited liability company; THE 1998 HAROLD M. MOORE REVOCABLE TRUST; and MARK PELUSO, an individual,

Defendants.

AND RELATED COUNTER_CLAIMS.

Case No. 3:11-cv-01591-AJB-BLM

**DECLARATION OF GARY SCALABRINI IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: February 13, 2013
Time: 2:00 p.m.
Ctrm: 3B

///

///

///



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

I, Gary Scalabrini, declare as follows:

1. I am an attorney admitted to practice law in all courts of the State of California and the United States District Court, Southern District of California. I am a member of Gibbs Giden Locher Turner Senet & Wittbrodt LLP, counsel of record for the Defendants in the above referenced action. I know the following facts to be true of my own personal knowledge and, if called as a witness, I could and would testify competently thereto.

2. On October 5, 2012, the deposition of John T. Hardisty was taken in an action in the California Superior Court for the County of San Diego, entitled *Moore v. Hardisty, et al.*, docketed as Case No. 37-2012-00092188. A certified copy of the transcript from this deposition is in my possession, custody and control. Attached as Exhibit "1" is a true and correct copy of the relevant portions of Mr. Hardisty's deposition transcript. If requested by the Court or otherwise, I will submit the certified copy of the deposition transcript for the Court's inspection and review.

3. On November 16, 2012, the deposition of Fred Baranowski was taken in an action in the California Superior Court for the County of San Diego, entitled *Moore v. Hardisty, et al.*, docketed as Case No. 37-2012-00092188. A certified copy of the transcript from this deposition is in my possession, custody and control. Attached as Exhibit "2" is a true and correct copy of the relevant portions of Mr. Baranowski's deposition transcript. If requested by the Court or otherwise, I will submit the certified copy of the deposition transcript for the Court's inspection and review.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 13, 2013, at Los Angeles, California.

/s/ Gary Scalabrini

GARY SCALABRINI

Exhibit "1"

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO - UNLIMITED

| | |
|---|---|
| HAROLD M. MOORE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN T. HARDISTY, an individual; TERESA K. HARDISTY, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 37-2012-00092188 CU-CO-CTL |

The Deposition of JOHN T. HARDISTY, taken by Defendant pursuant to the applicable sections of the Code of Civil Procedure, on Friday, October 5, 2012, before me, Mary Anne Young, CSR No. 12799, beginning at the hour of 11:42 a.m. at 202 West Broadway, in the City of San Diego, County of San Diego, State of California.

SAN DIEGO, CALIFORNIA

FRIDAY, OCTOBER 5, 2012, 11:42 A.M.

JOHN T. HARDISTY,

The Defendant herein, being first duly sworn, testifies as follows:

EXAMINATION

BY MR. WAYNE:

Q Will you please state your name and spell it for the record?

A John Thomas Hardisty, H-a-r-d-i-s-t-y.

Q Mr. Hardisty, we're here today for your deposition in the matter of Harold Moore versus John Hardisty and Teresa Hardisty regarding a $750,000 promissory note.

Are you aware of that action?

A The action, yes.

Q Okay. Have you had your deposition taken before, other than the cases where you've acted as an expert witness?

A Yes.

Q How many times?

A One just an hour ago.

Q Well, other than the debtor examinations where you and I have met, have you had your deposition taken,

MS. CALLAHAN: That's fine.

(Whereupon, Exhibit Number 1 was marked for identification.)

BY MR. WAYNE:

Q Okay. And what I've marked is a three-page document entitled "Promissory Note Secured by Deeds of Trust," and it's dated September 11, 2007.

A Okay.

Q Have you seen this document before?

A It's got my signature, but I don't recall how long ago it was.

Q First of all, do you recall this document?

A Yeah, I -- not really, but yes.

Q Okay. Does your signature appear on page 3 of this document?

A Yes.

Q Do you recall where you were when you signed this document?

A No.

Q Do you recall whether or not you signed it on or about September 11, 2007?

A No.

Q But you don't deny that you executed this document?

A Well, I don't deny that's my signature.


BARKLEY Court Reporters

promissory note in Mr. Moore's favor some time around September of 2007 in the amount of $750,000?

A Well, I assume I did. I signed so many notes to him. This is one of many, I'm sure, but I don't remember any notes in order in their specificity or, you know, exactly what it is. I mean, there's -- Hal had plenty of notes.

Q Please let me know if there is anything about this document that leads you to believe that you didn't sign this document.

A No. I mean, the signature page on the back is obviously my signature, but I don't -- you know, I can't -- I can't tell you from memory or otherwise the front pages of this being anything that I remember.

Q Do you recognize the other signature on this document to be that of Teresa Hardisty?

A Yes.

Q Did you ever discuss this document with Teresa Hardisty?

A Not -- not recently, no.

Q Were you present when she signed this document?

A No.

Q Do you know where she signed it?

A No.

Q Did you ever discuss with Teresa the execution of a $750,000 note in favor of Mr. Moore?

A Well, she -- I don't know if she would have done this if I hadn't talked to her about it, but I don't recall a conversation, no.

Q But it would be your practice to have spoken with her before asking her to execute a document of this nature?

A Well, I would have had to speak to her because she wouldn't have had it otherwise.

Q Well --

A I don't know. She used to go to Hal's office by herself, and she would talk to Melanie, and she would make her own appointments to meet with them and things like that, so I mean, I -- you know, you're asking me not to guess, so I can't -- I can't go back to 2007 and tell you the whole routine of everything that happened regarding this document because I don't know.

Q Well, tell me this, do you understand under what circumstances this document was executed?

A No.

Q Are you aware of whether any money was transmitted to you or any other entity you're related to --

A Well, I didn't --


BARKLEY Court Reporters

accounts and other things, and I didn't have -- I had not received a check for 750 to Teresa and I.

Q Okay. Well, let's mark this as Exhibit 2 and see if this jogs your memory.

(Whereupon, Exhibit Number 2 was marked for identification.)

Q Please have a look at it. It's a copy of a check. The check is dated September 10, 2007. It's a check from Melanie Moore to Munson Hardisty in the amount of $750,000.

A Right.

Q Have you seen this document before -- this check?

A I don't remember it, but I can see it now.

Q You don't remember this check you're saying?

A No, I mean, I -- it's five years ago, a check. I wouldn't remember what it looks like that I can see.

Q You got lots of checks for $750,000 back in those days?

A Well, we had a million and a half transpire before any of this stuff.

Q Okay. What other big checks did the company get. Tell me what the 1.5 is that you're talking about.

A Hal invested a million and a half in a project in Tennessee, and there were checks going back and forth

delivered to you at any time?
A I don't remember. I don't remember the check.
Q Do you remember depositing $750,000 around this time, September of 2007, into any accounts?
A Well, like I said, I don't remember the day, the motion, the time, having the check, going to the bank. I don't remember that, no.
Q Well, do you remember that there were several $750,000 checks that either you or Munson Hardisty received in 2007?
A I don't -- like I said, I don't know the number. I don't know what the checks looked like. I mean, you would have to show me the checks and then I would be like, "Yeah, I remember this check." But I don't remember all the details around it.
Q Well, do you remember why Munson Hardisty might want or need $750,000 in September of 2007?
A Well, I'm sure the project needed the money.
Q Isn't it true that moneys were needed in connection with a payment bond or payment bond obligations on the Legacy Pointe project?
A Well, we did have to bond the job, yes.
Q And how was --
A We had a bond and then they -- then they wanted additional security, which they had from me, a

just constantly in a, you know, sprint to respond, so, you know, whatever -- whatever we arrived at was part of a whole sequence of things needed all along the way to get to closing day.

Q Do you have any specific recollection of asking Hal Moore for moneys to use as collateral for the payment bond?

A I don't remember, you know, like that. I just asked Hal for the money when we were asked for different things along the way. I mean, we didn't know we needed a million and a half to close. We didn't know we needed $300,000 to close. We didn't know anything literally until a couple days before closing, so we were speculating and working together on coming up with whatever the numbers were going to be to get to the day -- you know, to get to the day, and then that's just what we did.

Q But surely when you needed money from Mr. Moore for something, you wouldn't just say, "Hey, I need a million bucks. Send it over," you would explain what the money was needed for, correct?

A Well, I would have to. Hal would laugh at you if you asked for a million bucks and you didn't give him any information. Come on.

Q So Mr. Moore would require you to ask him what

A No.
Q Do you recall what year it was?
A Well, probably '07.
Q Do you have any reason to believe that the promissory note that you signed on or about September 11, 2007 did not relate to the $750,000 check that was transmitted to Munson Hardisty on September 10, 2007?
A You know, I've got multiple notes signed by him. Some recorded, some not, trust deed. So I mean, if that means that, I mean, you have to -- you'd have to do your own -- make your own decision on that. He could have put that money in as part of the million and a half that I signed.
Q Right.
A And there is a trust deed out there for a million and a half, so I don't know.
Q Okay.
A That document stands alone --
Q I appreciate that.
A -- and doesn't mean that to me.
Q I appreciate that, but my question to you is -- look. This is my chance to talk to you about this case and get your -- whatever is stored up inside of your head. And all I want to find out is as we sit here

# PROMISSORY NOTE SECURED BY DEEDS OF TRUST

San Diego, California
September 11, 2007

For value received, John T. Hardisty and Teresa K. Hardisty, husband and wife as joint tenants, (hereinafter "Borrower"), hereby promise to pay to the order of Harold M. Moore (hereinafter "Lender") at 8315 Miralani Dr., San Diego, CA 92126, or at any other place that may be designated in writing by Lender, in lawful money of the United States of America, the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00), plus any and all interest thereon as stated herein. Borrower shall make interest only payments, as provided herein, on the first day of each month from the date of this Note until March 11, 2008 ("Maturity Date"). The unpaid balance of the loan will bear interest at the rate of thirteen percent (13%) per annum. Interest shall be calculated on the basis of a 360-day year and the number of days elapsed. Principal plus all accrued and unpaid interest on such principal shall be due and payable on the Maturity Date.

This Note is secured by the Long Form Deeds of Trust with Assignment of Rents executed by Borrower, as Trustor, in favor of Lender, as Beneficiary ("Deeds of Trust"), and encumbering the real properties described in the Deeds of Trust ("Properties"). The holder of this Note will be entitled to the benefits of the security provided by the Deeds of Trust and will have the right to enforce the covenants and agreements of Borrower contained in the Deeds of Trust.

From and after the Maturity Date, or earlier date on which all sums owing under this Note become due by acceleration or otherwise, all sums owing under the Note will bear interest until paid in full at the rate of thirteen percent (13%) per annum.

All payments on this Note will be applied first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; or in any other order that Lender requires.

If:

(a) Borrower fails to pay when due any sums payable under this Note;

(b) an uncured Event of Default (defined in the Deeds of Trust) occurs; or

(c) any other event or condition occurs that, under the terms of the Deeds of Trust, gives rise to a right of acceleration of sums owing under this Note,

then Lender, at its sole option, will have the right to declare all sums owing under the Note immediately due. However, if any document related to this Note provides for the automatic acceleration of payment of sums owing under this Note, all sums owing will be automatically due in accordance with the terms of that document.

Δ π EXHIBIT 1
Deponent Hardisty
Date 10.5.12 Rptr. may
WWW.DEPOBOOK.COM

EXHIBIT 1

Borrower will have the right to prepay, without penalty or premium, on any monthly payment date, all or any portion of the outstanding principal amount of this Note prior to the Maturity Date. Lender will apply all prepayments first to the payment of any costs, fees, late charges, or other charges incurred in connection with the indebtedness evidenced by this Note; next, to the payment of accrued interest; then to the outstanding principal amount of this Note.

Borrower will pay to Lender all sums owing under this Note without deduction, offset, or counterclaim of any kind, provided however that Borrower does not waive the right to assert any counterclaim by way of a judicial action. The relationship of Borrower and Lender under this Note is solely that of borrower and lender, and the loan evidenced by this Note and secured by the Deeds of Trust will in no manner make Lender the partner or joint venture of Borrower.

No previous waiver or failure or delay by Lender in action with respect to the terms of this Note, the Deeds of Trust, or the other Loan Documents will constitute a waiver of any breach, default, or failure of condition under this Note, the Deeds of Trust, or the other Loan Documents. A waiver of any term of this Note, the Deeds of Trust, or the other Loan Documents must be made in writing and will be limited to the express written terms of the waiver. If there are any inconsistencies between the terms of this Note and the terms of any of the other Loan Documents, the terms of this Note will prevail.

The Deeds of Trust provides as follows:

"If the Trustor shall sell, convey or alienate said properties, or any part thereof, or any interest therein, or shall be divested of his title or any interest therein in any manner or way, whether voluntarily or involuntarily, without the written consent of the beneficiary being first had and obtained, beneficiary shall have the right, at its option, except as prohibited by law, to declare any indebtedness or obligations secured hereby, irrespective of the maturity date specified in any not evidencing the same, immediately due and payable."

In the event any legal action or proceeding is required to enforce or interpret any provision of this Note, Borrower shall pay to Lender upon demand all costs of collection and reasonable attorney's fees incurred in connection therewith.

All notice required or permitted in connection with this Note will be in writing and will be given at the place and in the manner provided in the Deeds of Trust for the giving of notices.

If any provision of this Note shall be invalid or unenforceable for any reason, the same shall be ineffective, but the remainder of this Note shall not be affected thereby and shall remain in full force and effect. Time is of the essence of each and every obligation of Borrower and Lender. Presentment and demand for payment, notice of dishonor, protest and notice of protest are hereby waived by Borrower and Lender with respect to amounts owed by each of them respectively under the provisions of this Note. If the due

date for payment under this Note falls on a Saturday, Sunday or legal holiday, then such due date shall be extended to the next business day. None of the terms or provisions of this Note may be waived, altered, modified or amended except by a writing signed by Lender and Borrower. The provisions of this Note shall be governed by California law. The covenants, terms and conditions hereof shall bind the heirs, successors and assigns of Borrower and shall inure to the benefit of the successors and assigns of Lender.

IN WITNESS WHEREOF, Borrower has executed this Note as of the date first set forth above.

BORROWER:

JOHN T. HARDISTY

TERESA K. HARDISTY

Agreed and Accepted by Lender:

HAROLD MOORE

MELANIE K. MOORE
2375 E. TROPICANA AVE. #378
LAS VEGAS, NV 89119

74-7188/724
3005002671

1206

DATE September 10,2007

PAY TO THE ORDER OF Munson Hardisty LLC $ 750,000.00

Seven Hundred Fifty Thousand Dollars------ DOLLARS

NORTHERN TRUST BANK, FSB

THE NORTHERN ANCHOR ACCOUNT

Northern Trust

MEMO Account# 5564703

Melanie K Moore MP

⑆072471887⑆ 3005002671⑈ 1206

Δ π EXHIBIT 2
Deponent Hardisty
Date 10-5-12 Rptr. may
WWW.DEPOBOOK.COM

DEPOSITION OFFICER'S CERTIFICATE

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN DIEGO )

I, Mary Anne Young, hereby certify:

I am a duly qualified Certified Shorthand Reporter, in the State of California, holder of Certificate Number CSR 12799 issued by the Court Reporters Board of California and which is in full force and effect. (Bus. & Prof. § 8016)

I am not financially interested in this action and am not a relative or employee of any attorney of the parties, or of any of the parties. (Civ. Proc. § 2025.320(a))

I am authorized to administer oaths or affirmations pursuant to California Code of Civil Procedure, Section 2093(b) and prior to being examined, the deponent was first placed under oath or affirmation by me. (Civ. Proc. §§ 2025.320, 2025.540(a))

I am the deposition officer that stenographically recorded the testimony in the foregoing deposition and the foregoing transcript is a true record of the testimony given. (Civ. Proc. § 2025.540(a))



BARKLEY Court Reporters

I have not, and shall not, offer or provide any services or products to any party's attorney or third party who is financing all or part of the action without first offering same to all parties or their attorneys attending the deposition and making same available at the same time to all parties or their attorneys. (Civ. Proc. § 2025.320(b))

I shall not provide any service or product consisting of the deposition officer's notations or comments regarding the demeanor of any witness, attorney, or party present at the deposition to any party or any party's attorney or third party who is financing all or part of the action, nor shall I collect any personal identifying information about the witness as a service or product to be provided to any party or third party who is financing all or part of the action. (Civ. Proc. § 2025.320(c))

Dated: October 22, 2012

MaryAnne Young



BARKLEY

Exhibit "2"

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO - UNLIMITED

| | |
|---|---|
| HAROLD M. MOORE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN T. HARDISTY, an individual; TERESA K. HARDISTY, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 37-2012-00092188 CU-CO-CTL |

The Deposition of FRED BARANOWSKI, taken by Defendant pursuant to the applicable sections of the Code of Civil Procedure, on Friday, November 16, 2012, before me, Mary Anne Young, CSR No. 12799, beginning at the hour of 1:15 p.m. at 750 B Street, Suite 3300, in the City of San Diego, County of San Diego, State of California.

SAN DIEGO, CALIFORNIA

FRIDAY, NOVEMBER 16, 2012, 1:15 P.M.

FRED BARANOWSKI,

A witness herein, being first duly sworn, testifies as follows:

EXAMINATION

BY MR. WAYNE:

Q Will you please state your name and spell it for the record?

A Fred Baranowski, B-a-r-a-n-o-w-s-k-i.

Q Have you ever had your deposition taken before?

A Yes.

Q Anything relating to John Hardisty or Harold Moore?

A No.

Q At the risk of repeating some of the admonitions you might have received before those depositions or that deposition, I just want to lay out some of the ground rules about depositions so we make sure we're on the same page.

The first one is the oath that you just took is the same oath you would take in a court of law which means that your testimony is subject to the penalty of


BARKLEY Court Reporters

loan. I believe that when we appraised, we discovered there was not collateral available to properly secure this loan, which is when we then turned to a trust deed on John's commercial property in National City.

Q And was this some time after September of 2007?

A Yes.

Q Do you recall how much after?

A Within months.

Q Okay. What was your title -- during September of 2007, what was your job title?

A Senior vice president -- let's see. Yeah, that's it, senior vice president.

Q What were your job duties or job description during that?

A I was hired to open a downtown San Diego office in August of 2007. Because that San Diego office wouldn't be open until after -- the start of 2008, I was operating out of our Mission Valley office, but I still -- basically, I had a book of business with the downtown San Diego office being worked remotely.

Q I see. And were you the person at the bank who had the primary responsibility for dealing with this particular loan, Exhibit 11?

A Yes.

Q -- as security for a loan?
A I'm sorry, no.
Q Did you ever receive anything from Mr. or Mrs. Moore which confirmed that she had approximately $391,000 in an investment account?
A I may have received -- from Mr. and Mrs. Moore?
Q Do you recall whether they ever gave you a statement of account for an investment account?
A I believe John did.
Q And was that his investment account or Mrs. Hardisty's investment company?
A I believe it was hers.
Q There's also a reference to 1st Pac Bank paying just over six percent on a six-month CD.
Do you see that?
A Yes, I do.
Q Is that accurate?
A I don't know.
Q All right. Was that 13? All right. I'll mark as Exhibit 14 copy of the check.
(Whereupon, Exhibit 14 was marked for identification.)
Q This is a check dated September 10, 2007 in the amount of $750,000 payable to Munson Hardisty, LLC

on an account held in the name of Melanie K. Moore.

Do you recall ever seeing this check?

A Yes.

Q And when did you see it?

A Approximately September 10th, 2007.

Q Is this the check that Mrs. Moore brought to the office on the day that your bank was setting up the standby letter of credit?

A I believe it is.

Q And did you do anything with this check?

A We accepted it for deposit.

Q And was the check supported by sufficient funds?

A Yes, it was.

Q And did the bank issue a standby letter of credit in exchange for this payment?

A Yes.

Q And were you present during any discussions between Mrs. Moore and Mr. Hardisty regarding what their agreement was with respect to this check?

A No.

Q Were you -- were they both present at the same time in front of you during this transaction?

A No.

Q Can you tell me just how it went down?

MELANIE K. MOORE
2375 E. TROPICANA AVE. #378
LAS VEGAS, NV 89119

74-7188/724
3005002671

1206

DATE September 10,2007

PAY TO THE ORDER OF Munson Hardisty LLC $ 750,000.00

Seven Hundred Fifty Thousand Dollars------- DOLLARS

Security Features Included. Details on Back.

NORTHERN TRUST BANK, FSB

THE NORTHERN ANCHOR ACCOUNT

Northern Trust

MEMO Account# 5564703

Melanie K Moore

⑈072471887⑆ 3005002671⑈ 1206

Δπ EXHIBIT 14
Deponent Baranowski
Date 11.16.12 Rptr. may
WWW.DEPOBOOK.COM

DEPOSITION OFFICER'S CERTIFICATE

STATE OF CALIFORNIA )
) ss.
COUNTY OF SAN DIEGO )

I, Mary Anne Young, hereby certify:

I am a duly qualified Certified Shorthand Reporter, in the State of California, holder of Certificate Number CSR 12799 issued by the Court Reporters Board of California and which is in full force and effect. (Bus. & Prof. § 8016)

I am not financially interested in this action and am not a relative or employee of any attorney of the parties, or of any of the parties. (Civ. Proc. § 2025.320(a))

I am authorized to administer oaths or affirmations pursuant to California Code of Civil Procedure, Section 2093(b) and prior to being examined, the deponent was first placed under oath or affirmation by me. (Civ. Proc. §§ 2025.320, 2025.540(a))

I am the deposition officer that stenographically recorded the testimony in the foregoing deposition and the foregoing transcript is a true record of the testimony given. (Civ. Proc. § 2025.540(a))



BARKLEY

I have not, and shall not, offer or provide any services or products to any party's attorney or third party who is financing all or part of the action without first offering same to all parties or their attorneys attending the deposition and making same available at the same time to all parties or their attorneys. (Civ. Proc. § 2025.320(b))

I shall not provide any service or product consisting of the deposition officer's notations or comments regarding the demeanor of any witness, attorney, or party present at the deposition to any party or any party's attorney or third party who is financing all or part of the action, nor shall I collect any personal identifying information about the witness as a service or product to be provided to any party or third party who is financing all or part of the action. (Civ. Proc. § 2025.320(c))

Dated: December 4, 2012

MaryAnne Young



BARKLEY