Michael I. Wayne, Esq. (CSB # 169840)
mwayne@gglts.com
Gary E. Scalabrini, Esq. (CSB # 161902)
gscalabrini@gglts.com
GIBBS GIDEN LOCHER TURNER
SENET & WITTBRODT LLP
1880 Century Park East, 12th Floor
Los Angeles, California 90067-1621
(310) 552-3400
Fax (310) 552-0805

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JOHN T. HARDISTY,

Plaintiff,

v.

HAROLD MAXINE MOORE; ELAINE K. MOORE (aka MELANIE K. MOORE); STATE INSULATION, LLC, an Arizona limited liability company; STATE INSULATION, LLC, a Nevada limited liability company; THE 1998 HAROLD M. MOORE REVOCABLE TRUST; and MARK PELUSO, an individual,

Defendants.

AND RELATED COUNTERCLAIMS.

Case No. 3:11-cv-01591-AJB-BLM

**SUPPLEMENTAL DECLARATION OF MELANIE MOORE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL SUMMARY JUDGMENT**

Date: February 13, 2014
Time: 2:00 p.m.
Crtm: 3B

///

///

///

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

I, MELANIE MOORE, declare as follows:

1. I am a defendant in this action and I am presently married to Defendant, Harold Moore ("Hal Moore"). Unless otherwise stated, I know the following to be true of my personal knowledge and, if called as a witness, I could and would testify competently thereto.

2. I have reviewed the Declaration of John Hardisty submitted in support of his Opposition to the Defendants' Motion for Summary Judgment. In his Declaration, Mr. Hardisty states that on January 22, 2009, I came to his office in San Diego and presented him with a copy of the Purchase and Sale Agreement, and "demanded that [Mr. Hardisty] sign it without taking time to review it because [I] was in a hurry to get it to HUD." (Declaration of John Hardisty, pg. 13-14, ¶ 49.) This statement is untrue.

3. On January 22, 2009, I sent an e-mail to Mr. Hardisty, to which I attached the initial draft of the Purchase and Sale Agreement for his review and signature. On January 26, 2009, a revised draft of the Agreement was sent to Mr. Hardisty by facsimile by my assistant, L.J. (Toy) Pitzer. Mr. Hardisty executed the facsimile copy of the Agreement, which he dated January 26, 2009. True and correct copies of my e-mail, the facsimile coversheet and facsimile copy of the Agreement executed by Mr. Hardisty are attached hereto and incorporated herein as Exhibit "1."

4. Soon after I sent my e-mail to Mr. Hardisty, Hal Moore and I went on a trip out of the country, and we did not return until on or about February 2, 2009. I have attached a copy of page 16 of my passport as Exhibit "2", which was stamped the day we arrived in Colima, Mexico. As indicated on my passport, we entered Mexico on January 25, 2009. Specifically, the stamp states "COLIMA" and "25 ENE 09." ENE is an abbreviation for Enero, which is January in Spanish. If requested by the Court, I can provide my original passport for review and inspection.

///

5. Mr. Hardisty executed another copy of the Purchase and Sale Agreement, dated January 26, 2009, which is four days after I sent him the initial draft copy by e-mail and when I was out of the country. As indicated on the Purchase and Sale Agreement, Ms. Teresa Hardisty did not execute the Agreement until January 28, 2009. A true and correct copy of the Agreement executed by both Mr. and Ms. Hardisty is attached as Exhibit No. 4 to the Declaration of Hal Moore, which has been previously filed with the Court.

6. As indicated above, I was out of the country on a trip when Mr. and Ms. Hardisty executed the Agreement. Mr. Hardisty was and is aware that I was on a trip at that time. In fact, on January 27, 2006, Mr. Hardisty sent me an e-mail while I was traveling. He concludes the e-mail by stating "I hope you are enjoying your trip, . . ." A true and correct copy of the January 27th e-mail is attached hereto and incorporated herein as Exhibit "3."

7. I did not personally receive a copy of the Purchase and Sale Agreement executed by Mr. Hardisty and his wife, Teresa Hardisty, until I arrived back from my trip on or about February 2, 2009.

8. On or about February 9, 2009, an executed copy of the Purchase and Sale Agreement was sent to the United States Department of Housing and Urban Development ("HUD"), as an attachment to a letter executed by Mr. Hardisty. A true and correct copy of the letter to HUD is attached hereto and incorporated herein as Exhibit "4."

9. On September 7, 2007, I received an e-mail from John Hardisty relating to a letter of credit, which was required by the bonding company, Great American Insurance Company. In his e-mail, Mr. Hardisty states "This project is still worth doing." He further states that "You haven't really risked your money in a dangerous way. 13% and you'll get your money back if I fail. [Emphasis added.]" Finally, he states "You keep the security interest in my office building and house until I remove you from the [letter of credit]. [Emphasis added.]" A true and correct copy of the



GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

September 7th e-mail is attached hereto and incorporated herein as Exhibit "5."

10. On September 10, 2007, I received another e-mail from Mr. Hardisty relating to the letter of credit. In his e-mail, Mr. Hardisty states that "Wire $750K and the company will pay the difference to equal 13% until we can remove and replace it. [Emphasis added.]" Mr. Hardisty also states that "I can pledge Teresa's stock account which is $391K plus the properties. [Emphasis added.]" A true and correct copy of the September 10th e-mail is attached hereto and incorporated herein as Exhibit "6."

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on January 13th, 2014, at ~~San Diego~~, California.

Melanie Moore
MELANIE MOORE

Exhibit “1”

**John Hardisty**

**From:** Melanie K Moore [melkmoo@gmail.com]
**Sent:** Thursday, January 22, 2009 3:07 PM
**To:** John Hardisty
**Subject:** Purchase and Sale Agreement
**Attachments:** PURCHASE_AND_SALE_AGREEMENT[1].doc

I need to get this signed right away.

# FACSIMILE TRANSMISSION COVER SHEET

**GREAT WESTERN DRYWALL, INC.**
8315 Miralani Dr.
San Diego, CA 92126
toypitzer@greatwd.com

FROM: (NAME) L.J. Pitzer (Toy), Executive Assistant

Telephone Number: (858) 530-1690 EXT 162 Our Fax Number: (858) 566-6297

TOTAL NUMBER OF PAGES: (Including coversheet) 7

DATE: January 26, 2009

TO: Legacy Pointe Apartments , LLC (COMPANY)

FAX#: 865 938-9187

NAME: **JOHN HARDISTY**

PHONE#:

Dear John,

Please review.

## CONFIDENTIAL!!! FOR JOHN HISDISTY ONLY



**PRIVACY NOTICE**

This transmittal is intended only for the use of the individual or entity named above and may contain information that is privileged, confidential and exempt from disclosure under the applicable law. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately and destroy this message. Thank you.

GWD fax Cover Page.docC:\Documents and Settings\tpitzer\Desktop\GWD fax Cover Page.doc

# PURCHASE AND SALE AGREEMENT

This Agreement is by and between John T. Hardisty referred to herein as "Seller," and Harold M. Moore, herein, "Buyer," at San Diego, California and is made effective when approved by the Department of Housing and Urban Development.

**WITNESSETH:**

Whereas, both Buyer and Seller are current members of Legacy Pointe Apartments, LLC, a Tennessee Limited Liability Corporation ("Legacy Point");

Whereas, the sole purpose of Legacy Point pursuant to that certain Second Amended and Restated Operating Agreement of Legacy Pointe Apartments, LLC is to acquire, develop, construct, own, operate and sell a 252 apartment project located in Knoxville, Knox County, Tennessee known as Legacy Point Apartments (the "Project").

Whereas, Seller has a net ownership percentage of 27 percent of the membership interest in Legacy Point;

Whereas, Buyer wants to buy Seller's remaining membership shares and Seller wants to sell its remaining membership shares to Buyer.

Whereas, under the Second Amended and Restated Operating Agreement of Legacy Pointe Apartments, LLC members can transfer shares to other members without necessity of further consent.

Whereas, Seller also owns a 50 percent share of Munson-Hardisty, LLC, a Tennessee Limited Liability Corporation, the general contractor of the Project.

Whereas, Seller is personally liable under a payment and performance bond(s) (the "Bond") guaranteeing payment and completion of the Project.

Buyers' Initials ______ 1 Sellers' Initials ______

Whereas, certain parties who performed work and/or supplied materials for the construction of the Project have not been paid for such work or material, and consequently such parties have a claim against the Bond.

Whereas, in order to prevent immediate claims against the Bond, Buyer wishes for Seller to purchase any and all rights to receive a sum of money that has accrued to any person or entity, who has a claim against the Bond, as a result of performing work and/or supplying materials for the construction of the Project.

**NOW, THEREFORE, IT IS AGREED:**

1. Seller shall sell to Buyer who shall purchase from Seller on the terms and conditions set forth in this Agreement Seller's remaining 27 percent membership interest in Legacy Point, which represents all of the remaining percentage membership shares Seller has in Legacy Point.

2. As consideration for Seller conveying a 27 percent membership interest in Legacy Point , Buyer shall purchase and retain by way of assignment any and all rights to receive a sum of money that has accrued to any person or entity, who has a claim against the Bond, as a result of performing work and/or supplying materials for the construction of the Project, provided however, Buyer's obligation hereunder shall not exceed One Million Five Hundred Thousand Dollars ($1,500,000).. Buyer further agrees not to pursue any claim against the Bond until May 1, 2009. Except as limited by the preceding sentence, Buyer reserves all rights and remedies to pursue and collect any sum of money lawfully due.

3. The Seller hereby warrants and represents to the Buyer that:

(a) There are no obligations, contracts, or liabilities affecting Legacy Point that are not shown on the books of account.

(b) No litigation, arbitration or other proceedings, legal, equitable, or administrative are pending or threatened which might affect Legacy Point, with the exception of the Department of Labor claim against Mitchell Electric.

(c) Attached as Exhibit "A" is a list of all the accounts payable of Legacy Point as of the close of business on January 15, 2009 showing (i) the vendor name, (ii) the amount owed; (iii) the date the amount was due and (iv) applicable discounts, if any.

(d) The transfer of the shares contemplated by this Agreement does not violate the provisions of Tennessee Annotated Code or any other Agreement entered into among the shareholders of Legacy Point regarding transfer of its membership shares.

(e) Seller enters into this Agreement freely, voluntarily, and in the absence of any duress from Buyer. In entering into this Agreement, Seller does not rely on any representations by the Buyer or his agents concerning any subject matter whatsoever including, but not limited to, financial and/or legal impacts of construction, sale, or any ancillary matter.

4. Except as otherwise expressly provided herein, Seller shall indemnify and hold Buyer free and harmless from any and all costs incurred, claims, losses, damages, injuries, and liabilities arising from or on account of Seller's operation of Legacy Point or Seller's ownership of any of the assets of the business before February 28, 2009.

**Buyers' Initials** ______  **Sellers' Initials** ______

5. Except as otherwise expressly provided herein, Buyer shall indemnify and hold Seller free and harmless from any and all costs incurred, claims, losses, and damages, injuries, and liabilities arising from or on account of Buyer's operation of Legacy Point from and after March 1, 2009.

6. No further corporate action or proceeding on the part of Legacy Point is necessary or appropriate with respect to the execution and delivery of this Agreement.

7. This Agreement or any interest herein shall not be assigned or transferred by either party without the written consent of the other, except transfers into a Trust for estate planning purposes.

8. This Agreement shall be binding on and shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of the parties hereto, but nothing in this paragraph shall be construed as consent to an assignment of this Agreement by either party except as set forth in paragraph 8 above.

9. The parties agree:

a. Each party had the opportunity to seek advice and assistance of counsel in preparation, review, and/or modification of this Agreement. No provision of this Agreement shall be interpreted against the Buyer solely on the basis that he prepared the Agreement.

b. Each party shall pay his own fees and expenses of all legal representation and other advice, if any, respectively incurred in connection with the negotiation and preparation of this Agreement.

10. This Agreement shall be interpreted in accordance with the laws of the State of California. Should either party commence a legal action to enforce the terms of

this Agreement, the Superior Court of San Diego County, California will be the exclusive venue for the litigation of disputes.

11. If it shall be necessary for Buyer or Seller to institute legal proceedings regarding this Agreement, the party prevailing in any such proceeding shall be entitled, in addition to such other relief that may be granted, to a reasonable sum for attorney's fees.

Dated: 1/26-09

SELLER

By: John T. Hardisty

Dated:

BUYER

By: Harold M. Moore

**SPOUSAL CONSENT TO PURCHASE AND SALE AGREEMENT**

I, Teresa K. Hardisty, acknowledge that I have read the Purchase and Sale Agreement ("Agreement") and am familiar with its contents. I hereby provide my informed consent to the Agreement.

In providing my consent, I acknowledge a community property interest in the assets subject to sale. Not withstanding this community property interest, I make no objection to the transaction described above.

In executing this Agreement I do not rely on any representations by Buyer or his agents concerning any subject matter whatsoever including, but not limited to financial and/or legal impacts of construction, sale, or any ancillary matter.

Dated:

______________________
By: Teresa K. Hardisty

Exhibit “2”



Exhibit "3"

**John Hardisty**

**From:** John Hardisty
**Sent:** Tuesday, January 27, 2009 6:05 PM
**To:** Melanie K Moore
**Cc:** Mark Peluso
**Subject:** First Call, etc.

Hal-Melanie,

Can you please transfer the remaining money from the $750K.

HUD is going to be out again Monday, and I can't wait until next week to get the fixtures delivered to Building # 7, and # 8, and # 9.

They are in and we need to pay for them.

I'm clear about wanting to draw twice a month, but we only have 2 months to go and we will be finished.

We didn't have time to set up accounts when Mithchell left and there are too many fixtures to set, to wait until next week.

I can have # 7 done, and # 8 almost done, and the # 9 by the time we have # 6 ready for COO by the end of next week.

Todd has 6 guys laid off right now until we get the fixtures ready to be set.

Anyway, please reconsider. I want to have 6, 7, 8, and maybe 9 ready for inspections by Feb. 13th. We can get our final plumbing, elec, and mech signed off on all of them if we go ahead and give the guys the parts.

Thanks,

I hope you are enjoying your trip, except for the thoughts of me.

John Hardisty

Exhibit "4"

February 9th, 2009

U.S. Department of Housing and
Urban Development
710 Locust Street
Knoxville, TN 37902

Re: Legacy Pointe Apartments (the "Project")
Legacy Pointe Apartments, LLC (the "Borrower")
FHA Project No.: 087-35221
Modified Transfer of Physical Assets
Removal of Member

Ladies and Gentlemen:

In accordance with HUD Handbook 4350.1 Rev-1, you are hereby notified that, subject to the approval of your office, John Hardisty will transfer to Hal Moore a twenty seven (27%) ownership interest in the Borrower, which represents all of Mr. Hardisty's ownership interest. Mr. Moore is currently a member of the Borrower and after the consummation of the proposed transfer Mr. Moore will have a 77% ownership interest, will be substituted as the Chief Manager of the Borrower, and will be responsible for matters related to the FHA insured loan on the Project. As consideration for the proposed transfer, Mr. Moore shall purchase and retain by way of assignment any and all claims against the payment and performance bond associated with the Project, for which Mr. Hardisty is personally liable, not to exceed One Million Five Hundred Thousand Dollars ($1,500,000). The terms of the proposed transfer are more particularly set forth in the Purchase and Sale Agreement attached hereto as Exhibit A.

The transfer of membership interest from Mr. Hardisty to Mr. Moore is permitted by paragraph 6.02(b) of the Operating Agreement and does not require the consent of any other member of the Company. The transfer of the membership interest from Mr. Hardisty to Mr. Moore will not affect the existence of the Borrower under state law. It is understood that HUD's approval must be obtained before the change in membership of the Borrower will be effective.

Sincerely,

LEGACY POINTE APARTMENTS, LLC

By [signature]
John Hardisty, Chief Manager

Exhibit "5"

Gmail by Google BETA

Melanie K Moore <melkmoo@gmail.com>

# (no subject)

2 messages

John Hardisty <john@hardistyconstruction.com> Fri, Sep 7, 2007 at 8:07 PM
To: melkmoo@gmail.com

Hal (c/o Melanie),

I'll go through everything:

Starting with the closing. Scheduled for next Thursday at 8:30 am in Knoxville.

Everything has gone forward as we expected. Construction costs are coming in lower. Rents are much higher than the Performa from HUD. (I have inspected, interviewed the rental office personnel, and photographed, and mapped every project in Knoxville that is relevant to us and our project) Vacancy is down below 3%. You have to go on a waiting list to rent right now in the good areas.

I have been in Knoxville since Aug 19. I know what I'm doing and Hal this is a HAL MOORE type of deal. I t will make a lot of money. The risk has been covered.

We knew the bonding was going to be tricky. You directed me to negotiate the best deal I could get, and get the price and make arrangements for the Letter of Credit.

This whole deal has been stressful from a time standpoint, but in hindsight I don't believe any of the requirements/hurdles we have had to confront were unreasonable ( per the circumstances) or unexpected. We knew taking on a project like this wasn't going to be a cakewalk, we just didn't know how and what was going to come up until it did.

Just like Craig Schell, Fred would have been able to do what ever we want without disrupting our routines if he had time.

Time is why "WE" have this deal. No one could have or would have done what you and I did. Mainly because it was impossible. But that's why the rewards will be high.

You haven't really risked your money in a dangerous way. 13% and you'll get your money back if I fail.

The bonding company lowered their requirements from, $1m extra cash, and $1m letter of credit,...to most of our cash being funneled through the fund control and a $750K "ILOC". And they will bond me for $18m.

We just got approval last Friday, subject to...and the $750 ILOC was simply their final terms.

This project is still worth doing. I will easily beat the numbers that were the numbers that convinced you to participate.

Lets go directly to the "money" for Hal part.

Pledge and "unsecured line of credit" to back the ILOC. We will replace the unsecured LC with something else later. But we have to move immediately to close by Thurs:

Legacy Pointe/Hardisty pays the costs. You get an additional $100K to add to the $400K from me when the project sells.

I'm ready to pull the permit on Wed. close Thursday and break ground the following Monday. I have the adjoining 24 acres locked up.

You keep the security interest in my office building and house until I remove you from the ILOC.

I'll try to contact you tomorrow, or call me.

Exhibit "6"

Gmail by Google BETA

Melanie K Moore <melkmoo@gmail.com>

# (no subject)

1 message

**John Hardisty <john@hardistyconstruction.com>** **Mon, Sep 10, 2007 at 6:52 AM**
To: melkmoo@gmail.com

Hal/Melanie,

Hal called on Sat. and left a VM which only came through this morning.

As you know I was flying yesterday but was looking to talk to him. My apology, I need the boats cell phone #.

I'm going to see Fred this afternoon. I can pledge Teresa's stock account which is $391K plus the properties.

However, to make the deadline, I sent a text suggesting 1st Pac Bank is paying just over 6% on their 6mo. CD. Wire $750K and the company will pay the difference to equal 13% until we can remove or replace it.

I will be meeting a client until noon, but will be able to talk if you call me.

Thanks,

John Hardisty