UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| John T. Hardisty, | ) | Case No: 11cv1591 AJB (BLM) |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | ) | |
| | ) | |
| Harold Maxine Moore, et al., | ) | (Doc. No. 59) |
| | ) | |
| Defendants. | ) | |

Presently before the Court is Defendants Harold Maxine Moore ("Hal Moore"), Elaine K. Moore, aka Melanie K. Moore ("Melanie Moore"), State Insulation, LLC, an Arizona limited liability company ("State Insulation–Arizona"), State Insulation, LLC, a Nevada limited liability company ("State Insulation–Nevada") (collectively, "State Insulation"), the 1998 Harold M. Moore Revocable Trust ("the Trust"), and Mark Peluso's ("Peluso") (collectively, "Defendants") motion for summary judgment. (Doc. No. 59.) Plaintiff John T. Hardisty ("Plaintiff") filed on opposition on December 23, 2013, (Doc. No. 65), and Defendants filed a reply on January 13, 2014, (Doc. No. 74). The Court held a hearing on the motion on March 11, 2014. (Doc. No. 79.) For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment.[1] (Doc. No. 59.)

---

[1] On March 17, 2014, almost a week after the Court took the matter under submission following oral argument, the Court denied Plaintiff's request to file an amendment to Plaintiff's declaration.

# BACKGROUND

## I.    Factual Background

This action arises from Defendant Hal Moore's investment in a limited liability company known as Legacy Pointe LLC ("Legacy Pointe" or "the Company"), which was formed in or around 2007 to acquire, develop, and construct a 252-unit HUD financed apartment complex located in Knoxville, Tennessee (the "Project").[2] (Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 2; Doc. No. 66, Hardisty Decl. ¶ 20; TAC ¶ 43, Ex. 3.) When the Project commenced, Plaintiff was a member and the chief manager of Legacy Point and a member of Munson-Hardisty LLC ("M-H"), the general contractor and builder on the Project. (Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 2; Doc. No. 66, Hardisty Decl. ¶ 17; TAC ¶ 36.) Between 1983 and commencement of the Project in 2007, Plaintiff had an ongoing business/personal relationship with Defendant Hal Moore. (Doc. No. 66, Hardisty Decl. ¶¶ 3-4; Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 3.) Plaintiff describes this relationship as one of trust and confidence, (Doc. No. 66, Hardisty Decl. ¶¶ 1-8), whereas Defendant Hal Moore contends the relationship was nothing more than a causal business acquaintance, (Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 3).

### A.    Commencement of the Project

Plaintiff first became involved in the Project in June 2007, when Plaintiff negotiated and structured a deal with Craig Mason ("Mason"), the then owner and 100% equity partner in Legacy Pointe. (TAC ¶¶ 18-21; Doc. No. 66, Hardisty Decl. ¶¶ 15-16.) Under the terms of the agreement between Plaintiff and Mason, Plaintiff would become the majority equity partner in Legacy Pointe (the borrower under the loan) and take over ownership and management of the Project.[3] (Doc. No. 66, Hardisty Decl. ¶¶ 15-16, TAC

---

[2] Because the loan for the Project was insured by HUD there were specific rules and requirements that had to be followed, including submitting change orders to HUD for approval of out of scope extras not previously included in Project's plans. (TAC; Doc. No. 66, Hardisty Decl. ¶¶ 28, 42, 43.)

[3] At or around this same time, Plaintiff and John Munson ("Munson") formed M-H to act as the general contractor and builder for the Project. (Doc. No. 66, Hardisty Decl. ¶ 17.)

¶ 29.)  In exchange for Plaintiff's contribution of "sweat equity" in the Project (whereby Plaintiff would waive initial profit on the Project until after the Project was complete), Plaintiff obtained a 27% ownership interest in the Company and M-H received a 10% ownership interest in Company.[4]  (*Id.* at ¶ 18.)  Plaintiff was also presented with the opportunity to obtain an additional 50% membership interest in the Company if he could make a $1.5 million dollar cash contribution to the Project.  (Doc. No. 66, Hardisty Decl. ¶ 18.)  Moreover, as part of the requirements for obtaining a contractor's license in the name of M-H in Tennessee, Plaintiff was required to have a personal line of credit in the amount of $380,000.  (TAC ¶ 86; Doc. No. 66, Hardisty Decl. ¶ 50.)  Plaintiff drew upon his own personal line of credit to provide these funds.  (*Id.*)

**B.     Defendant Hal Moore's Initial Investment in the Project and the August 2007 Note**

Defendant Hal Moore first became aware of the Project and the potential invest-ment in Legacy Pointe during a discussion with Plaintiff in or around July 2007.  (Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 4; Doc. No. 66, Hardisty Decl. ¶ 20.)  After some back and forth between Plaintiff and Defendants Hal and Melanie Moore, the parties signed a Memorandum of Understanding ("MOU"), whereby the parties agreed that Defendant Hal Moore would purchase a 50% membership interest in Legacy Pointe for $1.5 million dollars.  (TAC, Ex. 1; Doc. No. 59, Ex. 4, Melanie Moore Decl., Exs. 1, 2.)  The MOU was required, in part, because it was not possible to get Defendant Hal Moore approved by HUD as a member of Legacy Pointe prior to the Project's closing date.[5]  (Doc. No. 66, Hardisty Decl. ¶ 22; Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 4.)  As a result, the parties agreed that Defendant Hal Moore would loan Plaintiff $1.5 million dollars, and that after Hal Moore was approved by HUD as a member of Legacy Pointe, the 50% membership

---

[4] The value of the builder's profit that was initially waived by Plaintiff was approximately $2.048 million dollars.  (TAC ¶ 29, Ex. 1.)  This amount was waived in exchange for Plaintiff's percentage ownership in Legacy Pointe.  (*Id.*)

[5] The firm commitment from HUD regarding the Project was set to expire on August 28, 2007.  (Doc. No. 66, Hardisty Decl. ¶ 24.)  If Legacy Point could not produce the additional $1.5 million dollars, HUD would not close on the Project.  (*Id.*)

interest acquired by the $1.5 million dollar capital contribution would be transferred from Plaintiff to Defendant Hal Moore.  (*Id*.)  The MOU also detailed that M-H and Plaintiff agreed (in a separate agreement) to pay 13% interest per annum on the $1.5 million dollar loan.  (TAC, Ex.1.)

On August 20, 2007, Plaintiff and his wife Teresa Hardisty executed a promissory note in favor of Defendants reflecting the $1.5 million dollar loan from Defendants to Plaintiff ("August 2007 Note").  (Doc. No. 59, Ex. 3, Hal Moore Decl., Ex. 1; TAC ¶¶ 56, 58.)  The August 2007 Note was secured by certain deeds of trust on Plaintiff's personal and business properties ("Deeds of Trust"), and provided that any "unpaid balance of the loan will bear interest at a rate of thirteen percent (13%) per annum."  (*Id*.)  The August 2007 Note further stated that Plaintiff would make interest only payments "on the first day of each month from the date of this Note until September 1, 2012."  (*Id*.)  On August 23, 2007, Defendant Hal Moore transferred $1 million dollars to Legacy Pointe and the remaining $500,000 to M-H.  (Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 6; TAC ¶ 63.)

## C.   Security for the Bonds

On or about September 4, 2007, Great American Insurance Company ("Great American") informed Plaintiff that before providing M-H with payment and performance bonds ("the Bonds") required to move forward with the Project, M-H would need to deposit $750,000 in a certificate of deposit as security for the Bonds.  (Doc. No. 66, Hardisty Decl. ¶ 29; Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 7; TAC ¶ 68.)  In order to comply with Great American's request, Plaintiff asked Defendant Hal Moore if he would agree to set aside $750,000 in a certificate of deposit.  (Doc. No. 66, Hardisty Decl. ¶ 29; Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 7; TAC ¶¶ 69-70.)  After Defendant Hal Moore agreed, $750,000 was deposited at an agreed upon bank and Plaintiff and his wife executed a promissory note in favor of Defendant Hal Moore ("September 2007 Note").  (Doc. No. 66, Hardisty Decl. ¶¶ 29-30.)  The September 2007 Note was secured by the Deeds of Trust as set forth in the terms of the note and confirmed in email correspon-

dence between the parties.  (*Id*.)  Moreover, similar to the August 2007 Note, the September 2007 Note stated that Plaintiff promised to repay the principal of the loan ($750,000) plus 13% interest per annum payable monthly until March 11, 2008.  (*Id*.)

### D.    Defendant Hal Moore is Approved by HUD

On September 13, 2007, the loan for the Project closed and construction commenced.  (Doc. No. 66, Hardisty Decl. ¶ 32; Hal Moore Decl. ¶ 8.)  On November 7, 2007, HUD approved Defendant Hal Moore as a member of Legacy Pointe, and the 50% membership interest in the Company that had previously been held by Plaintiff for Defendant Hal Moore was transferred to Defendant Hal Moore.  (Doc. No. 66, Hardisty Decl. ¶ 32, TAC ¶ 82.)  On December 21, 2007, the Second Amended and Restated Operating Agreement for Legacy Pointe was approved by HUD ("Amended Operating Agreement").  (TAC, Ex. 3.)  The Amended Operating Agreement broke down the membership interests of the respective members in Legacy Pointe as follows: M-H 10%, Mason 9.90%, Plaintiff 30.1%, and Defendant Hal Moore 50%.  (*Id*.)

### E.    The Project Runs Over Budget

In or around July 2008, it became evident that the Project was substantially over budget.  (Doc. No. 66, Hardisty Decl. ¶ 43; Doc. No. 59, Ex. 3, Hal Moore Decl. ¶¶ 9, 11.)  As a result, on October 15, 2008, Defendant Hal Moore loaned M-H $655,000 to pay then outstanding subcontractor invoices.  (Doc. No. 66, Hardisty Decl. ¶ 45; Doc. No. 59, Ex. 3, Hal Moore Decl. 11.)  The $655,000 loan was memorialized in a promissory note signed by Plaintiff and Defendant Hal Moore ("October 2008 Note").  (Doc. No. 59, ex. 3, Hal Moore Decl., Ex. 3.)  The October 2008 Note stated that no interest would accrue if the outstanding balance was paid by May 1, 2009, but that interest would accrue at the rate of 10% per annum after than date.  (*Id*.)

### F.    Plaintiff assigns his Membership Interests in the Company to    Defendant Hal Moore

Two months later, in around December 2008, it became evident that there was insufficient capital to cover the operating expenses necessary to complete the Project.

(Hardisty Decl. ¶ 46; Hal Moore Decl. ¶ 12.)  As a result, in January 2009, Plaintiff and Defendant Hal Moore entered into an Incentive Agreement ("Incentive Agreement"), which was later memorialized in a Purchase and Sale Agreement ("Purchase and Sale Agreement").  (Doc. No. 59, Ex. 3, Hal Moore Decl., Ex. 4.)  Under the Purchase and Sale Agreement, it was agreed that Plaintiff would convey his remaining 27% membership interest in the Company to Defendant Hal Moore, and in return, State Insulation, a limited liability company wholly owned by Defendant Hal Moore, would purchase and retain all potential claims against the Bonds by the unpaid subcontractors.[6]  (Doc. No. 66, Hardisty Decl. ¶ 50; Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 12, Ex. 4.)  On February 28, 2009, Plaintiff and Defendant Hal Moore executed an Assignment ("Assignment"), thereby memorializing the transfer of Plaintiff's 27% membership interest in the Company as outlined in the Purchase and Sale Agreement.  (Doc. No. 66, Hardisty Decl. ¶ 51; Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 12, Ex. 5.)

### D.   Conclusion of the Project and Claims Against the Bonds

After the Project concluded, there were several unpaid subcontractor claims.[7]  (Doc. No. 66, Hardisty Decl. ¶ 53; Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 14.)  State Insulation ultimately paid these claims, and as consideration for payment, State Insulation was assigned the right to pursue any and all claims against the Bonds on behalf of the subcontractors.  (*Id.*)  Based on this assignment of rights, in October 2009, State Insulation asserted a claim on the Bonds against Great American in the Chancery Court for Knox County, Tennessee (*State Insulation LLC v. Great American Insurance Co.*, Case No. 176324-1) ("State Insulation Action").  (Hal Moore Decl. ¶ 14.)  As signatories on

---

[6] Plaintiff contends that the Purchase and Sale Agreement was markedly different from the Incentive Agreement and that Defendants misrepresented that the Purchase and Sale Agreement contained "nothing new."  (Doc. No. 66, Hardisty Decl. ¶ 49.)

[7] On February 23, 2009 and May 31, 2009, Defendant Hal Moore made additional capital contributions to the Company in the amount of $500,000 and $1,000,000, respectively.  (Doc. No. 59, Ex. 3, Hal Moore Decl. ¶ 13, Exs. 6, 7.)  These additional contributions were memorialized in writing and signed by Plaintiff, Mason, and Defendant Hal Moore.  (*Id.*)

the bonds, Great American requested Legacy Pointe and Plaintiff to defend and indem-nify the claim.[8]  (*Id.*)

## II.   Procedural History

Plaintiff filed the original Complaint on July 19, 2011, (Doc. No. 1), and filed the First Amended Complaint as a matter of right on August 1, 2011, (Doc. No. 3).  On October 13, 2011, Defendant Melanie Moore and Defendant Peluso filed a motion to dismiss the second and fifth causes of action.  (Doc. No. 10.)  The Court held a hearing on the motion on December 23, 2011, and on December 29, 2011, dismissed the second cause (aiding and abetting-breach of fiduciary duty) without leave to amend and the fifth cause of action (RICO) with leave to amend.  (Doc. No. 16.)

Plaintiff filed the Second Amended Complaint ("SAC") on January 30, 2012. (Doc. No. 23.)  The first cause of action was amended to allege breach of specific promise to answer for the debt of another and the second cause of action was amended to allege aiding and abetting intentional torts (fraud, constructive fraud, Cal. Corp. Code § 25401, and conversion).  (*Id.*)  Defendants filed a motion to dismiss the first, fourth, fifth, seventh, and ninth causes of action on February 21, 2012.  (Doc. No. 26.)  On May 2, 2012, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing the first cause of action with leave to amend and the fifth cause of action without leave to amend.  (Doc. No. 33.)  Defendants' motion to dismiss the fourth, seventh, and ninth causes of action were denied.  (*Id.*)

Plaintiff filed the operative Third Amended Complaint ("TAC") on June 1, 2012. (Doc. No. 34.)  On June 20, 2012, Defendant Hal Moore filed a motion to dismiss the first and tenth causes of action, which was combined with a motion by all Defendants to strike any allegations regarding RICO.  (Doc. No. 35.)  On October 9, 2012, the Court granted both motions.  (Doc. No. 39.)  Defendants filed an Answer and Counter-Claim

---

[8] At the March 11, 2014 motion hearing, Counsel for both parties were uncertain as to the current status of the State Insulation Action.

against Plaintiff on November 14, 2012, (Doc. No. 40), and Plaintiff filed an Answer to Defendants' CounterClaim on November 5, 2012, (Doc. No. 42).

On July 19, 2013, the parties filed a joint motion to modify the current scheduling order requesting additional time to complete required disclosures, designations, and depositions.  (Doc. No. 51.)  In support of the joint motion, the parties declared that they have been "preparing [the] case with diligence," and that additional time was required to analyze documents already produced and "proceed with depositions in [the] action."  (*Id.* at 3:11-13.)  Magistrate Judge Barbara L. Major granted the joint motion on July 24, 2013.  (Doc. No. 52.)  On September 12, 2013, the parties filed a second joint motion for modification of the scheduling order.  (Doc. No. 55.)  Magistrate Judge Major denied the second joint motion on September 19, 2013, finding that the parties had failed to articulate good cause.  (Doc. No. 56.)  The parties filed a joint motion for reconsideration on September 26, 2013.  (Doc. No. 57.)  On October 2, 2013, the Court granted the parties' motion for reconsideration, in part, because it was apparent that the parties had not adequately prepared the case or taken any depositions in the matter.  (Doc. No. 58 at 2.)  Defendants filed the pending motion for summary judgment on November 22, 2013.  (Doc. No. 59.)  As confirmed by counsel for both parties at oral argument, no depositions were taken prior to the filing of Defendants' motion for summary judgment or prior to the hearing on the motion.  Further, no request for relief under Fed. R. Civ. P. 56(d) was filed or otherwise requested at oral argument.

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 248.

11cv1591 AJB (BLM)

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of a disputed fact remains. *Celotex*, 477 U.S. at 314. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants move for summary judgment on each of Plaintiff's remaining claims: aiding and abetting intentional torts (second cause of action); fraud (third cause of action); constructive fraud (fourth cause of action); quiet title (fifth cause of action); securities fraud under California Business & Professions Code § 25401 *et seq.* (sixth cause of action); conversion (seventh cause of action); abuse of process (eighth cause of action); and conspiracy (ninth cause of action). The Court first addresses the fraud claim followed by the remaining claims.

## I.  Fraud

Plaintiff's third cause of action alleges common law fraud against Defendants Hal and Melanie Moore, the Trust, and State Insulation. (TAC ¶¶ 205-245.) Common law

fraud has five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (Cal. 2003); *see also City Solutions Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004).

The TAC alleges that Defendants made the following misrepresentations: (1) misrepresentations regarding the $1.5 million dollar loan (August 2007 Note); (2) misrepresentations regarding the Deeds of Trust; (3) misrepresentations regarding the $750,000 loan (September 2007 Note); (4) misrepresentations that Defendant Hal Moore would pay for all out of scope extras incurred on the Project and/or misrepresentations that Hal Moore made additional capital contributions to the Project (October 2008 Note); and (5) misrepresentations regarding the Purchase and Sale Agreement, Plaintiff's assignment of his 27% membership interest in the Company to Defendant Hal Moore, repayment of Plaintiff's $380,000 line of credit, and State Insulation's purchase of unpaid subcontractors' claims.

Defendants contend summary judgment should be granted on Plaintiff's fraud claim because Plaintiff has failed to establish an actionable misrepresentation upon which he justifiably relied.  As a result, Defendants assert that Plaintiff's fraud claim is nothing more than an attempt to plead around executed agreements between the parties because any oral representations regarding these agreements should be excluded under the parol evidence rule.  Defendants attached the executed agreements, email correspondence between Plaintiff and Defendants Hal and Melanie Moore, and deposition testimony from Plaintiff and a non-party in a separate state court action regarding the August 2007 Note to support both of these assertions.  In response, Plaintiff contends the parol evidence rule does not apply because he should be able to introduce evidence of these oral representations to show that Defendants fraudulently induced him to enter the agreements at issue.  Furthermore, Plaintiff argues that he justifiably relied upon Defendants' oral representa-

tions because the parties had a long-standing confidential/fiduciary relationship.  The Court separately addresses the merits of each alleged misrepresentation below.

### A.   The $1.5 Million Dollar Loan (August 2007 Note)

Plaintiff contends Defendants made the following misrepresentations with respect to the $1.5 million dollar loan (August 2007 Note):

> (1) On or about August 20, 2007, Defendant Hal Moore made representations that the loan by Defendant Moore in connection with [] Defendant Hal Moore's $1.5 million equity investment was intended to be only a temporary "stop gap" measure. (TAC ¶ 206; Doc. No. 66, Hardisty Decl. ¶ 25.)

> (2) Defendant Hal Moore also represented that the interest payable on the note was imposed merely to provide Plaintiff with a motivation to get Defendant Hal Moore his membership interest sooner, rather than later.  (*Id.*)

> (3) On or about August 20, 2007, Defendant Hal Moore further represented to Plaintiff that the loan would be deemed satisfied in full, and that the lien on Plaintiff's real properties would be removed.  (*Id.* at ¶ 207.)

> (4) Defendant Moore further represented to Plaintiff that if, and only if, HUD did not approve Moore as an investor in the Company, then the $1.5 million would continue to be treated as a loan until repaid, and Defendant Hal Moore would receive the previously mentioned 13 percent per annum in interest on the note. (*Id.*)

As briefed by Defendants and reaffirmed by defense counsel at oral argument, Defendants argue that none of the above statements are actionable because each is contradicted by the express terms of the August 2007 Note.  (Doc. No. 59, Hal Moore Decl., Ex. 1.)  Defendants further argue that Plaintiff was fully aware of the terms of the August 2007 Note, which is exemplified by statements made by Plaintiff in email correspondence between the parties prior to execution of the Note.  For example, in an email dated August 16, 2007 between Plaintiff and Defendant Melanie Moore, just four days before execution of the August 2007 Note, Plaintiff stated:

> I am going to pay Hal 13%.  It will come from the Builders OH, which is in the construction loan.  There is no one other than me to agree to this.  The MOU and the Operating Agreement, has Hal at 50%.  No if's, and's, or but's.  That's simple.  50% is 50% of cash flow, at sale, everything . . .  I will be pledging, assigning, (look at the MOU) 50% of the interest in Legacy Pointe to Hal.  I will by separate agreement, be agreeing to pay the 13% . . . .  Remember when I first made the offer, due to time.  I will give you 13% secured with everything I own, so I can close this deal and not lose it.

(Doc. No. 59, Melanie Moore Decl., Ex. 2.)  Defendants assert this language was then embodied in the August 2007 Note, which states:

11cv1591 AJB (BLM)

1       Borrower shall make interest only payments, as provided herein, on the first
2  day of each month from the date of this note until September 1, 2012 ("Maturity Date"). The unpaid balance of the loan will bear interest at a rate
3  of thirteen percent (13%) per annum . . . . This Note is secured by the Long Form Deeds of Trust . . . executed by Borrower.

4  (Doc. No. 59, Hal Moore Decl., Ex. 1.) Therefore, Defendants contend that based on the

5  express terms of the August 2007 Note and Plaintiff's August 16, 2007 email to Defen-

6  dant Melanie Moore, Plaintiff was fully aware that the $1.5 million dollar loan would

7  accrue interest at a rate of 13% per annum and that the loan would be secured by the

8  separately executed Deeds of Trust.

9       In response, Plaintiff contends that Defendants completely ignore the fact that

10  Plaintiff alleges he was fraudulently induced to execute the August 2007 Note and Deeds

11  of Trust, and more importantly, that Defendant Hal Moore misrepresented that the

12  August 2007 Note and Deeds of Trust would be extinguished after Defendant Hal Moore

13  was approved by HUD and received his 50% membership interest in Legacy Pointe.

14  (Doc. No. 66, Hardisty Decl. ¶ 25.) Plaintiff further contends that evidence of these oral

15  representations, as outlined in Plaintiff's declaration, are admissible despite the August

16  2007 Note and Deeds of Trust because parol evidence can be used to show that a contract

17  was fraudulently induced regardless of whether the representations directly contradict

18  express terms in the parties' agreement. *See Riverisland Cold Storage*, *Inc. v. Fresno-*

19  *Madeira Prod. Credit Ass'n.*, 55 Cal. 4th 1169, 1182–83 (Cal. 2013); *Hinesley v.*

20  *Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 300 (Cal. Ct. App. 2005). Finally, Plaintiff

21  argues his reliance on Defendant Hal Moore's oral representations was justified, despite

22  his execution of the August 2007 Note and the corresponding Deeds of Trust, given the

23  fiduciary/confidential nature of his relationship with Defendant Hal Moore and the fact

24  that both Hal and Melanie Moore continued to reassure him that the Deeds of Trust

25  would be canceled after Hal Moore received his membership interest in the Company.

26  (Doc. No. 66, Hardisty Decl. ¶¶ 1-14, 36-37.)

27       Although Defendants are correct that parol evidence is not available to vary the

28  express terms of a written agreement, Plaintiff is also correct that parol evidence is

admissible to show fraudulent inducement to enter a contract.  *See Bank of Am. Nat. Trust & Sav. Ass'n v. Lamb Fin. Co.*, 179 Cal. App. 2d 498, 503 (Cal. Ct. App. 1960); *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 42 (Cal. Ct. App. 1997) (parol evidence admissible on issue of fraud in the inducement).  This rule applies "even [if] the contract recites that all conditions and representations are embodied therein."  *Morris v. Harbor Boat Bldg. Co.*, 112 Cal. App. 2d 882, 888 (Cal. Ct. App. 1952) (internal citations omitted); *see also Hinesley*, 135 Cal. App. 4th at 301.  However, because the Deeds of Trust were pledged by Plaintiff as security for subsequent loans between the parties, and Plaintiff confirmed at oral argument that there have been no out-of-pocket damages associated with the alleged misrepresentations regarding the August 2007 Note, the Court finds any claims associated with the August 2007 Note have been extinguished.

As a result, any disagreement between the parties regarding Plaintiff's justifiable reliance or the application of the parol evidence rule with regard to the August 2007 Note is moot  because the Court finds the August 2007 Note was canceled when Plaintiff transferred the 50% membership interest in Legacy Pointe to Defendant Hal Moore.  Accordingly, the Court GRANTS Defendants' motion for summary judgement with respect to alleged misrepresentations regarding the August 2007 Note.

## B.    Deeds of Trust

Plaintiff contends Defendants made the following misrepresentations with respect to the Deeds of Trust:

(1) Defendant Melanie Moore represented to Plaintiff that the Trust Deeds were "standard" and contained the same terms as the deed of trust Plaintiff had signed before in 2004 (that is, with respect to the monies that had been advanced to Plaintiff in connection with Defendant Hal Moore's offer to "help" Plaintiff in connection with Plaintiff s litigation with a former employee), which was a very simple instrument with no unusual terms.  (TAC ¶ 208.)

(2) The Moore Defendants also, contrary to their representations, knew that the debt under the $750,000 Note would encumber Plaintiff's properties by virtue of the future advances clause in the 2007 Deeds of Trust, which had been represented to be only "temporary" in nature.  (*Id*. at ¶ 209.)

(3) Defendant Melanie Moore made express misrepresentations to Plaintiff before Plaintiff executed the $750,000 Note that such was unsecured.  (*Id*. at ¶ 212.)

(4) Beginning in September 2007, and continuing through at least January 2009, the Moore Defendants made continued representations to Plaintiff that they would reconvey the 2007 Trust Deeds, but that they simply had not gotten around to it. (*Id.* at ¶ 213.)

Similar to the arguments detailed above, Defendants contend that none of these allegations are supported by the evidence. The Court agrees. In an email to Defendants Hal and Melanie Moore dated September 7, 2007, Plaintiff stated that the September 2007 Note would be secured by his "office building and house until I remove you from the ILOC." (Doc. No. 75, Melanie Moore Supp. Decl., Ex. 5.) Security for the September 2007 Note was again confirmed by Plaintiff in a September 10, 2007 email, wherein Plaintiff stated that he "can pledge Teresa's stock account which is $391K plus the properties." (Doc. No. 75, Melanie Moore Supp. Decl., Ex, 6.) At oral argument, Plaintiff acknowledged this evidence but stated that the emails were taken out of context and could be rebutted by other emails exchanged between the parties. However, these alleged "other emails" were never presented to the Court for review nor did Plaintiff make a motion for additional discovery or document production under Rule 56(d). Fed. R. Civ. Pro. 56(d) ("If the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . .").[9]

Therefore, although Plaintiff represents that he was unaware that the Deeds of Trust were still operable after Defendant Hal Moore received his 50% membership interest in the Company, such testimony is contradicted by Plaintiff's own representations. As a result, Plaintiff's own self-serving declaration, which is the only evidence presented by Plaintiff in support, is insufficient to raise a triable issue of material fact. *See Sec. & Exch. Comm'n v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (quoting Fed. R. Civ. P. 56(e)). Accordingly, the Court GRANTS Defendants' motion for summary judgment with respect to alleged misrepresentations regarding the continued viability of the Deeds of Trust.

---

[9] Even if Plaintiff would have made a Rule 56(d) motion, it is doubtful the motion would have been granted because it appears Plaintiff had adequate time and was provided with the necessary documents to prepare an opposition to Defendants' motion.

1

**C.      The $750,000 Dollar Loan (September 2007 Note)**

2          Plaintiff contends Defendants made the following misrepresentations with respect

3   to the $750,000 loan:

4          (1) In or about September, 2007, in order to induce Plaintiff to sign the $750,000
           Note, Defendant Melanie Moore represented and made express promises to
5          Plaintiff that the $750,000 Note would not need to be repaid unless and until the
           Company's requirement to post the CD had been released by Great American,
6          following the completion of the Project, at which time the CD would be cashed
           out, the money would be returned by the Company to Defendant Hal Moore, and
7          Plaintiff would then be deemed to have repaid the obligation under the Note in full.
           (TAC ¶ 211; Doc. No. 66, Hardisty Decl. ¶ 30.)
8
           (2) Defendant Melanie Moore made express misrepresentations to Plaintiff before
9          Plaintiff executed the $750,000 Note that such was unsecured.  (TAC ¶ 212.)

10         (3) The representations of the Moore Defendants in connection with the $750,000
           Note were false. The Moore Defendants in fact drafted the $750,000 Note to
11         provide for a fixed 6-month maturity date of March 11, 2008, at which time and
           regardless of whether the requirement for the Company to post the CD had been
12         released-the entire amount under the $750,000 Note would become due and
           payable by Plaintiff, plus interest at the rate of 13 percent. The Moore Defendants
13         have, in fact, issued a notice of intent to foreclose on the 2007 Trust Deeds because
           of the Plaintiff's nonpayment of the September 2007, although the requirement to
14         post the CD had not been released by Great American. (*Id.* at ¶ 214.)

15         Defendants contend that none of these representations are actionable because they

16  are neither false nor can they establish fraud.  The Court agrees.  Although Plaintiff

17  declares that he was "surprised by the demand" made by the bonding company and

18  "initially thought the deal was over," emails sent from Plaintiff to Defendants Hal and

19  Melanie Moore contradict these statements.  (Doc. No. 66, Hardisty Decl. ¶ 29.)  For

20  example, on September 7, 2007 (3 days before Defendant Melanie Moore issued a check

21  for $750,000 in favor of M-H), Plaintiff sent an email to Hal and Melanie Moore stating:

22  "We knew the bonding would be tricky. . .  The Project is still worth doing.  I will easily

23  beat the numbers that convinced you to participate."  (Doc. No. 75, Melanie Moore Supp.

24  Decl., Ex. 5.)  The email also stated, "You [Hal] keep the security interest in my office

25  building and house until I remove you from the ILOC."  (*Id.*)  On September 10, 2007

26  (the day before Plaintiff signed the September 2007 Note), Plaintiff sent another email to

27  Defendants Hal and Melanie Moore.  (*Id.*, Ex. 6.)  This email stated, "1st Pac Bank is

28

paying just over 6% on their 6mo. CD.  Wire $750K and the company will pay the difference to equal 13% until we can remove or replace it."  (*Id.*)

Therefore, based on both emails, it is clear that the parties agreed that the $750,000 loan would be secured by Plaintiff's properties, that Defendants would receive a 13% return on the $750,000 loan, and that the security requested by the bonding company would be held in a six month CD until it could be removed or replaced.  Plaintiff's emails also clarify that Plaintiff still wished to go through with the Project despite the last minute request from the bonding company.  Moreover, although Plaintiff declares that he "met Melanie Moore at the Bank on September 11, 2007 to purchase the CD," at which time Melanie Moore made the alleged misrepresentations regarding the September 2007 Note, Defendants have submitted Plaintiff's deposition testimony from an unrelated state court proceeding that calls into question Plaintiff's declaration.  (Doc. No. 66, Hardisty Decl. ¶ 30.)  For example, when asked if he could recall any events surrounding the $750,000 deposit Plaintiff stated:

> A:    Well, like I said, I don't remember the day, the motion, the time, having the check, going to the bank.  I don't remember that, no.  (Doc. No. 74, Scalabrini Decl., Ex 1 at 17:3-7.)

At oral argument, Plaintiff could not rebut the email testimony presented by Defendants, but once again stated that there were "additional emails" that "could be" presented to the Court that could possibly call into question the evidence submitted by Defendants.  However, as stated above, Plaintiff did not present this alleged "additional evidence" to the Court prior to the motion hearing, explain to the Court why this evidence had not been attached to Plaintiff's opposition or why a motion for a sur-reply had not been filed, or make a motion under Rule 56(d).  Plaintiff's failure to present such testimony is further exacerbated by the fact that Magistrate Judge Major granted the parties' two extensions of time in which to complete discovery, the second of which was granted on a motion for reconsideration.  (Doc. No. 58.)  Therefore, Plaintiff's contention that the Court should not consider some of the evidence presented by Defendants in their reply is not well-taken.

As a result, the Court finds that the evidence submitted by Defendants, i.e., the September 2007 Note, email correspondence between Plaintiff and Defendants Hal and Melanie Moore, and Plaintiff's deposition testimony in a unrelated state court proceeding each contradict Plaintiff's allegations, which are supported solely by his own self-serving declaration. *See Mattel*, *Inc. v. MGA Entm't*, *Inc.*, 782 F. Supp. 2d 911, 1010 (C.D. Cal. 2011); *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (stating that a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact). Accordingly, the Court GRANTS Defendants' motion for summary judgement with respect to alleged misrepresentations regarding the September 2007 Note.

### D.   Payment/Reimbursement for Out of Scope Extras

Plaintiff contends Defendants made the following misrepresentations regarding payment and reimbursement for out of scope extras incurred on the Project:

(1) Beginning in or about October 2007, and continuing through at least December 2008, Defendant Hal Moore made continued representations to Plaintiff that he would: (i) personally pay for all out of scope "extras" incurred by the Company in connection with the Project; and (ii) reimburse Plaintiff and MH for all expenses that they incurred on the Company's behalf in connection with the Project. (TAC ¶ 215; Doc. No. 66, Hardisty Decl. ¶¶ 38, 43-44.)

(2) Defendant never intended to personally pay for the "extras" or to reimburse Plaintiff and MH for their expenses. (*Id*. at ¶ 216.)

(3) In or about December 2008, the Moore Defendants misrepresented to Plaintiff that Defendant Moore had "contributed $655,000 into the project." (*Id*. at ¶ 221.)

(4) In or about January 2009, the Moore Defendants misrepresented to Plaintiff in the Letter of Agreement that a "Bridge Loan" for $750,000 had been provided to the Company. (*Id*. at ¶ 223.)

Again, Plaintiff supports these contentions with nothing more than his own declaration. Plaintiff declares that by June 2008, the Project was approximately $500,000 short of what was needed to pay then outstanding subcontractor invoices for extras that had been incorporated at the request of Defendant Hal Moore. (Doc. No. 66, Hardisty Decl. ¶ 45.) However, instead of paying for the out of scope extras directly, as Defendant Hal Moore had repeatedly represented to Plaintiff, Hal Moore required Plaintiff to sign another promissory note in the amount of $655,000. (*Id*.; Doc. No. 59, Hal Moore Decl.,

Ex. 3, October 2008 Note.)  Plaintiff further declares that as of July 2008 (one month later), the Project was approximately $1.5 million dollars over budget, again "largely because of Hal's extras."  (Doc. No. 66, Hardisty Decl. ¶ 43.)  Finally, Plaintiff asserts that instead of submitting change orders to HUD to request additional funds to cover these expenses, Defendant Hal Moore caused payments to the subcontractors by M-H to be delayed, reduced, or not paid at all, which caused the Project to run behind schedule.  (*Id.*)

Defendants argue that none of these statements are actionable because they are each contradicted by contemporaneous statements made by Plaintiff, and more importantly, that Defendant Hal Moore never represented that he would pay for out of scope extras.  To support this contention, Defendants point to two emails from Plaintiff to Defendant Hal Moore.  The first email, sent on August 20, 2008, states that "John Munson, whether I like it or not has approached this project with his own contract in mind and has upgraded and spent money the way he always has."  (Doc. No. 59, Melanie Moore Decl., Ex. 3.)  The email further stated, "I'm with you on your efforts and what you think and want, but we haven't done too bad."  (*Id.*)  Plaintiff sent a follow-up email eight days later, which provided a list of change orders on the Project, an explanation of whether the Project was under or over budget and why, and stated that "[w]e have been able to absorb all these expenses and still come in at or under the $18m."  (*Id.*, Ex. 4)  The email also stated that Defendant Hal Moore had agreed to pay for certain improvements but that "you [Hal Moore] don't need to."  Finally, the email stated, "I'll pay whatever you want.  I need a little more staying power."  (*Id.*)

Plaintiff did not offer an opposition to the email evidence submitted by Defendants in his opposition brief or at oral argument, but instead, focused on the fact that Plaintiff justifiably relied on each of Defendant Hal Moore's representations regarding payment and reimbursement for the out of scope extras.  This is insufficient to defeat Defendants' motion for summary judgment—Plaintiff must submit some evidence (that is not contradicted by his own representations) that Defendant Hal Moore agreed to pay for the

out of scope extras or that Plaintiff in fact was under the continued understanding that Hal Moore would pay for the out of scope extras. *See Celotex*, 477 U.S. at 314 (stating that once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of a disputed fact remains). Plaintiff's declaration, which states that as of June 2008 Defendant Hal Moore promised to pay for the out of scope extras, cannot establish this point because it is directly refuted by representations made by Plaintiff in an August 2008 email, wherein Plaintiff informed Hal Moore that he would not be responsible for paying for such extras.[10] (Doc. No. 66, Hardisty Decl. ¶ 45)

Therefore, the Court finds Plaintiff has failed to present sufficient evidence to raise a genuine issue of material fact as to whether Defendant Hal Moore agreed to pay for out of scope extras incurred on the Project. *See Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1074 (C.D. Cal. 2010). Accordingly, the Court GRANTS Defendants' motion for summary judgment with respect to Hal Moore's representations that he would pay for the out of scope extras.

## E.   Transfer of Membership Interest

Finally, Plaintiff contends Defendants made the following misrepresentations with respect to the transfer of Plaintiff's remaining 27% membership interest in Legacy Pointe:

(1) In or about January 15, 2009, in order to induce Plaintiff to execute the Incentive Agreement, the Moore Defendants misrepresented to Plaintiff that, if Plaintiff parted with his 27 percent membership interest in the Company, then, in return, Defendant Hal Moore would pay Plaintiff $380,000, in phases, with the last installment to be paid to Plaintiff "on completion of entire project." (TAC ¶ 225; Doc. No. 66, Hardisty Decl. ¶¶ 47-48.)

(2) In or about January 15, 2009, the Moore Defendants represented to Plaintiff in connection with the Incentive Agreement that the Collateral Assignments were required to be executed by subcontractors "to ensure reimbursement by HUD through the draw process." The Moore Defendants also misrepresented to Plaintiff at the time of the execution of the Incentive Agreement that Defendant Hal Moore

---

[10] Moreover, some of the out of scope extras Plaintiff contends Defendant Hal Moore agreed to pay for were outlined in the spreadsheet contained within the August 2008 email sent by Plaintiff to Defendant Hal Moore, wherein Plaintiff states Hal Moore need not pay for these extras. (Doc. No. 59, Melanie Moore Decl., Ex. 4; TAC ¶ 95.)

would not enforce the claims assigned to State Insulation for any amounts that exceeded the existing HUD amount, but that any "extras" would be paid for by Defendant Hal Moore, per his prior representations to Plaintiff. (*Id.* at ¶ 227.)

(3) The Defendants' representations were false. At the time of the execution of the Incentive Agreement by Plaintiff, the Moore Defendants fully intended to enforce the claims assigned to State Insulation against the Bonds, and they did not intend to make payment to Plaintiff or MH for "extras," contrary to their prior representations to Plaintiff that they would. (*Id.* at ¶ 228.)

(4) Defendant Melanie Moore represented that the January 26, 2009 PSA was the same as the draft she had sent to Plaintiff by e-mail on January 22, and that furthermore, it was a "standard agreement" like ones the Plaintiff "would have seen and signed before" and further assured Plaintiff that the PSA was entirely proper and was necessary and that it contained "nothing new." (*Id.* at ¶ 231; Doc. No. 66, Hardisty Decl. ¶¶ 50-51.)

(5) Defendants' representations were false. In fact, the January 26, 2009 PSA contained new terms not in the prior agreement, and which were materially prejudicial to Plaintiffs rights. (TAC ¶ 232; Doc. No. 66, Hardisty Decl. ¶ 50.)

(6) The representations Defendant Melanie Moore placed into the PSA were false. Defendant Melanie Moore knew that Defendant Hal Moore had burdened the Company with obligations for "extras" that were not properly reflected on the books of account and she also knew that the Incentive Agreement referred to obligations to Defendant Hal Moore that were not reflected on the Company's books of account. Furthermore, Defendant Melanie Moore knew that both herself and Defendant Hal Moore had used, and were continuing to use, threats, and extortion to force Plaintiff to transfer his 27 percent membership interest and knew that Plaintiff was under great duress because of his financial stress and the threats by the Moore Defendants. (*Id.* at ¶ 234.)

Again, the only evidence submitted by Plaintiff in support of these allegations is his declaration. In his declaration, Plaintiff states that he signed the Incentive Agreement, which was a precursor to the Purchase and Sale Agreement, because the Project was approximately $2.0 million dollars over budget and Defendant Hal Moore represented that he would walk away from the Project and leave all subcontractor claims unpaid unless Plaintiff agreed to transfer his remaining 27% membership interest in the Company to Hal Moore. (Doc. No. 66, Hardisty Decl. ¶ 46.) Plaintiff further states that the Incentive Agreement falsely represented amounts Hal Moore contributed to the Project, expressly acknowledged Plaintiff's personal liability under the Bonds if the subcontractors were not paid, set forth that Plaintiff would be repaid the $380,000 from his line of credit, and provided that Plaintiff would receive a bonus if the Project was completed on time. (*Id.* at ¶ 47.)

Plaintiff then declares that he was contacted by Defendant Melanie Moore on January 22, 2009, wherein Plaintiff was informed that he would need to sign a more formal agreement to satisfy HUD's requirements.  (*Id.* at ¶ 49.)  At that time, Plaintiff declares that Melanie Moore represented to him that he needed to sign this document immediately and that it contained "nothing new."  (*Id.*)  Plaintiff further declares that he later discovered that Defendant Melanie Moore's representations were false, in that the Purchase and Sale Agreement provided that Plaintiff would transfer his remaining 27% membership interest in the Company in exchange for State Insulation (an entity wholly owned by Defendant Hal Moore) purchasing and retaining all claims of the unpaid subcontractors.  Plaintiff also declared that the Purchase and Sale Agreement provided that Plaintiff would no longer be reimbursed for his $380,000 line of credit.  (*Id.* at ¶ 50.)  Plaintiff finally declares that Defendants made claims against the Bonds contrary to prior representations that they would not, and as a result of Plaintiff being a guarantor on the Bonds, Plaintiff has been unable to obtain another bond or do any significant construction work in California or elsewhere.  (*Id.* at ¶ 53.)

Defendants contend that none of these representations are actionable because they are contradicted by the Purchase and Sale Agreement, which was signed by Plaintiff on January 26, 2009.  Defendants further argue that the Purchase and Sale Agreement is the final agreement between the parties and that all other oral representations should be disregarded because the agreement stated that the parties "did not rely on any representation . . . concerning any subject matter" of the agreement.

The Court does not agree.  As stated above, the parol evidence rule does not bar oral representations if used to show that a contract was fraudulently induced and applies "even [if] the contract recites that all conditions and representations are embodied therein."  *Morris*, 112 Cal. App. 2d at 888 (internal citations omitted); *see also Hinesley*, 135 Cal. App. 4th at 301.  Moreover, although a party's obligations with respect to a contract are lowered when the parties are not at arm's length, and instead involved in a confidential relationship, here, neither party has presented the Court with sufficient

evidence to allow the Court to find, as a matter of law, that Defendants did not make material misrepresentations regarding the transfer of Plaintiff's remaining 27% membership interest or that Plaintiff had sufficient notice to inquire further. *See Lee v. Escrow Consultants, Inc.*, 210 Cal. App. 3d 915, 921 (Cal. Ct. App. 1989); *see also Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 129 (Cal. Ct. App. 1966) (citations omitted) ("[A] confidential relationship may exist whenever a person with justification places trust and confidence in the integrity and fidelity of another."); *Barbara A. v. John G.*, 145 Cal. App. 3d 369, 383 (Cal. Ct. App. 1983) ("The essence of a fiduciary or confidential relationship is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party.").[11]

Therefore, because Plaintiff has represented that he was fraudulently induced to execute the Purchase and Sale Agreement (in that he was led to believe the Purchase and Sale Agreement was the same as the previously executed Incentive Agreement), and Defendants have failed to present evidence negating this argument, the Court finds there is a genuine issue of material fact as to whether Defendants committed fraud with respect to representations regarding the transfer of Plaintiff's remaining 27% membership interest in the Company. Defendants cannot hang their hat on the Purchase and Sale Agreement alone. Accordingly, the Court DENIES Defendants' motion for summary judgment with respect to the transfer of Plaintiff's remaining 27% membership interest in the Company.

//

//

---

[11] A "fiduciary relationship" is a recognized legal relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney and client, whereas a "confidential relationship" may be founded on a moral, social, domestic, or merely personal relationship as well as on a legal relationship. *Barbara A.*, 145 Cal. App. 3d at 382 (internal citations omitted). "Fiduciary" and "confidential" have been used synonymously to describe "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. *Herbert v. Lankershim*, 9 Cal. 2d 409, 483 (Cal. 1937).

## II.     Constructive Fraud

Plaintiff's fourth cause of action alleges constructive fraud against Defendants Hal and Melanie Moore.  (TAC ¶¶ 246-256.)  Constructive fraud arises on a breach of a duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice.  *See Tyler v. Children's Home Soc'y*, 29 Cal. App. 4th 511, 548 (Cal. Ct. App. 1994); *In re Harmon*, 250 F.3d 1240, 1249 (9th Cir. 2001) (stating that constructive fraud is considered a "unique specifies of fraud applicable only to a fiduciary or confidential relationship").  To succeed on a constructive fraud claim, a plaintiff must plead and prove the following elements: (1) the existence of a fiduciary or confidential relationship; (2) nondisclosure; (3) reliance; (4) and resulting injury.  *Younan v. Equifax Inc*., 111 Cal. App. 3d 498 (Cal. Ct. App. 1980).

The TAC alleges that Defendants abused Plaintiff's trust and confidence and thereby committed constructive fraud by:

(i) wrongfully inducing Plaintiff to execute the 2007 Note and Trust Deeds under false pretenses; (ii) inducing the Plaintiff to execute the $750,000 Note by fraudulent misrepresentations; (iii) wrongfully using Plaintiff's personal financial information and knowledge of his financial distress to issue threats causing him to lose all profit that would otherwise have been due to Plaintiff and MH in their role as General Contractor in the construction of the Project; (iv) wrongfully using Plaintiff's personal financial information and knowledge of his financial distress to issue threats causing him to forfeit his BSPRA equity contribution in the Company that had been valued by HUD at approximately $2.085 million; (v) wrongfully using Plaintiff's personal financial information and knowledge of his financial distress to issue threats and cause him to forfeit more profit that would have accrued to MH (BSPRA at 10 percent), along with the Builder's Overhead and Builder's General Requirements, which would amount to over $400,000; (vi) wrongfully using Plaintiff's personal financial information and knowledge of his financial distress to issue threats causing him to forfeit the approximately $380,000 that Plaintiff had deposited on behalf of MH in connection with its construction of the Project; (vii) inducing Plaintiff to make substantial advances on behalf of the Company that remained unreimbursed; (viii) wrongfully using Plaintiff's personal financial information and knowledge of his financial distress to place maximum pressure on Plaintiff and issue threats causing him to forfeit his membership interests in the Company to Defendant Hal Moore; and (ix) improperly using their positions as confidantes and fiduciaries of Plaintiff to obtain an improper advantage over Plaintiff and thereby cause a fraudulent trust deed to be recorded on Plaintiff's home and business property, against which Defendant Hal Moore has asserted a "balloon payment" of$750,000; and (x) improperly using their positions as confidantes and fiduciaries of Plaintiff to obtain an improper advantage over Plaintiff and trigger an indemnity by Plaintiff in

11cv1591 AJB (BLM)

connection with the frivolous claim they caused to be brought against Great American in the State Insulation Complaint.  (TAC ¶ 251.)

Defendants contend summary judgment should be granted on Plaintiff's constructive fraud claim because Plaintiff has failed to establish the following essential elements: non-disclosure, reliance, and/or a confidential relationship between Plaintiff and Defendants Hal and Melanie Moore.  First, Defendants argue Plaintiff has failed to establish nondisclosure or reliance because each of the parties' transactions were in writing, Plaintiff reviewed each of the documents before signing, and emails between the parties demonstrate that Plaintiff was fully aware of the underlying facts.  Second, Defendants assert that Plaintiff has failed to establish a confidential or fiduciary relationship because Plaintiff is merely a casual business acquaintance of the Defendants with whom the Defendants had nothing more than a cordial employer-employee relationship.

The Court does not agree.  To the extent the parties disagree over the nature of the relationship between Plaintiff and Defendants Hal and Melanie Moore, and have supported such assertions with their own declarations, the Court finds there are disputed issues of material fact that must be resolved by the trier of fact.  However, because the Court has dismissed Plaintiff's fraud claims based on representations relating to the August 2007 Note, the Deeds of Trust, the September 2007 Note, and payment for out of scope extras, the Court finds such claims are also dismissed as they relate to the constructive fraud claim.  Accordingly, the Court GRANTS Defendants' motion for summary on Plaintiff's constructive fraud claim based on representations relating to the August 2007 Note, the Deeds of Trust, the September 2007 Note, and payment for out of scope extras, and DENIES Defendants' motion for summary judgment on Plaintiff's constructive fraud claim based on representations relating to the transfer of Plaintiff's remaining 27% membership interest in the Company.

## III.   Quiet Title

Plaintiff's fifth cause of action alleges quiet title against Defendants Hal Moore, Melanie Moore, and the Trust.  Plaintiff's quiet title claim is based on Defendants' alleged wrongful possession of Plaintiff's 27% membership interest in the Company,

9.9% ownership interest in the Company on behalf of M-H, and the lien Defendants placed on two of Plaintiff's properties.  (TAC ¶¶ 257-267.)

"The purpose of a quiet title action 'is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to.' "  *Martinez v. America's Whole-sale Lender*, No. C 09–05630 WHA, 2010 WL 934617, at *5 (N.D. Cal. Mar. 15, 2010) (quoting *Peterson v. Gibbs*, 147 Cal. 1, 5 (Cal. 1905)).  Quiet title claims are governed by California Code of Civil Procedure § 761.020, which states that a plaintiff must set forth the following five elements in a "verified complaint:" (1) a description of the property, both legal description and street address; (2) the title of the plaintiff, and the basis for that title; (3) the adverse claims to the plaintiff's title; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the plaintiff's title against the adverse claims.  Cal. Civ. Proc. Code § 760.020(a)-(e).

Defendants contend summary judgment is warranted on Plaintiff's quiet title claim because Plaintiff does not have a valid interest in any of the properties listed above, nor were Plaintiff's allegations set forth in a verified complaint.  Plaintiff's did not oppose dismissal of this claim for failure to set forth the allegations in a verified complaint.  Accordingly, the Court GRANTS Defendants' motion for summary judgment on Plain-tiff's quiet title claim.

## IV.    Securities Fraud, California Corporations Code § 25401

Plaintiff's sixth cause of action alleges securities fraud under California law against Defendant Hal Moore.  (TAC ¶¶ 268-293.)  Plaintiff's securities fraud claim is based on Plaintiff's contention that he should be able to rescind the sale of his 27% membership interest in the Company because Hal Moore stated that if Plaintiff refused to transfer his membership interest: (1) no money would be released by Defendant Hal Moore to pay past due subcontractor bills; (2) Defendant Hal Moore would abandon the Project; (3) the subcontractors would proceed to file liens against the property and the Project would stop; (4) the bonding company would have to step in and take over the

Project to finish it; (5) Plaintiff and M-H would be assessed fees and penalties that they could not pay; and (6) the bonding company would take everything from Plaintiff thereby ruining him. (*Id*. at ¶ 282.)  Plaintiff contends each of these allegations are supported by the fact that Defendants fraudulently induced him to transfer his remaining membership interest in the Company by representing that the Purchase and Sale Agreement was identical to the previously signed and agreed upon Incentive Agreement

Under California Corporations Code Section 25401:

It is unlawful for any person, in connection with the offer, sale, or purchase of a security, directly or indirectly, to do any of the following:
(a) Employ a devise, scheme, or artifice to defraud.
(b) Make an untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.
(c) Engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon another person.

In order to establish a cause of action under Section 25401, a plaintiff must plead and prove that "there was a sale or purchase of stock in California by fraudulent untrue statements or by omitting material facts that would by omission make the statements misleading." *MTC Elec. Tech. Co., Ltd. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995).

Defendants contend summary judgment is warranted on this claim because Plaintiff has failed to produce any evidence that Defendant Hal Moore acquired his membership interest in the Company by means of actionable misrepresentations and/or omissions.  Defendants argue that Hal Moore received his initial 50% membership interest in the Company by way of the $1.5 million dollar loan and that Hal Moore received his remaining 27% membership interest in the Company by way of the Purchase and Sale Agreement.  Defendants argue Plaintiff can not now challenge the Purchase and Sale Agreement based on oral representations because the contract states that Plaintiff "did not rely on any representation by [Hal Moore] or his agents" concerning the sale of his membership interest.

Again the Court does not agree.  Although Plaintiff presented nothing more than his own declaration in support, this declaration states that Plaintiff transferred his

remaining 27% membership interest in the Company based on representations and prior statements in the Incentive Agreement that Defendant Hal Moore would reimburse Plaintiff in the amount of $380,000 for the line of credit drawn for purposes of complet-ing the Project.[12]   (Doc. No. 66, Hardisty Decl. ¶¶ 50-55.)  Defendants did not refute these representations in their briefing or at oral argument, nor did Defendants provide evidence that could refute Plaintiff's declaration.  Minor disagreements as to whether Defendant Melanie Moore was on vacation at the time she sent the Purchase and Sale Agreement to Plaintiff to review or the length of time Plaintiff had to review the agree-ment before signing are collateral to the primary issues before the Court—whether Defendants fraudulently induced Plaintiff to transfer his remaining membership interest and whether Plaintiff's reliance on Defendants' representations were justified.  Neither of these questions can be resolved as a matter of law on the evidence currently before the Court.

Accordingly, because there are disputed issues of material fact regarding whether Plaintiff was still permitted to rely on Defendants' representations with regard to the transfer of his remaining 27% membership interest in the Company, the Court DENIES Defendants' motion for summary judgment on Plaintiff's California securities fraud claim.

## V.   Conversion

Plaintiff's seventh cause of action alleges conversion against Defendants Hal and Melanie Moore, the Trust, and State Insulation.  (TAC ¶¶ 294-302.)  Plaintiff's claim is based on Defendants' wrongful deprivation of his membership interest in the Company and the $380,000 Plaintiff posted as security in connection with the Project.  To state a claim for conversion, a plaintiff must plead and prove that: (1) he has a right to posses-sion of the subject property; (2) defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.  *Id.*  Conversion is a strict liability tort and does not

---

[12] Plaintiff also represents that he agreed to transfer his membership interest because Hal Moore represented that he would not make any claims against the bonds. (*Id.* at ¶ 53.)

require good or bad faith, care or negligence, or knowledge or ignorance. *Id.*; *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (Cal. Ct. App. 1998) ("Conversion is the wrongful exercise of dominion over the property of another.").

Defendants argue summary judgment should be granted on Plaintiff's conversion claim because "there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use[,] or disposition" of the subject property. *Farrington v. A. Teichert & Son*, 59 Cal. App. 2d 468, 474 (Cal. Ct. App. 1943). Therefore, because Plaintiff consented to the transfer of his remaining 27% membership interest in the Company to Defendant Hal Moore when he executed the Purchase and Sale Agreement, which stated that "Seller enters into this Agreement freely, voluntarily and in the absence of any duress from Buyer," Defendants argue Plaintiff cannot now assert a claim for conversion.

The Court finds Plaintiff's conversion claim hinges once again on whether Plaintiff justifiably relied on oral representations surrounding the transfer of his remaining 27% membership interest in the Company to Defendant Hal Moore. As stated above, because Plaintiff has presented evidence, in the form of his own declaration, that Defendants represented that if he transferred his membership interest in the Company to Hal Moore he would be reimbursed his $380,000 line of credit, and Defendants have not presented evidence to explicitly rebut Plaintiff's declaration, the Court finds there is a disputed issue of material fact best resolved at trial.[13] Accordingly, the Court DENIES Defendants' motion for summary judgment on Plaintiff's conversion claim.

## VI.   Abuse of Process

Plaintiff's eighth cause of action alleges abuse of process against Defendants Hal Moore, Melanie Moore, and State Insulation. (TAC ¶¶ 303-306.) Plaintiff contends that

---

[13] Although Defendants contend that Plaintiff cannot rely on the language of *Riverisland Cold Storage, Inc., v. Fresno-Madeira Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1183 (Cal. 2013) to maintain that parol evidence is admissible to provide promissory fraud, Plaintiff's declaration has set forth the necessary evidence asserting that Defendants never intended to fulfil the representations when made.

Defendants filed the State Insulation Action knowing that the claims were frivolous and with the ulterior purpose to maliciously harm Plaintiff.

To bring a claim for abuse of process, a plaintiff must plead and prove that the defendant: "(1) contemplated an ulterior motive in using the judicial process; and (2) committed 'a willful act in the use of th[at] process not proper in the regular conduct of the proceedings." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1037 (9th Cir. 2008) (quoting *Oren Royal Oaks Venture v. Greenberg, Bernhard, Wiess & Karma, Inc.*, 42 Cal.3d 1157, 1159 (Cal. 1986)).  An abuse of process claim "requires misuse of a judicial process." *Estate of Tucker*, 515 F.3d at 1037 (quoting *Stolz v. Wong Comm'cs Ltd. P'ship*, 25 Cal. App. 4th 1811, 1822 (Cal. Ct. App. 1994)).  The mere filing or maintenance of a lawsuit, even for an improper purpose, is not a proper basis for an abuse of process action.  *Meidinger v. Koniag*, 31 P.3d 77 (Alaska 2001).

Defendants contend summary judgment should be granted on Plaintiff's abuse of process claim because Plaintiff has not presented any evidence that Defendants engaged in any action that resulted in a misuse of the judicial process.  Rather, the State Insulation Action was filed as a proper means to recover on the Bonds because State Insulation had paid the claims asserted by the subcontractors, and as consideration for such payment, received assignments of the subcontractors' claims.  (Doc. No. 59, Harold Moore Decl. ¶ 14.)  Therefore, Defendants contend that State Insulation properly asserted a claim against the bonding company, which then requested a defense and indemnity from Legacy Pointe.

In response, Plaintiff contends that the State Insulation Action was not justified "in and of itself" because after the liens were discharged in conjunction with the Collateral Assignments there could be no proper grounds for a claim against the Bonds by the assignee, State Insulation.  This is true because Defendant Hal Moore controlled both the creditor, State Insulation, and the debtor, Legacy Pointe, which rendered the claim a nullity under the doctrine of merger.  Moreover, even assuming the bond claims could have existed without a lien, Plaintiff asserts that State Insulation is not a proper claimant

1   under the payment bond because the agreement states that "A claimant is defined as one

2   having a direct contract with the Principal [M-H] or with a subcontractor of the Principal

3   . . . ." (Doc. No. 65 at 22:9-10.) Therefore, because State Insulation did not perform any

4   work for M-H or any of the subcontractors on the Project, State Insulation could only

5   proceed against M-H and not against the bonding company.

6       Although Plaintiff's allegations were enough to survive Defendants' prior motion

7   to dismiss, at summary judgment Plaintiff must support such allegations with admissible

8   evidence. Plaintiff has not done so. Instead, Defendants have presented evidence that

9   regardless of whether they could lawfully succeed on the claim against the bonds (based

10  on the doctrine of merger presented by Plaintiff), the State Insulation Action was filed

11  based on the belief that recovery was available pursuant to the assignment of the subcon-

12  tractors claims to State Insulation. *Celotex*, 477 U.S. at 314 (stating that once the moving

13  party establishes the absence of a genuine issue of material fact, the burden shifts to the

14  nonmoving party to set forth facts showing that a genuine issue of a disputed fact

15  remains). Therefore, whether or not State Insulation had a legal right to pursue claims

16  against the bonds is irrelevant to whether Plaintiff has pled and proved that Defendants

17  filed the State Insulation Action not to recover on the bonds, but solely to harm Plaintiff.

18  *See Harmon v. Berry*, 776 F.2d 259 (11th Cir. 1985); *Spellens v. Spellens*, 49 Cal. 2d 210

19  (Cal. 1957). Accordingly, the Court finds Plaintiff has failed to set forth sufficient facts

20  to show that there is a genuine issue of material fact regarding whether Defendants filed

21  the State Insulation Action knowing it to be frivolous. Instead, all Plaintiff has argued is

22  that the State Insulation Action lacks merit under the doctrine of merger. Accordingly,

23  the Court GRANTS Defendants' motion for summary judgment on Plaintiff's abuse of

24  process claim.[14]

25  //

26  //

27

28          [14] At oral argument, neither Party could apprise the Court of the status of the State Insulation Action.

## VII.   Conspiracy

Plaintiff's ninth cause of action alleges conspiracy against Defendants Hal and Melanie Moore, the Trust, and State Insulation.  (TAC ¶¶ 307-314.)  Plaintiff contends that Defendants knowingly and willfully conspired and agreed among themselves to commit fraud, constructive fraud, and fraud in connection with a securities transaction in violation of California law.  Defendants contend summary judgment should be granted on Plaintiff's conspiracy claim because Plaintiff has failed to establish the underlying torts. This was Defendants' only contention for dismissal of the conspiracy claim.  Therefore, because the Court has permitted some of Plaintiff's claims to go forward, i.e., Plaintiff's fraud/constructive fraud claims relating to the transfer of Plaintiff's remaining 27% membership interest in the Company and Plaintiff's claims for securities fraud in violation of California law, the Court finds Plaintiff may also proceed with his claims for conspiracy based on these underlying torts.  Accordingly, Defendants' motion for summary judgment on Plaintiff's conspiracy claim is GRANTED IN PART and DENIED IN PART.

## VII.   Aiding and Abetting Intentional Torts

Plaintiff's second cause of action alleges aiding and abetting intentional torts against Defendants Hal Moore, Melanie Moore, State Insulation, and Peluso.  (TAC ¶¶ 191-204.)  Plaintiff contends that Defendants aided and abetted Hal Moore in committing fraud, constructive fraud, fraud in connection with a securities transaction in violation of California law, and conversion.  Defendants contend summary judgment should be granted on Plaintiff's aiding and abetting claim because Plaintiff has failed to allege an underlying injury (i.e., fraud, constructive fraud).  However, as discussed above, to the extent the Court finds Plaintiff may proceed with his fraud, constructive fraud, fraud in connection with a securities transaction under California law, and conversion claims, the Court DENIES Defendants' motion.  Accordingly, Defendants' motion for summary judgment on Plaintiff's aiding and abetting intentional torts claim is GRANTED IN PART and DENIED IN PART.

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment. (Doc. No. 59.) The parties are instructed to meet and confer in accordance with the requirements set forth in the Court's recent scheduling order to prepare for the upcoming pretrial conference scheduled for **April 25, 2014.**

IT IS SO ORDERED.

DATED:  March 18, 2014

_____
Hon. Anthony J. Battaglia
U.S. District Judge