# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

JOHN T. HARDISTY,

                              Plaintiff,

        v.

MELANIE MOORE, *ET AL.,*

                              Defendants.

─────────────────────────────

AND RELATED COUNTERCLAIM

Case No. 11-cv-01591-BAS(BLM)

**AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

BASHANT, Judge:

## I.    INTRODUCTION

Plaintiff John Hardisty ("Hardisty" or "Plaintiff") filed the operative Third Amended Complaint against Harold Maxine Moore ("Hal Moore"), his wife Elaine K. Moore ("Melanie Moore"), The 1998 Harold M. Moore Revocable Trust (the "Moore Trust"), Mark Peluso, and State Insulation LLC, an Arizona limited liability company ("State Insulation-Arizona"), and State Insulation LLC, a Nevada limited liability company ("State Insulation-Nevada") (collectively "State Insulation"), (collectively "Defendants") on June 1, 2012.  (ECF No. 34.)  On October 9, 2012, the

Court granted Hal Moore's motion to dismiss the first and tenth causes of action, and also granted a motion by Defendants to strike any RICO allegations.  (ECF No. 39.)  On November 14, 2012, Hal Moore filed a Counterclaim against Hardisty for fraud and negligent misrepresentation.  (ECF No. 40.)

On March 18, 2014, the Court granted Defendants' Motion for Summary Judgment with respect to the fifth cause of action alleging quiet title, the eighth cause of action alleging abuse of process, as well as partial summary judgment on the remaining causes of action.  (ECF No. 80.)  On September 9, 2014, Hal Moore filed a Notice of Acceptance of Offer of Judgment.  (ECF No. 130.)  Pursuant to Federal Rule of Civil Procedure 68, Counter-Plaintiff Hal Moore accepted Counter-Defendant Hardisty's offer to allow entry of judgment on the Counterclaim.  (*Id*.)

The following remained for trial: (1) the second cause of action for aiding and abetting intentional torts against Melanie Moore, State Insulation, the Moore Trust, and Mark Peluso; (2) the third cause of action for fraud against all defendants except Mark Peluso; (3) the fourth cause of action for constructive fraud against Hal Moore and Melanie Moore; (4) the sixth cause of action for securities fraud under California Business and Professions Code §§ 25401 *et seq.* against Hal Moore; (5) the seventh cause of action for conversion against all defendants except Mark Peluso; and (6) the ninth cause of action for conspiracy against all defendants except Mark Peluso.  Each of the remaining causes of action was limited to allegations arising from Hardisty's transfer of his 27% ownership interest in Legacy Pointe Apartments, LLC to Hal Moore.  In a supplemental ruling on Defendants' Motion for Summary Judgment, the Court agreed to also consider allegations arising from Hardisty's additional transfer of his 5% ownership interest as a 50% owner of Munson-Hardisty, LLC, as well as an amount of $380,000 allegedly owed by Hal Moore to Hardisty upon completion of the Legacy Pointe Apartments project.

This matter was set for a bench trial.  Trial took place on September 16-19, 2014, December 9, 2014, and January 27-29, 2015.  The Court heard and weighed the

testimony and evidence presented at trial.  The Court observed the demeanor of the witnesses, evaluated their candor and credibility, reviewed transcripts and exhibits from the trial, and the Court's trial notes.  Having done so, the Court makes the following findings of fact and separate conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## II.   FINDINGS OF FACT[1]

### A.   Liability

Hardisty and Hal Moore were long-time close business associates.  Melanie Moore is, and was at all relevant times, Hal Moore's wife, and in late 2008 and early 2009, she was the Chief Executive Officer of State Insulation, which was owned by Hal Moore.[2]  From 2007 through 2009, Mark Peluso was the Controller of Great Western Drywall, another one of Hal Moore's companies.

In August 2007, Hardisty, Munson-Hardisty, LLC (a general contractor of which Hardisty was a 50% owner), Craig Mason, and Legacy Pointe Apartments, LLC ("Legacy Pointe") entered into an Amended and Restated Operating Agreement with respect to the construction of an apartment complex in Knoxville, Tennessee (hereinafter referred to as the "Project").  This was to be a construction project financed by the United States Department of Housing and Urban Development ("HUD").

In August 2007, Hal Moore agreed to contribute $1.5 million from the Moore Trust to the Project.  In exchange, Hardisty agreed to seek approval from HUD for the transfer of a 50% membership interest in Legacy Pointe to Hal Moore and signed a Promissory Note Secured by Deeds of Trust dated August 20, 2007 in the amount of $1.5 million.  In the Promissory Note, Hardisty agreed to pay 13% interest per year

---

[1]     To the extent these Findings of Fact are also deemed to be Conclusions of Law, they are hereby incorporated into the Conclusions of Law that follow.

[2]     State Insulation is wholly owned by Hal Moore.  Hal Moore admits he and State Insulation are one and the same.

on the unpaid balance of the $1.5 million investment.

In September 2007, Hal Moore lent $750,000 to Munson-Hardisty, LLC to help the company obtain payment and performance bonds for the Project. The $750,000 was deposited into a certificate of deposit ("CD") at 1st Pacific Bank of California on or around September 11, 2007. In exchange for the $750,000 loan, Hardisty and his wife signed a Promissory Note dated September 11, 2007 promising 13% interest per year on the unpaid balance. The Promissory Note was secured by various deeds of trust on their personal and business properties, including their personal residence.

In the same time frame, as part of the requirement for obtaining a contractor's license in the name of Munson-Hardisty, LLC in Tennessee, Hardisty was required to obtain a personal line of credit in the amount of $380,000. Hardisty drew upon this personal line of credit and contributed the funds to Legacy Pointe.

On September 13, 2007, Munson-Hardisty, LLC (as the general contractor) and Legacy Pointe (as the owner) entered into a construction contract for the construction of the Project. In the construction contract, Legacy Pointe agreed to pay Munson-Hardisty, LLC a cash payment in the amount of: (1) the actual cost of construction; and (2) a fee of the Builder's and Sponsor's Profit and Risk Allowance ("BSPRA"), not to exceed $18,047,049. The construction contract required Munson-Hardisty, LLC to furnish Legacy Pointe with payment and performance bonds in the amount of $18,047,049 issued by Great American Insurance Company ("GAIC") to assure completion of the Project. The construction contract provided for completion of construction by January 13, 2009.

On September 13, 2007, Munson-Hardisty, LLC obtained payment and performance bonds with GAIC as the Surety in the amount of $18,047,049.

On November 7, 2007, when HUD approved the transfer of a 50% membership interest in Legacy Pointe to Hal Moore, ownership in Legacy Pointe was as follows: Hal Moore (50%), Munson-Hardisty, LLC (10%), Craig Mason (9.9%), and Hardisty (30.1%). Hardisty's interest was later decreased from 30.1% to 27%.

When Hal Moore received 50% equity in Legacy Pointe, the $1.5 million loan was extinguished.  Nonetheless, Hardisty continued to pay Hal Moore 13% interest on the $1.5 million investment.

By December 2008, it was clear to all the parties that the Project was, as described by Hal Moore at trial, "going to hell in a hand basket."  The Project was not going to be completed on time and was facing numerous cost overruns.

Hardisty explored selling his interest in the Project to a third party.  Hardisty was particularly concerned because he faced personal indemnity on the payment and performance bonds Munson-Hardisty, LLC had obtained as general contractor on the Project, so he wanted to ensure that all subcontractors, vendors, and suppliers got paid.[3]  He negotiated to sell his interest to a third party for $1,750,000.  However, when Hal Moore and Melanie Moore got wind of this negotiation, they were very angry, and told Hardisty if he was going to sell his interest, he should sell it to them.

Thus, in January 2009, Hardisty and Hal Moore entered into several agreements.  First, Hardisty and Hal Moore entered into a "Letter of Intent," which they termed the "Incentive Agreement," dated January 15, 2009 (Exhibit 68).  The Incentive Agreement detailed that Hardisty potentially faced personal liability due to his personal indemnity on the payment and performance bonds.  Thus, to avoid this liability, Hardisty agreed to immediately transfer his remaining 27% ownership interest in Legacy Pointe to Hal Moore.  In exchange, Hal Moore agreed to fund a bridge loan up to $1.5 million to enable Hardisty to make scheduled completion dates.

---

[3]      On September 4, 2007, GAIC and Munson-Hardisty, LLC, Legacy Pointe, John Hardisty, Teresa Hardisty, Craig Mason, and Hardisty and his companies entered into an Indemnity Agreement related to the payment and performance bonds ("Indemnity Agreement").  The Court takes judicial notice of the court filings submitted by Plaintiff at Docket No. 155 (Exhibits 1-9) and Defendants at Docket No. 204 (Exhibits 1-9) pursuant to Federal Rule of Evidence 201.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Mullis v. U.S. Bank Ct.*, 828 F.2d 1385, 1388 n. 9 (9th Cir. 1987) (a court may properly take judicial notice of the contents of public records or court files).

Hal Moore, through State Insulation-Arizona, further agreed to purchase and retain all potential claims against the payment and performance bonds by the subcontractors, suppliers, and vendors.  Munson-Hardisty, LLC agreed to receive a written collateral assignment from these subcontractors, suppliers, and vendors so that State Insulation-Arizona could be reimbursed for these payments through the HUD draw process.  State Insulation-Arizona would thus be reimbursed through Legacy Pointe for all money spent.  In addition, all unpaid expenses and loans incurred by Hal Moore would be reimbursed by Legacy Pointe through escrow upon the sale of the property or rent proceeds.  Finally, Hal Moore agreed to pay Hardisty $380,000, and both Hardisty and Munson-Hardisty, LLC agreed to forego any salary ($3500/week for Hardisty and $2500/week for Munson-Hardisty, LLC).

Melanie Moore emailed the final draft of the Incentive Agreement to Hardisty on January 15, 2009, asking him to "please review and sign and send back to me; you can fax with an original to follow in the mail."  (Exhibit 66.)  Hardisty signed the Incentive Agreement on January 16, 2009 and faxed it back to Hal Moore on the same day (Exhibit 68), and sent the original by mail.  Although this Incentive Agreement does not have Hal Moore's signature on it, Hardisty understood Hal Moore signed the Incentive Agreement based on representations from Hal Moore and Melanie Moore, and all parties immediately began performing thereunder.

After the Incentive Agreement was entered into, the Moores informed Hardisty that the Incentive Agreement could not be submitted to HUD for approval of the transfer of Hardisty's 27% membership interest.  A separate agreement needed to be signed specifically for HUD to effectuate the transfer.  Hardisty did not understand this to be a "new agreement" on new terms.

On January 22, 2009, Melanie Moore emailed Hardisty a first draft of a Purchase and Sale Agreement to be presented to HUD.  Several versions of the Purchase and Sale Agreement were exchanged between the parties.  All versions were drafted by the Moores and/or their counsel.  At the last minute, without the knowledge

of Hardisty, the Moores added language to the Purchase and Sale Agreement (which was not in the Incentive Agreement or even the first draft of the Purchase and Sale Agreement) saying Hal Moore agreed not to pursue any claims against the payment and performance bonds until May 1, 2009, which was shortly before the new predicted completion date of the Project.

Hardisty was unaware this additional language had been added at the last minute to the Purchase and Sale Agreement. Melanie Moore had represented that the final version of the Purchase and Sale Agreement (Exhibit 21) was substantially the same as earlier drafts Hardisty had read, and he understood it was simply memorializing part of the agreement they had reached through the Incentive Agreement for the purpose of submitting the transfer to HUD.

Even if Hardisty had seen the additional language the Moores added at the last minute to the Purchase and Sale Agreement, he would not have been concerned since, as outlined in the Incentive Agreement, the understanding was that State Insulation-Arizona would be reimbursed for payments to subcontractors, vendors, and suppliers through the HUD draw process, and anything not paid through the draw process would be reimbursed by Legacy Pointe (of which Hal Moore was now a majority equity owner). So Hardisty was comfortable that State Insulation-Arizona would be reimbursed for its payments, and Hardisty would no longer be personally liable on the payment and performance bonds.

In fact, State Insulation-Arizona ultimately paid the subcontractors, vendors, and suppliers $2,156,308 as a result of the collateral assignments, and when the Project closed in August 2009, Hal Moore, on behalf of Legacy Pointe, represented to HUD that all claims had been paid, or would shortly be paid through escrow within forty-five days, and that no debts were outstanding to subcontractors, vendors, and suppliers.

However, on October 23, 2009, at the direction of Melanie Moore, State Insulation-Arizona filed a complaint against GAIC in the Chancery Court for Knox

County, Tennessee making a claim in the amount of $2,120,537.85 plus costs, prejudgment interest, and attorneys' fees against the payment bond (Exhibit 124).[4]

Since Hardisty was an indemnitor on the payment bond, GAIC requested that Hardisty defend and indemnify the claim. Hardisty was suddenly faced with personal liability in the amount of $2,120,537.85 plus costs, prejudgment interest, and attorneys' fees. The only reason he transferred his 27% interest in Legacy Pointe in the first place was to avoid this liability.

The Project was complete in August 2009. Hal Moore signed the Mortgagor's Certificate of Actual Cost on August 10, 2009 and final permission to occupy the living units was granted on August 6, 2009. However, upon completion of the Project, Hal Moore refused to pay Hardisty $380,000 as agreed to in the Incentive Agreement.

In February 2009, the "Amendment to Operating Agreement" of Legacy Pointe provided that following HUD approval the membership interests in Legacy Pointe would be as follows: Munson-Hardisty, LLC (10%), Craig Mason (13%), and Hal Moore (77%). Hal Moore also replaced John Hardisty as Chief Manager of Legacy Pointe.

In April 2009, Munson-Hardisty, LLC transferred its 10% interest in Legacy Pointe to Hal Moore.

**B.    Damages**

At the time State Insulation-Arizona and the Moores made a bond claim, GAIC held the $750,000 deposited in a CD on behalf of Munson-Hardisty, LLC and the balance of the fund control account (seeded in part by Hardisty's $380,000 line of credit).

///

---

[4]    The complaint was removed to U.S. District Court for the Eastern District of Tennessee (Knoxville) on December 2, 2009 and thereafter styled as *State Insulation, LLC v. Great Am. Ins. Co.*, Case No. 09-cv-00526-RLJ(CCS) (E.D. Tenn.) ("Bond Action").

On September 30, 2011, GAIC filed a complaint for interpleader in the Chancery Court for Knox County, Tennessee pursuant to a settlement agreement reached by Legacy Pointe, State Insulation-Arizona, and GAIC and sought to deposit the held funds with the Court.[5] State Insulation-Arizona and Legacy Pointe filed a counterclaim against GAIC and a cross-claim against Munson-Hardisty, LLC and Hardisty, among others, in the Interpleader Action arguing State Insulation-Arizona, as a claimant under the terms of the payment bond for approximately $2.1 million, is entitled to the entire amount of the deposited funds plus interest. State Insulation-Arizona alleges that Hardisty, Munson-Hardisty, LLC, and the other co-defendants have no interest in or right to the funds deposited by GAIC. State Insulation-Arizona also argues, in the alternative, that Munson-Hardisty, LLC owes State Insulation-Arizona the sum of approximately $2.1 million based on breach of contract and money had and received theories. Hal and Melanie Moore later intervened in the Interpleader Action seeking $750,000 of the deposited funds plus interest on the basis of the September 2007 loan to Munson-Hardisty, LLC.

On September 9, 2014, before trial in this action, Hal Moore accepted Hardisty's offer of judgment pursuant to Federal Rule of Civil Procedure 68. Judgment was thereafter entered in this action in favor of Hal Moore in the sum of $750,000 to be paid from the payment bond issued by GAIC and currently on deposit in the Interpleader Action. As a condition of acceptance of Hardisty's offer, the Interpleader Action, including cross-claims and counterclaims brought by any party, must be dismissed in its entirety with prejudice. Therefore, all liability with respect to the subcontractors, vendors, and suppliers on the Project and all collateral assignments has now been resolved.

Hardisty was required to indemnify and defend the Bond Action in Tennessee. The Bond Action was voluntarily dismissed by the parties on June 6, 2012. Hardisty

---

[5] *Great Am. Ins. Co. v. State Insulation, LLC, et al.*, No. 1814023 (Ch. Knox Cnty., Tenn. filed Sept. 30, 2011) ("Interpleader Action").

1   was forced to incur attorneys' fees in the amount of $148,036.45 in defending both

2   the Bond Action and the Interpleader Action.

3       In January 2009, the value of Legacy Pointe was $28,244,787.[6]  Since Legacy

4   Pointe had an outstanding mortgage of $21,434,100, this put the equity in Legacy

5   Pointe at $6,810,687, and John Hardisty's 27% interest at $1,838,885.

## III.   CONCLUSIONS OF LAW[7]

### A.   Fraud Against All Defendants Except Mark Peluso (Third Cause of Action)

9       To prove fraud, a plaintiff must prove by a preponderance of evidence: (1) that

10  a defendant made a misrepresentation (false representation, concealment, or

11  nondisclosure); (2) knowing that the misrepresentation was false; (3) with the intent

12  to defraud; (4) the plaintiff justifiably relied on the misrepresentation; and (5) as a

13  result of the misrepresentation, suffered damages.  *Small v. Fritz Cos., Inc.*, 30 Cal.

14  4th 167, 173 (2003); *Liodas v. Sahadi*, 19 Cal. 3d 278, 286-93 (1977).  Reliance is

15  justifiable where "circumstances were such to make it *reasonable* for the plaintiff to

---

[6]      The Court determines that Hardisty's expert witness Stephen Jones' initial valuation of Legacy Pointe at $28,244,787 is the most persuasive.  Hardisty urges the Court to adopt Mr. Jones' higher calculation of $30,262,271.  This amount was re-calculated by Mr. Jones by using a lower capitalization rate after he saw Craig Mason's calculations.  However, these calculations by Mr. Mason were made in an attempt to sell Mr. Mason's share and thus could easily reflect an inflated value.  In addition, Hardisty's resulting 27% of this higher calculation would be $2,383,606, which seems high in light of the fact that before Hardisty agreed to transfer his 27% ownership interest to Hal Moore in January 2009, he had been negotiating to sell his share to a third party for $1,750,000.  Similarly, Defendants urge the Court to use a lower calculation, claiming that Mr. Jones improperly increased the prospective rents and thus the net operating income used by Mr. Jones was too high.  However, Defendants' calculations of Hardisty's 27% interest at $137,984 (based allegedly on the HUD firm commitment) to $960,737 (based on the HUD firm commitment with a limitation on rent increases of 4.5% per year) appear to be too low in light of all the facts in this case.

[7]      To the extent any Findings of Fact are contained in the Conclusions of Law, they are hereby incorporated into the preceding Findings of Fact.

accept the defendant's statements without an independent inquiry or investigation." *OCM Principal Opportunities Fund v. CIBC World Markets Corp*., 157 Cal. App. 4th 835, 864 (2007) (citation omitted). "The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience." *Id*. (citing 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts § 808, at p. 1164).

Although extrinsic evidence may not be relied upon to alter or add to the terms of an integrated written agreement, extrinsic evidence is admissible to show fraud and may be admitted where the validity of the agreement is the fact in dispute. *See Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169, 1174-75 (2013) ("Evidence to prove that the instrument is void or voidable for mistake, fraud, duress, undue influence, illegality, alteration, lack of consideration, or another invalidating cause is admissible") (citation omitted); Cal. Civ. Proc. Code § 1856(f) & (g). This rule applies "even though the contract recites that all conditions and representations are embodied therein." *Morris v. Harbor Boat Bldg. Co*., 112 Cal. App. 2d 887, 888 (1952) (citation omitted).

The Moores made the following misrepresentations to Hardisty in connection with the entering into the Purchase and Sale Agreement:[8]

    1)    Melanie Moore represented that the Purchase and Sale Agreement was substantially the same agreement as the Incentive Agreement and failed to point out that she and Hal Moore had added language agreeing not to pursue any claims against the payment and performance bond <u>until May 1, 2009</u> (the new predicted completion date of the Project);

    2)    Both of the Moores represented that they would pursue

---

[8]    Hardisty failed to present any evidence of fraud in connection with the transfer of his share of Munson-Hardisty, LLC's interest in Legacy Pointe to Hal Moore. Hardisty also failed to present any evidence of misrepresentations by the Moore Trust and State Insulation.

reimbursement of State Insulation-Arizona for payments to subcontractors, vendors, and suppliers through the HUD draw process, and anything not paid through the draw process would be reimbursed by Legacy Pointe;

3)     Both of the Moores represented that in exchange for the transfer of Hardisty's 27% interest, Hardisty's liability to subcontractors, vendors, and suppliers would be extinguished; and

4)     Both of the Moores represented they would pay Hardisty $380,000 when construction of the Project was finished.

At the time they made these representations, the Moores knew the representations were false. They made the representations to deceive Hardisty as to the true nature of the Purchase and Sale Agreement and to induce Hardisty to execute the Purchase and Sale Agreement. Hardisty relied on these representations by executing the Purchase and Sale Agreement, by submitting documents to HUD seeking approval of the transfer of his 27% membership interest in Legacy Pointe to Hal Moore, and by continuing to work to complete the Project. Given all the circumstances, his reliance was justifiable.

As a result, Hardisty was damaged when the Moores caused State Insulation-Arizona to file the Bond Action, which Hardisty was required to indemnify and defend. While the Bond Action was ultimately dismissed, and the Interpleader Action will soon be dismissed, Hardisty incurred attorneys' fees in defending the Bond Action and Interpleader Action. Furthermore, Hal Moore used the Purchase and Sale Agreement to justify his refusal to pay Hardisty the $380,000 he had promised to pay him, which led to Hardisty being unable to pay the interest on his personal line of credit and the bank defaulting him.

Accordingly, the Court finds for Plaintiff on his third cause of action for fraud and against defendants Hal Moore and Melanie Moore.

///

**B.     Constructive Fraud Against Hal Moore and Melanie Moore (Fourth Cause of Action)**

"Constructive fraud arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice." *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 129 (1966).   To prove constructive fraud, a plaintiff must prove by a preponderance of evidence the following elements: "(1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1142 (C.D. Cal. 2003) (citing *Assilzadeh v. Cal. Fed. Bank*, 82 Cal. App. 4th 399, 414 (2000)); *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 516-17 (1980); *Tyler v. Children's Home Soc'y*, 29 Cal. App. 4th 511, 548-49 (1994); Cal. Civ. Code § 1573.

The essence of a "constructive fraud" claim is the existence of a confidential or fiduciary relationship which induces justifiable reliance by one in the relationship to his prejudice.  *Odorizzi*, 246 Cal.App.2d at 129.  "Such a confidential relationship may exist whenever a person with justification places trust and confidence in the integrity and fidelity of another." *Id*.

Hardisty and Hal Moore were long-time close business associates.  Whether or not this relationship could be characterized as a "friendship," it was never a fiduciary relationship.  Although he might have had a confidential relationship with Hal Moore at some point in time, by the time Hardisty was negotiating the transfer of his 27% membership interest in Legacy Pointe to Hal Moore, whatever existed of that confidential relationship had completely eroded.  *Id*.  ("The absence of a confidential relationship . . . is especially apparent where, as here, the parties were negotiating to bring about a termination of their relationship.  In such a situation, each party is expected to look after his own interests.")  Hardisty never had a fiduciary or confidential relationship with Melanie Moore.

Since Hardisty has failed to prove either a confidential or a fiduciary

1   relationship with the Moores, he has failed to meet his burden on this cause of action.

2   The Court therefore finds for defendants Hal Moore and Melanie Moore on Plaintiff's

3   fourth cause of action for constructive fraud.

4       **C.**       **Securities Fraud Against Hal Moore (Sixth Cause of Action)**

5        To prove securities fraud under California Corporations Code section 25401, a

6   plaintiff must prove by a preponderance of evidence that there was a purchase or sale

7   of a security in California, and that defendant engaged in "fraud or deceit" or made

8   "an untrue statement of material fact" or "omit[ted] to state a material fact necessary

9   to make the statements made, in light of the circumstances under which they were

10   made, not misleading." *MTC Elec. Tech. Co., Ltd. v. Leung*, 876 F. Supp. 1143, 1147

11   (C.D. Cal. 1995); Cal. Corp. Code § 25401.

12        A membership interest in a limited liability company is a security under the

13   California Corporations Code unless Defendants "can prove that all of the members

14   are actively engaged in the management" of the company." Cal. Corp. Code § 25019.

15   Evidence that members vote or have a right to vote, have the right to information

16   concerning the business and affairs of the limited liability company, or the right to

17   participate in management, without more, is insufficient to establish the exception. *Id*.

18   In general, where profits come substantially from the efforts of others, a security will

19   be present, but where profits come from the joint efforts of partners, a security will

20   not be present. *Consol. Mgmt. Grp., LLC v. Dep't of Corps*., 162 Cal. App. 4th 598,

21   610 (2008); *People v. Syde*, 37 Cal. 2d 765, 768 (1951).

22        Under California Corporations Code section 25506(b), an action under section

23   25401 must be brought within two years after discovery of the false statement of fact.

24   Cal. Corp. Code §§ 25506(b), 25501.  In this case, Hardisty did not know the Moores

25   had made the false misrepresentations until October 2009 when State Insulation-

26   Arizona initiated the Bond Action.  The Complaint in this case was filed on July 19,

27   2011, within two years after discovery of the false statements.  Therefore, this cause

28   of action is not barred by the statute of limitations.

However, Hardisty's "security" sale was that of a membership interest in Legacy Pointe.  Legacy Pointe was a limited liability company in which all of the members were actively involved in managing the company.  Hardisty as the Chief Manager of Legacy Pointe, Munson-Hardisty, LLC as the general contractor, and Hal Moore as an active investor who initially visited, monitored, and, at times, controlled the Project and later became the Chief Manager, were active members.  Mr. Mason was also an active member.  The evidence reflects that Mr. Mason made labor contributions to the Project, including tying up the land for the Project, paying for the plans, engineering, and the HUD package.  Mr. Mason was further involved in and assigned tasks in meetings and conference calls relating to the Project.  Therefore, the purchase or sale at issue was not one of a security, and Plaintiff's claim on this cause of action must fail.[9]

Accordingly, the Court therefore finds for defendant Hal Moore on Plaintiff's sixth cause of action for securities fraud.

**D.**   **Conversion Against All Defendants Except Mark Peluso (Seventh Cause of Action)**

The tort of conversion is an "act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."  *Oakes v. Suelynn Corp.*, 24 Cal. App. 3d 271, 278 (1972).  To prove conversion, a plaintiff must prove by a preponderance of evidence: (1) that the plaintiff owned or had the right to possess personal property; (2) the defendant disposed of the property in a manner inconsistent with the plaintiff's property rights and (3) as a result, the plaintiff suffered damages.  *Fremont Indem. Co. v. Fremont Gen. Corp.,* 148 Cal. App. 4th 97, 119 (2007); *Liodas*, 19 Cal. 3d at 286-93.   A  membership  interest  in  an  LLC

---

[9]     Alternatively, the Court finds that Hardisty's 27% membership interest in Legacy Pointe was not acquired by fraud or by means of a false statement of material fact or an omission of a material fact.  Hardisty transferred his 27% membership interest in Legacy Pointe pursuant to the Incentive Agreement, which, as discussed herein, is a valid contract.

constitutes personal property of the member.  *See* Cal. Corp. Code, § 17705.01; *In re Kuiken*, 484 B.R. 766, 769 (9th Cir. B.A.P. 2013).

Money can be the subject of a conversion action if a specific, identifiable sum is involved.  *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997).  "Neither legal title nor absolute ownership of the property is necessary[,] . . . [h]owever, a mere contractual right of payment, without more, will not suffice."  *Id.*; *see also Kim v. Westmoore Partners, Inc*., 201 Cal. App. 4th 267, 284 (2011) ("California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others."); *Florey Inst. of Neuroscience & Mental Health v. Kleiner Perkins Caufield & Byers*, 31 F. Supp. 3d 1034, 1041 (N.D. Cal. 2014) ("[C]ourts have recognized a sufficient ownership interest when the plaintiff has a lien on the funds in question."); *Farmers Ins. Exch.*, 53 Cal. App. 4th at 455 ("[A] mere promise to pay from a specific fund may suffice to create an equitable lien if considerations of detrimental reliance or unjust enrichment are implicated.").

In the Incentive Agreement, Hardisty agreed to immediately transfer his remaining 27% membership interest in Legacy Pointe to Hal Moore.  As discussed herein, the Incentive Agreement is a valid contract.  Therefore, Hardisty has failed to prove that he has a right to possess the 27% membership interest and that defendants Hal Moore, Melanie Moore, State Insulation, and the Moore Trust are wrongfully exerting control over his 27% membership interest in Legacy Pointe.

In the Incentive Agreement, Hal Moore agreed to pay Hardisty $380,000 in installments with the final installment due on completion of the Project.  Hal Moore has not paid this amount.  However, the amount Hardisty was entitled to be paid on completion of the Project, was not the money he withdrew from his personal line of credit.  In the Incentive Agreement, he "agree[d] that he [wa]s giving up his $380,000 seed money and transfer[red] any right thereto to Hal Moore."  The amount Hardisty was entitled to be paid was therefore not designated to come from any particular fund

or source.  Hardisty's right to the $380,000 was a mere contractual right of payment. This cannot be the basis for a conversion claim.

Accordingly, the Court finds in favor of defendants Hal Moore, Melanie Moore, State Insulation, and the Moore Trust on Plaintiff's seventh cause of action for conversion.

### E.   Conspiracy Against All Defendants Except Mark Peluso (Ninth Cause of Action)

Although listed as the ninth cause of action, civil "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994) (citation omitted).  "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." *Id.* at 511.

"The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Id.*  "[I]t is the acts done and not the conspiracy to do them which should be regarded as the essence of the civil action." *Id.*  While conspiracy extends liability beyond the principals who actually committed the tort, the coconspirator must be "legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty." *Id.*

Typically, agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage. *Doctors' Co. v. Super. Ct.*, 49 Cal. 3d 39, 45 (1989); *Black v. Bank of Am.*, 30 Cal. App. 4th 1, 4 (1994) ("When a corporate employee acts in the course of his or her employment, on behalf of the corporation, there is no entity apart from the employee with whom the

employee can conspire."); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1123 (C.D. Cal. 2003).  The principles underlying the agent's immunity rule apply to limited liability companies.  *See People v. Pac. Landmark*, 129 Cal App. 4th 1203, 1212-1213 (2005).

An exception to the agent's immunity rule that allows corporate employees to be held liable for conspiracy with their principal exists when they act for their own individual advantage and not solely on behalf of the corporation, or act beyond the scope of their authority.  *See Doctors' Co.*, 49 Cal.3d at 47.  Agents and employees may also be liable where they owe a duty to the plaintiff independent of the corporation's duty.  *Black*, 30 Cal. App. 4th at 4.  "[E]veryone owes a duty not to commit an intentional tort against *anyone.*"  *Fuller v. First Franklin Fin. Corp.*, 216 Cal. App. 4th 955, 967 (2013) (citing *Qwest Commc'ns Corp. v. Weisz*, 278 F. Supp. 2d 1188, 1193, n. 4 (S.D. Cal. 2003)).  "Thus, there can be liability for conspiring to commit an intentional tort even *absent* any duty."  *Id.*; *see also Applied Equip. Corp.*, 7 Cal. 4th at 512-13.

"Because civil conspiracy is so easy to allege, plaintiffs have a weighty burden to prove it."  *Choate v. Cnty. of Orange*, 86 Cal. App. 4th 312, 333 (2000) (citation omitted).  There must be proof of "a mutual understanding to accomplish a common and unlawful plan."  *Id.*  "It is not enough that [the defendants] knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it."  *Id.*

The Moores committed fraud, an intentional tort, against Hardisty.  The Moores and State Insulation-Arizona all shared a common plan or design to take Hardisty's 27% membership interest in Legacy Pointe and his $380,000 by misrepresentations that the claims by the subcontractors, vendors, and suppliers against the payment and performance bond would be extinguished, and each engaged in acts in furtherance of this common plan.  While Hal Moore owned State Insulation-Arizona and Melanie Moore was an employee, the Court finds that they acted for their own financial gain and not on behalf of the company.  The 27% membership interest was being

1    transferred to Hal Moore, and the Purchase and Sale Agreement was drafted by the

2    Moores and signed by Hal Moore as an individual.  State Insulation-Arizona was

3    simply a conduit and willing participant.

4        Hardisty has not demonstrated that the Moore Trust or State Insulation-Nevada

5    were involved in the common plan.  Accordingly, the Court finds Hal Moore, Melanie

6    Moore, and State Insulation-Arizona engaged in a conspiracy to commit fraud.

7    **F.    Aiding and Abetting Against Melanie Moore, State Insulation, the**

8    **Moore Trust and Mark Peluso (Second Cause of Action)**

9        To prove aiding and abetting, a plaintiff must prove by a preponderance of

10   evidence: (1) that the defendants knew that another person's conduct was a breach of

11   a duty owed to another and (2) that the defendants gave substantial assistance and

12   encouragement of that breach.  *See Schultz v. Neovi Data Corp.*, 152 Cal. App. 4th

13   86, 93 (2007).  "Mere knowledge that a tort is being committed and the failure to

14   prevent it does not constitute aiding and abetting." *Austin B. v. Escondido Union Sch.*

15   *Dist.*, 149 Cal. App. 4th 860, 879 (2007) (citation omitted).

16       There is no evidence that Mark Peluso knew the Moores were breaching any

17   duty to Hardisty or that the Moores were committing any fraud against him.

18   Therefore, with respect to Mark Peluso, Hardisty has failed to meet his burden of proof

19   on this cause of action.  In addition, there is no evidence the Moore Trust or State

20   Insulation-Nevada gave substantial assistance in encouragement of the breach.

21       With respect to the remaining defendants, Hardisty has proved that they each

22   knew the Moores were making fraudulent misrepresentations to him, and they each

23   substantially assisted and encouraged that fraud.  The Court therefore finds in favor

24   of Plaintiff on his second cause of action for aiding and abetting against defendants

25   Melanie Moore and State Insulation-Arizona.

26   **G.    Fraud Damages**

27       Once a plaintiff has proven he was actually damaged by a defendant's conduct,

28   the trial court must attempt to ascertain the amount of damages even if the task is a

– 19 –

difficult one.  *See Meister v. Mensinger*, 230 Cal. App. 4th 381, 396 (2014) ("While the damages suffered by the [plaintiffs] as a consequence of respondents' wrongdoing may not have been readily ascertained, it does not follow that the [plaintiffs] failed to establish the fact they were harmed by respondents' actions.").  "Where the *fact* of damages is certain, the amount of damages need not be calculated with absolute certainty."  *GHK Assocs. v. Mayer Grp., Inc*., 224 Cal. App. 3d 856, 873 (1990).  "The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation."  *Id*.  Trial courts must do the best they can and use all available facts to approximate the fair and reasonable damages under all of the circumstances.  *Meister*, 230 Cal. App. 4th at 397.

### 1.   Incentive Agreement

The Court finds that the parties entered into the Incentive Agreement.  The Moores made an offer, which was accepted by Hardisty.  Cal. Civ. Code §§ 1582, 1583.  While Hal Moore may or may not have signed the Incentive Agreement, the parties, including Hal Moore, began to immediately perform thereunder.  *See* Cal. Civ. Code § 1584.

California law "distinguishes between fraud in the execution or inception of a contract, and fraud in the inducement of a contract."  *Village Northridge Homeowners Ass'n v. State Farm Fire & Cas. Co*., 50 Cal. 4th 913, 921 (2010).  Fraud in the inducement "occurs when the promisor knows what he is signing but his consent is *induced* by fraud."  *Rosenthal v. Great W. Fin. Sec. Corp*., 14 Cal. 4th 394, 415 (1996) (internal quotations omitted).  Fraud in the execution or inception, on the other hand, occurs when "the promisor is deceived as to the nature of his act, and actually does not know what he is signing, or does not intend to enter into a contract at all."  *Id*.

To succeed on a claim of fraud in the inception, a plaintiff must show that his apparent assent to the contract—his signature on the agreement—is "negated by fraud so fundamental" that he was "deceived as to the basic character of the document" he

signed and "had no reasonable opportunity to learn the truth." *Id.* at 425.   A misrepresentation of the contract's contents alone does not render a contract's contents void "where the defrauded party had a reasonable opportunity to discover the real terms of the contract." *Id.* at 419-20.

Hardisty has failed to prove any fraud in the execution or inducement of the Incentive Agreement.  While Hardisty was under economic duress at the time, the Moores did not engage in any sufficiently wrongful coercive acts at the time the parties entered into the Incentive Agreement to invalidate the agreement.  *See Rich & Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1158-59 (1984) ("[T]he [economic duress] doctrine . . . [which can serve as a basis for invalidating a contract] come[s] into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure.")

Plaintiff argues that Hal Moore's representation in the Incentive Agreement that he would provide a "bridge loan" was promissory fraud because of the subsequently filed Bond Action.  To establish promissory fraud, a plaintiff must prove "(1) the defendant made a representation of intent to perform some future action, i.e., the defendant made a promise, and (2) the defendant did not really have that intent at the time that the promise was made, i.e., the promise was false." *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1060 (2012) (citing *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 639 (1996)).  However, Plaintiff has failed to prove that the Moores or State Insulation-Arizona intended to pursue a claim on the bonds at the time the Incentive Agreement was entered into, or to seek reimbursement by any method other than "through the draw process," thereby misrepresenting the nature of the "bridge loan."  Plaintiff testified that when he signed the Incentive Agreement he understood Hal Moore, through State Insulation-Arizona and Legacy Pointe, was going to reimburse himself for the "bridge loan."  Hal Moore similarly testified that the purpose of the collateral assignments was to ensure he was reimbursed.  He further testified that he was not

planning on filing a bond claim at the time he entered the Incentive Agreement, and was not setting one up.  Plaintiff has presented no evidence to the contrary.

### 2.   Purchase and Sale Agreement

Hardisty was deceived as to the basic character of the Purchase and Sale Agreement and had no reasonable opportunity to learn the truth.  Thus, the Court finds there was fraud in the inception of the Purchase and Sale Agreement.

A party's "rescission obligations depend on the type of fraud alleged." *Village Northridge Homeowners Ass'n*, 50 Cal. 4th at 921.  "If the fraud goes to the execution or inception of a contract, so that the promisors do not know what they are signing, the contract lacks mutual assent and is void." *Id*.  Therefore, the contract "may be disregarded without the necessity of rescission." *Id*. (citation omitted).

The Court thus finds that the Purchase and Sale Agreement is void and shall be disregarded without the necessity for rescission.  As the Purchase and Sale Agreement is void, it is not a novation, and the Incentive Agreement remains in effect. *See Airs Intern., Inc. v. Perfect Scents Distributions, Ltd*., 902 F. Supp. 1141, 1148-49 (N.D. Cal. 1995) ("[A]n essential element of a novation is the *validity* of [a] new contract[; therefore] … [i]f the new contract is invalid, there is no novation and the parties' previous obligations are not extinguished.") (citations omitted); Cal. Civ. Code § 1531.[10]

_____

[10]   To the extent Defendants argue the Purchase and Sale Agreement was subsequently ratified by Hardisty when he signed documents addressed or submitted to HUD in February 2009, the Court disagrees.  "[O]ne who, after discovery of an alleged fraud, ratifies the original contract by entering into a new agreement granting him substantial benefits with respect to the same subject matter, is deemed to have waived his right to claim damages for fraudulent inducement." *See Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc*., 144 Cal. App. 4th 1175, 1186 (2006).  As discussed herein, Hardisty did not learn of the fraud until the filing of the Bond Claim in October 2009.  Therefore, the Court finds Defendants have failed to establish that Hardisty ratified the Purchase and Sale Agreement and waived his rights to claim damages for fraud. *See DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.,* 30 Cal. App. 4th 54, 60 (1994) ("Waiver is the intentional relinquishment of

"Restitution of the benefits conferred under a contract may be awarded if the contract is rescinded or determined to be unenforceable." *Chapman v. Skype Inc*., 220 Cal. App. 4th 217, 233-34 (2013) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)).   "Alternatively, restitution may be awarded where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." *Durell*, 183 Cal. App. 4th at 1370 (citation omitted).   However, "[t]he person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it." *Id*. (citation omitted).

The Court finds that no restitution of any benefits conferred by the Purchase and Sale Agreement is required to prevent unjust enrichment.  The Bond Action has been settled and dismissed.  The Interpleader Action, including all cross-claims and counterclaims in their entirety brought by any party, must be dismissed with prejudice. (*See* ECF No. 130.)  In addition, by virtue of the terms of the Incentive Agreement, which, as discussed herein, is valid, Hardisty and Munson-Hardisty, LLC have no obligation to State Insulation-Arizona or the Moores for any unpaid subcontractor, supplier, or vendor invoices.  The collateral assignments were to be reimbursed "by HUD through the draw process;" and to the extent that did not occur, the Incentive Agreement provides that "all unpaid expenses and loans incurred by Moore are to be paid back through escrow upon sale of the property or rent proceeds."

California Civil Code section 3343 provides the measure of damages when one is "defrauded in the purchase, sale or exchange of property."   Cal. Civ. Code § 3343(a).  California Civil Code section 3333, alternatively, provides the measure of damages for "[f]or the breach of an obligation not arising from contract."  Cal. Civ.

---

a *known right after knowledge of the facts*. … The burden, moreover, is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver.") (emphasis added) (citations and internal quotations omitted).

Code § 3333.  California Civil Code section 1709 further provides the measure of damages when a person "willfully deceives another with intent to induce him to alter his position to his injury or risk."  Cal. Civ. Code § 1709.  Given that the fraud at issue occurred during the execution of the Purchase and Sale Agreement, which is void, and not during the transfer of Hardisty's 27% membership interest in Legacy Pointe, which was transferred by means of the Incentive Agreement, the Court finds that Sections 1709 and 3333 provide the more appropriate measure of damages in this case.

Under Section 3333, the measure of tort damages "is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."  Cal. Civ. Code § 3333.  "There is no fixed rule for the measure of tort damages under Civil Code section 3333."  *Santa Barbara Pistachio Ranch v. Chowchilla Water Dist.*, 88 Cal. App. 4th 439, 446 (2001).  The damages awarded should place the plaintiff in the position he would have occupied had the misrepresentations not occurred.  *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1234 (E.D. Cal. 1996) (citing *Gray v. Don Miller & Assocs., Inc.*, 35 Cal. 3d 498, 504 (1984); *Kenly v. Ukegawa*, 16 Cal. App. 4th 49, 54-55 (1993)).

Section 1709 similarly provides that a defendant engaging in deceit "is liable for any damage which [the plaintiff] thereby suffers."  Cal. Civ. Code § 1709.  A plaintiff is required to prove the amount of damages he suffered with "reasonable certainty."  *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 839 (9th Cir. 2004) (citing *Stott v. Johnston*, 36 Cal. 2d 864, 875 (1951)).

Hardisty has demonstrated with reasonable certainty that as a result of the fraud committed by defendants Hal Moore and Melanie Moore, he was unable to repay his personal line of credit at the bank in the amount of $380,000 plus interest which led to a default, and he was forced to incur $148,036.45 in attorneys' fees associated with defending the Bond Action and Interpleader Action in Tennessee.[11]

---

[11]   Hardisty failed to demonstrate that he was deprived of additional "salary" by virtue of the fraud committed by defendants Hal Moore, Melanie Moore,

At the beginning of the Project, Hardisty drew upon a $380,000 personal line of credit and contributed the funds to the Project.  These funds were held by GAIC for the duration of the Project, and were later deposited with the court in the Interpleader Action.  When Hardisty entered into the Incentive Agreement, receiving funds to be able to maintain and pay off his $380,000 line of credit was a key component of the agreement.  Hardisty therefore agreed to waive his right to the funds held by GAIC on the promise that he would receive the $380,000 sooner from Hal Moore through installment payments, with the final installment to be paid on completion of the Project.  Therefore, through this agreement, Hardisty anticipated being able to maintain and pay off his line of credit.  Hal Moore further continuously promised to pay Hardisty the $380,000 while the Project was being completed, stringing him along for months.

In reliance on these promises, Hardisty continued to work on the Project.  At the end of the Project, Hal Moore informed Hardisty that he would not pay him $380,000, relying on the fraudulently executed Purchase and Sale Agreement which states that "[i]n entering this Agreement, [Hardisty] does not rely on any representations by [Hal Moore] or his agents concerning any subject matter whatsoever."  As the harm to Hardisty, namely his inability to make payments and the subsequent defaulting on his personal line of credit, arose from and was perpetuated and exacerbated by the fraud of defendants Hal Moore and Melanie Moore, the Court finds tort damages in the amount of $380,000 to be the appropriate and equitable remedy.

---

and State Insulation.  The Incentive Agreement provides that Hardisty was to receive $380,000 pursuant to a payment schedule but during the course of the payment schedule both he and Munson-Hardisty, LLC would forego any salary.  Furthermore, Hardisty now abandons his claim that his companies, Hardisty Construction Inc., Hardisty Construction Management, Inc., and Melhorn Construction, Inc. were damaged as a result of defendants' actions.  Therefore, Defendants' motion *in limine* (ECF No. 106) which is still pending has been rendered moot.

In addition, "[a]lthough as a general rule attorneys' fees incurred by a plaintiff in an action for damages for fraud are nonrecoverable, an exception is recognized where a plaintiff, as a proximate result of defendant's fraud, is required to prosecute or defend an action against a third party for the protection of his interest." *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co., Inc*., 66 Cal. App. 3d 101, 149 (1977) (internal citations omitted).   "In such cases reasonable attorneys' fees incurred in connection with the third party lawsuit are recoverable as damages caused by defendant's tortious act."   *Id*. (citations omitted); *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 826 (2011) (quoting *Jordache Entrs., Inc. v. Brobeck, Phleger and Harrison*, 18 Cal. 4th 739, 751 (1998)) ("It is 'the established rule that attorney fees incurred as a direct result of another's tort are recoverable damages.'"). By virtue of Defendants' fraud, Hardisty was forced to incur $148,036.45 in attorneys' fees associated with defending the Bond Action and Interpleader Action in Tennessee, and the Court finds he is entitled to recover this amount.[12]

### 3.   Prejudgment Interest

Prejudgment interest may be awarded in the discretion of the fact-finder "[i]n an action for the breach of an obligation not arising from contract, and in every case of . . . fraud."  Cal. Civ. Code § 3288; *Michaelson v. Hamada*, 29 Cal. App. 4th 1566, 1586 (1994).   The award of pre-judgment interest should be based on all of the circumstances of the case.   *West v. Stainback*, 108 Cal.App.2d 806, 819 (1952). Damages that are "ascertainable" are entitled to prejudgment interest.  *See* Cal. Civ. Code § 3287(a); *Bullock v. Philip Morris USA, Inc*., 198 Cal. App. 4th 543, 573-74 (2011).   Damages are calculated from the date the amount was both due and owing

---

[12]     Although Defendants attempt to distinguish between the Bond Action and Interpleader Action, in fact, Hardisty was forced to continue litigation in the Interpleader Action because both his original investment of $380,000, as well as the $750,000 he borrowed from the Moores at 13% interest had been interpleaded in that court.  Thus, the Interpleader Action was a continuation of the Bond Action, which Hardisty would not have been forced to defend had there been no fraud.

and ascertainable.   *Bullock*, 198 Cal.App.4th at 573.   Prejudgment interest is calculated at a rate of 7% per year.   *Id.* (citing *Michaelson*, 29 Cal.App.4th at 1585). Generally, compound interest, as opposed to simple interest, is awarded only if the defendants owed a fiduciary duty to the plaintiff.   *Michaelson*, 29 Cal.App.4th at 1586. Therefore, the Court finds that Hardisty is entitled to simple prejudgment interest at the rate of 7% per year on the $380,000 from August 10, 2009 to the date of the Amended Judgment.[13]   Interest is therefore $147,065.21.

### 4.   Punitive Damages

Under California Civil Code section 3294, punitive damages may be awarded in the court's discretion in a tort action "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."   Cal. Civ. Code § 3294(a); *Chavez v. Keat*, 34 Cal. App. 4th 1406, 1415 (1995).   The Court declines to award punitive damages.

## III.   CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that:

1.   Judgment be entered in favor of Plaintiff in the amount of $675,101.66 and (1) against Melanie Moore and State Insulation LLC, an Arizona limited liability company, on Plaintiff's second cause of action for aiding and abetting intentional torts; and (2) against defendants Harold M. Moore[14] and Elaine K. Moore a/k/a Melanie K. Moore on Plaintiff's third cause of action for fraud.   Harold M. Moore, Elaine K. Moore a/k/a Melanie K. Moore, and State Insulation LLC, an Arizona limited liability company, are jointly liable for this amount.

---

[13]   As noted above, the Project was complete in August 2009.   Hal Moore signed the Mortgagor's Certificate of Actual Cost on August 10, 2009 and final permission to occupy the living units was granted on August 6, 2009.   For purposes of calculating prejudgment interest, the Court will use August 10, 2009, the latest date provided by the parties.

[14]   Melanie Moore, in her capacity as the executrix and the party representative of the estate of Harold M. Moore, has been substituted as a defendant and a counterclaimant in this action in place of Harold M. Moore.   (*See* ECF No. 231.)

2.      Judgment be entered against Plaintiff and in favor of defendants State Insulation LLC, an Arizona limited liability company, and State Insulation LLC, a Nevada limited liability company, on Plaintiff's third cause of action for fraud.

3.      Judgment be entered against Plaintiff and in favor of defendants Harold M. Moore and Elaine K. Moore a/k/a Melanie K. Moore on Plaintiff's fourth cause of action for constructive fraud.

4.      Judgment be entered against Plaintiff and in favor of defendant Harold M. Moore on Plaintiff's sixth cause of action for securities fraud.

5.      Judgment be entered against Plaintiff and in favor of defendants Harold M. Moore, Elaine K. Moore a/k/a Melanie K. Moore, State Insulation LLC, an Arizona limited liability company, and State Insulation LLC, a Nevada limited liability company, and The 1998 Harold M. Moore Revocable Trust, on Plaintiff's seventh cause of action for conversion and Plaintiff's ninth cause of action for conspiracy.

6.      Judgment be entered against Plaintiff and in favor of defendant The 1998 Harold M. Moore Revocable Trust on Plaintiff's second cause of action for aiding and abetting intentional torts, Plaintiff's third cause of action for fraud.

7.      Judgment be entered against Plaintiff and in favor of Mark Peluso on Plaintiff's second cause of action for aiding and abetting intentional torts.

8.      Judgment be entered against Plaintiff and in favor of State Insulation LLC, a Nevada limited liability company, on Plaintiff's second cause of action for aiding and abetting intentional torts.

9.      Pursuant to Rule 68, judgment is entered in favor Counter-Claimant Harold M. Moore and against Counter-Defendant John Hardisty in the sum of $750,000.00.  This sum is to be paid from the payment bond issued by Great American Insurance Company, which is currently being held in the registry of the Chancery Court for Knox County, Tennessee, and the subject of a certain interpleader action pending in that court (*Great Am. Ins. Co. v. State Insulation, LLC*, Case No. 181402-

3 (Interpleader Action)).  This shall be the total amount to be paid on account of any liability claimed by Counter-Claimant in this action, including without limitation any and all claims for compensatory damages, statutory damages, attorneys' fees, litigation expenses and costs of suit otherwise recoverable in this action by Counter-Claimant.

The Court instructs the Clerk to issue a Second Amended Judgment accordingly, which vacates and supersedes the Clerk's Amended Judgment previously issued in this case on February 23, 2015 (ECF No. 209).

**IT IS SO ORDERED.**

**DATED:  October 22, 2015**

Hon. Cynthia Bashant
United States District Judge