1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN T. HARDISTY,<br><br>                              Plaintiff,<br><br>        v.<br><br>MELANIE MOORE, *ET AL.*,<br><br>                              Defendants. | Case No.  11-cv-01591-BAS(BLM)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>(ECF No. 215) |
| AND RELATED COUNTERCLAIM | |

        Presently before the Court is a motion for attorneys' fees and costs pursuant to California Civil Code section 1717 and Federal Rule of Civil Procedure 54(d)(1) filed by plaintiff John Hardisty ("Plaintiff" or "Hardisty").  (ECF No. 215.)  Defendants Elaine K. Moore aka Melanie Moore ("Melanie Moore"), Harold M. Moore ("Hal Moore"),[1] State Insulation, LLC, an Arizona limited liability company ("State Insulation-Arizona"), State Insulation, LLC, a Nevada limited liability company

---

        [1]        Melanie Moore, in her capacity as the executrix and the party representative of the estate of Harold M. Moore, has been substituted as a defendant and a counterclaimant in this action in place of Harold M. Moore. (*See* ECF No. 231.)

– 1 –

("State Insulation-Nevada") (collectively "State Insulation"), The 1998 Harold M. Moore Revocable Trust (the "Trust"), and Mark Peluso (collectively "Defendants") oppose. (ECF No. 221.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, Plaintiff's motion for attorneys' fees and costs (ECF No. 215) is **DENIED**.

# I.    BACKGROUND[2]

## A.    Procedural History

In the operative Third Amended Complaint ("TAC"), in 107 pages, Plaintiff alleges "massive and systemic financial fraud" by Defendants during the construction of an apartment project funded by the Department of Housing and Urban Development in Knoxville, Tennessee and asserts ten causes of action. (*See* ECF No. 34 at p. 1.) On October 9, 2012, the Court granted Hal Moore's motion to dismiss the first and tenth causes of action with prejudice, and also granted a motion by Defendants to strike any RICO allegations. (ECF No. 39.) On November 14, 2012, Hal Moore filed a Counterclaim against Hardisty for fraud and negligent misrepresentation. (ECF No. 40.) On March 18, 2014, the Court granted Defendants' motion for summary judgment with respect to the fifth cause of action for quiet title, the eighth cause of action for abuse of process, as well as partial summary judgment on the remaining causes of action. (ECF No. 80.) On September 9, 2014, Hal Moore filed a Notice of Acceptance of Offer of Judgment. (ECF No. 130.) Pursuant to Federal Rule of Civil Procedure 68, Counter-Plaintiff Hal Moore accepted Counter-Defendant Hardisty's offer to allow entry of judgment on the Counterclaim. (*Id.*)

The following remained for trial: (1) the second cause of action for aiding and abetting intentional torts against Melanie Moore, State Insulation, the Moore Trust, and Mark Peluso; (2) the third cause of action for fraud against Hal Moore, Melanie

---

[2]    The Court incorporates its Amended Findings of Fact and Conclusions of Law filed on October 22, 2015 (ECF No. 236) for purposes of this motion.

Moore, State Insulation, and the Moore Trust; (3) the fourth cause of action for constructive fraud against Hal Moore and Melanie Moore; (4) the sixth cause of action for securities fraud under California Business and Professions Code § 25401 *et seq.* against Hal Moore; (5) the seventh cause of action for conversion against Hal Moore, Melanie Moore, State Insulation, and the Moore Trust; and (6) the ninth cause of action for conspiracy against Hal Moore, Melanie Moore, State Insulation, and the Moore Trust.  Each of the remaining causes of action was limited to allegations arising from Hardisty's transfer of his 27% membership interest in Legacy Pointe to Hal Moore.  In a supplemental ruling on Defendants' motion for summary judgment, the Court agreed to also consider allegations arising from Hardisty's additional transfer of his 5% ownership interest as a 50% owner of Munson-Hardisty, LLC, as well as an amount of $380,000 allegedly owed by Hal Moore to Hardisty upon completion of the Project.

This matter was set for a bench trial.  Trial took place on September 16-19, 2014, December 9, 2014, and January 27-29, 2015.  In its Findings of Facts and Conclusions of Law, the Court ruled in favor of Defendants on the fourth cause of action for constructive fraud, the sixth cause of action for securities fraud, and the seventh cause of action for conversion.  (ECF Nos. 208, 236.)  The Court further ruled in favor of defendants Mark Peluso and the Moore Trust on all causes of action alleged against them.  (*Id.*)  After reconsideration, the Court also ruled in favor of defendant State Insulation-Nevada on all causes of action alleged against the company.  (ECF No. 236.)  The Court found the Purchase and Sale Agreement was void, and awarded a measure of tort damages against Hal Moore, Melanie Moore, and State Insulation-Arizona in the amount of $675,101.66 for the fraud.  (*Id.* at pp. 22-27.)  Based on the settlement of the Counterclaim, the Court also entered judgment against Hardisty and in favor of Hal Moore in the amount of $750,000, the sum to be paid from the funds deposited in the Interpleader Action.  (*Id.* at p. 29; ECF No. 236 at pp. 28-29.)

///

## II.    LEGAL STANDARD

Federal courts follow the "American Rule," under which each party to a lawsuit bears his or her own attorney's fees, regardless of the outcome, unless there is express statutory authorization to the contrary.  *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). California also follows the "American Rule," which is codified in California Code of Civil Procedure section 1021.  *Musaelian v. Adams*, 45 Cal. 4th 512, 516 (2009); Cal. Code Civ. Proc. § 1021.  The parties agree California law should be used to interpret the contractual fees provision in this case.  *See Resolution Trust Corp., v. Midwest Fed. Sav. Bank of Minot*, 36 F.3d 785, 800 (9th Cir. 1993); *see also* Exhibit 93 at ¶ 10.

Section 1717(a) of the California Civil Code provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract…shall be entitled to reasonable attorney's fees in addition to other amounts.

Cal. Civ. Code § 1717(a).  Three conditions must be met before section 1717 applies. *In re Penrod,* No. 13-16097, ---F.3d----, 2015 WL 5730425, at *3 (9th Cir. Oct. 1, 2015).  "First, the action in which the fees are incurred must be an action 'on a contract,' a phrase that is liberally construed."  *Id*. (citation omitted).  "Second, the contract must contain a provision stating that attorney's fees incurred to enforce the contract shall be awarded either to one of the parties or to the prevailing party."  *Id*. "And third, the party seeking fees must be the party who 'prevail[ed] on the contract,' meaning . . . 'the party who recovered a greater relief in the action on the contract.'" *Id*. (quoting Cal. Civ.Code § 1717(b)(1)).

"Ordinarily, in an action on a contract providing for an award of attorney fees, Civil Code section 1717 entitles the prevailing party to attorney fees, even when the party prevails on the ground that the contract is inapplicable, invalid, unenforceable,

or nonexistent, if the other party would have been entitled to attorney fees had it prevailed." *Yuba Cypress Hous. Partners, Ltd. v. Area Developers*, 98 Cal. App. 4th 1077, 1081 (2002) (citing *Hsu v. Abbara*, 9 Cal. 4th 863, 870 (1995)). "This general rule 'serves to effectuate the purpose underlying section 1717,' which was enacted to establish mutuality of remedy where a contractual attorney fee clause makes recovery of fees available for only one party." *Id.* (quoting *Hsu*, 9 Cal. 4th at 870)). California courts recognize an exception to this rule where the contract is held unenforceable because of illegality. *Id.* at 1081-82 (citing *Geffen v. Moss*, 53 Cal. App. 3d 215, 227 (1975); *Bovard v. Am. Horse Enters., Inc.*, 201 Cal. App. 3d 832, 843 (1988)).

## III.   DISCUSSION

### A.   California Civil Code Section 1717

#### 1.   Attorney's Fees Provision

The Purchase and Sale Agreement contains the following provision:

> If it shall be necessary for Buyer or Seller to institute legal proceedings regarding this Agreement, the party prevailing in any such proceeding shall be entitled . . . to a reasonable sum for attorney's fees.

(Exhibit 93 at ¶ 11.) The Court finds this attorney's fee provision is subject to section 1717, and turns to examine whether this is an "action on a contract."

#### 2.   Action "On A Contract"

Section 1717(a) only applies to an "action on a contract." Cal. Civ. Code § 1717(a); *see also In re Penrod,* ---F.3d----, 2015 WL 5730425, at *3; *Topanga & Victory Partners v. Toghia*, 103 Cal. App. 4th 775, 780 (2002). "[A]n action founded solely in contract which determines the enforceability of a contract is an 'action on a contract' within the purview of section 1717." *Star Pac. Invs., Inc. v. Oro Hills Ranch, Inc.*, 121 Cal. App. 3d 447, 460 (1981). A tort action for fraud arising out of a contract, however, is "not an 'action on a contract' within the meaning of section 1717 so as to permit an award of attorney fees." *Id.* (citing *Stout v. Turner*, 22 Cal. 3d 718, 730 (1978)); *see also Super 7 Motel Assocs. v. Wang*, 16 Cal. App. 4th 541, 549-50 (2003)

1    (action for fraud seeking damages sounds in tort even though the underlying

2    transaction in which the fraud occurred involved a contract containing an attorney fee

3    clause).

4         "Fraud (in the form of intentional misrepresentation) may provide a basis for a

5    remedy in either a tort action or in a contract action." *Star Pac. Invs., Inc.*, 121 Cal.

6    App. 3d at 461.  When a plaintiff contracts in reliance upon the fraud of a defendant,

7    the plaintiff "may elect either the contract remedy, consisting of restitution based on

8    rescission or the tort remedy, by affirming the contract and seeking damages." *Id.*

9    Thus, "where the plaintiff's claim . . . seeks rescission based on fraud, the courts have

10   concluded such claim does sound in contract and permits the award of fees," *Super 7*

11   *Motel Assocs.*, 16 Cal. App. 4th at 549, but where a plaintiff seeks money damages

12   for the fraud, courts have concluded such a claim does not sound in contract and no

13   fee award is permitted, *In re Baroff*, 105 F.3d 439, 443 (9th Cir. 1997).  "An action to

14   avoid or rescind an agreement because of fraudulent inducement . . . is an action on a

15   contract within the meaning of section 1717." *In re Baroff*, 105 F.3d at 443 (citing

16   *Star Pac. Invs., Inc.*, 121 Cal. App. 3d at 461); *see also In re Penrod,* ---F.3d----, 2015

17   WL 5730425, at *3 (an action is "on a contract" when a party seeks to "avoid

18   enforcement" of the provisions of the contract); *Exxess Electronixx v. Heger Realty*

19   *Corp.*, 64 Cal. App. 4th 698, 710-11 (1998) (an action "that seeks to establish the

20   parties' rights under a contract is an action sounding in contract").

21        California courts construe the term "on a contract" liberally.  *Eden Twp.*

22   *Healthcare Dist. v. Eden Med. Ctr.*, 220 Cal. App. 4th 418, 426 (2013); *see also In re*

23   *Tobacco Cases I*, 193 Cal. App. 4th 1591, 1601 (2011) (interpreting section 1717

24   narrowly "is impermissible under California law and antithetical to the Legislature's

25   intent of ensuring reciprocity of remedy").  "The phrase 'action on a contract' includes

26   not only a traditional action for damages for breach of a contract containing an

27   attorney fees clause, but also any other action that 'involves' a contract under which

28   one of the parties would be entitled to recover attorney fees if it prevails in the action."

*Id.* (internal citations omitted).

In determining what actions and causes of actions are deemed to be "on a contract" for purposes of section 1717, the following factors are relevant: "the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery." *Hyduke's Valley Motors v. Lobel Fin. Corp.*, 189 Cal. App. 4th 430, 435 (2010) (citation omitted). "Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. If unclear the action will be considered based on contract rather than tort." *Kangarlou v. Progressive Title Co., Inc.*, 128 Cal. App. 4th 1174, 1178–79 (2005) (citations omitted); *see also Eden Twp. Healthcare Dist.*, 220 Cal. App. 4th at 426 ("[T]he proper focus is not on the nature of the remedy, but on the basis of the cause of action."); *Hyduke's Valley Motors*, 189 Cal. App. 4th at 436 (mere fact a complaint pleads a breach of contract is not dispositive).

### a.   *Relief Sought By Plaintiff*

The TAC, in 107 pages, alleges "massive and systemic financial fraud" by Defendants comprising a series of transactions and involving a variety of written contracts, oral agreements, alleged duties, and broken promises. Plaintiff asserts the following causes of action: (1) breach of specific promise to answer for the debt of another; (2) aiding and abetting intentional torts; (3) fraud; (4) constructive fraud; (5) quiet title; (6) material misrepresentation in purchase and sale of a security; (7) conversion; (8) abuse of process; (9) conspiracy; and (10) federal securities fraud. In the TAC, Plaintiff seeks money damages for the alleged fraud, rescission of several contracts in order to undue the sale of Plaintiff's 27% membership interest in Legacy Pointe, to quiet title to that 27 percent interest, as well as Munson-Hardisty, LLC's 10% interest in Legacy Pointe, in Plaintiff and Munson-Hardisty, LLC, an accounting,

1  a constructive trust in connection with the proceeds of Defendants' ill-gotten gains
2  and unjust enrichment, exemplary damages, and "such other and further relief as the
3  Court deems just and proper."  (TAC at pp. 105-106 (Prayer).)

4  　　　Plaintiff alleges fraud with respect to several contracts, but the Purchase and
5  Sale Agreement contains the relevant attorney's fees provision, therefore the Court
6  will only look at causes of action involving that contract.  In the TAC, Plaintiff alleges
7  Defendants fraudulently induced Plaintiff into entering the Purchase and Sale
8  Agreement by means of material misrepresentations or omissions.[3]  Plaintiff further
9  alleges that Hal Moore breached a promise to Plaintiff and wrongfully deprived him
10  of his 27% membership interest in Legacy Pointe by means of the fraudulent Purchase
11  and Sale Agreement, and seeks to quiet title over the ownership of his 27%
12  membership interest, which he alleges was obtained by virtue of Defendants' fraud.[4]
13  Lastly, Plaintiff alleges Defendants abused the judicial process by initiating the Bond
14  Action, which was made possible by virtue of the Purchase and Sale Agreement.[5]

15  　　　For purposes of determining whether Plaintiff is entitled to attorney's fees under
16  section 1717, the Court must disregard Plaintiff's tort claims.  *See Brown Bark III,*
17  *L.P. v. Haver*, 219 Cal. App. 4th 809, 820 (2013) ("The court must disregard any tort
18  claims included in the action when determining whether section 1717 applies.").  In
19  the TAC, Plaintiff seeks tort damages with respect to his fraud causes of action, as
20  well as his aiding and abetting, conspiracy, abuse of process, conversion, and breach
21  of specific promise causes of action.  (*See* TAC at ¶¶ 190, 204, 242-244, 255-256,
22  306, 312-314.)  However, Plaintiff seeks to rescind the Purchase and Sale Agreement
23  with respect to his securities fraud causes of action.  (*See id*. at ¶¶ 292-293, 339-340,

24

25  　　　[3]　　*See* TAC at ¶¶ 128-139; 229-234, 237-241 (fraud); ¶¶ 251-253
26  (constructive fraud); ¶¶ 286-291 (California securities fraud); ¶¶ 333-338 (federal
   securities fraud); ¶¶ 192-203 (aiding and abetting); ¶¶ 308-10 (conspiracy).
27  　　　[4]　　*See* TAC at ¶ 189 (breach of specific promise to answer for the debt of
28  another); ¶¶ 295-297 (conversion); ¶¶ 128-135, 259, 265-267, Prayer (quiet title).
   　　　[5]　　*See* TAC at ¶¶ 304-306.

Prayer.)

In his motion for attorney's fees, Plaintiff asserts that this is an action "on a contract" because he sought rescission of the Purchase and Sale Agreement in his TAC, as well as "such other and further relief as the Court deems just and proper." (ECF No. 215-1 at p. 10.)  In response, Defendants argue this is not an "action on a contract" because Plaintiff "did not assert a claim for breach of contract, but rather asserted a cause of action for fraud and related tort claims."  (ECF No. 221 at pp. 7-8.)  Defendants also argue that because Plaintiff "ultimately elected <u>not</u> to pursue rescission of the Purchase and Sale Agreement and instead sought and obtained an award of monetary damages for fraud, . . . the nature of Plaintiff's claim is in tort." (*Id.* at p. 8, lines 12-20.)

If the Court were to rely solely on the pleaded theories of recovery in the TAC, because Plaintiff sought to rescind the Purchase and Sale Agreement with respect to his securities fraud causes of action, these causes of actions would be deemed to be "on a contract" for purposes of section 1717.  *See Super 7 Motel Assocs.*, 16 Cal. App. 4th at 549; *In re Davison*, 289 B.R. 716, 723-24 (B.A.P. 9th Cir. 2003).  However, if the Court were to look at the pleaded theories of recovery, as well as the theories asserted and the evidence produced at trial, as well as all additional evidence submitted on motion or trial brief, the Court would have to agree with Defendants that Plaintiff ultimately sought only tort remedies and not contract remedies.  At all times, Plaintiff sought damages on Defendants' fraud.  Although Plaintiff asserted at various times that he wanted to rescind the Purchase and Sale Agreement, among other agreements, as a result of the fraud, he did not want nor seek return of his 27% membership interest in Legacy Pointe, which he claimed was transferred by virtue of that agreement, only its value in unjust enrichment or rescission damages,[6] nor did he want to return any of

---

[6]     *See* Cal. Corp. Code § 25501 ("Upon rescission, a seller may recover the security, upon tender of the consideration paid for the security plus interest at the legal rate, less the amount of any income received by the defendant on the security."); ECF

1  the consideration given for the transfer his 27% membership interest.[7]

2  In light of our obligation to construe the phrase "on a contract" liberally,

3  however, the Court finds that Plaintiff's securities fraud claims are "on a contract" for

4  purposes of section 1717(a).  *See Eden Twp. Healthcare Dist.*, 220 Cal. App. at 426;

5  *Kangarlou*, 128 Cal. App. 4th at 1178; *In re Tobacco Cases I*, 193 Cal. App. 4th at

6  1601.  The Court further finds that Plaintiff's quiet title cause of action is based "on a

7  contract" because Plaintiff sought in the TAC to quiet title to the 27% membership

8  interest in Legacy Pointe, which he alleged was wrongfully obtained by virtue of the

9  fraudulently entered Purchase and Sale Agreement.  *See Kachlon v. Markowitz*, 168

10  Cal. App. 4th 316, 348 (2008) (cause of action for quiet title was "on a contract"

11  because the claim was based on a contract containing the attorney's fees provision).

12  With respect to Plaintiff's fraud cause of action, although Plaintiff sought

13  damages on a fraud in the inducement theory, the Court found that Plaintiff established

14  there was fraud in the inception of the Purchase and Sale Agreement, and therefore

15  found the contract to be void and "disregarded without the necessity for rescission."

16  (*See* ECF No. 236 at p. 22, lines 12-13.)  While Plaintiff's damages theories were

17  varied and imprecise, Plaintiff's arguments and presentation of evidence at trial

18  resulted in the Court declaring it void.  Accordingly, in light of its obligation to

19  construe the phrase "on a contract" liberally, the Court finds Plaintiff's fraud cause of

20  action is also a claim "on a contract" for purposes of section 1717(a).  *See Eden Twp.*

21  *Healthcare Dist.*, 220 Cal. App. at 426; *Kangarlou*, 128 Cal. App. 4th at 1178; *In re*

22  *Tobacco Cases I*, 193 Cal. App. 4th at 1601; *Super 7 Motel Assocs.*, 16 Cal. App. 4th

23  at 549.   The Court therefore turns to the question of whether Plaintiff was the

24

25  _____

26  No. 152 at p. 7 ("Thus, to the extent rescission would apply under this count, the Court should utilize its discretion, as a matter of equity, to award a rescissionary measure of *damages* instead.").

27      [7]      Plaintiff argued that he did not give any consideration for the transfer of

28  his 27% membership interest in Legacy Pointe.   After a bench trial, the Court disagreed.

1   prevailing party on these claims.

2                3.    <u>Prevailing Party</u>

3          Pursuant to section 1717(b)(1), "[t]he court, upon notice and motion by a party,

4   shall determine who is the party prevailing on the contract for purposes of this

5   section."  Cal. Civ. Code § 1717(b)(1).  "[T]he party prevailing on the contract shall

6   be the party who recovered a greater relief in the action on the contract.  The court

7   may also determine that there is no party prevailing on the contract for purposes of

8   [section 1717]."  *Id.*

9          "Typically, a determination of no prevailing party results when both parties

10  seek relief, but neither prevails, or when the ostensibly prevailing party receives only

11  a part of the relief sought."  *Hsu*, 9 Cal. 4th at 875 (quoting *Deane Gardenhome Ass'n.

12  v. Denktas*, 13 Cal. App. 4th 1394, 1398 (1993)).  "By contrast, when the results of

13  the litigation on the contract claims are not mixed—that is, when the decision on the

14  litigated contract claims is purely good news for one party and bad news for the

15  other—the Courts of Appeal have recognized that a trial court has no discretion to

16  deny attorney fees to the successful litigant.  Thus, when a defendant defeats recovery

17  by the plaintiff on the only contract claim in the action, the defendant is the party

18  prevailing on the contract under section 1717 as a matter of law."  *Id*. at 875-76.

19  "Similarly, a plaintiff who obtains all relief requested on the only contract claim in the

20  action must be regarded as the party prevailing on the contract for purposes of attorney

21  fees under section 1717."  *Id*. at 876.

22          In *Hsu*, the California Supreme Court held that:

23      in deciding whether there is a "party prevailing on the contract," the
        trial court is to compare the relief awarded on the contract claim or
24      claims with the parties' demands on those same claims and their
        litigation objectives as disclosed by the pleadings, trial briefs, opening
25      statements, and similar sources.  The prevailing party determination is
        to be made only upon final resolution of the contract claims and only
26      by "a comparison of the extent to which each party ha[s] succeeded and
27      failed to succeed in its contentions."

28

                              – 11 –                        11cv1591

*Id.* at 876 (citation omitted); *see also Berkla v. Corel Corp.*, 302 F.3d 909, 920 (9th Cir. 2002) ("[A] court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives.").

Determination of prevailing party for purposes of contractual attorney fees is to be made "without reference to the success or failure of noncontract claims." *Id.* at 873-74. Here, the Court will only look to the success or failure of Plaintiff's claims for fraud, securities fraud, and quiet title, which are the claims the Court has determined are "on a contract" for purposes of section 1717.

On October 9, 2012, the Court granted Hal Moore's motion to dismiss Plaintiff's federal securities fraud cause of action with prejudice. (ECF No. 39.) On March 18, 2014, the Court granted Defendants' motion for summary judgment on Plaintiff's quiet title cause of action. (*See* ECF No. 80 at p. 25.)[8] After a bench trial, the Court found against Plaintiff and for defendant Hal Moore on Plaintiff's California securities fraud cause of action. (*See* ECF No. 208 at p. 15; ECF No. 236 at p. 15.)[9]

Following the Court's order on Defendants' motion for summary judgment, Plaintiff's fraud claim with respect to the transfer of Plaintiff's 27% membership interest in Legacy Pointe remained for trial. After a bench trial, the Court found against defendants Hal Moore and Melanie Moore and in favor of State Insulation and the Moore Trust on Plaintiff's cause of action for fraud. (ECF No. 236 at pp. 11, n. 8, 12.)[10] As to damages, the Court found there was fraud in the inception of the Purchase

---

[8]   The Court also granted Defendants' motion for summary judgment on Plaintiff's abuse of process claim. (ECF No. 80 at p. 30.)

[9]   The Court also found against Plaintiff and in favor of Defendants on Plaintiff's conversion and constructive fraud claims. (ECF No. 236 at pp. 14, 17.)

[10]   The Court further found that Plaintiff demonstrated State Insulation-Arizona conspired with the Moores to commit the fraud, but that Plaintiff failed to demonstrate that the Moore Trust or State Insulation-Nevada conspired with the Moores. (ECF No. 236 at p. 19.) The Court similarly found in favor of Plaintiff and against defendants Melanie Moore and State Insulation-Arizona on Plaintiff's aiding

1   and Sale Agreement, and therefore declared it void and disregarded without the

2   necessity for rescission. (*Id*. at p. 22.)  The Court also awarded tort damages in the

3   amount of $380,000 and attorney's fees incurred in defending the Bond Action and

4   Interpleader Action in Tennessee in the amount of $148,036.45 as a result of the fraud.

5   (*Id*. at pp. 24-26.)  Altogether, because of the fraud, the Court entered judgment in

6   favor of Plaintiff in the amount of $675,101.66.  (*Id*. at p. 27.)

7       In his motion for attorney's fees, Plaintiff argues he is the prevailing party

8   because "the relief requested by Plaintiff was that the [Purchase and Sale Agreement]

9   would be extinguished or rendered unenforceable against him" and "the Court ruled

10   that the [Purchase and Sale Agreement] lacked mutual assent and thus could be

11   disregarded."  (ECF No. 215-1 at p. 11.)  Defendants argue Plaintiff is not the

12   prevailing party "considering his demands and his litigation objectives."  (*See* ECF

13   No. 221 at p. 13, line 5-7.)

14       For the following reasons, the Court agrees with Defendants and finds that

15   Plaintiff is not the prevailing party on his contract claims.  First, Plaintiff was not the

16   prevailing party on his securities fraud causes of action, in which he sought rescission

17   of the Purchase and Sale Agreement in the TAC, or on his quiet title claim.  Second,

18   as laid out below, Plaintiff, while ostensibly the prevailing party on his fraud cause of

19   action, only received a fraction of the relief sought.

20       a.   *Relief Sought and Obtained on Plaintiff's Fraud Claim*

21       In his initial Trial Brief, Plaintiff, arguing the occurrence of a fraudulent

22   property transaction, sought out-of-pocket damages under California Civil Code

23   section 3343, in the amount of $4,527,200, and consequential damages, including lost

24   profits and/or lost enterprise value in the Hardisty Entities.  (ECF No. 139 at ¶¶ 152-

25   165.)  Plaintiff also sought tort damages under California Civil Code sections 3333

26

27   ───────────────────

28   and abetting the fraud claim, but against Plaintiff and in favor of defendants Mark
    Peluso, State Insulation-Nevada, and the Moore Trust on the aiding and abetting claim.
    (ECF No. 236 at p. 19.)

11cv1591

and 1709, arguing defendant Hal Moore had a fiduciary relationship with Plaintiff. (*Id.* at ¶¶ 166-174.)  Under section 3333, Plaintiff argued he was entitled to damages as follows: "(1) the lost value of his membership interests in the amount of $4,527,200, as evidenced by the testimony of Plaintiff's expert; (2) all costs and expenses incurred by Plaintiff in the Tennessee and Federal District Court actions relating to the Bond; (3) damages for Plaintiff's emotional distress; (4) damages for Plaintiff's line of credit, which was taken from him along with the lost the wages that were promised to be paid to him; and (5) damages for the lost profits or enterprise value of the Hardisty Entities." (*Id.* at ¶ 175.)  Plaintiff also sought punitive damages, arguing Defendant Moore engaged in intentional fraud.  (*Id.* at ¶ 185.)  Thus, at a minimum, prior to trial, Plaintiff sought **$4,527,200** in damages on his fraud claim.

Post-bench trial, Plaintiff filed a brief addressing only the issue of damages. (ECF No. 152.)  Plaintiff argued that he established at trial that he was entitled to $4,024,295 as out-of-pocket losses on his fraud claims, which includes prejudgment interest, as well as $611,793 for the line of credit and lost wages in the amount of $154,077.26, for a total of **$4,790,165**.  (*Id.* at pp. 1-2; ECF No. 154 at 5-6.)  Plaintiff asserted the figure would be the same under California Civil Code section 3333 or section 3343.  (*Id.* at p. 4.)  <u>In the alternative</u>, Plaintiff argued he established he was entitled to restitution or unjust enrichment damages which "would equate to (i) to all profits accrued; (ii) the current value of the membership interest, and (iii) the value of the surplus cash note received by Defendant Hal Moore."  (*Id.* at p. 5.)  Plaintiff calculated this amount to be **$10,178,214**.  (*Id.*; ECF No. 154 at 8; ECF No. 160.) Lastly, Plaintiff sought punitive damages on the fraud in an amount "at least nine times the amount of compensatory damages awarded."  (*Id.* at p. 14.)  Plaintiff elected both of these remedies, in the alternative, again in his post-trial reply brief.  (ECF No. 163 at p. 5.)  He stated:

> Plaintiff elects rescission of: the $750,000 Note, the Incentive Agreement, the PSA, the Assignment of Plaintiff's 27 percent membership interest in the LPA; provided, however, Plaintiff seeks

unjust enrichment damages rather than restoration of the interest, because Moore has tainted the LPA by his misrepresentations to HUD. To the extent unjust enrichment is not awarded, Plaintiff will affirm the contract and receive damages under Cal. Civ. Code §3333.

(ECF No. 163 at p. 5.)

In his subsequent post-trial briefs on damages, Plaintiff again elected the remedy of "rescission of the transaction in its entirety and restitution," unless the Court determined that rescission and restitution damages were not available to Plaintiff, in which case he elected to affirm "the contract(s) for the transfer of his Equity Interest and receiv[e] compensatory damages." (ECF No. 202 at p. 2.) When Plaintiff discussed rescinding the transaction "in its entirety" or, in the alternative, to affirm "the contract(s)," he was asking the Court to either rescind the $750,000 Note, the Incentive Agreement, the Purchase and Sale Agreement, *and* the Assignment of Plaintiff's 27% membership interest in Legacy Pointe because of the alleged fraud, or affirm all of these contracts. Plaintiff argued that he "was the victim of coercion and merely 'walked away' from his Equity Interest, as the price for a false promise that the unlawful extortion would cease, with no consideration given for its significant value." (*Id*. at p. 3.) He asked the Court to "render judgment of liability for promissory fraud" and "make a finding that duress and coercion were the substantial basis for the fraud." (*Id*. at p. 34.)

In its Amended Findings of Fact and Conclusions of Law, the Court awarded Plaintiff tort damages on his fraud claim in the total amount of **$675,101.66** pursuant to California Code sections 3333 and 1709, and declined to award punitive damages. (ECF No. 236.) The Court did not rescind or award damages on the $750,000 Note, as it was not an issue at the time of trial. The Court found the Incentive Agreement to be a valid contract and held that Plaintiff failed to establish promissory fraud with respect to the agreement or that he was coerced into signing the agreement. Furthermore, because the Court found that Plaintiff transferred his 27% membership interest in Legacy Pointe pursuant to the Incentive Agreement, the Court determined

1  that Plaintiff was not entitled to rescission or unjust enrichment damages, nor was he

2  entitled to out-of-pocket damages under California Civil Code section 3343.

3  Therefore, although the Court found that the Purchase and Sale Agreement was void,

4  Plaintiff was not awarded the vast majority of relief he sought on the legal theories he

5  advanced.  (*See* ECF No. 218.)  The crux of Plaintiff's fraud claim remaining for trial

6  was that he was fraudulently induced to transfer his 27% membership interest in

7  Legacy Pointe by virtue of the Purchase and Sale Agreement.  Following trial, the

8  Court did not agree.

9       Based on the foregoing, upon comparison of the relief awarded on the contract

10 claims with Plaintiff's demands on those claims and his litigation objectives as

11 disclosed by the pleadings and multiple trial briefs, the Court finds Plaintiff is not the

12 prevailing party for purposes of California Civil Code section 1717.  *See Hsu*, 9 Cal.

13 4th at 876; *Berkla*, 302 F.3d at 920 (finding district court did not abuse its discretion

14 in denying the plaintiff attorney's fees where it recovered only $23,502 in

15 compensatory damages, although he sought more than $1.2 million).  Plaintiff did not

16 recover greater relief on the contract causes of action.  *See* Cal. Civ. Code §

17 1717(b)(1).  There was no prevailing party.  *See id*.  Because Plaintiff is not the

18 prevailing party, he is not entitled to attorney's fees under section 1717.

19      **B.     Federal Rule of Civil Procedure 54(d)(1)**

20      Pursuant to Rule 54(d)(1), the "clerk may tax costs [other than attorney's fees]

21 on 14 days' notice" to the "prevailing party."  Fed. R. Civ. P. 54(d)(1).  Local Civil

22 Rule 54.1 specifies that "[w]ithin fourteen (14) days after entry of judgment, the party

23 in whose favor a judgment for costs is awarded or allowed by law, and who claims

24 costs, must file with the clerk the bill of costs, together with a notice of when the clerk

25 will hear the application."  Civ. L.R. 54.1(a).  The local rule further states that "[t]he

26 determination of the prevailing party will be within the discretion of the court in all

27 cases except where such determination is inconsistent with statute or the Fed. R. Civ.

28 P. or the rules of the appellate courts."  Civ. L. R. 54.1(f).

In his motion, Plaintiff seeks a determination that he is the prevailing party for purposes of determining entitlement to costs under Federal Rule of Civil Procedure 54(d)(1).  "[A] 'prevailing party' is one who has been awarded some relief by the court."  *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 603 (2001).  More specifically, it is one who obtains some form of relief that creates a "material alteration of the legal relationship of the parties."  *Id*. at 604 (citations omitted).  "In the event of a mixed judgment, however, it is within the discretion of a district court to require each party to bear its own costs." *Amarel v. Connell*, 102 F.3d 1494, 1524 (9th Cir. 1996); *see also Slane v. Mariah Boats, Inc*., 164 F.3d 1065, 1068 (7th Cir. 1999) ("[W]hen one party gets substantial relief it 'prevails' even if it doesn't win on every claim."); *Testa v. Village of Mundelein, Ill*., 89 F.3d 443, 447 (9th Cir. 1996) ("[T]he 'prevailing party' is the party who prevails as to the substantial part of the litigation.").

Here, where judgment was entered in favor of both parties, the Court does not find that Plaintiff is the prevailing party.  As laid out above, an evaluation of Plaintiff's claims and litigation objectives and the outcome of the trial demonstrates Plaintiff arguably lost more than he won.  Two of Plaintiff's causes of action were dismissed with prejudice early in the case on Hal Moore's motion to dismiss.  The Court dismissed another two causes of action on Defendants' motion for summary judgment and greatly limited the remaining claims for trial.  After trial, the Court entered judgment entirely in favor of Defendants on three causes of action, and partially in favor of Defendants on the remaining three causes of action.  There was no cause of action on which judgment was entered entirely in favor of Plaintiff.  Moreover, on Plaintiff's fraud claim, as discussed above, Plaintiff recovered a mere fraction of the relief he sought.  Lastly, Plaintiff, as Counter-Defendant, made a Federal Rule of Civil Procedure 68 Offer of Judgment on Hal Moore's Counterclaim, which was accepted, and judgment was entered against him in an amount more than he was awarded on his own claims.

Therefore, the Court does not find that Plaintiff obtained substantial relief or prevailed on a substantial part of the litigation and is not the prevailing party for purposes of this case.  The parties are to bear their own costs.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for attorneys' fees and costs (ECF No. 215) is **DENIED**.

**IT IS SO ORDERED.**


**DATED:  November 2, 2015**

Hon. Cynthia Bashant
United States District Judge